**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: OYA RENEWABLES DEVELOPMENT LLC, *et al.*,[1] Debtors. | Chapter 11 Case No. 24-12574 (KBO) (Jointly Administered) |
|---|---|

**CERTIFICATE OF PUBLICATION**

I, Nicholas Vass, depose and say that I am employed by Kroll Restructuring Administration LLC ("***Kroll***"), the claims, noticing and solicitation agent for the Debtors in the above-captioned chapter 11 cases.

This Certificate of Publication includes a certification verifying that the *Notice of Auction and Sale Hearing*, as conformed for publication, was published on December 13, 2024 in *The New York Times*, as described in the proof of publication attached hereto as **Exhibit A**.

Dated: December 19, 2024

*/s/Nicholas Vass*
Nicholas Vass

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are OYA Renewables Development LLC (7738), OYA Renewables Construction and Yield Holdings LLC (9227), OYA Renewables EquipmentCo LLC (6444), OYA Renewables Construction Holdings 3 LLC (2317), OYARosewood Holdings LLC (1673), OYA Renewables Construction Holdings 2 LLC (9296), OYA Renewables Yield1 LLC (4326), and OYA-OMNI Development Company, LLC (9784). The Debtors' service address is c/o Ankura Consulting Group, LLC, 2 Houston Center, 909 Fannin Street, Suite 2450, Houston, TX 77010, Attn: John Shepherd, Chief Restructuring Officer.

**Exhibit A**



The New York Times Company

620 8th Avenue
New York, NY 10018
nytimes.com

# PROOF OF PUBLICATION

December 13, 2024

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

12/13/2024, NY/NATL, pg B3

Larnyce Tabron

JOHN MCGILL
Electronic Notary Public
Commonwealth of Virginia
Registration No. 8038092
My Commission Expires Dec 31, 2027

Digitally signed by John McGill
Date: 2024.12.13 15:59:51 -05'00'

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re: | Chapter 11 |
| --- | --- |
| OYA RENEWABLES DEVELOPMENT LLC, *et al.*,[1] | Case No. 24-12574 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. 12, 152** |

**NOTICE OF AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE** that on November 6, 2024 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on the Petition Date, the Debtors filed the *Debtors' Motion for Entry of (I) An Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, (C) Scheduling an Auction and a Hearing on the Approval of the Sale(s) of Some, All, or Substantially All of the Debtors' Assets, (D) Authorizing the Debtors to Enter Into the Purchase Agreement(s), (E) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (F) Granting Related Relief; and (II) An Order or Orders (A) Authorizing the Sale of Some, All, or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (B) Approving the Assumption and Assignment of the Potentially Assigned Agreements, and (C) Granting Related Relief* (Docket No. 12) (the "Bidding Procedures and Sale Motion"), pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, *inter alia*, entry of an order (the "Bidding Procedures Order"): (a) scheduling an auction (the "Auction") for the sale(s) of all, substantially all, or any portion of the Debtors' assets (the "Assets") on or about **Tuesday, January 7, 2025, at 11:00 a.m. (prevailing Eastern Time) / 10:00 a.m. (prevailing Central Time)**; (b) approving procedures (the "Bidding Procedures")[2] for submitting competing bids for the Assets; (c) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder and approving the Stalking Horse Bid Protections in accordance with the Stalking Horse Purchase Agreement; (d) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Stalking Horse Purchase Agreement, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures; (e) approving the form and manner of the notice of the Auction and the Sale Hearing; and (f) establishing procedures for the assumption and assignment of the Potentially Assigned Agreements to any purchaser(s) of the Assets and approving the manner of notice thereof (the "Cure Notice").

**PLEASE TAKE FURTHER NOTICE** that on December 10, 2024, the Court entered the Bidding Procedures Order (Docket No. 152). Pursuant to the Bidding Procedures Order, if at least two (2) Qualified Bids with regard to any Assets (as defined in the Bidding Procedures Order) are received by the Bid Deadline (as defined below), the Debtors will conduct the Auction. The Auction shall be held on **Tuesday, January 7, 2025, starting at 11:00 a.m. (prevailing Eastern Time) / 10:00 a.m. (prevailing Central Time)**, or such other time as the Debtors shall designate and thereafter notify all Qualified Bidders. Professionals and principals for the Debtors, each Qualified Bidder (including its representative(s), if any), each of the Consultation Parties, any creditors that request access to the Auction prior to the Bid Deadline, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction. Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than **Tuesday, December 17, 2024, at 12:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline") may bid at the Auction. Any party that wishes to submit a Bid (as defined in the Bidding Procedures) for all, substantially all, or any portion of the Assets must submit a Bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Auction, if required, will be conducted at the offices of Sidley Austin LLP, 1000 Louisiana Street, Suite 5900, Houston, Texas 77002, or, if determined by the Debtors to be necessary or convenient, via teleconference and/or videoconference. For the avoidance of doubt, the Debtors may adjourn the Auction to another date or change the location of the Auction (including making it conducted entirely via teleconference and/or videoconference), in consultation with the Consultation Parties, by filing a notice on the docket of these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE** that the Debtors shall file a notice identifying the Successful Bidder(s) with the Court and serve such notice upon parties in interest by **Thursday, December 19, 2024**, if no Auction is held, or by **1 business day after the conclusion of the Auction** if an Auction is held. The Debtors will file a proposed form of Sale Order or Sale Orders on the docket in these Chapter 11 Cases by **Thursday, December 19, 2024**, if no Auction is held, or by **2 business days after the conclusion of the Auction** if an Auction is held.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the Sale(s) of the Assets to the Successful Bidder(s) free and clear of all liens, claims, and encumbrances will be held before the Honorable Karen B. Owens, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801 on (a) **Tuesday, January 7, 2025, at 9:30 a.m. (prevailing Eastern Time)** in the event the Auction is cancelled, (b) **Wednesday, January 15, 2025, at 1:30 p.m. (prevailing Eastern Time)** in the event the Auction proceeds, or (c) at such other time thereafter as counsel and interested parties may be heard.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Court or by the filing of a notice with the Court.

**PLEASE TAKE FURTHER NOTICE** that, in the event the Auction is not held, objections to the approval of the Sale(s), including, for the avoidance of doubt, the ability of the Stalking Horse Bidder to provide adequate assurance of future performance or the proposed form of adequate assurance of future performance, must be in writing, state the basis for such objection with specificity, and be filed with the Court and served before **4:00 p.m. (prevailing Eastern Time) on Tuesday, December 24, 2024** on the following parties (collectively, the "Notice Parties"): (a) co-counsel to the Debtors, Sidley Austin LLP, 1000 Louisiana Street, Suite 5900, Houston, Texas 77002 (Attn: Duston McFaul (dmcfaul@sidley.com) and Maegan Quejada (mquejada@sidley.com)), and Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603 (Attn: Ian Ferrell (iferrell@sidley.com)); (b) co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801 (Attn: Edmon L. Morton (emorton@ycst.com) and Kenneth J. Enos (kenos@ycst.com)); (c) counsel to the DIP Lender and the Stalking Horse Bidder, White & Case LLP, 609 Main Street, Houston, Texas 77002 (Attn: Charles Koster (ckoster@whitecase.com) and Amanda Parra Criste (aparracriste@whitecase.com)); (d) counsel to the Prepetition GDEV Agent, Locke Lord LLP, 111 South Wacker Drive, Suite 4100, Chicago, Illinois 60606 (Attn: Aaron C. Smith (asmith@lockelord.com)), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801 (Attn: Christopher A. Ward (cward@polsinelli.com)); (e) counsel to the Prepetition CarVal Agent, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attn: Brian Greene (brian.greene@kirkland.com), Elizabeth H. Jones (elizabeth.jones@kirkland.com), and Christopher Marcus (christopher.marcus@kirkland.com)); (f) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Timothy Fox (timothy.fox@usdoj.gov)); (g) proposed co-counsel to the Official Committee of Unsecured Creditors, Brinkman Law Group PC, 543 Country Club Drive, Suite B, Wood Ranch, California 93065 (Attn: Daren Brinkman (db@brinkmanlaw.com) and Jory Cook (jory@brinkmanlaw.com)); (h) proposed co-counsel to the Official Committee of Unsecured Creditors, Fox Rothschild LLP, 1201 N. Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Howard A. Cohen (hcohen@foxrothschild.com)), and Fox Rothschild LLP, 49 Market Street, Morristown, New Jersey 07960 (Attn: Joseph J. DiPasquale (jdipasquale@foxrothschild.com)); and (i) if applicable, any identified Successful Bidder(s).

**PLEASE TAKE FURTHER NOTICE** that, in the event the Auction is held, objections to the approval of the Sale(s), to the conduct of the Auction, or the ability of the Successful Bidder(s) (if a Successful Bidder other than the Stalking Horse Bidder is identified) to provide adequate assurance of future performance or the proposed form of adequate assurance of future performance must be in writing, state the basis for such objection with specificity, and be filed with the Court and served by **3 business days after the conclusion of the Auction** on the Notice Parties.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

**PLEASE TAKE FURTHER NOTICE** that this Sale Notice is subject to the fuller terms and conditions of the Bidding Procedures and Sale Motion, the Bidding Procedures Order, and the Bidding Procedures, with such Bidding Procedures Order controlling in the event of any conflict. The Debtors encourage all parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale(s) of the Asset and/or copies of any related document(s), including the Bidding Procedures and Sale Motion, the Bidding Procedures Order, or the Bidding Procedures, may make a written request to Duston McFaul (dmcfaul@sidley.com), Maegan Quejada (mquejada@sidley.com), and Ian Ferrell (iferrell@sidley.com). In addition, copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order, and the Bidding Procedures are on file with the Clerk of the Court, Third Floor, 824 North Market Street, Wilmington, Delaware 19801 and are available on the Debtors' claims and noticing agent's website free of charge at https://cases.ra.kroll.com/oya.

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are OYA Renewables Development LLC (7738), OYA Renewables Construction and Yield Holdings LLC (9227), OYA Renewables EquipmentCo LLC (6444), OYA Renewables Construction Holdings 3 LLC (2517), OYA-Rosewood Holdings LLC (1673), OYA Renewables Construction Holdings 2 LLC (9296), OYA Renewables Yield-1 LLC (4326), and OYA-OMNI Development Company, LLC (9784). The Debtors' service address is c/o Ankura Consulting Group, LLC, 2 Houston Center, 909 Fannin Street, Suite 2450, Houston, TX 77010, Attn: John Shepherd.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures, the Bidding Procedures Order, or the Bidding Procedures and Sale Motion, as applicable.



ALEX WONG/GETTY IMAGES

Mike Whitaker will leave before the next Trump administration starts.

# F.A.A. Head Is Preparing To Quit Post

By MARK WALKER

The head of the Federal Aviation Administration, Mike Whitaker, announced on Thursday that he is stepping down at the end of the President Biden's term, leaving the agency without crucial leadership as ongoing safety challenges and questions about oversight of Boeing persist.

Mr. Whitaker's resignation comes just over a year into his five-year term that, if it had been fulfilled, would have spanned President-elect Donald J. Trump's second administration. The length of the appointment is meant to provide stability and minimize political interference within the nation's premier aviation safety agency.

"This past year, air travel rebounded to near record highs but cancellations were at record lows — a testament to your excellence and dedication," Mr. Whitaker wrote in a message to the agency's employees. "It is not just me who recognizes what you do — the tens of the thousands of people who fly every day do, too."

Mr. Whitaker is stepping down just as the deputy administrator, Katie Thomson, is also departing, leaving an unexpected leadership void atop an agency that has struggled in recent years to find a leader willing to complete the five-year appointment. He is leaving as the safety regulator contends with a number of issues: the nation's crumbling aviation infrastructure, the persistent problem of near collisions between commercial planes and manufacturing problems at Boeing.

The storied plane maker's 737 Max 8 jets were involved in two crashes during Mr. Trump's first term, killing 346 people. And just months into Mr. Whitaker's tenure, on Jan. 5, the door plug of an Alaska Airlines plane — a different 737 Max model — blew off in during a flight.

The agency has increased the number of on-site inspectors in the company's factories, along with slowing their production of commercial jets to allow closer scrutiny of their production.

The F.A.A. also oversees the launch licenses for SpaceX, whose chief executive, Elon Musk, has taken a prominent role advising Mr. Trump. He will co-chair what Mr. Trump is calling the Department of Government Efficiency, which aims to slash government spending and reduce regulatory oversight. The F.A.A. faced pressure from Mr. Musk to speed up the review process needed for its Starship rocket flight in October.

Mr. Whitaker took over the agency in October 2023, filling a leadership void that had spanned more than a year after Mr. Trump's previous pick to lead the F.A.A., the former Delta Air Lines executive Stephen Dickson, stepped down partway through his tenure in March 2022.

Senator Maria Cantwell, a Democrat from Washington who leads the Commerce Committee, said in a statement that she hopes that the next administrator will carry on the important work of restoring the F.A.A.'s safety culture and ensuring effective oversight of the aviation sector.

"I'm saddened and surprised to hear of Administrator Whitaker's decision to step down in January of 2025," Ms. Cantwell said in a statement. "I know this: If you want to be the leader in aviation, you have to be the leader in aviation safety. I think Administrator Whitaker was living by that motto."

# F.T.C. Sues Largest U.S. Alcohol Dealer for Illegal Pricing

By DANIELLE KAYE

With just six weeks left in office, the Biden administration announced a new push, using an old law, to crack down on anticompetitive business practices.

The Federal Trade Commission on Thursday sued Southern Glazer's Wine and Spirits, accusing the largest alcohol distributor in the United States of unjustifiably charging higher prices to small businesses and limiting their ability to compete with big chains. Since at least 2018, Southern Glazer's has offered steep discounts to large buyers like Kroger and Costco while imposing higher prices on neighborhood stores and independent shops that buy similar products, the F.T.C. said.

The agency filed the antitrust lawsuit under a 1936 law that prohibits sellers from offering better prices to some buyers and not others, often at the expense of smaller businesses, without a justification based on differences in the cost of distribution. The law, called the Robinson-Patman Act, had not been enforced in more than two decades.

The suit comes just days after a federal judge ruled in the F.T.C.'s favor in its effort to block Kroger's proposed $25 billion acquisition of rival grocery chain Albertsons. It is consistent with the administration's efforts to clamp down on what it sees as anticompetitive practices across industries, from technology to retail.

"When local businesses get squeezed because of unfair pricing practices that favor large chains, Americans see fewer choices and pay higher prices — and communities suffer," Lina Khan, the F.T.C. chair, said in a statement announcing the lawsuit.

Antitrust litigation takes time, however, and Ms. Khan will not be able to see this suit through. President-elect Donald J. Trump has already named her successor, Andrew Ferguson, a Republican who currently sits on the trade commission and who voted against the lawsuit targeting Southern Glazer's.

In his dissent, Mr. Ferguson argued that while dusting off the dormant price discrimination law is valid, this particular case does not serve the public interest and is unlikely to prevail. "The commission must soundly exercise discretion about when to enforce a law," Mr. Ferguson wrote.

But an F.T.C. official, on a call with reporters, said that historically, it is uncommon for the commission to withdraw a case that has already been filed.

Some F.T.C. watchers suggested that the agency under the incoming Trump administration might not be averse to reinvigorating the Robinson-Patman Act, despite a broader shift in antitrust enforcement. Mark Meador, an antitrust lawyer selected by President-elect Trump to serve as a Republican commissioner on the bipartisan F.T.C., has publicly expressed support for enforcing the law — a sign that the Biden administration's push could endure even with a Republican majority on the commission. Antitrust enforcers "cannot simply choose not to enforce a constitutionally enacted law," Mr. Meador wrote in July.

"I don't see him backing down from using the Robinson-Patman Act when it's appropriate," said Michael Murray, a partner at Paul Hastings focused on antitrust, referring to Mr. Ferguson, the newly named F.T.C. head.

Southern Glazer's, which distributes wine, spirits and beer for more than 7,000 brands, is the tenth largest private company in the United States, according to Forbes. Based in Florida, it raked in $26 billion in revenue in 2023.

BUSINESS WIRE

HAIYUN JIANG FOR THE NEW YORK TIMES

A Southern Glazer's Wine and Spirits warehouse in Manhattan. Federal regulators say that the alcohol distributor's pricing harmed small shops. Lina Khan, left, head of the F.T.C., announced a new antitrust suit against Southern Glazer's just weeks before her term ends.

Mr. Biden's antitrust enforcers at the F.T.C. and the Justice Department have sued some of the biggest U.S. companies, including Google, Amazon and Live Nation Entertainment, arguing that their conduct amounted to illegal suppression of competition under federal antitrust law. The agencies have also sued to block multibillion dollar mergers in the grocery, airline and high-end fashion industries, among others.

In a news release on Thursday, Southern Glazer's called the lawsuit "misguided and legally flawed." The company said it offers different levels of discounts based on the cost it incurs to sell different quantities of its products to customers, and that it offers discounts to chain stores and small businesses alike.

"Southern Glazer's strongly disputes the F.T.C.'s allegations and will defend itself vigorously in this litigation," the company said.

The F.T.C. in particular has taken aim at prices in the food and beverage industries, which became a key issue in this year's presidential election.

The antitrust agency, in its lawsuit seeking to block Kroger's acquisition of rival Albertsons, argued the deal would likely lead to higher grocery prices for consumers. In March, the agency released a report on grocery supply chain disruptions, which said that large retailers have leveraged their dominance to raise prices at the expense of consumers.

*Small businesses were charged far more than big chains, a lawsuit contends.*

A coalition of groups representing independent grocers, pharmacists, farmers and others also has pushed to revive the Robinson-Patman Act.

Discriminatory pricing, favoring retail giants like Walmart, has been "the key competitive challenge for independent grocers," and created an incentive for the industry to consolidate, said Christopher Jones, chief government relations officer at the National Grocers Association, which represents independent retail and wholesale grocers.

The lawsuit against Southern Glazer's "sends the message that the federal government is serious about leveling the playing field for small firms," John Arensmeyer, chief executive of the Small Business Majority, an advocacy organization, said in a statement on Thursday.

Critics claim that enforcing the Depression-era law could prevent suppliers from offering volume discounts, thus harming consumers through higher prices at big retailers.

Southern Glazer's and rival alcohol distributor Republic National Distributing Company are also battling a private antitrust lawsuit filed by alcohol distribution startup Provi, which claims they stifled competition. In May, a federal judge denied the companies' requests to dismiss that complaint.

# At 'Tax Prom,' Washington Prepares for Lobbying Over Cuts

FROM FIRST BUSINESS PAGE

The most expensive tax measure Republicans are considering is a continuation of the tax cuts they passed in 2017. The law slashed the corporate tax rate to 21 percent from 35 percent and cut taxes for many American households, particularly rich ones.

Preserving portions of that law, which is set to expire, would cost roughly $4 trillion over 10 years, according to the Congressional Budget Office. The deadline is forcing lawmakers, fearful of allowing higher taxes on many Americans and businesses to snap back into place in 2026, to pass a tax bill next year.

To try to cover at least some of the cost, Republicans are looking at ending tax breaks for clean-energy companies included in President Biden's Inflation Reduction Act. Some oil and gas executives have pushed President-elect Donald J. Trump to effectively raise taxes on Americans who buy electric vehicles, while Elon Musk, a close Trump partner, has said ending the tax credit for electric vehicle purchases would help Tesla by setting back other carmakers.

Those rivals, though, are making their own case. The Alliance for Automotive Innovation, an industry group that includes General Motors and Ford, has lobbied to protect clean-energy incentives, arguing to Republicans that they would help the United States compete with China.

Companies and interest groups are tightly guarding other sources of money for Republicans. As a way to reduce the cost of the original 2017 tax law, Republicans limited companies' ability to write off research costs, a change that lawmakers and corporations now want to reverse. The 2017 law also set a $10,000 cap on the state and local tax deduction, a ceiling that the real estate industry and officials from high-tax areas like New Jersey hope to lift.

Indeed, a broad swath of corporate America has already spent months lobbying Congress on the expiring tax provisions. Airbnb, Anheuser-Busch, FedEx, Google, Eli Lilly and Exxon Mobil have dispatched tax lobbyists to Capitol Hill in recent months, according to lobbying disclosures, and firms are also hiring more former Hill aides to persuade and collect information from their old colleagues.

**A sense of optimism ahead of the new administration.**

"Everybody in town is getting ready to be part of the fight," said Ivan Adler, a lobbyist headhunter, calling the coming battle "taxapalooza."

Some lobbying efforts are more sophisticated than others. Mr. Trump has said he adopted his pledge not to tax tips after a waitress at his Las Vegas hotel complained about paying taxes on her tips. (During a recent visit to Washington, Uber's chief executive, Dara Khosrowshahi, pushed lawmakers to make sure such a provision covers tips for Uber drivers, according to a company spokesman.)

When Solomon Yue, a Republican activist, first heard Mr. Trump proposing new tax cut ideas during the campaign, he saw an opportunity. Mr. Yue had spent years unsuccessfully pushing to change how Americans overseas are taxed, an idea that had been part of the Republican Party's platform before Mr. Trump and his allies overhauled it over the summer.

Earlier this year, Mr. Yue reached out to political and communications workers on the Trump campaign, who brought the idea to Mr. Trump directly. Mr. Yue said he received "a green light with a very specific verbiage I can use. It says Donald Trump will end the double taxation of overseas Americans."

The National Federation of Independent Business, a trade group, has been running advertisements in states and the District of Columbia. The group is focused on continuing a tax deduction available to the owners of "pass-through" businesses. These businesses, which constitute a vast majority of corporations in the United States, are not directly taxed; instead they pass on their earnings to owners, who then pay individual income taxes on them.

Republicans broadly support the deduction for these businesses, meaning Congress is likely to extend it as part of the tax bill next year. Still, Jeff Brabant, the business federation's vice president of federal government relations, is not at ease.

"Among Republicans, I don't think we're going to see significant concerns," he said. "But you never know in life. Just because you're well positioned doesn't mean you're out of the woods. You never know in this town."

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: GRITSTONE BIO, INC.,[1] Debtor. | Chapter 11 Case No. 24-12305 (KBO) |
|---|---|

**NOTICE OF DEADLINES FOR THE FILING OF (I) PROOFS OF CLAIM, INCLUDING REQUESTS FOR PAYMENT PURSUANT TO SECTION 503(b)(9) OF THE BANKRUPTCY CODE, AND (II) REJECTION DAMAGES CLAIMS**

**THE CLAIMS BAR DATE IS JANUARY 13, 2025**

**THE GOVERNMENTAL CLAIMS BAR DATE IS APRIL 8, 2025**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

***Deadlines for Filing Proofs of Claim.*** On December 10, 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. 238] (the "Bar Date Order") establishing certain dates by which parties holding prepetition claims against the above-captioned Debtor must file proofs of claim ("Proofs of Claim"), including claims by governmental units, claims arising under section 503(b)(9) of the Bankruptcy Code, and Rejection Damages Claims, in the Chapter 11 Case of the debtor and debtor in possession (the "Debtor") Gritstone bio, Inc.

***The Bar Dates.*** Pursuant to the Bar Date Order, *all* entities (except governmental units), including individuals, partnerships, corporations, joint ventures, estates, and trusts who have a claim or potential claim against the Debtor, that arose prior to October 10, 2024, no matter how remote or contingent such right to payment or equitable remedy may be, *including* requests for payment under section 503(b)(9) of the Bankruptcy Code, MUST FILE A PROOF OF CLAIM on or before January 13, 2025 (the "Claims Bar Date"). Governmental units who have a claim or potential claim against the Debtor that arose prior to the Petition Date, no matter how remote or contingent such right to payment or equitable remedy may be, MUST FILE A PROOF OF CLAIM on or before **April 8, 2025** (the "Governmental Bar Date").

Amended Schedules Bar Date. All parties asserting claims against the Debtor's estate that are affected by a previously unfiled Schedule or an amendment or supplement to the Schedules are required to file Proofs of Claim by **the later of (a) the Claims Bar Date or the Governmental Bar Date, as applicable, or (b) the date that is twenty-one days from the date on which the Debtor provided notice of a previously unfiled Schedule or amendment or supplement to the Schedules** (the "Amended Schedules Bar Date").

Rejection Damages Bar Date. All parties asserting claims against the Debtor's estate arising from the Debtor's rejection of an executory contract or unexpired lease must file a Proof of Claim by **the later of (a) the Claims Bar Date or the Governmental Bar Date, as applicable, or (b) the date that is thirty days following entry of an order approving such rejection** (the "Rejection Damages Bar Date").

**ANY PERSON OR ENTITY WHO FAILS TO FILE A PROOF OF CLAIM, INCLUDING ANY REQUEST FOR PAYMENT UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE, IN EACH CASE ON OR BEFORE THE APPLICABLE BAR DATE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR THE PURPOSES OF VOTING AND DISTRIBUTION ON ANY CHAPTER 11 PLAN.**

***Filing a Proof of Claim.*** Each Proof of Claim must be filed, including supporting documentation, so as to be ***actually received*** by the Debtor's notice and claims agent, Kurtzman Carson Consultants, LLC, d/b/a Verita ("Verita"), on or before the Claims Bar Date or the Governmental Bar Date (or, where applicable, on or before any other bar date as set forth herein) either **(1) electronically through the interface available at https://www.veritaglobal.net/gritstone and choose Submit Electronic Proof of Claim (ePOC); or (2) by first class mail, hand deliver or overnight mail to Gritstone Claims Processing Center, c/o KCC dba Verita, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245.**

***Contents of Proofs of Claim.*** Each Proof of Claim must: (i) be written in English; (ii) include a claim amount denominated in United States dollars; (iii) conform substantially with the Proof of Claim Form provided by the Debtor or Official Form 410; and (iv) be signed by the claimant or by an authorized agent or legal representative of the claimant.

***Section 503(b)(9) Requests for Payment.*** Any Proof of Claim asserting a claim entitled to priority under section 503(b)(9) must also: (i) include the value of the goods delivered to and received by the Debtor in the twenty days prior to the Petition Date; (ii) attach any documentation identifying the particular invoices for which the 503(b)(9) claim is being asserted; and (iii) attach documentation of any reclamation demand made to the Debtor under section 546(c) of the Bankruptcy Code (if applicable).

***Additional Information.*** If you require additional information regarding the filing of a proof of claim, you may contact the Debtor's claims agent Verita, directly by writing to: Gritstone Claims Processing Center, c/o KCC dba Verita, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; Submitting an inquiry here: https://www.veritaglobal.net/gritstone/inquiry or call (877) 709-4754 (U.S./Canada) or (424) 236-7233 (International). ***Please note*** that Verita ***cannot*** offer legal advice or advise whether you should file a proof of claim.

***Supporting Documentation.*** Each Proof of Claim must include supporting documentation in accordance with Bankruptcy Rules 3001(c) and (d). If, however, such documentation is voluminous, upon prior written consent of Debtor's counsel, such Proof of Claim may include a summary of such documentation or an explanation as to why such documentation is not available; *provided* that any creditor that received such written consent shall be required to transmit such writings to Debtor's counsel upon request no later than ten days from the date of such request.

***Receipt of Service.*** Claimants wishing to receive acknowledgment that their Proofs of Claim were received by Verita must submit (i) a copy of the Proof of Claim Form (in addition to the original Proof of Claim Form sent to Verita) and (ii) a self-addressed, stamped envelope.

[1] The Debtor's mailing address is 4698 Willow Road, Pleasanton, CA 94588, and the last four digits of the Debtor's federal tax identification number is 9534.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: OYA RENEWABLES DEVELOPMENT LLC, *et al.*,[1] Debtors. | Chapter 11 Case No. 24-12574 (KBO) (Jointly Administered) **Docket Ref. No. 12, 152** |
|---|---|

**NOTICE OF AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE** that on November 6, 2024 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on the Petition Date, the Debtors filed the *Debtors' Motion for Entry of (I) An Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, (C) Scheduling an Auction and a Hearing on the Approval of the Sale(s) of Some, All, or Substantially All of the Debtors' Assets, (D) Authorizing the Debtors to Enter Into the Purchase Agreement(s), (E) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (F) Granting Related Relief; and (II) An Order or Orders (A) Authorizing the Sale of Some, All, or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (B) Approving the Assumption and Assignment of the Potentially Assigned Agreements, and (C) Granting Related Relief* [Docket No. 12] (the "Bidding Procedures and Sale Motion"), pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, *inter alia*, entry of an order (the "Bidding Procedures Order"): (a) scheduling an auction (the "Auction") for the sale(s) of all, substantially all, or any portion of the Debtors' assets (the "Assets") on or about **Tuesday, January 7, 2025, at 11:00 a.m. (prevailing Eastern Time) / 10:00 a.m. (prevailing Central Time)**; (b) approving procedures (the "Bidding Procedures")[2] for submitting competing bids for the Assets; (c) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder and approving the Stalking Horse Bid Protections in accordance with the Stalking Horse Purchase Agreement; (d) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Stalking Horse Purchase Agreement, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures; (e) approving the form and manner of the notice of the Auction and the Sale Hearing; and (f) establishing procedures for the assumption and assignment of the Potentially Assigned Agreements to any purchaser(s) of the Assets and approving the manner of notice thereof (the "Cure Notice").

**PLEASE TAKE FURTHER NOTICE** that on December 10, 2024, the Court entered the Bidding Procedures Order [Docket No. 152]. Pursuant to the Bidding Procedures Order, if at least two (2) Qualified Bids with regard to any Assets (as defined in the Bidding Procedures Order) are received by the Bid Deadline (as defined below), the Debtors will conduct the Auction. The Auction shall be held on **Tuesday, January 7, 2025, starting at 11:00 a.m. (prevailing Eastern Time) / 10:00 a.m. (prevailing Central Time)**, or such other time as the Debtors shall designate and thereafter notify all Qualified Bidders. Professionals and principals for the Debtors, each Qualified Bidder (including its representative(s), if any), each of the Consultation Parties, any creditors that request access to the Auction prior to the Bid Deadline, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction. Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than **Tuesday, December 17, 2024, at 12:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline") may bid at the Auction. Any party that wishes to submit a Bid (as defined in the Bidding Procedures) for all, substantially all, or any portion of the Assets must submit a Bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Auction, if required, will be conducted at the offices of Sidley Austin LLP, 1000 Louisiana Street, Suite 5900, Houston, Texas 77002, or, if determined by the Debtors to be necessary or convenient, via teleconference and/or videoconference. For the avoidance of doubt, the Debtors may adjourn the Auction to another date or change the location of the Auction (including making it conducted entirely via teleconference and/or videoconference), in consultation with the Consultation Parties, by filing a notice on the docket of these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE** that the Debtors shall file a notice identifying the Successful Bidder(s) with the Court and serve such notice upon parties in interest by **Thursday, December 19, 2024,** if no Auction is held, or by **1 business day after the conclusion of the Auction** if an Auction is held. The Debtors will file a proposed form of Sale Order or Sale Orders on the docket in these Chapter 11 Cases by **Thursday, December 19, 2024**, if no Auction is held, or by **2 business days after the conclusion of the Auction** if an Auction is held.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the Sale(s) of the Assets to the Successful Bidder(s) free and clear of all liens, claims, and encumbrances will be held before the Honorable Karen B. Owens, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801 on (a) **Tuesday, January 7, 2025, at 9:30 a.m. (prevailing Eastern Time)** in the event the Auction is cancelled, (b) **Wednesday, January 15, 2025, at 1:30 p.m. (prevailing Eastern Time)** in the event the Auction proceeds, or (c) at such other time thereafter as counsel and interested parties may be heard.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Court or by the filing of a notice with the Court.

**PLEASE TAKE FURTHER NOTICE** that, in the event the Auction is not held, objections to the approval of the Sale(s), including, for the avoidance of doubt, the ability of the Stalking Horse Bidder to provide adequate assurance of future performance or the proposed form of adequate assurance of future performance, must be in writing, state the basis for such objection with specificity, and be filed with the Court and served before **4:00 p.m. (prevailing Eastern Time) on Tuesday, December 24, 2024**, on the following parties (collectively, the "Notice Parties"): (a) co-counsel to the Debtors, Sidley Austin LLP, 1000 Louisiana Street, Suite 900, Houston, Texas 77002 (Attn: Duston McFaul (dmcfaul@sidley.com) and Maegan Quejada (mquejada@sidley.com)), and Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603 (Attn: Ian Ferrell (iferrell@sidley.com)); (b) co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801 (Attn: Edmon L. Morton (emorton@ycst.com) and Kenneth J. Enos (kenos@ycst.com)); (c) counsel to the DIP Lender and the Stalking Horse Bidder, White & Case LLP, 609 Main Street, Houston, Texas 77002 (Attn: Charles Koster (ckoster@whitecase.com) and Amanda Parra Criste (aparracriste@whitecase.com)); (d) counsel to the Prepetition GDEV Agent, Locke Lord LLP, 111 South Wacker Drive, Suite 4100, Chicago, Illinois 60606 (Attn: Aaron C. Smith (asmith@lockelord.com)), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801 (Attn: Christopher A. Ward (cward@polsinelli.com)); (e) counsel to the Prepetition CarVal Agent, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attn: Brian Greene (brian.greene@kirkland.com), Elizabeth H. Jones (elizabeth.jones@kirkland.com), and Christopher Marcus (christopher.marcus@kirkland.com)); (f) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Timothy Fox (timothy.fox@usdoj.gov)); (g) proposed co-counsel to the Official Committee of Unsecured Creditors, Brinkman Law Group PC, 543 Country Club Drive, Suite B, Wood Ranch, California 93065 (Attn: Daren Brinkman (db@brinkmanlaw.com) and Jory Cook (jory@brinkmanlaw.com)); (h) proposed co-counsel to the Official Committee of Unsecured Creditors, Fox Rothschild LLP, 1201 N. Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Howard A. Cohen (hcohen@foxrothschild.com)), and Fox Rothschild LLP, 49 Market Street, Morristown, New Jersey 07960 (Attn: Joseph J. DiPasquale (jdipasquale@foxrothschild.com)); and (i) if applicable, any identified Successful Bidder(s).

**PLEASE TAKE FURTHER NOTICE** that, in the event the Auction is held, objections to the approval of the Sale(s), to the conduct of the Auction, or the ability of the Successful Bidder(s) (if a Successful Bidder other than the Stalking Horse Bidder is identified) to provide adequate assurance of future performance or the proposed form of adequate assurance of future performance must be in writing, state the basis for such objection with specificity, and be filed with the Court and served by **3 business days after the conclusion of the Auction**, on the Notice Parties.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

**PLEASE TAKE FURTHER NOTICE** that this Sale Notice is subject to the fuller terms and conditions of the Bidding Procedures and Sale Motion, the Bidding Procedures Order, and the Bidding Procedures, with such Bidding Procedures Order controlling in the event of any conflict. The Debtors encourage all parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale(s) of the Asset and/or copies of any related document(s), including the Bidding Procedures and Sale Motion, the Bidding Procedures Order, or the Bidding Procedures, may make a written request to Duston McFaul (dmcfaul@sidley.com), Maegan Quejada (mquejada@sidley.com), and Ian Ferrell (iferrell@sidley.com). In addition, copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order, and the Bidding Procedures are on file with the Clerk of the Court, Third Floor, 824 North Market Street, Wilmington, Delaware 19801 and are available on the Debtors' claims and noticing agent's website free of charge at https://cases.ra.kroll.com/oya.

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are OYA Renewables Development LLC (7738), OYA Renewables Construction and Yield Holdings LLC (9227), OYA Renewables EquipmentCo LLC (6444), OYA Renewables Construction Holdings 3 LLC (2317), OYA-Rosewood Holdings LLC (1673), OYA Renewables Construction Holdings 2 LLC (9296), OYA Renewables Yield-1 LLC (4326), and OYA-OMNI Development Company, LLC (9784). The Debtors' service address is c/o Ankura Consulting Group, LLC, 2 Houston Center, 909 Fannin Street, Suite 2450, Houston, TX 77010, Attn: John Shepherd.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures, the Bidding Procedures Order, or the Bidding Procedures and Sale Motion, as applicable.

**COMMERCIAL REAL ESTATE BUSINESS OPPORTUNITIES**

**OFFICE SPACE** (100)

Professional Offices Queens 185

MRI Center for Rent - Queens. Contact 917-335-7187 or hilltopmedicaldtc@yahoo.com

**COMMERCIAL & INDUSTRIAL PROPERTIES** (300)

Queens 327

WOODSIDE - WAREHOUSE - 25' x 100', Good for distribution, repairs, Shipping, etc. Great location, good lease terms. $5,800/month. ONE MONTH FREE. No brokers, please. 917-559-5804