## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OYA RENEWABLES DEVELOPMENT LLC, *et al.*,[1] | Case No. 24-12574 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 12** |

### GPC HP II, LLC'S LIMITED OBJECTION TO DEBTORS' MOTION FOR ENTRY OF ORDER OR ORDERS (A) AUTHORIZING THE SALE OF SOME, ALL, OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE POTENTIALLY ASSIGNED AGREEMENTS, AND (C) GRANTING RELATED RELIEF

GPC HP II, LLC ("**GPC**") files this limited objection ("**Objection**") to *Debtors' Motion for Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, (C) Scheduling an Auction and a Hearing on the Approval of the Sale(s) of Some, All, or Substantially All of the Debtors' Assets, (D) Authorizing the Debtors to Enter Into the Purchase Agreement(s), (E) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (F) Granting Related Relief; and (II) An Order or Orders (A) Authorizing the Sale of Some, All, or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (B) Approving the Assumption and Assignment of the Potentially Assigned*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are OYA Renewables Development LLC (7738), OYA Renewables Construction and Yield Holdings LLC (9227), OYA Renewables EquipmentCo LLC (6444), OYA Renewables Construction Holdings 3 LLC (2317), OYA Rosewood Holdings LLC (1673), OYA Renewables Construction Holdings 2 LLC (9296), OYA Renewables Yield-1 LLC (4326), and OYA-OMNI Development Company, LLC (9784). The Debtors' service address is c/o Ankura Consulting Group, LLC, 2 Houston Center, 909 Fannin Street, Suite 2450, Houston, TX 77010, Attn: John Shepherd.

*Agreements, and (C) Granting Related Relief* [Docket No. 12] (the "**Sale Motion**"), and in support

of this Objection to the sale or assignment of debtor OYA Renewables Yield-1 LLC's membership

interest in non-debtor OYA-GPC 2021 Holdco LLC (the "**Sale**"), GPC respectfully states as

follows:

## PRELIMINARY STATEMENT

1.        GPC has a complex relationship with Debtor OYA Renewables Yield-1 LLC (f/k/a

OYA Solar MM-2021 LLC) ("**Debtor**"), a Delaware limited liability company, which is the

"Managing Member" of non-debtor OYA-GPC 2021 Holdco LLC ("**JV**"), a Delaware limited

liability company, pursuant to the Amended and Restated Operating Agreement ("**Operating**

**Agreement**") dated November 10, 2021, as amended or restated from time to time. GPC is the

"Investor Member" of JV and holds a consent right over any changes to the Managing Member—

which is precisely what the Debtor is seeking here through the Sale Motion. The JV is an integral

part of the financing structure required to be in place to allocate taxable income, loss, and tax

credits (the "**Tax Benefits**") to Debtor and GPC. Debtor manages the day-to-day operations of the

assets whereas GPC receives 99% of the Tax Benefits. Approving the Sale would result in the

Debtor being replaced in the JV, and, if not replaced by a qualified entity (both from an operations

standpoint as well as pursuant to the tax code), could mean that those Tax Benefits received by

GPC would be disallowed or recaptured by the Internal Revenue Service.

2.        GPC's consent right is critical to maintaining the Tax Benefits structure, which is

why the Operating Agreement clearly states at Section 9.1(A) that "the Managing Member shall

***not*** have the right to withdraw voluntarily from the Company or otherwise to Transfer all or a

portion of its Interest ***without*** the Consent of the Investor Member and the receipt of all Requisite

Approvals."  Operating Agreement at § 9.1(A) (emphasis added). There are a few exceptions to

GPC's consent right, but those exceptions are not applicable given the defaults that exist under the project documents.

3.     GPC is generally supportive of the Sale, but must have the opportunity to evaluate and either approve or disapprove the proposed new Managing Member.[2] GPC has been diligently working with the Debtors and potential bidders to evaluate each respective bidder's eligibility to be the Managing Member, but that process is ongoing and GPC only just began receiving documentation from bidders this past holiday week. GPC remains committed to working with the Debtors and qualified bidders but is filing this Objection to preserve its rights and to ensure that GPC's consent right over the successful bidder for the JV is not impaired and that the bidder is well qualified and can make the representations and warranties and meet the Requisite Approvals set forth in the Operating Agreement.

### OBJECTION

### A.     UNDER APPLICABLE LAW, THE OPERATING AGREEMENT CANNOT BE ASSUMED AND ASSIGNED WITHOUT GPC'S CONSENT.

4.     The Sale to a yet unknown third-party buyer would result in that buyer becoming the managing member of the JV. The sale of the Debtor entity and its interest in the JV to an unknown third party would strip GPC of its rights under the Operating Agreement to consent to

---

[2]     The Notice of Modification to Bidding Procedures and the Sale Schedule filed at Docket No. 207 (the "**Modified Bidding Procedures**") is unclear whether a preemptive objection to the Sale is required by Friday, January 3, 2025, even without knowing who the ultimate successful bidder will be at the auction. The Modified Bidding Procedures provide:

> ….
> e. all objections to approval of the Sale(s) including, for the avoidance of doubt, the ability of the Stalking Horse Bidder or the Successful Bidder(s) (except if the Successful Bidder is identified after the commencement of the Auction), as applicable, to provide adequate assurance of future performance or the proposed form of adequate assurance of future performance, must be in writing, state the basis of such objection with specificity, and be filed with this Court and served on or before **4:00 p.m. (prevailing Eastern Time) on Friday, January 3, 2025**.

Modified Bidding Procedures, at 2.

removal, replacement, or appointment of the managing member, which is contrary to applicable law and contrary to the plain language of the Operating Agreement. Further, the sale of the Debtor entity or the ownership interest in the JV to a yet unknown third party without GPC's consent would force GPC to be a party to a joint venture with a partner not of its choosing that GPC has not had the opportunity to evaluate and ultimately approve or disapprove as a partner to the JV.

5.      Bankruptcy Code Section 365(c)(1) provides:

> (c) The Trustee may not assume or assign any executory contact or unexpired lease of the debtor, whether or not such contact or lease prohibits or restricts assignment of rights or delegation of duties, if –
>> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>> (B) such party does not consent to such assumption or assignment.

11 U.S.C. § 365(c)(1).

6.      In the Third Circuit, courts construe the "assume or assign" language to mean that the statutory proscription applies to a trustee or debtor in possession who seeks either: (i) to assume and render performance under the agreement; or (ii) to assume the agreement and assign it to a third party. *See In re West Elecs. Inc.,* 852 F.2d 79 (3d Cir. 1988).

7.      If a debtor cannot assign the contract to a third party under appliable non-bankruptcy law then the trustee or debtor in possession may neither assume nor assume and assign the contact. *Id.* at 82-83 ("11 U.S.C. § 365 (c)(1) creates a hypothetical test—*i.e.,* under the applicable law, could the [non-debtor contract counter-party] refuse performance from 'an entity *other* than the debtor or the debtor in possession'") (emphasis in original); *see also In re Trump Entm't Resorts, Inc.,* 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(c)(1) limits a debtor in possession's ability to assume an executory contract based on its ability to assign that executory

contract and makes no reference to whether a debtor or debtor in possession actually intends to assign the executory contract to a third party.").

8.      Further, Section 365(c)(1) provides a nondebtor contract counterparty, such as GPC, with a veto right over a proposal by a Chapter 11 debtor to assume or assign certain contacts if applicable law excuses the nondebtor counterparty from accepting performance from or rendering performance to an entity other than the debtor. *In re West Elecs. Inc.,* 852 F.2d at 83 (holding the debtor could not assume a contract absent consent where nonbankruptcy law provided that the counterparty to the contract would have to consent to an assignment of the contract to a third party, and observing "[t]his provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."); *see also Milford Power Co., LLC v. PDC Milford Power, LLC,* 866 A.2d 738, 755-56 (Del. Ch. 2004) (adhering to the Third Circuit's hypothetical test and summarizing that a debtor in possession may not assume a limited liability company agreement over the non-debtor member's objection if applicable law would bar assignment of the limited liability interest to a hypothetical third party, even where the debtor in possession has no intention of assigning the contract to any third party); *In re Access Beyond Techs., Inc.,* 237 B.R. 32 (Bankr. D. Del. 1999) (concluding that an executory contract which under its terms and applicable non-bankruptcy law could not be assigned without the non-debtor counterparty's consent, so under binding Third Circuit hypothetical test, because the non-debtor counterparty did not consent, the debtor could not assume, assign or sell a license agreement).

9.      The JV is a Delaware LLC and its Operating Agreement is governed by Delaware law.  The Delaware Limited Liability Company Act (the "**Act**") excuses members of a Delaware LLC from accepting substitute performance from or rendering performance to an assignee of the debtor and therefore prohibits members from assigning their interests and the rights associated

5

therewith without the consent of the other members. Specifically, Section 18-702 of the Act provides that members cannot be compelled to accept substitute performance from an assignee because an assignee has "no right to participate in the management of the business and affairs of a limited liability company" except as provided in an LLC agreement or (unless provided otherwise in the LLC agreement) "upon the affirmative vote or written consent of all of the members of the limited liability company." 6 Del. C. § 18-702(a); *see also* 6 Del. C. § 18-702(b)(1) ("An assignment of an LLC interest does not entitle the assignee to become or to exercise any rights or powers of a member[.]"). Rather, an assignee is limited "to share in such profits and losses, to receive such distribution or distributions, and to receive such allocation of income, gain, loss, deduction, or credit or similar item to which the assignor was entitled, to the extent assigned . . . ." *Id*. at § 18-702(b)(2).

10.    Moreover, under Section 18-704, an assignee of an LLC interest may only become a member as specifically provided in the limited liability company agreement, or (unless otherwise provided in the limited liability company Agreement) upon the affirmative vote or written consent of all the members of the limited liability company. 6 Del. C. § 18-704(a). Together, Sections 18-702 and 18-704 of the Act evidence that, absent consent, a member can only assign its economic interests.

11.    The Delaware Court of Chancery observed in *Milford Power* that under Delaware law debtor members are barred from transferring anything beyond their bare economic rights without consent of the other members because nondebtor members are excused from accepting substitute performance. *See Milford Power,* 866 A.2d at 758-761. *Milford Power's* holding is premised on the policy that because LLCs are deemed to be more intimate operations than a corporation, nonbankrupt co-venturers should not be forced into business with a new member not

of their choosing whose priorities may be more focused on short-term revenue rather than longer-term business objectives. *Id.* at 754.

12.     In addition, as a matter of Delaware law, members are free to establish or restrict in their LLC agreement a member's rights to assign its LLC interest and the rights of an assignee to be admitted as a member of an LLC. Here, the terms of the Operating Agreement clearly provide that the Debtor does not have the unilateral right to transfer its interests as managing member. Indeed, as noted above, the Operating Agreement in Section 9.1(A) requires the consent of the "Investor Member and receipt of all Requisite Approvals." The Operating Agreement further provides specific requirements that must be met for a managing member to transfer its interests without the Consent of the Investor Member:

> (i) such Transfer shall not cause any default under any Project Document, (ii) the transferee and/or assignee can make all of the representations and warranties set forth in this Agreement, (iii) the assignee and/or transferee is the Guarantor or is otherwise credit worthy or will have credit support from the Guarantor or a Person with such tangible net worth in form and substance reasonably acceptable to Investor Member, (iv) the assignee and/or transferee or its Affiliates is not engaged in litigation with Investor Member or its Affiliates, and (v) the assignee and/or transferee has significant experience in owning, leasing or operating solar photovoltaic systems.

Operating Agreement, at § 9.1(B). The Operating Agreement further provides that "[a]ny Transfer in contravention of any of the provisions of this Agreement, is void and ineffectual and will not bind, or be recognized by the Company." Operating Agreement, at § 10.2(B).

13.     Therefore, any sale of the Debtor's interest in the JV requires GPC's consent under the Operating Agreement, Delaware law, and Section 365(c) of the Bankruptcy Code. The Debtor cannot compel GPC to accept performance from an assignee without GPC's pre-obtained consent. Again, GPC is, and continues to be, willing to work with the Debtors to review and ultimately decide whether a particular bidder meets GPC's requirements to be the managing member under

the Operating Agreement. However, as of the date of this Objection, GPC's efforts are ongoing, and GPC cannot consent to a yet unknown successful bidder and files this Objection to preserve its consent rights under the Operating Agreement, Delaware law, and Section 365(c).

**B.  THE SUCCESSFUL BIDDER MUST PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER SECTION 365(f) OF THE BANKRUPTCY CODE.**

14.    The Successful Bidder must also furnish GPC with adequate assurance of future performance pursuant to Section 365(f) of the Bankruptcy Code. Section 365(f) authorizes the assignment of an executory contract only if: (1) "the trustee assumes such contract or lease in accordance with [Section 365]" and (2) "***adequate assurance of future performance by the assignee of such contract or lease is provided***, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2) (emphasis added). Adequate assurance of future performance is specific to the circumstances of the case and must be "determined by consideration of the facts of the proposed assumption." *In re Fleming Cos.*, 499 F.3d 300, 307 (3d Cir. 2007) (quoting *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 n.10 (3d Cir. 2001)); *see also In re Filene's Basement, LLC,* 2014 Bankr. LEXIS 2000, at *33 (Bankr. D. Del. Apr. 29, 2014) (finding adequate assurance of future performance is determined on a case-by-case basis). As discussed above, GPC is in the process of evaluating prospective bidders, but that process is ongoing. GPC therefore reserves the right to object on the basis of a lack of adequate assurance of future performance and to require additional information or assurances from the successful bidder.

**C.  RESERVATION OF RIGHTS**

15.    GPC reserves the right to amend, modify or supplement this Objection prior to the sale hearing currently scheduled for January 15, 2025 ("**Sale Hearing**"), including based on the identity of the Successful Bidder or additional information that may become known to GPC

regarding the Successful Bidder. GPC further reserves the right to assert additional objections at the Sale Hearing. GPC also reserves the right to join in any other objections filed in response to the Sale Motion by other parties in interest to the extent those objections are not inconsistent with this Objection. Moreover, any failure to respond herein to a specific statement or omission related to the Sale Motion or any amended or revised version shall not be deemed acceptance thereof by GPC now or in the future. Lastly, for the avoidance of doubt, GPC does not consent to the entry of final orders or judgments by the Court with respect to matters for which it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## **CONCLUSION**

WHEREFORE, for the reasons discussed herein, GPC respectfully requests that this court (i) sustain this Objection; (ii) prevent the Sale from moving forward absent GPC's consent to the buyer of the Debtor or Debtor's interest in the JV; and (iii) grant GPC such other and further relief as the Court deems proper.

*[Signature page to follow]*

Dated: January 3, 2025
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

/s/ *Matthew B. Harvey*
Matthew B. Harvey (DE Bar No. 5186)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 351-9393
Facsimile (302) 351-3989
Email: mharvey@morrisnichols.com

**WINTHROP & WEINSTINE, P.A.**
William J. Schumacher (*pro hac vice* pending)
Austyn K. Boothe (*pro hac vice* pending)
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
Email:  wschumacher@winthrop.com
         aboothe@winthrop.com

*Attorneys for GPC HP II, LLC*