# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>OYA RENEWABLES DEVELOPMENT LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12574 (KBO)<br><br>(Jointly Administered)<br><br>Docket Ref. Nos. 12, 75, 152, 286, 287, 288, 289 |

## DECLARATION OF JASON D'SOUZA IN SUPPORT OF THE PROPOSED SALES OF THE DEBTORS' ASSETS

Jason D'Souza, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a Director at Agentis Capital Advisors ("Agentis"), an investment banking firm retained as co-investment banker by the Debtors [Docket No. 133] with its principal office located at 999 W Hasting Street, Suite 1820, Vancouver, British Columbia V6C 2W2, Canada. I am authorized to execute this declaration (this "Declaration") on behalf of Agentis.

2. I submit this declaration in support of the *Debtors' Motion for Entry of (I) An Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, (C) Scheduling an Auction and a Hearing on the Approval of the Sale(s) of Some, All, or Substantially All of the Debtors' Assets, (D) Authorizing the Debtors to Enter Into the Purchase Agreement(s), (E) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (F) Granting Related Relief; and (II) An Order or Orders (A) Authorizing the*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are OYA Renewables Development LLC (7738), OYA Renewables Construction and Yield Holdings LLC (9227), OYA Renewables EquipmentCo LLC (6444), OYA Renewables Construction Holdings 3 LLC (2317), OYA-Rosewood Holdings LLC (1673), OYA Renewables Construction Holdings 2 LLC (9296), OYA Renewables Yield-1 LLC (4326), and OYA-OMNI Development Company, LLC (9784). The Debtors' service address is c/o Ankura Consulting Group, LLC, 2 Houston Center, 909 Fannin Street, Suite 2450, Houston, TX 77010, Attn: John Shepherd.

32766952.2

*Sale of Some, All, or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (B) Approving the Assumption and Assignment of the Potentially Assigned Agreements, and (C) Granting Related Relief* [Docket No. 12] (the "<u>Bidding Procedures and Sale Motion</u>")[2] and the proposed orders approving the Sales of the Debtors' Assets [Docket Nos. 286, 287, 288, 289] (as may be further revised, collectively, the "<u>Proposed Sale Orders</u>").

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finance, personal knowledge gleaned during the course of my engagement with the Debtors, my discussions with the Debtors' senior management and other advisors, my review of relevant documents, or my opinions based upon experience, knowledge, and information concerning the Debtors' operations financial affairs. I have reviewed and I am familiar with the Bidding Procedures and Sale Motion, the Bidding Procedures, the Auction, and the Sale Process. If called upon to testify, I could and would testify competently to the facts set forth herein.

## **Qualifications**

4. I am a Director at Agentis. I have over 18 years of power, utilities, and infrastructure investment banking and management consulting experience. Throughout my career, I have advised large-cap companies, high-growth private companies, pension funds, infrastructure fund investors and government entities on a broad range of strategy, mergers and acquisitions, capital markets, and financing mandates. Prior to joining Agentis, I served as Director, Investment Banking at National Bank Financial Markets and, prior to that, as Associate Director, Investment Banking at Scotiabank, where I was responsible for leading and executing investment banking mandates

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bidding Procedures and Sale Motion, the order approving the Bidding Procedures and Sale Motion [Docket No. 152] (the "<u>Bidding Procedures Order</u>"), or the Proposed Sale Orders (as defined herein), as applicable.

32766952.2

across the power and utilities sector. Prior to serving in these roles, I spent approximately six years at Navigant Consulting, where I focused on advising power and utilities sector clients on strategic and regulatory, risk management, and due diligence mandates. I hold a Bachelor of Science degree in Computer Engineering from Queen's University and a Master of Business Administration from the Ivey Business School at Western University.

5. As detailed in the *Application of the Debtors for Entry of an Order Authorizing the Employment and Retention of Agentis Capital Advisors as Investment Banker to the Debtors Effective as of the Petition Date and a Waiver of Compliance With Certain of the Requirements of Local Rule 2016-2* [Docket No. 75] (the "Agentis Retention Application"), Agentis is an independent boutique investment banking firm that assists infrastructure sector-focused pension fund, mid-market infrastructure fund and corporate clients with comprehensive investment banking services in the areas of mergers and acquisitions, financings and strategic advisory. Agentis has advised on over $50 billion of financial advisory assignments in North America and Europe across the infrastructure sector, including on assignments in the North American renewable energy sector.

6. As detailed herein and in the Agentis Retention Application, Agentis is familiar with the Debtors' corporate and capital structure, management, operations, and various other aspects of their business.

### The Prepetition Marketing Process

7. I understand that, as described in the Bidding Procedures and Sale Motion, for the preceding years, the Debtors have proactively pursued a broad range of potential strategic transactions to address their continuing liquidity needs. In February 2024, the Debtors' non-Debtor parent retained Agentis and SenaHill Advisors LLC (with SenaHill Securities LLC, "SenaHill"

and, SenaHill with Agentis, the "Investment Bankers") to explore a potential sale of certain of the Debtors' Assets. The Investment Bankers conducted a fulsome sale process, contacting 73 potential buyers, of which 22 executed non-disclosure agreements and four submitted final offers, including the Initial Buyer and the Stalking Horse Bidder.

8. Although the Debtors entered into an exclusivity agreement with the Initial Buyer contemplating a series of transactions, only the first such transaction was consummated. Subsequent to that transaction, the Initial Buyer did not consummate the remainder of the contemplated transactions.

9. In July 2024, the Debtors, with the assistance of the Investment Bankers, recontacted buyers from the sales process and reengaged the Stalking Horse Bidder. Initially, the sale to the Stalking Horse Bidder was intended to be consummated outside of court, but, as the Debtors' circumstances evolved, it became clear that an out-of-court sale was not feasible; as such, the Debtors worked with the Stalking Horse Bidder to pivot to an in-court transaction.

10. Accordingly, shortly before filing these Chapter 11 Cases, the Debtors entered into the Stalking Horse Purchase Agreement. In addition to serving as the Stalking Horse Bidder and having its bid be subject to a competitive sale process, the Stalking Horse Bidder also agreed to act as DIP Lender.

**The Postpetition Marketing Process**

11. Upon entering these Chapter 11 Cases and filing the Bidding Procedures and Sale Motion on the same date, the Debtors and the Investment Bankers have continued to market the Debtors' Assets, contact potentially interested parties, and facilitate such parties' access to diligence materials.

12. Specifically, in accordance with the Bidding Procedures, the Investment Bankers

32766952.2

conducted outreach to 219 parties and provided such parties with details of the Bidding Procedures, certain non-confidential presentation materials, and, for those 59 parties that executed confidentiality agreements with the Debtors, access to a virtual data room, confidential materials, and, as appropriate, meetings with the Debtors and/or their advisors.

13. Through this postpetition process, six parties were deemed Qualified Bidders for the Debtors' Assets. These six parties were: (a) Andelis Capital Management, LLC ("Andelis"); (b) Dimension Energy LLC ("Dimension"); (c) GDEV OYA Lender I, LLC ("GDEV"); (d) GF Kestrel Solar Borrower Series 1, LLC ("Goodfinch"); (e) Radial Power LLC; and (f) UGE Capital LLC ("UGE").[3]

14. After receipt of the Qualified Bids, the Debtors, in consultation with their advisors and the Consultation Parties, decided to designate the Stalking Horse Bidder as the Successful Bidder and the Stalking Horse Bid as the Successful Bid with respect to the Stalking Horse Assets. *See* Docket No. 265 (the "First Notice of Successful Bidder"). Excluding the Stalking Horse Bid, the Debtors did not receive any Qualified Bids for the Stalking Horse Bid Assets.

15. In accordance with the Bidding Procedures Order, for the Debtors' remaining Assets, the Debtors, in consultation with their advisors and the Consultation Parties, evaluated the Qualified Bids and conducted the Auction. The Auction commenced on January 7, 2025, at the Houston office of Sidley Austin LLP. Participants, including principals and advisors of the Debtors, the Consultation Parties, and each of the Qualified Bidders, attended both in-person and via virtual conference. The Auction recessed on January 7, 2025, and resumed via virtual conference for all participants on January 13, 2025. The Auction concluded on January 13, 2025.

---

[3] Any bids for assets of Debtor OYA Renewables Yield-1 LLC that were deemed "Qualified Bids" by the Debtors for purposes of conducting the Auction remained subject to satisfaction of the CNB Collateral Minimum Bid Amount before final determination as to whether they were "Qualified Bids."

16. I believe that the prepetition and postpetition marketing processes, ultimately culminating in the successful Auction, were robust, competitive, and conducted in a fair and open manner and in accordance with the Bidding Procedures. To my knowledge, all participants in the Auction for the Assets acted in good faith, at arm's-length, and without collusion of any kind, and in accordance with the Bidding Procedures. Further, pursuant to the Bidding Procedures Order, each Qualified Bidder participating in the Auction was required to and did confirm on the record that: (a) it had not engaged in any collusion with respect to the bidding process; (b) its Qualified Bid was a good-faith, *bona fide* offer; and (c) it intended to consummate the transaction(s) if selected as a Successful Bid. Moreover, to my knowledge, none of the Successful Bidders or Back-Up Bidders are "insiders" as that term is defined in section 101(31) of the Bankruptcy Code. The Successful Bidders and the Back-Up Bidders for the Assets subject to the Auction are set forth in the *Amended Notice of Successful Bidders and Back-Up Bidders* [Docket No. 285] (as may be further amended, the "Second Notice of Successful Bidders").

### Stalking Horse Assets

17. Pursuant to the Bidding Procedures Order, Radial Power LLC was designated as the Stalking Horse Bidder and the Debtors were authorized to enter into the Stalking Horse Purchase Agreement with respect to the Stalking Horse Bid Assets.

18. Other than the Stalking Horse Bid, the Debtors did not receive any Qualified Bids for the Stalking Horse Bid Assets.

19. Accordingly, the Debtors, after consultation with the Consultation Parties, decided in their reasonable business judgment to designate the Stalking Horse Bid as the Successful Bid as to the Stalking Horse Assets and, therefore, the Stalking Horse Bidder as the Successful Bidder with respect to the Stalking Horse Bid Assets. The terms of the Stalking Horse Purchase

Agreement are set forth in greater detail in the Bidding Procedures and Sale Motion.

20. The Debtors have filed a Proposed Sale Order to this effect. *See* Docket No. 286.

**Successful Bidder and Back-Up Bidder for OYA Renewables Yield-1 LLC ("ORY-1")**

21. Prior to the Auction, the Debtors received four Qualified Bids for the Assets of ORY-1.

22. At the Auction, the Starting Bid was the Qualified Bid by Goodfinch.

23. At the conclusion of the Auction, Goodfinch was identified as the Successful Bidder, with a Successful Bid of $23.0 million cash consideration. UGE was deemed the Back-Up Bidder, with a Back-Up Bid of $22.5 million cash consideration.

24. The Debtors have filed a Proposed Sale Order to this effect. *See* Docket No. 289.

**Successful Bidder and Back-Up Bidder for Certain Assets of Debtor OYA Renewables Development LLC (such Assets, "Lot 4" and "Lot 5")**

25. Prior to the Auction, the Debtors put certain of Debtor OYA Renewables Development LLC's ("ORD") Assets into Lot 4 and Lot 5 for purposes of the Auction. Prior to the Auction, the Debtors received four Qualified Bids for Lot 4 and two Qualified Bids for Lot 5.

26. At the Auction, the Starting Bid for both Lot 4 and Lot 5 were Qualified Bids by GDEV.

27. At the conclusion of the Auction, UGE was identified as the Successful Bidder for Lot 4, with a Successful Bid of $6.9 million cash consideration plus 10 cents per WDC[4] paid at NTP.[5] GDEV was deemed the Back-Up Bidder for Lot 4, with a Back-Up Bid of a $9.9 million credit bid.

28. At the conclusion of the Auction, UGE was identified the Successful Bidder for

---

[4] "WDC" means watts, direct current.
[5] "NTP" means notice to proceed.

Lot 5, with a Successful Bid of 2 cents per WDC paid at NTP. GDEV was deemed the Back-Up Bidder for Lot 5, with a Back-Up Bid of a $5.7 million credit bid.

29. The Debtors have filed a Proposed Sale Order to this effect. *See* Docket No. 287.

**Successful Bidder and Back-Up Bidder for the Remaining Assets of Debtor ORD ("Lot 6")**

30. Prior to the Auction, the Debtors put certain of ORD's Assets into Lot 6 for purposes of the Auction.[6] Prior to the Auction, the Debtors received two Qualified Bids for Lot 6.

31. At the Auction, the Starting Bid for Lot 6 was a Qualified Bid by GDEV.

32. At the conclusion of the Auction, GDEV was identified as the Successful Bidder for Lot 6, with a Successful Bid of a $16.0 million credit bid. UGE was identified as the Back-Up Bidder, with a Back-Up Bid of $5.1 million cash consideration plus 5 cents per WDC paid at NTP for certain Assets of ORD plus 10 cents per WDC paid at NTP for certain Assets of ORD (such Assets, as identified on the Second Notice of Successful Bidders).

33. The Debtors have filed a Proposed Sale Order to this effect. *See* Docket No. 288.

**Remaining Assets of the Debtors**

34. Following the Auction, the Debtors hold certain Assets that are not included in any of the Successful Bids or the Back-Up Bids (the "Remaining Assets"). The Debtors and their advisors continue to evaluate options and expend effort to maximize value of these Remaining Assets for benefit of the Debtors' estates and the Debtors' creditors.

**The Court Should Approve the Sales**

35. Based on my substantial experience and personal knowledge of the Debtors' sale and marketing efforts, and conduction of the Auction, I believe the Sales and corresponding

---

[6] The Debtors also put certain of ORD's Assets into what the Debtors deemed "Lot 2" and "Lot 3." However, during the course of the Auction, the Debtors elected to not separately sell either Lot 2 or Lot 3, and instead to sell related Assets as part of Lot 6.

32766952.2

Successful Bids, or alternatively, the Back-Up Bid, with respect to each Asset represents the highest or best price reasonably attainable for the Assets and approval of the Sales are in the best interest of the Debtors, their creditors and their estates.

36.     Therefore, for the reasons discussed above, I believe that approval of the Sales and the Successful Bids represent the highest or otherwise best offers for the Assets under the circumstances and will thereby maximize value for the benefit of all stakeholders in the Chapter 11 Cases.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 17, 2025

                                          Respectfully submitted,

                                          */s/* Jason D'Souza
                                          By: Jason D'Souza
                                          Director
                                          Agentis Capital Advisors