**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| OYA RENEWABLES DEVELOPMENT LLC, *et al.*,[1] | Case No. 24-12574 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. Nos. 154, 207, 284, 285, 288, 320, 325, 326, & 351** |

**SUPPLEMENTAL DECLARATION OF ERIC MILLARD,
INDEPENDENT MANAGER, IN SUPPORT OF THE PROPOSED SALE OF CERTAIN
OF THE DEBTORS' ASSETS TO GDEV OYA LENDER I, LLC AS SUCCESSFUL
PURCHASER AND RELATED SETTLEMENT**

I, Eric Millard, hereby declare that the following is true and correct to the best of my knowledge, information, and belief under penalty of perjury as follows:

1.      I am an independent manager of Debtors OYA Renewables Development LLC ("ORD"), OYA Renewables Construction and Yield Holdings LLC ("ORCYH"), and OYA Renewables EquipmentCo LLC ("ORECO," and, together with ORD and ORCYH, and their debtor affiliates in the above captioned chapter 11 cases, the "Debtors," and, collectively with their non-debtor affiliates, the "Company"). I have served as independent manager for the Debtors since April 17, 2024.

2.      I am over the age of 18 years and am authorized to submit this supplemental declaration (this "Supplemental Declaration") on behalf of the Debtors. If called to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are OYA Renewables Development LLC (7738), OYA Renewables Construction and Yield Holdings LLC (9227), OYA Renewables EquipmentCo LLC (6444), OYA Renewables Construction Holdings 3 LLC (2317), OYA-Rosewood Holdings LLC (1673), OYA Renewables Construction Holdings 2 LLC (9296), OYA Renewables Yield-1 LLC (4326), and OYA-OMNI Development Company, LLC (9784). The Debtors' service address is c/o Ankura Consulting Group, LLC, 2 Houston Center, 909 Fannin Street, Suite 2450, Houston, TX 77010, Attn: John Shepherd.

3.      In addition to my experience at the Debtors, I have over 15 years of board-level, executive, and managerial experience in the renewable energy industry.  I am currently Chief Commercial Officer at CS Energy, a national solar and battery storage development and EPC firm, where I am responsible for overseeing the company's project development business and all commercial aspects of its engineering, procurement, and construction business.  During my time at CS Energy, I served as a board member of a renewable energy development business that focused on developing community solar and utility scale solar projects in the northeastern United States.  Previously, I worked in a variety of managerial positions in solar, wind, and biomass power businesses.

4.      I have previously submitted the *Declaration of Eric Millard, Independent Manager, Affirming the Declaration of John Shepherd in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 154] (the "Prior Declaration"); the *Declaration of Eric Millard, Independent Manager, in Support of the Proposed Sales of the Debtors' Assets* [Docket No. 320] (the "First Millard Sale Declaration"); and the *Supplemental Declaration of Eric Millard, Independent Manager, in Support of the Proposed Sales of Certain of the Debtors' Assets to UGE Capital LLC as Successful Purchaser or Back-Up Purchaser, as Applicable* [Docket No. 351] (the "Second Millard Sale Declaration" and, together with the Prior Declaration and First Millard Sale Declaration, the "Declarations"),[2] and I further affirm and incorporate the Declarations, to the extent relevant, into this Supplemental Declaration in support of the Bidding Procedures and Sale Motion and the Proposed GDEV Sale Order (as defined below).

5.      Except as otherwise indicated, all facts set forth in this Supplemental Declaration

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Declarations and the GDEV Sale Order (as defined herein), as applicable.

are based upon my personal knowledge of the Debtors' operations and finances, my discussions

with the Company's management and other advisors, my review of relevant documents, or my

opinions based upon experience, knowledge, and information concerning the Debtors' operations

financial affairs. I have reviewed and I am generally familiar with the Bidding Procedures and Sale

Motion, the Bidding Procedures Order, the Auction, and the Sale Process.  If called upon to testify,

I could and would testify competently to the facts set forth herein.

### The Settlement

6.      Prior to the Petition Date, Debtor OYA Renewables Development LLC, as

borrower, the various lenders from time to time party thereto (the "Prepetition GDEV Lenders"),

and GDEV OYA Lender I, LLC, as agent ("GDEV" or the "Buyer") are parties to that certain

Credit Agreement, dated as of December 22, 2020 (as amended, restated, supplemented or

modified through the Petition Date, the "Prepetition GDEV Credit Agreement").  The Prepetition

GDEV Credit Agreement purported to grant liens on certain assets of the Debtors.

7.      Prior to the Bid Deadline,[3] GDEV OYA Lender I, LLC ("GDEV" or the "Buyer")

submitted a bid, in the form of a credit bid, for the purchase of certain assets of the Debtors.

8.      GDEV participated in the Auction, after which GDEV was deemed the Successful

Bidder for the Debtors' Assets included in Lot 6 (the "Lot 6 Assets") and Back-Up Bidder for Lots

4 and 5.  *See* Docket No. 285.  Thereafter, the Debtors submitted the proposed order for the sale

of the Lot 6 Assets to GDEV (the "Lot 6 Sale Order").

9.      In connection with the sale process, the Committee filed its *Reservation of Rights*

*of the Official Committee of Unsecured Creditors Regarding the Sale of Substantially All of the*

*Debtors' Assets* [Docket No. 284], which noted that the Committee was investigating potential

---

[3] Pursuant to the *Notice of Modification to Bidding Procedures and the Sale Schedule* [Docket No. 207], the Bid Deadline was set for December 20, 2024.

challenges to the validity, extent, perfection or priority of prepetition liens against the Debtors' assets (each, a "Challenge"). In the time since the Auction concluded, the Debtors, GDEV, and the Committee have engaged in robust negotiations to address the Committee's objections to the sale to GDEV and other issues, including a pathway forward in these chapter 11 cases. In order to provide more time for negotiations, the deadline for the Committee to bring a Challenge was originally set for January 29, 2025 (the "Challenge Period"). The Challenge Period was consensually extended under the *Order Extending Official Committee of Unsecured Creditor's Challenge Period* [Docket No. 384] to February 12, 2025.

10.    Those negotiations have since bore fruit in the form of a settlement term sheet (the "Settlement Term Sheet") that the Debtors anticipate attaching to a revised sale order (the "Revised Lot 6 Sale Order") to be filed with the Court, which memorializes a settlement between the Debtors, GDEV, and the Committee to address the Committee's objections to the sale to GDEV and other issues as more fully set forth in the Settlement Term Sheet (the "Settlement").

11.    The Debtors anticipate the Settlement resolving all outstanding issues regarding the sale of the Lot 6 Assets and the GDEV Sale Order. Further, the Settlement provides a global resolution of issues between the Debtors, GDEV, and Committee that provides for a clear path forward for these chapter 11 cases and the terms for a consensual plan of distribution. The Settlement Term Sheet represents a crucial step in these chapter 11 cases and is in the best interests of the Debtors' estates for numerous reasons.

12.    *First*, the Settlement provides for the sale of additional Debtor assets to GDEV in exchange for access to additional cash by the Debtors, while also providing all unsecured creditors with a meaningful recovery on their claims. The access to additional cash provides the needed liquidity for the Debtors to continue to administer their estates following the closing of the sale on

the Lot 6 Assets.

13.     *Second*, the Settlement Term Sheet provides for certainty in the Debtors' sale process and the avoids costly litigation.  Specifically, the settlement avoids litigation and delays of a potential Challenge by the Committee to GDEV's prepetition liens, which would create administrative burn and uncertainty around the closing of the Lot 6 Assets.  The Settlement provides a solidified path to closing the sale of the Lot 6 Assets.

14.     *Finally*, the Settlement provides an avenue for the Debtors to successfully conclude these Chapter 11 Cases.  The Settlement provides needed liquidity for the Debtors to reach confirmation of a chapter 11 plan.  Further, the Settlement contemplates the support of GDEV and the Committee to a chapter 11 plan consistent with the terms set forth in the Settlement Term Sheet.  Without the Settlement, including the support of GDEV and the Committee, it is unclear whether the Debtors would have the liquidity and support to pursue a chapter 11 plan.

**Conclusion**

15.     Accordingly, based upon my experience and personal knowledge, I believe that the Debtors' determination to enter into the Settlement Term Sheet and to seek approval of the Revised Lot 6 Sale Order, on the terms set forth therein, represents a valid exercise of the Debtors' business judgment and is fair, reasonable, and in the best interests of the Debtors' estates.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 12, 2025

Respectfully submitted,

*/s/ Eric Millard*
By: Eric Millard
Independent Manager
OYA Renewables Development LLC and its
affiliated Debtors