# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>OYA RENEWABLES DEVELOPMENT LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12574 (KBO)<br><br>(Jointly Administered)<br><br>**Docket Ref. Nos. 152, 283, 285 & 288** |

## NOTICE OF FILING OF *REVISED* PROPOSED SALE ORDER FOR
## GDEV OYA LENDER I, LLC

**PLEASE TAKE NOTICE** that on November 6, 2024 (the "<u>Petition Date</u>"), each of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

**PLEASE TAKE FURTHER NOTICE** that on December 10, 2024, the Court entered the *Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, (C) Scheduling an Auction and a Hearing on the Approval of the Sale(s) of Some, All, or Substantially All of the Debtors' Assets, (D) Authorizing the Debtors to Enter Into the Purchase Agreement(s), (E) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (F) Granting Related Relief* [Docket No. 152] (the "<u>Bidding Procedures Order</u>").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, the Debtors previously filed a notice [Docket Nos. 283 & 285] (as amended, the "<u>Notice</u>")[2] identifying GDEV OYA Lender I, LLC as the Successful Bidder and UGE Capital LLC as the Back-Up Bidder for the applicable Assets as described in the Notice.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures Order, the Debtors previously filed a proposed form of Sale Order [Docket No. 288] (the "<u>Proposed Sale Order</u>"), approving the Sale of the applicable Assets to the Successful Bidder or Back-Up Bidder, as applicable.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are OYA Renewables Development LLC (7738), OYA Renewables Construction and Yield Holdings LLC (9227), OYA Renewables EquipmentCo LLC (6444), OYA Renewables Construction Holdings 3 LLC (2317), OYA-Rosewood Holdings LLC (1673), OYA Renewables Construction Holdings 2 LLC (9296), OYA Renewables Yield-1 LLC (4326), and OYA-OMNI Development Company, LLC (9784). The Debtors' service address is c/o Ankura Consulting Group, LLC, 2 Houston Center, 909 Fannin Street, Suite 2450, Houston, TX 77010, Attn: John Shepherd.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order or the Notice, as applicable.

PLEASE TAKE FURTHER NOTICE that the Debtors have filed a revised proposed form of Sale Order, attached hereto as <u>Exhibit A</u> (the "<u>Revised Proposed Sale Order</u>").  For the convenience of the Court and other interested parties, a blackline comparing the Revised Proposed Sale Order against the Proposed Sale Order is attached hereto as <u>Exhibit B</u>.  The Debtors reserve all rights to submit a further revised form of the Revised Proposed Sale Order.

PLEASE TAKE FURTHER NOTICE that the Debtors will seek approval of the applicable Sale at the Sale Hearing scheduled for **<u>February 12, 2025, at 1:00 p.m. (prevailing Eastern Time)</u>** before the Honorable Karen B. Owens, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801, or such other time thereafter as counsel and the interested parties may be heard. The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Court or by the filing of a notice with the Court.

PLEASE TAKE FURTHER NOTICE that copies of the Motion, the Bidding Procedures Order, and all pleadings in these chapter 11 cases, are on file with the Clerk of the Court, Third Floor, 824 North Market Street, Wilmington, Delaware 19801 and are available on the Debtors' claims and noticing agent's website free of charge at https://cases.ra.kroll.com/oya.

*[Remainder of page intentionally left blank.]*

Dated: February 12, 2025
Wilmington, Delaware

/s/ Rebecca L. Lamb

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (Del. Bar No. 2847)
Edmon L. Morton (Del. Bar No. 3856)
Kenneth J. Enos (Del. Bar No. 4544)
Rebecca L. Lamb (Del. Bar No. 7223)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
          emorton@ycst.com
          kenos@ycst.com
          rlamb@ycst.com

*Co-Counsel to the Debtors and Debtors in Possession*

**SIDLEY AUSTIN LLP**
Duston K. McFaul (admitted *pro hac vice*)
Maegan Quejada (admitted *pro hac vice*)
Nathan C. Elner (admitted *pro hac vice*)
Chelsea M. McManus (admitted *pro hac vice*)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone:    (713) 495-4500
Facsimile:    (713) 495-7799
Email:        dmcfaul@sidley.com
              mquejada@sidley.com
              nelner@sidley.com
              cmcmanus@sidley.com

Ian C. Ferrell (admitted *pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone:    (312) 853-7000
Facsimile:    (312) 853-7036
Email:        iferrell@sidley.com

*Co-Counsel to the Debtors and Debtors in Possession*

## **EXHIBIT A**

**Revised Proposed Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>OYA RENEWABLES DEVELOPMENT LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12574 (KBO)<br><br>(Jointly Administered)<br><br>**Ref: Docket Nos. 12, 50, 68, 77, 148, 151, 152, 190, 191, 192, 198, 207, 215, 218, 232, 240, 247, 265, 277, 283, 285, 292, 293, 301, 320, 325, 326, 351, 386, 387, & 389** |

**ORDER (I) APPROVING THE SALE OF THE TRANSFERRED ASSETS TO GDEV OYA LENDER I, LLC FREE AND CLEAR OF ALL ENCUMBRANCES, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE TRANSFERRED CONTRACTS, AND (III) GRANTING RELATED RELIEF**

Upon the motion ("Motion")[2] of OYA Renewables Development LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"): (a) authorizing and approving the Debtors' entry into the Purchase Agreements (as defined below) with the Successful Purchaser and Back-Up Purchaser (each as defined below), (b) authorizing the Sale Transaction (as defined below), free and clear of all Liens, Claims, Interests, and encumbrances (each as defined herein and collectively, the "Encumbrances") or Liability,[3] except for certain assumed liabilities, (c) authorizing and approving the assumption and assignment of the Potentially Assigned Agreements in connection with the Sale Transaction,

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are OYA Renewables Development LLC (7738), OYA Renewables Construction and Yield Holdings LLC (9227), OYA Renewables EquipmentCo LLC (6444), OYA Renewables Construction Holdings 3 LLC (2317), OYA-Rosewood Holdings LLC (1673), OYA Renewables Construction Holdings 2 LLC (9296), OYA Renewables Yield-1 LLC (4326), and OYA-OMNI Development Company, LLC (9784). The Debtors' service address is c/o Ankura Consulting Group, LLC, 2 Houston Center, 909 Fannin Street, Suite 2450, Houston, TX 77010, Attn: John Shepherd.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion or the Purchase Agreements (as defined below), as applicable.

[3] "Liability" or "Liabilities" have the meanings ascribed to such terms in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable.

including proposed Cure Amounts (if any), and (d) granting related relief; and this Court having previously entered the Bidding Procedures Order[4] (which is incorporated herein by reference), authorizing and approving, *inter alia*, bid procedures for the Assets; and the Auction having commenced on January 7, 2025, and continued on January 13, 2025 (the "Auction"), in accordance with the Bidding Procedures Order; and the Debtors have executed (x) that certain *Membership Interest and Asset Purchase Agreement* by and among certain of the Debtors and GDEV OYA Lender I, LLC (the "Successful Purchaser") (as may be amended or modified from time to time in accordance with the terms thereof and this Order, the "Successful Purchase Agreement"), attached hereto as **Exhibit 1**, and (y) that certain *Equity and Asset Purchase Agreement* by and among certain of the Debtors and UGE Capital LLC (the "Back-Up Purchaser") (as may be amended or modified from time to time in accordance with the terms thereof and this Order, the "Back-Up Purchase Agreement" and, together with the Successful Purchase Agreement, the "Purchase Agreements"), each contemplating the sale of the Transferred Assets (as defined in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable) identified therein free and clear of any Encumbrances or Liabilities other than the Permitted Encumbrances, the assumption and assignment to the Successful Purchaser or the Back-Up Purchaser of those Potentially Assigned Agreements identified therein (the "Transferred Contracts")[5] (collectively, the "Sale Transaction," and any ancillary documents executed in connection therewith, the "Transaction Documents"); and the Debtors having filed the *Notice of*

---

[4] The "Bidding Procedures Order" means the *Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, (C) Scheduling an Auction and a Hearing on the Approval of the Sale of Some, All, or Substantially All of the Debtors' Assets, (D) Authorizing the Debtors to Enter Into the Purchase Agreement(s), (E) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (F) Granting Related Relief* [Docket No. 152], entered on December 10, 2024.

[5] A list of the Transferred Contracts identified by the Successful Purchaser is attached hereto as **Exhibit 2**. A list of the Transferred Contracts identified by the Back-Up Purchaser is attached hereto as **Exhibit 3**.

32863699.1

*Designation of Successful Bid(s) and Back-Up Bid(s)* [Docket No. 283, as amended by Docket No. 285] (the "<u>Notice of Successful Bid(s)</u>") announcing that , in accordance with the Bidding Procedures Order and after consultation with the Consultation Parties, the Debtors decided in their reasonable business judgment to designate (x) the Successful Purchaser as the highest or otherwise best bidder for the Transferred Assets pursuant to the Successful Purchase Agreement following the Auction and (y) the Back-Up Purchaser as the next-highest or next-otherwise best bidder for the Transferred Assets pursuant to the Back-Up Purchase Agreement following the Auction; and this Court having conducted a hearing on January 23, 2025, as continued on January 29, 2025, and February 12, 2025, to consider approval of the Sale Transaction (the "<u>Sale Hearing</u>") in accordance with the Bidding Procedures Order, at which time all interested parties were offered an opportunity to be heard with respect to the Sale Transaction; and this Court having reviewed and considered (i) the Motion and the exhibits thereto, (ii) the Bidding Procedures Order, (iii) the Successful Purchase Agreement, (iv) the Back-Up Purchase Agreement, (v) the Declarations,[6] (vi) the results of the Auction, (vii) the objections and other responses to approval of the Sale Transaction, if any, (viii) the declaration(s) submitted in support of approval of the Sale Transaction, and (ix) the arguments and representations of counsel made, and the evidence proffered or adduced at the Sale Hearing; and due and proper notice of the Motion and the relief requested therein, including, but not limited to, approval of the Purchase Agreements and this Order having been provided in accordance with the Bidding Procedures Order, the Bankruptcy

---

[6] The "<u>Declarations</u>" mean, collectively, the *Declaration of Jason D'Souza in Support of the Proposed Sales of the Debtors' Assets* [Docket No. 301] (the "<u>D'Souza Declaration</u>"), the *Declaration of Eric Millard, Independent Manager, in Support of the Proposed Sales of the Debtors' Assets* [Docket No. 320] (the "<u>Millard Declaration</u>"), the *Supplemental Declaration of Eric Millard, Independent Manager, in Support of the Proposed Sales of Certain of the Debtors' Assets to UGE Capital LLC as Successful Purchaser or Back-Up Purchaser, as Applicable* [Docket No. 351] (the "<u>Supplemental Millard Declaration</u>"), and the *Supplemental Declaration of Eric Millard, Independent Manager, in Support of the Proposed Sale of Certain of the Debtors' Assets to GDEV OYA Lender I, LLC as Successful Purchaser and Related Settlement* [Docket No. 389] (the "<u>Supplemental GDEV Millard Declaration</u>").

3

Rules, and the Local Rules, and no other or further notice being necessary; and all objections, if any, to approval of the Sale Transaction having been withdrawn, resolved (including by separate agreement between the objecting party and the Debtors and/or the Successful Purchaser, as applicable), adjourned, or overruled as provided in this Order; and this Court having found and determined that the relief sought at the Sale Hearing, entry of this Order, and approval of the Sale Transaction is in the best interests of the Debtors, their Estates, their creditors, and all parties in interest in these Chapter 11 Cases; and upon the record of the Sale Hearing and these Chapter 11 Cases; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[7]

A.      **Petition Date**. On November 6, 2024 (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate and manage their businesses and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      **Jurisdiction & Venue**. This Court has jurisdiction to consider the Motion and the relief requested pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) as to which the Court has authority to issue a final order consistent with Article III of the United States Constitution. Venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[7] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law announced by this Court at the Sale Hearing are hereby incorporated to the extent not inconsistent herewith.

C.     **Statutory Predicates**. The predicates for the relief granted herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007, and Local Rules 2002-1 and 6004-1.

D.     **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(j) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, expressly directs that this Order be effective immediately upon entry, and waives any stay of execution or implementation of this Order.

E.     **Notice**. The Debtors gave due and proper notice of the proposed Bidding Procedures and proposed Sale(s) on November 8, 2024 [Docket No. 68], December 9, 2024 [Docket No. 148], December 10, 2024 [Docket No. 151], December 15, 2024 [Docket No. 198], and December 24, 2024 [Docket No. 207], the Auction and the Sale Hearing on December 10, 2024 [Docket No. 192] and January 10, 2025 [Docket No. 277], and the results of the Auction on January 14, 2025 [Docket Nos. 283, 285] (collectively, the "Sale Notice"). The Sale Notice constitutes good, sufficient, and appropriate notice of the Sale Transaction under the particular circumstances, and no other or further notice need be given with respect to the proposed Sale Transaction. As provided by the Sale Notice, a reasonable opportunity to object and/or be heard regarding the requested relief has been afforded to all interested "persons" (as defined in section 101(41) of the Bankruptcy Code) and other "entities" (as defined in section 101(15) of the Bankruptcy Code). Other parties interested in bidding on the Transferred Assets were provided, pursuant to the Bidding Procedures Order, sufficient notice and information to make an informed judgment on whether to bid.

F.     The Debtors also gave due and proper notice of the potential assumption and assignment of each executory contract or unexpired lease available to be assumed by the Debtors and assigned to the Successful Purchaser to each non-debtor party under each such executory contract or unexpired lease as reflected on the notice of potential assumption and assignment of the Potentially Assigned Agreements, filed on December 10, 2024 [Docket Nos. 190 (unredacted), 191 (redacted)] and January 16, 2025 [Docket Nos. 292 (unredacted), 293 (redacted)] (together with any supplemental notices, the "Cure Notice"). Such notice was good, sufficient, and appropriate under the particular circumstances, and the counterparties to the Potentially Assigned Agreements are hereby deemed to consent to the relief granted herein, unless otherwise provided in this Order.

G.     As evidenced by the affidavits of service [Docket Nos. 50, 77, 215, 218, 232, 240, 247] previously filed with this Court, and as shall subsequently be filed with this Court to the extent necessary, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Assumption and Assignment Procedures, the Cure Amounts, the assumption and assignment of the Transferred Contracts, the Purchase Agreements, this Order, and the Sale Transaction has been provided in accordance with sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9006, 9007, and 9014, and Local Rules 2002-1 and 6004-1. The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Cure Amounts, the Assumption and Assignment Procedures, the assumption and assignment of the Transferred Contracts, the Purchase Agreements, this Order, and the Sale Transaction, as required by the Bidding Procedures Order.

The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notices of such are or shall be required.

H.    A reasonable opportunity to object and/or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

I.    **Bidding Procedures**. On December 10, 2024, the Court entered the Bidding Procedures Order approving, among other things, the Bidding Procedures for the Sale(s) of the Debtors' Assets and the Assumption and Assignment Procedures for the related assumption and assignment of any Potentially Assigned Agreements related to any Sale(s). As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors have complied in all material respects with the Bidding Procedures Order. The Debtors and their professionals have adequately and appropriately marketed the Transferred Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtors' fiduciary duties. Based upon the record of these proceedings, creditors, other parties in interest, and prospective purchasers were afforded a full, fair, and reasonable opportunity to make a higher or otherwise better bid for the Transferred Assets.

J.    The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders, were the result of arm's-length negotiations, and afforded notice and a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Transferred Assets. The Debtors conducted the sale process in an open and fair manner without collusion and in accordance with the Bidding Procedures.

K.    The sale process was non-collusive in all respects, and the Debtors: (a) afforded all interested parties a full, fair, and reasonable opportunity to qualify as a Qualified Bidder and make an offer to participate in the Auction; (b) provided potential bidders, upon request, sufficient

32863699.1

information to enable them to make an informed judgment on whether to bid in the Auction; and (c) appropriately considered all bids that were duly submitted in accordance with the Bidding Procedures. The Debtors, the Successful Purchaser, the Back-Up Purchaser, and their respective counsel and other advisors have complied in all respects with the Bidding Procedures and the Bidding Procedures Order.

L.    The Successful Purchaser is the designated Successful Bidder for the Transferred Assets, and the Successful Purchase Agreement is designated the Successful Bid for the Transferred Assets enumerated therein, in each case, in accordance with the Bidding Procedures Order. The Successful Purchaser and its professionals have complied in all material respects with the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, and all other applicable orders of this Court in negotiating and entering into the Successful Purchase Agreement. The Sale Transaction and the Successful Purchase Agreement likewise complies with the Bidding Procedures Order and all other applicable orders of this Court.

M.    The Back-Up Purchaser is designated the Back-Up Bidder, and the Back-Up Purchase Agreement is designated the Back-Up Bid for the Transferred Assets enumerated therein, in each case, in accordance with the Bidding Procedures Order. The Back-Up Purchaser and its professionals have complied in all material respects with the Bidding Procedures Order, the Bidding Procedures, and the Assumption and Assignment Procedures, and all other applicable orders of this Court in negotiating and entering into the Back-Up Purchase Agreement. The Sale Transaction and Back-Up Purchase Agreement likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

N.    **Business Judgment**. The Successful Purchase Agreement, including the form and total consideration to be realized by the Debtors under the Successful Purchase Agreement:

32863699.1

(a) constitutes the highest or otherwise best offer received by the Debtors for the Transferred Assets; (b) is fair and reasonable; and (c) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

O.   The Debtors' determination that the consideration provided by the Successful Purchaser under the Successful Purchase Agreement constitutes the highest or otherwise best offer for the Transferred Assets is reasonable and constitutes a valid and sound exercise of the Debtors' business judgment.

P.   The Back-Up Purchase Agreement, including the form and total consideration to be realized by the Debtors under the Back-Up Purchase Agreement: (a) constitutes the next-highest or next-otherwise best offer received by the Debtors for the Transferred Assets; (b) is fair and reasonable; and (c) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

Q.   The Debtors' determination that the consideration provided by the Back-Up Purchaser under the Back-Up Purchase Agreement constitutes the next-highest or next-otherwise best offer for the Transferred Assets is reasonable and constitutes a valid and sound exercise of the Debtors' business judgment.

R.   Consistent with their fiduciary duties, the Debtors have demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale Transaction and the performance of their obligations under the Purchase Agreements, including, but not limited to, the fact that: (a) the Sale Transaction is a result of due deliberation by the Debtors and constitutes a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (b) the total cash and non-cash consideration provided by the Successful Purchaser or the Back-Up Purchaser for the Transferred Assets as reflected in the Successful Purchase Agreement

or the Back-Up Purchase Agreement, as applicable, will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Transferred Assets; and (c) unless the Sale Transaction is concluded expeditiously as provided for in the Motion and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, creditor recoveries will be diminished.

S.    **Adequate Marketing; Highest or Best Offer**. As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing, as applicable, and the representations of counsel made on the record at the Sale Hearing, as applicable: (a) the Debtors and their professionals adequately marketed the Transferred Assets and conducted the sale process in compliance with the Bidding Procedures Order in good faith and in a fair and open manner; (b) the sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any interested party to conduct due diligence and make an offer to purchase the Transferred Assets and submit higher or better offers for the Transferred Assets than the Successful Purchaser's Successful Bid or the Back-Up Purchaser's Back-Up Bid; (c) the consideration provided by the Successful Purchaser in the Successful Purchase Agreement constitutes the highest or otherwise best offer for the Transferred Assets; (d) the consideration provided by the Back-Up Purchaser in the Back-Up Purchase Agreement constitutes the next-highest or next-otherwise best offer for the Transferred Assets; (e) the consideration provided by the Successful Purchaser and the Back-Up Purchaser is fair and reasonable consideration for the Transferred Assets and constitutes reasonably equivalent value under the Bankruptcy Code, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, possession, or the District of Columbia; (f) the Sale Transaction will provide a greater recovery to the Debtors' creditors than would be provided by any other presently available

10

alternative transaction with respect to the Transferred Assets; (g) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Transferred Assets for greater economic value to the Debtors or their estates than the Successful Purchaser; and (h) the Debtors determined that the Successful Purchase Agreement constitutes the highest or otherwise best offer for the Transferred Assets and that the Back-Up Purchase Agreement constitutes the next-highest or next-otherwise best offer for the Transferred Assets, maximizes value for the Debtors' estates, and constitutes a valid and sound exercise of the Debtors' business judgment. There is no legal or equitable reason to delay closing of the Sale Transaction (the "Closing") contemplated by the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable.

T.    **Corporate Authority**. Subject to entry of this Order, the Debtors: (a) have full corporate power and authority to execute and deliver the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and all other documents contemplated thereby, and the Sale Transaction and the sale of the Transferred Assets have been duly and validly authorized by all necessary corporate action of the Debtors; (b) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts; (c) have taken all corporate action necessary to authorize and approve the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts; and (d) need no consents or approvals, including any consents or approvals from any non-Debtor entities, other than those expressly set

11

forth in this Order and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts.

U.     **Arm's-Length Sale**. The sale process engaged in by the Debtors, the Successful Purchaser, and the Back-Up Purchaser, including, without limitation, the Auction, was conducted in accordance with the Bidding Procedures and the Bidding Procedures Order. The Purchase Agreements were negotiated, proposed, and entered into by the Sellers and the Successful Purchaser and/or the Back-Up Purchaser in good faith, without collusion of any kind, and from arm's-length bargaining positions, and the Purchase Agreements are substantively and procedurally fair to all parties in interest. The Debtors, the Successful Purchaser, the Back-Up Purchaser, and their respective advisors have complied, in good faith, in all material respects with the Bidding Procedures Order and the Bidding Procedures. The Debtors and their management, board of directors, employees, agents, advisors, and representatives, and the Successful Purchaser and the Back-Up Purchaser and their respective employees, agents, advisors and representatives, actively participated in the bidding process and in the Auction, and each acted in good faith and without collusion or fraud of any kind. The Successful Purchaser and the Back-Up Purchaser subjected their bid to competitive bidding in accordance with the Bidding Procedures and were designated the Successful Bidder or Back-Up Bidder, as applicable, for the Transferred Assets in accordance with the Bidding Procedures and the Bidding Procedures Order. All payments to be made by the Successful Purchaser and other agreements or arrangements entered into by the Successful Purchaser and the Back-Up Purchaser and other agreements or arrangements entered into by the Back-Up Purchaser in connection with the Sale Transaction have been disclosed. The form and total amount of consideration to be realized by the Debtors under the Successful Purchase

Agreement or the Back-Up Purchase Agreement constitute fair value, fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Transferred Assets. Neither the Debtors, the Successful Purchaser, nor the Back-Up Purchaser has engaged in any conduct that would cause or permit the Successful Purchase Agreement, the Back-Up Purchase Agreement, or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtors, the Successful Purchaser, nor the Back-Up Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction.

V.    **Good Faith**. Each of the Successful Purchaser and the Back-Up Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the rights, privileges, immunities, and protections afforded thereby, including in the event this Order or any portion thereof is reversed or modified on appeal, and each of the Successful Purchaser and Back-Up Purchaser has proceeded in good faith in all respects in connection with the Sale Transaction specifically and these Chapter 11 Cases generally. Neither the Debtors, the Successful Purchaser, nor the Back-Up Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code. The Debtors were free to deal with any other party interested in buying or selling some or all of the Transferred Assets on behalf of the Debtors' estates. The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale Transaction and the Successful Purchaser would not consummate the Sale Transaction without such protections.

W.    Neither the Successful Purchaser, the Back-Up Purchaser, nor any of their respective affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Debtors, as that term is defined under section 101(31)

32863699.1

of the Bankruptcy Code. No common identity of directors, managers, controlling shareholders, or members exists between the Debtors and the Successful Purchaser or the Debtors and the Back-Up Purchaser. All payments to be made by the Successful Purchaser, the Back-Up Purchase Agreement, and all agreements or arrangements entered into by the Successful Purchaser or the Back-Up Purchaser, as applicable, in connection with the Sale Transaction have been fully disclosed, and the negotiation and execution of the Successful Purchase Agreement, the Back-Up Purchase Agreement, and the other Transaction Documents were at arm's-length and in good faith.

X.      **No Fraudulent Transfer**. The consideration provided by the Successful Purchaser or the Back-Up Purchaser for the Transferred Assets pursuant to the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable: (a) is fair and reasonable; (b) is the highest and best offer or next-highest and next-best offer, as applicable, for the Transferred Assets; (c) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other available alternative; and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession, and the District of Columbia.

Y.      Neither the Successful Purchase Agreement nor the Back-Up Purchase Agreement was entered into, and neither the Sellers, the Successful Purchaser, nor the Back-Up Purchaser has entered into the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, or proposes to consummate the Sale Transaction, for the purpose of (a) escaping liability for any of the Debtors' debts, (b) hindering, delaying or defrauding the Debtors' present or future creditors, or (c) for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United

States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

Z.    **Free & Clear**. The transfer of the Transferred Assets to the Successful Purchaser or the Back-Up Purchaser will be a legal, valid, and effective transfer of the Transferred Assets, and will vest the Successful Purchaser or the Back-Up Purchaser with all rights, titles, and interests of the Debtors to the Transferred Assets free and clear of all Encumbrances and Liabilities, except the Permitted Encumbrances, including:

    a.  all liens, whether consensual or statutory, replacement liens, adequate protection liens, or other liens granted under sections 361, 363, or 364 of the Bankruptcy Code, mortgages, deeds of trust, hypothecations, pledges, security interests, charges, options and transfer restrictions, including rights of first refusal or first offer, defect or objection liens, easements, encroachments, or servitudes, in each case, that constitutes an "interest" for purposes of section 363(f) of the Bankruptcy Code (collectively, the "Liens"),

    b.  any and all "claims," as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including

        i.  any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (A) ERISA (as defined below), (B) the Fair Labor Standards Act, (C) Title VII of the Civil Rights Act of 1964, (D) the Federal Rehabilitation Act of 1973, (E) the National Labor Relations Act, (F) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (G) the Americans with Disabilities Act of 1990, (H) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law, (I) state discrimination laws, (J) state unemployment compensation laws or any other similar state laws, (K) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (L) the WARN Act (29 U.S.C. §§ 2101 et seq.),

    ii.   any rights under any pension or multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "<u>ERISA</u>")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability,

    iii.   any and all claims or causes of action based upon or relating to any putative successor or transferee liability,

    iv.   any and all claims or causes of action based upon or relating to any bulk sales or similar law,

    v.   any and all claims or causes of action based upon or relating to any tax statutes or ordinances, including the Internal Revenue Code of 1986, as amended (the "<u>IRC</u>"), and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing, including any *ad valorem* taxes assessed by any applicable taxing authority, and

    vi.   any other rights or causes of action (whether in law or in equity), warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above- captioned case, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "<u>Claims</u>"); and

c.   any and all claims, causes of actions, payments, charges, judgments, assessments, losses, monetary damages, penalties, fines, fees, interest obligations, deficiencies, debts, obligations, costs and expenses and other liabilities (whether absolute, accrued, contingent, fixed or otherwise, or whether known or unknown, or due or to become due or otherwise), including any amounts paid in settlement, interest, court costs, costs of investigators, attorneys' fees, legal or other expenses incurred in connection therewith (collectively, the "<u>Interests</u>").

AA.    The Debtors, to the extent permitted by applicable law, may transfer the Transferred

Assets free and clear of all Encumbrances and Liabilities, including, without limitation, rights or

32863699.1

claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.

BB.     Those (a) holders of Claims and (b) non-Debtor parties to the Transferred Contracts, in each case who did not object or who withdrew their objections to the Motion, are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  Those (a) holders of Claims, and (b) non-Debtor parties to the Transferred Contracts, in each case who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

CC.     The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

DD.     **Successful Purchaser's Reliance on Free & Clear Sale**.  The Successful Purchaser and the Back-Up Purchaser would not have entered into the Successful Purchase Agreement and the Back-Up Purchase Agreement, respectively, and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, (a) if the transfer of the Transferred Assets were not free and clear of all Encumbrances and Liabilities, or (b) if the Successful Purchaser or the Back-Up Purchaser would, or in the future could, be liable for or subject to any such Encumbrances or Liabilities.

EE.     The Successful Purchaser will not consummate the transactions contemplated by the Successful Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, unless this Court expressly orders that none of the Successful Purchaser or the Transferred Assets will have any liability whatsoever with

32863699.1

respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, or otherwise, directly or indirectly, any Encumbrances or Liabilities.

FF.     The Back-Up Purchaser will not consummate the transactions contemplated by the Back-Up Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, unless this Court expressly orders that none of the Back-Up Purchaser, its respective affiliates, its respective present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, or otherwise, directly or indirectly, any Encumbrances or Liabilities.

GG.     Not transferring the Transferred Assets free and clear of all Encumbrances and Liabilities would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Transferred Assets other than pursuant to a transfer that is free and clear of all Encumbrances and Liabilities would be of substantially less benefit to the Debtors' estates.

HH.     **<u>No Successor or Other Derivative Liability</u>**. The Successful Purchaser is not a mere continuation of the Debtors or their estates, there is no continuity or common identity between the Successful Purchaser or the Debtors, and there is no continuity of enterprise between the Successful Purchaser or the Debtors.  The Successful Purchaser shall not be deemed to be holding themselves out as a continuation of the Debtors based on the Sale Transaction, the Successful Purchase Agreement, or this Order.  The Successful Purchaser is not a successor to the Debtors or their estates by reason of any theory of law or equity and none of the transactions contemplated by the Successful Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts amounts to a

consolidation, merger, or de facto merger of the Successful Purchaser or any of its affiliates with or into the Debtors as a result of any action taken in connection with the Sale Transaction.

II.      The Back-Up Purchaser is not a mere continuation of the Debtors or their estates, there is no continuity or common identity between the Back-Up Purchaser, the Debtors, or any of their respective affiliates, and there is no continuity of enterprise between the Back-Up Purchaser, the Debtors, or any of their respective affiliates. The Back-Up Purchaser shall not be deemed to be holding themselves out as a continuation of the Debtors based on the Sale Transaction, the Back-Up Purchase Agreement, or this Order. The Back-Up Purchaser is not a successor to the Debtors or their estates and none of the transactions contemplated by the Back-Up Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts amounts to a consolidation, merger, or de facto merger of the Back-Up Purchaser or any of its affiliates with or into the Debtors as a result of any action taken in connection with the Sale Transaction.

JJ.      To the greatest extent permitted by applicable law, without limiting the generality of the foregoing, and other than as may be set forth in the Purchase Agreements, none of the Successful Purchaser, the Back-Up Purchaser, their respective affiliates, the present or contemplated members or shareholders of the Successful Purchaser, the Back-Up Purchaser, and their respective affiliates, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities, that the Debtors may incur in connection with consummation of the transactions contemplated by the Purchase Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, or that the Debtors have otherwise incurred prior to

32863699.1

the consummation of the transactions contemplated by the Purchase Agreements as a result of any action take in connection with the Sale Transaction.

KK.   **Validity of Transfer**. The consummation of the transactions contemplated by the Purchase Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Purchase Agreements. Upon entry of this Order, subject to the terms of the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, the applicable Debtors are authorized to transfer all of their right, title, and interest in and to the Transferred Assets free and clear of, and the Successful Purchaser or the Back-Up Purchaser, as applicable, shall not be responsible for, any Encumbrances or Liabilities (other than the Permitted Encumbrances), with such Encumbrances or Liabilities attaching solely to the proceeds of the sale of the Transferred Assets with the same nature, validity, priority, extent, perfection, and force and effect, and in the same order of priority, that such Encumbrances or Liabilities encumbered the Transferred Assets immediately prior to the Closing.

LL.   The Transferred Assets constitute property of the applicable Debtors' estates and good title to the Transferred Assets is vested in the applicable Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The applicable Debtors are the sole and lawful owners of the Transferred Assets.

MM.   The Purchase Agreements have been duly and validly executed and delivered by the Debtors and, subject to the terms of the Successful Purchase Agreement or the Back-Up

20

Purchase Agreement, as applicable, shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with its terms. The Purchase Agreements, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 11 trustee appointed in these Chapter 11 Cases or any chapter 7 trustee appointed upon conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

NN.    **Transferred Contracts**. The assumption and assignment of the Transferred Contracts pursuant to the Cure Notice, the terms of this Order, and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, is integral to the transactions contemplated by the Purchase Agreements. Such assumption and assignment is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

OO.    Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized to assume all Transferred Contracts and sell and assign such Transferred Contracts to the Successful Purchaser or the Back-Up Purchaser, as applicable. To the extent a Cure Amount is owed to the counterparty of any Transferred Contract, the applicable Cure Amount will be paid on or before the Closing or as promptly as reasonably practicable in accordance with the Successful Purchase Agreement or the Back-Up Purchase Agreement, or as otherwise expressly agreed to between the Debtors and the Successful Purchaser or the Debtors and the Back-Up Purchaser, as applicable, and such counterparty. The Successful Purchaser and the Back-Up Purchaser have, in accordance with the Assumption and Assignment Procedures, provided adequate assurance of

future performance to any non-Debtor contract counterparty to the extent required by section 365 of the Bankruptcy Code.

PP.    **Transfer of Transferred Contracts**. The Transferred Contracts being assigned to the Successful Purchaser or the Back-Up Purchaser, as applicable, are an integral part of the Sale Transaction and, accordingly, their assumption and assignment is reasonable and an enhancement to the value of the Debtors' estates. To the extent any Transferred Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Successful Purchaser in accordance with the terms of the Successful Purchase Agreement or to the Back-Up Purchaser in accordance with the terms of the Back-Up Purchase Agreement, as applicable, and, other than with respect to Permitted Encumbrances, the Successful Purchaser or the Back-Up Purchaser, as applicable, shall have no liability or obligation for any: (a) defaults or breaches under such contract that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the date of the Closing (the "Closing Date"); and (b) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, to the extent permitted by applicable law, any right of recoupment) with respect to such Transferred Contract, that relate to any acts or omissions that arose or occurred prior to the Closing Date.

QQ.    **Binding & Valid Transfer**. The transfer of the Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser, as applicable, will be a legal, valid, effective, and enforceable sale and transfer of the Transferred Assets and will vest the Successful Purchaser or the Back-Up Purchaser, as applicable, with all right, title, and interest of the Debtors to the Transferred Assets free and clear of all Encumbrances and Liabilities, other than the Permitted Encumbrances, to the extent expressly set forth in the Purchase Agreements and in this Order, as applicable.

22

RR.    **No *Sub Rosa* Plan**. The Bidding Process, the Sale Transaction, the Purchase Agreements, the Transaction Documents, and the other transactions contemplated thereby do not constitute a *sub rosa* chapter 11 plan. The Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating chapter 11 plan for the Debtors.

SS.    **Transferred Assets Assignable**. To the maximum extent possible under the Bankruptcy Code, each and every provision of the documents governing the Transferred Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Transferred Assets, if any, has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.

TT.    **Compelling Circumstances for an Immediate Sale**. To maximize the value of the Transferred Assets, it is essential that the transactions contemplated by the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, occur within the time constraints set forth therein. Time is of the essence in consummating the transactions contemplated by the Purchase Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

UU.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts prior to, and outside of, a chapter 11 plan because,

23

among other things, the Debtors' estates will suffer irreparable harm if the relief provided herein is not granted on an expedited basis.

VV.    The legal and factual bases set forth in the Motion, the Declarations, and any additional declarations filed in support thereof and presented at the Sale Hearing establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.    **<u>Sale Is Approved</u>**. The Motion is GRANTED and the Sale Transaction is APPROVED, as set forth herein and on the record at the Sale Hearing, which is incorporated herein as if fully set forth in this Order.

2.    **<u>Objections Overruled</u>**. Except as otherwise provided herein, all objections to, or reservation of rights regarding, or other responses to the Motion or the relief requested therein, including, without limitation, the Purchase Agreements, the Transaction Documents, the Sale Transaction, the entry of this Order, or the relief granted herein, any objections to Cure Amounts or relating to the cure of any defaults under any of the Transferred Contracts or to the assumption and assignment of any of the Transferred Contracts to the Successful Purchaser or Back-Up Purchaser by the Debtors, that have not been withdrawn, waived, settled, or that have not otherwise been resolved pursuant to the terms hereof, are hereby denied and overruled on the merits with prejudice. All persons and entities that failed to timely object, or withdrew their objections, to the Motion or the entry of this Order are deemed to consent to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code. No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bidding Procedures

Order, and the Bidding Procedures Order is a final order of this Court, has not been vacated, withdrawn, rescinded, or amended, and remains in full force and effect.

3.        **Notice**. Notice of the Motion, the hearing on the Bidding Procedures, the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, the Purchase Agreements, the Sale Transaction, and the Sale Hearing, all deadlines related thereto, and the relief granted in this Order, was fair, sufficient, proper, adequate, appropriate, and equitable under the circumstances and complied in all respects with sections 102(1), 363, and 365 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, and the procedural due process rules of the United States Constitution, and as such no further order or notice is or shall be required.

4.        **Approval & Authorization**. The sale of the Transferred Assets to the Successful Purchaser on the terms and conditions contained in the Successful Purchase Agreement and the Transaction Documents, or to the Back-Up Purchaser on the terms and conditions contained in the Back-Up Purchase Agreement and the Transaction Documents, as applicable, including, without limitation, the Closing as required by the Successful Purchase Agreement or the Back-Up Purchaser Agreement, is hereby approved in all respects pursuant to sections 105, 363, and 365 of the Bankruptcy Code. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors and their respective officers, employees, and agents are authorized to perform all obligations under, comply with the terms of, and make all payments required by the Transaction Documents and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and consummate the Sale Transaction and the related transactions pursuant to, and in accordance with, the terms and conditions of this Order and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, without further order of this Court. The Debtors, the

32863699.1

Successful Purchaser, the Back-Up Purchaser, and each of their respective officers, employees, and agents are hereby authorized to: (a) execute the Transaction Documents and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and any prior execution of such agreements, documents, and instruments, including the Transaction Documents, is hereby ratified; (b) perform all obligations under the Transaction Documents and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, to consummate each of the foregoing, including, without limitation, deeds, assignments, and other instruments of transfer, and to consummate the Sale Transaction, and any prior performance of such obligations or any prior consummation of such Sale Transaction is hereby ratified; (c) assume, sell, and assign the Transferred Contracts to the Successful Purchaser or the Back-Up Purchaser, as applicable; and (d) take all other and further actions as may be reasonably necessary or appropriate to consummate and implement the Sale Transaction and to perform all obligations under the Transaction Documents and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and the consummation thereof, without any further corporate action or order of this Court. Neither the Successful Purchaser nor the Back-Up Purchaser shall be obligated to proceed with the Closing unless and until all conditions precedent to its obligation to do so thereunder have been satisfied or waived.

5. **No _Sub Rosa_ Plan**. The sale of the Transferred Assets, including, without limitation, the assignment of the Transferred Contracts, pursuant to the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, outside a chapter 11 plan, neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of the Debtors' subsequent chapter 11 plan. Neither the Successful Purchase Agreement, the Back-Up Purchase Agreement, nor the Sale Transaction constitutes a sub rosa chapter 11 plan.

32863699.1

6.      **Back-Up Purchaser**. Notwithstanding anything to the contrary herein, including, without limitation, the approval of the Back-Up Bid according to the terms hereof, the Debtors shall not execute or enter into the Back-Up Purchase Agreement or any Transaction Documents with respect to the Back-Up Bid, and the Debtors shall not enter into the Sale Transaction with the Back-Up Purchaser in accordance with the terms of the Back-Up Bid, unless and until the Sale Transaction with respect to the Successful Purchaser and the Successful Bid is terminated or fails to close by the outside date provided in the Successful Purchase Agreement (except as may be modified pursuant to and consistent with the terms of the Successful Purchase Agreement) or by an order by the Court.

7.      **Insider**. Neither the Successful Purchaser nor the Back-Up Purchaser is an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

8.      **Valid Transfer**. Effective upon the Closing, the Debtors shall transfer to the Successful Purchaser or the Back-Up Purchaser, as applicable, the Transferred Assets, and the transfer of the Transferred Assets to the Successful Purchaser pursuant to the Successful Purchase Agreement or to the Back-Up Purchaser pursuant to the Back-Up Purchase Agreement constitutes a legal, valid, effective, and enforceable sale and transfer of the Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser and shall vest the Successful Purchaser or Back-Up Purchaser, as applicable, with all legal, equitable, and beneficial right, title, and interest in and to the Transferred Assets, free and clear of all Encumbrances and Liabilities of any kind or nature whatsoever (other than Permitted Encumbrances) (with such Encumbrances and Liabilities attaching solely to the proceeds of the sale of the Transferred Assets with the same nature, validity, priority, extent, perfection, and force and effect, and in the same order of priority, that such Encumbrances and Liabilities encumbered the Transferred Assets immediately prior to the

27

Closing). The Purchase Agreements and the Transaction Documents are valid and binding contracts between the Sellers, the Successful Purchaser, and the Back-Up Purchaser, as applicable, and shall be enforceable pursuant to their terms. The Purchase Agreements, the Transaction Documents, the Sale Transaction itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, the Debtors' estates, their creditors, all counterparties to the Transferred Contracts, all parties in interest, any chapter 11 trustee appointed in these Chapter 11 Cases or any chapter 7 trustee appointed upon a conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, and shall not be subject to rejection or avoidance by the foregoing parties or any other person or entity. The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f), and all of the applicable requirements of such sections have been complied with in all respects in connection with the Sale Transaction.

9.      **Debtors' Performance Authorized**. The Debtors are hereby authorized to enter into and perform their obligations under the Purchase Agreements , and to take such other actions as may be necessary or desirable to effectuate the terms of the Purchase Agreements, including providing transition services, if needed, and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Purchase Agreements, the Sale Transaction, or this Order including, without limitation, deeds, assignments, stock powers, transfers of membership interests, and any other instruments of transfer, without further order of the Court. The Debtors are hereby further authorized to take all other actions as may reasonably be requested by the Successful Purchaser or otherwise for the purpose of assigning, transferring, granting, conveying, and conferring to the Successful Purchaser, or

reducing to the Successful Purchaser's possession any or all of the Transferred Assets and the Transferred Contracts, as may be necessary or appropriate for the Debtors to perform their obligations under the Purchase Agreements and consummate the Sale Transaction including, without limitation, providing transition services, without further order of the Court.

10.    The Debtors are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents with respect to the Transferred Assets that are necessary or appropriate to effectuate the Purchase Agreements, the Sale Transaction, or this Order including, as applicable, amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.

11.    **Authorization to Sell and Assign**. Notwithstanding any provision of any contract governing the Transferred Assets, including any Transferred Contract to be assumed, sold, and assigned to the Successful Purchaser or to the Back-Up Purchaser, as applicable, as of the Closing pursuant to sections 363 and 365(f) of the Bankruptcy Code, or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Transferred Assets, including any Transferred Contract, the Debtors are hereby authorized and directed to (a) assign the Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser, as applicable, and (b) assume, sell, and assign the Transferred Contracts to the Successful Purchaser or to the Back-Up Purchaser, as applicable, as of the Closing, in each case, which assignments shall take place on and be effective as of the Closing or such other date after the Closing Date, in each case, as provided in

the Successful Purchase Agreements or as otherwise provided by a separate order of this Court, as

applicable.

a.    There shall be no accelerations, assignment fees, increases, or any other fees charged to the Successful Purchaser, the Back-Up Purchaser, or the Debtors as a result of the assignment of the Transferred Assets or the assumption and assignment of the Transferred Contracts.

b.    The Debtors have met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Transferred Contracts that are to be assumed, sold, and assigned to the Successful Purchaser or to the Back-Up Purchaser as of the Closing.

c.    The Debtors' assumption and assignment of the Transferred Contracts is subject to the consummation of the Sale Transaction with the Successful Purchaser or with the Back-Up Purchaser. Any objection of any counterparty to the assumption and assignment of any Transferred Contracts, any Cure Amount, or seeking further adequate assurance of future performance than that provided in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, to the extent not otherwise resolved by agreement or by separate order of this Court, is hereby overruled. Upon payment of the Cure Amount by the Successful Purchaser or by the Back-Up Purchaser, as applicable, the Debtors shall be released by the Successful Purchaser or the Back-Up Purchaser, as applicable, and the applicable counterparty from any and all claims and causes of action of any nature whatsoever based on, arising from or relating to, such Transferred Contracts.

d.    Unless a counterparty to any Transferred Contract filed a timely Cure Objection (as defined in the Bidding Procedures Order), the Cure Amounts set forth on the Cure Notice shall constitute findings of this Court and shall be final and binding on the counterparties to the Transferred Contracts and their successors and designees upon the Closing and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assignment, irrespective of the terms and conditions of such Transferred Contracts. Each counterparty to a Transferred Contract (other than a counterparty who filed a timely Cure Objection) shall be forever barred, estopped, and permanently enjoined from asserting against the Successful Purchaser or the Back-Up Purchaser, as applicable, or their property (including, without limitation, the Transferred Assets), any default arising prior to or existing as of the Closing, or any counterclaim, defense, recoupment, setoff, or any other interest asserted or assertable against the Debtors (except as otherwise provided herein). To the extent a counterparty to any of the Transferred Contracts received notice of the Debtors' proposed Cure Amount and fails to file a Cure Objection by the applicable deadline,

such party shall be deemed to have (i) consented to the assumption and assignment of the applicable Transferred Contract and the payment of the Cure Amount provided in the Cure Notice, and (ii) waived any right to assert or collect any other cure amount or enforce any default that may arise or have arisen prior to or as of the Closing.

12.     **Transferred Contracts**. As of the Closing, subject to the provisions of this Order and in accordance with the Purchase Agreements, the Successful Purchaser or the Back-Up Purchaser, as applicable, shall succeed to the entirety of the applicable Debtors' rights and obligations in the Transferred Contracts to be assumed, sold, and assigned to the Successful Purchaser or the Back-Up Purchaser, and shall have all rights thereunder subject to the terms of the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable.

a.     Upon Closing and payment of the Cure Amounts on Closing or as soon as reasonably practicable thereafter, (i) all defaults (monetary and non-monetary) under the Transferred Contracts shall be deemed cured and satisfied in full through the payment of the Cure Amounts, (ii) no other amounts will be owed by the Debtors, their estates, the Successful Purchaser, and/or the Back-Up Purchaser with respect to the Transferred Contracts, and (iii) any and all persons or entities shall be forever barred and estopped from asserting a Claim against the Debtors, their estates, the Successful Purchaser or the Back-Up Purchaser, as applicable, or the Transferred Assets that any additional amounts are due or defaults exist under the Transferred Contracts. The Successful Purchaser's or the Back-Up Purchaser's promise pursuant to the terms of the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, to pay the Cure Amounts and the Successful Purchaser's or the Back-Up Purchaser's promise to perform the Debtors' obligations under the Transferred Contracts for the period on or after the Closing Date shall constitute adequate assurance of the Successful Purchaser's or the Back-Up Purchaser's future performance under the Transferred Contracts being assigned to it as of the Closing within the meaning of sections 365(b)(l)(C) and 365 (f)(2)(A)–(B) of the Bankruptcy Code.

b.     Upon assumption of the Transferred Contracts to be assumed by the applicable Debtors and assigned to the Successful Purchaser or to the Back-Up Purchaser, as applicable, as of the Closing, such Transferred Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to the Successful Purchaser or to the Back-Up Purchaser, as applicable, notwithstanding any provision in such Transferred

Contract or other restrictions prohibiting assignment or transfer. To the extent any Transferred Contract is assumed, sold, and assigned to the Successful Purchaser or to the Back-Up Purchaser under this Order, such assumption and assignment will not take effect until the Closing. Furthermore, other than the Transferred Contracts, no other contract shall be deemed assumed by the Debtors and assigned to the Successful Purchaser or to the Back-Up Purchaser pursuant to sections 363 and 365 of the Bankruptcy Code. The failure of the Debtors or the Successful Purchaser or Back-Up Purchaser, as applicable, to enforce at any time one or more terms or conditions of any Transferred Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Successful Purchaser's or the Back-Up Purchaser's, as applicable, rights to enforce every term and condition of such Transferred Contract.

13.     Notwithstanding the foregoing, the Debtors may, at the Successful Purchaser's or Back-Up Purchaser's, as applicable, direction, amend the list of Transferred Contracts to add or remove any Potentially Assigned Agreement to or from such list prior to Closing of the Sale Transaction in accordance with the terms of the Successful Purchase Agreement or the Back-Up Purchase Agreement and the Assumption and Assignment Procedures.

14.     **Free & Clear**. Upon the Closing, pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Transferred Assets, including the Transferred Contracts, shall be transferred to the Successful Purchaser or to the Back-Up Purchaser in accordance with the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and such transfer shall be free and clear of all Encumbrances and Liabilities (other than Permitted Encumbrances), in each case, to the maximum extent permitted by section 363(f) of the Bankruptcy Code, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or

32863699.1

arising before, on or after the Petition Date, or occurring or arising prior to the Closing. Any and all such Encumbrances and Liabilities (other than Permitted Encumbrances) shall attach solely to the proceeds of the Sale Transaction with the same validity, force, and effect, and in the same order of priority, that such Encumbrances or Liabilities had against such Transferred Assets immediately prior to the Closing.

15.     Except as expressly provided for in the Purchase Agreements  or this Order, as applicable, all holders of Encumbrances and Liabilities fall within one or more of the subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances or Liabilities attach solely to the proceeds of the Sale Transaction with the same validity, force, and effect, and in the same order of priority that such Encumbrances or Liabilities had against the Transferred Assets immediately prior to the Closing, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto; *provided, however*, that setoff rights will be extinguished to the extent there is no longer mutuality of the parties after consummation of the Sale Transaction.

16.     Those holders of Encumbrances or Liabilities who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances or Liabilities who did object that have an interest in the Transferred Assets fall within one or more of sections 363(f)(1), 363(f)(3), 363(f)(4), or 363(f)(5) of the Bankruptcy Code and are therefore adequately protected by having their Encumbrances or Liabilities in the Transferred Assets, if any, attach solely to the proceeds of the Sale Transaction with the same validity, force, and effect, and in the same order of priority, that such Encumbrances or Liabilities had immediately prior to the

Closing, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

17.    **Release of Interests**. Effective upon the Closing, this Order: (a) is and shall be effective as a determination that all Encumbrances and Liabilities of any kind or nature whatsoever (other than Permitted Encumbrances) existing as to the Transferred Assets prior to the Closing have been unconditionally released, discharged, and terminated (with such Encumbrances or Liabilities attaching solely to the proceeds of the Sale Transaction with the same validity, force, and effect, and in the same order of priority that such Encumbrances or Liabilities had immediately prior to the Closing) and that the conveyances described herein have been effectuated; (b) is and shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Transferred Assets conveyed to the Successful Purchaser or to the Back-Up Purchaser, as applicable; and (c) is and shall be effective as a determination that all recorded Encumbrances and Liabilities (other than Permitted Encumbrances) against the Transferred Assets shall be deemed stricken from such entities' records, official and otherwise.

18.    **Direction to Release Interests**. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing a Lien, Claim, Interest, or other Encumbrance in all or any portion of the Transferred Assets being sold pursuant to the Sale Transaction and the Successful Purchase Agreement or the

Back-Up Purchase Agreement, as applicable, shall not have delivered to the Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances and Liabilities (other than the Permitted Encumbrances), which such person or entity has with respect to all or any portion of the Transferred Assets being sold pursuant to the Sale Transaction and the Successful Purchase Agreement or the Back-Up Purchase Agreement, then (a) the Debtors and the Successful Purchaser or the Back-Up Purchaser, as applicable, are each (except as otherwise provided herein) hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such person or entity with respect to all or any portion of the Transferred Assets being sold pursuant to the Sale Transaction and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and (b) the Successful Purchaser or the Back-Up Purchaser, as applicable, is hereby authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Encumbrances and Liabilities (other than Permitted Encumbrances) of any kind or nature whatsoever in the Transferred Assets being sold pursuant to the Sale Transaction and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, including, without limitation, recordation of this Order.

19.     **<u>Surrender of Transferred Assets</u>**. All persons or entities that are currently, or as of the Closing may be, in possession of some or all of the Transferred Assets are hereby directed

32863699.1

to surrender possession of such Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser, as applicable, at the Closing.

20.   **No Interference**. Following the Closing, any holder of any Lien, Claim, Interest, or other Encumbrance in the Transferred Assets will forever be prohibited and barred from taking any action that would interfere with the Successful Purchaser's or the Back-Up Purchaser's title to, or use and enjoyment of, the Transferred Assets being sold pursuant to the Sale Transaction and the Successful Purchase Agreement or the Back-Up Purchase Agreement, respectively, based on, or related to, any such Lien, Claim, Interest, or other Encumbrance, or based on any actions the Debtors may take in these Chapter 11 Cases.

21.   **Post-Closing Actions & Transactions**. The Debtors and the Successful Purchaser or the Debtors and the Back-Up Purchaser, as applicable, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the applicable Debtors, the Successful Purchaser, or the Back-Up Purchaser, as applicable, deem necessary or appropriate to implement and effectuate the terms of the Purchase Agreements, the Transaction Documents, the Sale Transaction contemplated therein, and this Order, as applicable.

22.   **Sale Is Self-Executing**. The Sale Transaction and the provisions of this Order authorizing and approving the transfer of the Transferred Assets free and clear of all Encumbrances and Liabilities are self-executing, and neither the Debtors, the Successful Purchaser, nor the Back-Up Purchaser, as applicable, shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

23.     **Governmental Authorization to Effectuate Sale**. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby authorized to accept any and all documents and instruments in connection with or necessary and appropriate to consummate the Sale Transaction contemplated under the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable. To the greatest extent permitted under applicable law upon the Closing, the Successful Purchaser or the Back-Up Purchaser, as applicable, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Transferred Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Successful Purchaser or to the Back-Up Purchaser, as applicable, as of the Closing. All existing licenses, permits, registrations, governmental authorizations, or approvals applicable to the business or the Transferred Assets shall remain active, in place, and, as applicable, shall be renewed for the Successful Purchaser's or the Back-Up Purchaser's, as applicable, benefit until either corresponding new licenses, permits, registrations, governmental authorizations, and approvals are obtained or existing licenses, permits, registrations, governmental authorizations, and approvals are transferred in accordance with applicable administrative procedures. The Debtors are authorized, to the extent requested by the Successful Purchaser or the Back-Up Purchaser, as applicable, to assist the Successful Purchaser or the Back-Up Purchaser, as applicable, in applying for and securing all such issuances or renewals of licenses, permits, registrations, governmental authorizations, and approvals. To the maximum extent permitted by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Transferred Assets sold, transferred, or conveyed to the Successful Purchaser or

32863699.1

to the Back-Up Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Successful Purchase Agreement or by the Back-Up Purchase Agreement, respectively.

24.    **Injunction**. All persons (including, but not limited to, the Debtors, creditors, all holders of Encumbrances or Liabilities, lenders, debt security holders, investors, current and former employees and shareholders, parties to executory contracts and unexpired leases, contract counterparties, customers, landlords, licensors, litigation claimants, pension plans, labor unions, administrative agencies, governmental units (including tax and regulatory authorities), secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and any other persons holding interests of any kind or nature whatsoever against or in the Debtors or the Transferred Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the operation of the Debtors' businesses prior to the Closing, the Transferred Assets, or the transfer of the Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser, as applicable (including, without limitation, any rights or claims based on any successor, transferee, derivative, or vicarious liabilities), and the successors and assigns of each of the foregoing shall be, and hereby are, forever barred, estopped, and permanently enjoined from: (a) taking any action that would adversely affect or interfere with, or that would be inconsistent with, the ability of the Debtors to sell and transfer the Transferred Assets to the Successful Purchaser in accordance with the terms of the Successful Purchase Agreement or to the Back-Up Purchaser in accordance with the terms

32863699.1

of the Back-Up Purchase Agreement, the Transaction Documents, or this Order; and (b) asserting, prosecuting, or otherwise pursuing any Encumbrances or Liabilities (other than Permitted Encumbrances) of any kind or nature whatsoever against the Successful Purchaser or the Back-Up Purchaser, as applicable, or any of their affiliates, officers, directors, members, partners, principals, or shareholders, any of their respective representatives, successors, designees, or assigns, or any of their respective property, successors and assigns, or the Transferred Assets, on any other grounds. Following the Closing, no holder of any Encumbrances or Liabilities shall interfere with, as applicable, the Successful Purchaser's or the Back-Up Purchaser's title to or use and enjoyment of the Debtors' former interests in the Transferred Assets, including, without limitation, taking any of the following actions with respect to or based on any interest relating to the Transferred Assets or the transfer of the Transferred Assets to the Successful Purchaser (other than the Permitted Encumbrances) or to the Back-Up Purchaser (other than the Permitted Encumbrances): (a) commencing or continuing in any manner any action or other proceeding against the Successful Purchaser or the Back-Up Purchaser, as applicable, or their successors or assigns, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Successful Purchaser or the Back-Up Purchaser, as applicable, or their successor, or assigns, assets, or properties; (c) creating, perfecting, or enforcing any interest against the Successful Purchaser or the Back-Up Purchaser, as applicable, or their successors or assigns, assets (including the Transferred Assets), or properties; (d) asserting any Lien, Claim, Interest, or Encumbrance as a setoff, right of subrogation, or recoupment of any kind against any obligation due to the Successful Purchaser or the Back-Up Purchaser, as applicable, or their successors or assigns, assets, or properties; (e) commencing or continuing any action in any manner or place that does not comply or is inconsistent with the provisions of this Order or the

39

agreements or actions contemplated or taken in respect thereof; (f) interfering with, preventing, restricting, prohibiting, or otherwise enjoining the consummation of the Sale Transaction; or (g) enforcing any provision of any Transferred Contract that prohibits, restricts or conditions, or which purports to terminate or modify, or permits a party other than the Debtors to terminate or modify, any such Transferred Contract, or any right or obligation under such Transferred Contract, because of (i) the assumption and assignment of such Transferred Contract by the Debtors to the Successful Purchaser or the Back-Up Purchaser, as applicable, or (ii) the commencement of these Chapter 11 Cases or the insolvency or financial condition of the Debtors.

25.     For the avoidance of doubt, and without limiting the generality of the foregoing or the operability of any other relief obtained pursuant to this Order, any provision in a Transferred Contract (including, without limitation, any "change of control" provision), any other document, or any applicable law that prohibits, restricts, or otherwise impairs assignment of the Transferred Contracts or, as applicable, the Successful Purchaser's or the Back-Up Purchaser's ability to operate any business with respect to the Transferred Assets, including, without limitation, based on the commencement of these Chapter 11 Cases or the insolvency or financial condition of the Debtors, is hereby void and of no force and effect with respect to the Sale Transaction, including, without limitation, any provision that: (a) terminates, modifies, or constitutes a breach of any right or obligation of the Successful Purchaser or the Back-Up Purchaser, as applicable, under such Transferred Contract; (b) cross-defaults to or from any other lease or executory contract that is not a Transferred Contract; (c) contains operating covenants or "go-dark" provisions that would purport to terminate or modify any Transferred Contract before assumption and assignment to the Successful Purchaser or to the Back-Up Purchaser, as applicable; or (d) requires a third party's consent prior to assignment of the Transferred Contract to the Successful Purchaser or to the Back-

Up Purchaser, as applicable. No person shall assert, and the Transferred Assets and the Successful Purchaser or the Back-Up Purchaser, as applicable, shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, to the extent permitted by applicable law, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Successful Purchaser or the Back-Up Purchaser, as applicable, with respect to any Transferred Assets, with respect to any act or omission that occurred prior to the Closing, or with respect to any other agreement or any obligation of the Debtors that is not an Assumed Liability under the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable.

26.    **General Assignment**. Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Transferred Assets and/or a bill of sale or assignment transferring good and marketable and indefeasible title and interest in the Transferred Assets, including the Transferred Contracts, to the Successful Purchaser or to the Back-Up Purchaser, as applicable, at Closing, pursuant to the terms of the Successful Purchase Agreement or of the Back-Up Purchase Agreement, respectively, free and clear of all Encumbrances and Liabilities (other than Permitted Encumbrances). Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction and to reflect the effectiveness of the Sale Transaction.

27.    **No Successor Liability**. None of the Successful Purchaser or the Back-Up Purchaser, as applicable, their affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, agents, predecessors, successors, or assigns shall have any

liability for any Lien, Claim, Interest, or other Encumbrance that arose or occurred prior to the Closing, or otherwise may be asserted against the Debtors or is related to the Transferred Assets prior to the Closing. None of the Successful Purchaser or the Back-Up Purchaser, as applicable, any of their affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, attorneys, advisors, agents, predecessors, successors, or assigns are or shall be deemed, as a result of the consummation of the Sale Transaction, to: (a) be legal successors to the Debtors or their estates by reason of any theory of law or equity; (b) have, de facto or otherwise, merged with or into the Debtors; (c) be a successor employer as defined in the IRC or by the U.S. National Labor Relations Board or under applicable law; or (d) be an alter ego or a mere continuation or substantial continuation or successor of the Debtors in any respect. Neither the Successful Purchaser, the Back-Up Purchaser, nor any of their affiliates, as applicable, shall assume or in any way be responsible for any liability or obligation of any of the Debtors or their estates, other than the Permitted Encumbrances, to the extent provided in the Successful Purchase Agreement or in the Back-Up Purchaser Agreement, as applicable.

28.    **Limitations on Liability**. Without limiting the foregoing, and except as otherwise set forth in the Successful Purchase Agreement, the Successful Purchaser and its affiliates shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character, including under any theory of successor or transferee liability, de facto merger or continuity, tort, product liability, environmental, warranty, tax, antitrust, labor law, employment, ERISA, or other law, rule, or regulation, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or any obligations of the Debtors.

29.     Without limiting the foregoing, and except as otherwise set forth in the Back-Up Purchase Agreement, the Back-Up Purchaser and its affiliates shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character, including under any theory of successor or transferee liability, de facto merger or continuity, tort, product liability, environmental, warranty, tax, antitrust, labor law, employment, ERISA, or other law, rule, or regulation, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or any obligations of the Debtors.

30.     Absent the express written consent of the Successful Purchaser or the Back-Up Purchaser, as applicable, the Debtors shall not settle or otherwise resolve any existing or future litigation with any third party or any governmental entity other than any settlement pursuant to which no restrictions are placed on or affecting the Transferred Assets or the operation of the business from and after the Closing Date or otherwise directly or indirectly affect the operations of, or impose successor or any other theory of liability upon, the Successful Purchaser or the Back-Up Purchaser.

31.     **Fair Consideration**. The consideration provided by the Successful Purchaser for the Transferred Assets under the Successful Purchase Agreement and by the Back-Up Purchaser for the Transferred Assets under the Back-Up Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, possession, or the District of Columbia. The Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law. The Purchase Agreements

were not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Sellers nor the Successful Purchaser have entered into the Successful Purchase Agreement, any Transaction Document, or any agreement contemplated thereby or are consummating the Sale Transaction with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities. Neither the Sellers nor the Back-Up Purchaser have entered into the Back-Up Purchase Agreement, any Transaction Document, or any agreement contemplated thereby or are consummating the Sale Transaction with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities.

32.     No other person or entity or group of persons or entities has offered to purchase the Transferred Assets for an amount or pursuant to terms that would provide greater value to the Debtors and their estates than the value provided by the Successful Purchaser. This Court's approval of the Motion and the Purchase Agreements are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

33.     **Good Faith of the Successful Purchaser and the Back-Up Purchaser**. The transactions contemplated by the Successful Purchase Agreement are undertaken by the Successful Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions shall not affect the validity of the Sale Transaction, including, without limitation, the assumption and assignment by the Debtors of any Transferred Contract, unless the authorization or the Sale Transaction contemplated by the

44

Successful Purchase Agreement are stayed. The Successful Purchaser is a good faith purchaser of the Transferred Assets within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the rights, privileges, immunities, and protections afforded by section 363(m) of the Bankruptcy Code. Additionally, as a good faith buyer of the Transferred Assets, the Successful Purchaser has not entered into any agreement with any other potential bidders and has not colluded with any potential or actual bidders, and the Sale Transaction may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

34.     The transactions contemplated by the Back-Up Purchase Agreement are undertaken by the Back-Up Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions shall not affect the validity of the Sale Transaction, including, without limitation, the assumption and assignment by the Debtors of any Transferred Contract, unless the authorization or the Sale Transaction contemplated by the Back-Up Purchase Agreement are stayed. The Back-Up Purchaser is a good faith purchaser of the Transferred Assets within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the rights, privileges, immunities, and protections afforded by section 363(m) of the Bankruptcy Code. Additionally, as a good faith buyer of the Transferred Assets, the Back-Up Purchaser has not entered into any agreement with any other potential bidders and has not colluded with any potential or actual bidders, and the Sale Transaction may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

35.     **No Avoidance of the Purchase Agreements**. Neither the Debtors, the Successful Purchaser, nor the Back-Up Purchaser have engaged in any conduct that would cause or permit the Purchase Agreements to be avoided or costs and damages to be imposed under section 363(n)

32863699.1

of the Bankruptcy Code. Accordingly, the Successful Purchase Agreement, the Back-Up Purchase Agreement, and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Successful Purchase Agreement, the Back-Up Purchase Agreement, or the Sale Transaction.

36.    **Books and Records**. Notwithstanding anything to the contrary herein or in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, from and after the Closing Date through and including the seventh anniversary of the Closing Date, the Sellers (and their successors and permitted assigns) shall retain copies of all Books and Records (as defined in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable) of the Sellers and the Transferred Subsidiaries (as defined in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable), including copies of any the Sellers' server(s) and any Books and Records to be transferred to the Successful Purchaser or the Backup Purchaser, as applicable, for the sole purpose of liquidating Excluded Assets; *provided* that any retained copies of all Books and Records shall be subject to the confidentiality obligations and use restrictions of the Debtors set forth in the Successful Purchase Agreement or Back-Up Purchase Agreement, as applicable; *provided* further that any person granted derivative standing by the Bankruptcy Court to pursue claims on behalf of the estate can seek relief from the Bankruptcy Court to use materials subject to the confidentiality obligations in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, for the purposes of pursuing such claims and the Successful Purchaser or the Back-Up Purchaser, as applicable, or its successors and permitted assigns, shall not oppose such a motion on the basis that the Sellers are bound by the Successful Purchase Agreement or Back-Up Purchase Agreement, as applicable; *provided*,

46

*however*, the Successful Purchaser or the Back-Up Purchase, as applicable, can oppose such a motion on any other grounds.  If the Sellers' successors and permitted assigns, including the Trustee (as defined in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable), are unable to obtain from the copies of the Books and Records retained by the Sellers information necessary to pursue estate claims and causes of action that are not transferred under the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, upon written request setting forth with specificity the information sought and the efforts undertaken to locate such information in the copies of the Books and Records retained by the Sellers, the Successful Purchaser or the Back-Up Purchaser, as applicable, shall provide the Sellers' successors and permitted assigns reasonable access during normal business hours to the transferred Books and Records; *provided* that such access does not materially interfere with the Successful Purchaser's or Back-Up Purchaser's , as applicable, business operations.  For the avoidance of any doubt, the Successful Purchaser or the Back-Up Purchaser, as applicable, shall have no obligation to provide access to any post-Closing information, shall have no obligation to provide access to any information generated by the Successful Purchaser or the Back-Up Purchaser, as applicable, or its affiliates, and all reasonable costs associated with accessing Books and Records in accordance with this paragraph shall be paid by the party requesting access.

37.    **Sale Transaction; Settlement**. Notwithstanding anything to the contrary herein, the Official Committee of Unsecured Creditors' informal and formal objections, including its reservation of rights [Docket No. 284], are deemed to be resolved and overruled in accordance with the terms of the Settlement Term Sheet by and among the Debtors, the Official Committee of Unsecured Creditors, and the Prepetition GDEV Secured Parties (as defined in the Settlement Term Sheet), attached hereto as **Exhibit 4**, which is approved in all respects. For the avoidance of

47

doubt, pursuant to the Settlement Term Sheet, the Debtors are authorized and directed to promptly transfer the UGE Sale Proceeds (as defined in the Settlement Term Sheet) to the Prepetition GDEV Secured Parties, the Debtors may retain the Retained Proceeds (as defined in the Settlement Term Sheet), and, upon the Debtors' receipt of any of the Future Sale Proceeds (as defined in the Settlement Term Sheet), the Debtors shall remit to the Prepetition GDEV Secured Parties the Retained Proceeds as soon as practicable after the Debtors' receipt (but in no event longer than 5 business days after receipt) of any Future Sale Proceeds, and on a cumulative basis, up to and no greater than the full amount of the Retained Proceeds. The Official Committee of Unsecured Creditors' Challenge Period (as defined in the Final DIP Order[8]) is expired upon entry of this Order.

38.    **Binding Effect**. This Order, the Purchase Agreements, the Transaction Documents, and the Bidding Procedures Order shall be binding in all respects upon all persons and entities, including, without limitation: (a) all known and unknown creditors of, and holders of equity security interest in, the Debtors, including any holders of Encumbrances or Liabilities and non-Debtor parties to the Transferred Contracts; (b) the Successful Purchaser; (c) the Back-Up Purchaser; (d) the Debtors, their respective affiliates and subsidiaries, and their estates (and such parties' respective successors and assigns); (e) the Transferred Assets; (f) the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases; (g) any trustee(s) or other fiduciaries appointed in the Debtors' Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code; and (h) all successors and assigns of each of the foregoing. The Successful

---

[8] The "Final DIP Order" means the *Final Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to (I) Use Cash Collateral, (II) Obtain Secured Superpriority Postpetition Financing and Granting Liens and Superpriority Administrative Claims, (III) Provide Adequate Protection, and (B) Granting Related Relief* [Docket No. 220].

32863699.1

Purchase Agreement, the Back-Up Purchase Agreement, this Order, and the Sellers' obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these Chapter 11 Cases, without the prior written consent of the Successful Purchaser or the Back-Up Purchaser, as applicable. This Order shall survive any dismissal or conversion of any of these Chapter 11 Cases or any dismissal of any subsequent chapter 7 cases with respect to the Debtors.

39.     **No Material Modifications**. The Purchase Agreements and the Transaction Documents may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, in a writing signed by such parties, without further order of this Court. Any material modification, amendment, or supplement to the Purchase Agreements and the Transaction Documents adversely affecting the Debtors' estates must be approved by order of this Court on notice to all interested parties.

40.     **Subsequent Orders & Plan Provisions**. Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases or any subsequent order of this Court, including, without limitation, any order confirming any such chapter 11 plan, any order authorizing the sale of assets of the Debtors pursuant to any section of the Bankruptcy Code, and any order approving wind-down or dismissal of any Chapter 11 Case or any subsequent chapter 7 case shall change, supersede, abrogate, nullify, restrict, or conflict with the provisions of the Successful Purchase Agreement or of the Back-Up Purchase Agreement, as applicable, the Transaction Documents, or this Order, or in any way prevent or interfere with the consummation or performance of the Sale Transaction.

41.     **Failure to Specify Provisions**. The failure to specifically include any particular provision of the Successful Purchase Agreement, the Back-Up Purchase Agreement, or the

49

Transaction Documents relating to the Sale Transaction in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Successful Purchase Agreement, the Back-Up Purchase Agreement, the Transaction Documents, and all other documents related to the Sale Transaction, as applicable, be authorized and approved in their entirety pursuant to this Order.

42.     **Automatic Stay**. The Successful Purchaser and the Back-Up Purchaser, as applicable, shall not be required to seek or obtain relief from the stay under section 362 of the Bankruptcy Code to enforce any of their respective remedies under the Purchase Agreements or related documents. The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified solely to the extent necessary (a) to implement the provisions of this Order, (b) to allow the Successful Purchaser or the Back-Up Purchaser, as applicable, to take any and all actions permitted under this Order, the Successful Purchase Agreement, the Back-Up Purchase Agreement, and the Transaction Documents, as applicable, and (c) to allow the Successful Purchaser or the Back-Up Purchaser, as applicable, to deliver any notice provided for in the Successful Purchase Agreement, the Back-Up Purchase Agreement, or the Transaction Documents, as applicable. This Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

43.     **No Stay of Order**. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the applicable Debtors and the Successful Purchaser or the applicable Debtors and the Back-Up Purchaser, as applicable, are authorized to close the Sale Transaction immediately upon entry of this Order. Time is of the essence in closing the Sale Transaction referenced herein, and the applicable Debtors and the Successful Purchaser or the

applicable Debtors and the Back-Up Purchaser, as applicable, intend to close the Sale Transaction as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

44.     **Provisions Non-Severable & Mutually Dependent**. The provisions of this Order are non-severable and mutually dependent.

45.     **Retention of Jurisdiction**. This Court retains exclusive jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, on and after Closing of the Sale Transaction, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Bidding Procedures Order, the Purchase Agreements, and the Transaction Documents, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser, as applicable; (b) resolve any disputes arising under or related to this Order, the Successful Purchase Agreement, the Back-Up Purchase Agreement, or the Transaction Documents; (c) protect the Successful Purchaser, any of the Successful Purchaser's affiliates, or any agent of the foregoing, against any Encumbrances or Liabilities against the Debtors or the Transferred Assets of any kind or nature whatsoever; (d) protect the Back-Up Purchaser, any of the Back-Up Purchaser's affiliates, or any agent of the foregoing, against any Encumbrances or Liabilities against the Debtors or the Transferred Assets of any kind or nature whatsoever; and (e) enter any order under sections 363 and 365 of the Bankruptcy Code. In the event this Court abstains from exercising or declines to exercise jurisdiction with respect to any matter referenced in this paragraph or is without jurisdiction, such abstention, refusal, or lack of jurisdiction shall

32863699.1

have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

46. **No Bulk Law Application**. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Sale Transaction, the Purchase Agreements, the Transaction Documents, the Motion, and this Order.

47. **Inconsistencies**. To the extent this Order is inconsistent with any prior filing with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall govern and any prior filings shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale Transaction. To the extent there is any inconsistency between the terms of this Order and the terms of the Successful Purchase Agreement (including all ancillary documents executed in connection therewith) or the terms of the Back-Up Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern. Notwithstanding the foregoing, nothing in this Order shall modify or waive any Closing conditions or termination rights in the Successful Purchase Agreement or in the Back-Up Purchase Agreement, as applicable, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

48. **Headings**. Headings utilized in this Order are for convenience of reference only and do not constitute part of this Order for any other purpose.

49. **Time Periods**. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

## Exhibit 1

**Successful Purchase Agreement**

**MEMBERSHIP INTEREST AND ASSET PURCHASE AGREEMENT**

by and among

**OYA RENEWABLES CONSTRUCTION HOLDINGS 3 LLC,**

**OYA RENEWABLES DEVELOPMENT LLC,**

and

**OYA-OMNI DEVELOPMENT COMPANY, LLC,**

as the Sellers

and

**GDEV OYA LENDER I, LLC**

as the Buyer

Dated as of _____, 2025

# TABLE OF CONTENTS

Page

**ARTICLE I.** DEFINITIONS .................................................................2

Section 1.1    Certain Defined Terms...................................................2
Section 1.2    Table of Definitions ...................................................18

**ARTICLE II.** PURCHASE AND SALE ...........................................20

Section 2.1    Purchase and Sale ......................................................20
Section 2.2    Excluded Assets. ........................................................22
Section 2.3    Assumed Liabilities. ...................................................24
Section 2.4    Excluded Liabilities ...................................................25
Section 2.5    Consents to Certain Assignments. ..............................26
Section 2.6    Assumption/Rejection of Certain Contracts. ...............26
Section 2.7    Transferred Subsidiaries .............................................28
Section 2.8    Consideration ............................................................28
Section 2.9    Closing. .....................................................................29
Section 2.10   Intended Tax Treatment; Tax Allocation.....................31
Section 2.11   Exclusion of Transferred Assets or Transferred Subsidiaries...................31
Section 2.12   Withholding. ..............................................................32

**ARTICLE III.** REPRESENTATIONS AND WARRANTIES OF THE SELLERS ...................32

Section 3.1    Organization...............................................................32
Section 3.2    Authority....................................................................32
Section 3.3    No Conflict; Required Filings and Consents. .............33
Section 3.4    Transferred Assets......................................................34
Section 3.5    Transferred Subsidiaries. ............................................35
Section 3.6    Financial Statements; No Undisclosed Liabilities; Schedule of Costs and Commitments....................................................36
Section 3.7    Absence of Certain Changes or Events........................37
Section 3.8    Compliance with Law; Permits...................................38
Section 3.9    Litigation....................................................................39
Section 3.10   Employee Matters. .....................................................39
Section 3.11   Real Property. ............................................................40
Section 3.12   Intellectual Property...................................................42
Section 3.13   Taxes. ........................................................................43
Section 3.14   Environmental Matters................................................47
Section 3.15   Material Contracts.......................................................48
Section 3.16   Affiliate Transactions.................................................50
Section 3.17   Insurance....................................................................51
Section 3.18   Brokers.......................................................................51
Section 3.19   Working Capital Assets; Equipment............................51
Section 3.20   Books and Records. ....................................................52
Section 3.21   Bank Accounts. ..........................................................52
Section 3.22   Regulatory Status. ......................................................52
Section 3.23   OFAC and Related Matters.........................................54

32863747.1

i

Section 3.24    Anti-Corruption; Anti-Bribery....................................................55
Section 3.25    Project Assets; Studies and Reports............................................56
Section 3.26    NYSERDA Incentive Payments. .................................................56
Section 3.27    Surety Bonds. .............................................................................56
Section 3.28    Receivable MIPAs. .....................................................................57
Section 3.29    Exclusivity of Representations and Warranties. .........................57

**ARTICLE IV.** REPRESENTATIONS AND WARRANTIES OF THE BUYER ..................58

Section 4.1    Organization................................................................................58
Section 4.2    Authority. ...................................................................................58
Section 4.3    No Conflict; Required Filings and Consents. .............................58
Section 4.4    Brokers........................................................................................59
Section 4.5    Litigation.....................................................................................59
Section 4.6    Purchase for Investment..............................................................59
Section 4.7    Inspections; No Other Representations.......................................59
Section 4.8    Exclusivity of Representations and Warranties. .........................60

**ARTICLE V.** BANKRUPTCY COURT MATTERS ......................................................60

Section 5.1    Bankruptcy Actions. ...................................................................60
Section 5.2    Post-Closing Access to Books and Records ...............................61

**ARTICLE VI.** COVENANTS..........................................................................................61

Section 6.1    Conduct of Business Prior to the Closing...................................61
Section 6.2    Covenants Regarding Information ..............................................64
Section 6.3    Notification of Certain Matters...................................................65
Section 6.4    Consents and Filings; Further Assurances..................................65
Section 6.5    Refunds and Remittances............................................................66
Section 6.6    Public Announcements. ..............................................................67
Section 6.7    Seller Confidentiality. ................................................................67
Section 6.8    Buyer Confidentiality..................................................................68
Section 6.9    Intercompany Arrangements.......................................................68
Section 6.10    No Regulatory Impediments .....................................................68
Section 6.11    Replacement of Credit Support ................................................68
Section 6.12    Sale Free and Clear ..................................................................69

**ARTICLE VII.** TAX MATTERS ....................................................................................69

Section 7.1    Transfer Taxes. ...........................................................................69
Section 7.2    Tax Cooperation..........................................................................69
Section 7.3    Allocation....................................................................................69
Section 7.4    Tax Returns..................................................................................70
Section 7.5    Tax Allocation Contracts. ...........................................................70
Section 7.6    Bulk Sales....................................................................................70

**ARTICLE VIII.** CONDITIONS TO CLOSING................................................................71

Section 8.1    General Conditions. ....................................................................71
Section 8.2    Conditions to Obligations of the Sellers. ...................................71
Section 8.3    Conditions to Obligations of the Buyer .....................................72

32863747.1

**ARTICLE IX.** TERMINATION ................................................................72

    Section 9.1    Termination. ......................................................72
    Section 9.2    Effect of Termination. .....................................74

**ARTICLE X.** GENERAL PROVISIONS ................................................74

    Section 10.1    Nonsurvival of Representations, Warranties and Covenants. ...................74
    Section 10.2    Fees and Expenses. ....................................74
    Section 10.3    Amendment and Modification. ................................74
    Section 10.4    Waiver. ..........................................................75
    Section 10.5    Notices. .........................................................75
    Section 10.6    Interpretation. ..................................................76
    Section 10.7    Entire Agreement. ...........................................76
    Section 10.8    Parties in Interest. ...........................................77
    Section 10.9    Governing Law. .............................................77
    Section 10.10   Submission to Jurisdiction. .............................77
    Section 10.11   Disclosure Generally. .....................................77
    Section 10.12   No Recourse. .................................................78
    Section 10.13   Assignment; Successors. ................................78
    Section 10.14   Enforcement. .................................................79
    Section 10.15   Currency. ......................................................79
    Section 10.16   Severability. ..................................................79
    Section 10.17   Waiver of Jury Trial. .....................................79
    Section 10.18   Counterparts. .................................................79
    Section 10.19   No Presumption Against Drafting Party. .....................79

## INDEX OF EXHIBITS

EXHIBIT A          FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION
                   AGREEMENT

EXHIBIT B          FORM OF MASTER LEASE ASSIGNMENT

EXHIBIT C          SETTLEMENT TERM SHEET


## INDEX OF SCHEDULES

SCHEDULE I         TRANSFERRED SUBSIDIARIES

SCHEDULE II        TRANSFERRED PROJECTS & CONTRACTS

## MEMBERSHIP INTEREST AND ASSET PURCHASE AGREEMENT

**MEMBERSHIP INTEREST AND ASSET PURCHASE AGREEMENT**, dated as of _____, 2025 (this "Agreement"), by and among (i) OYA Renewables Development LLC, a Delaware limited liability company ("ORD"), OYA-Omni Development Company, LLC, a Delaware limited liability company ("OYA-OMNI" and together with ORD, each a "Seller" and collectively, the "Sellers"), and OYA Renewables Construction Holdings 3 LLC, a Delaware limited liability company ("ORCH 3"), and (ii) GDEV OYA Lender I, LLC (the "Buyer") a Delaware limited liability company, as Agent for the Secured Parties (each as defined hereafter).

## RECITALS

A.      The Sellers directly and indirectly through the Transferred Subsidiaries are engaged in the business of originating, developing, and constructing community distributed generation solar projects (the "Business").

B.      Each of the Sellers owns the percentage of all of the issued and outstanding shares of capital stock and other equity interests (collectively, the "Transferred Equity") of certain entities set forth on Schedule I hereto (such entities, together with their respective Subsidiaries, identified on Schedule I, the "Transferred Subsidiaries").

C.      The Sellers and certain of their Affiliates (the "Debtors") have filed voluntary cases (collectively, the "Bankruptcy Case") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

D.      Buyer, as Agent on behalf of the Secured Parties, desires to credit bid, for the benefit of and on behalf of the Secured Parties, the amount of $16,000,000 (the "Credit Bid Amount") to purchase the Transferred Assets, subject to adjustment by mutual agreement of the Parties prior to the consummation of the transactions contemplated by this Agreement pursuant to Section 363(k) of the Bankruptcy Code.

E.      The Sellers desire to sell to the Buyer all of the Transferred Assets, including the Transferred Equity, and transfer to the Buyer the Assumed Liabilities and the Buyer desires to purchase from the Sellers the Transferred Assets, including the Transferred Equity and assume the Assumed Liabilities in a sale authorized by the Bankruptcy Court pursuant to, *inter alia*, Sections 105, 363 and 365 of the Bankruptcy Code, in accordance with the other applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and the local rules for the Bankruptcy Court, all on the terms and subject to the conditions set forth in this Agreement and the Sale Order.

F.      The execution and delivery of this Agreement and the Sellers' ability to consummate the transactions set forth in this Agreement are subject to, among other things, the entry of the Sale Order under, *inter alia*, Sections 105, 363 and 365 of the Bankruptcy Code, as further set forth herein. The Parties desire to consummate the proposed transaction as promptly as practicable after the Bankruptcy Court enters the Sale Order.

## AGREEMENT

In consideration of the foregoing and the mutual covenants and agreements herein contained, and intending to be legally bound hereby, the Parties agree as follows:

## ARTICLE I.
## DEFINITIONS

Section 1.1    <u>Certain Defined Terms</u>. For purposes of this Agreement:

"<u>Accounts Receivable</u>" means any and all (a) accounts receivable, notes receivable, trade accounts, unbilled receivables, contract billings and other amounts owed to any Seller (whether current or non-current), together with all security or collateral therefor and any interest or unpaid financing charges accrued thereon, including all causes of action pertaining to the collection of amounts payable, or that may become payable, to any Seller with respect to products sold or services performed on or prior to the Closing Date, (b) license and royalty receivables, (c) rebate receivables from suppliers or vendors, (d) any other amounts due to any Seller, classified as accounts receivable in accordance with GAAP, and (e) any and all claims, remedies or other rights relating to any of the foregoing, together with any interest or unpaid financing charges accrued thereon.

"<u>Action</u>" means any claim, charge, investigation, audit, complaint, action, suit, arbitration or proceeding (including any civil, criminal, administrative, investigative or appellate proceeding or any informal proceeding) by or before any Governmental Authority, other than an Avoidance Action.

"<u>Affiliate</u>" means, with respect to any Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such first Person, where "control," "controlled by" and "under common control with," means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, as trustee or executor, as general partner or managing member, by contract or otherwise.

"<u>Alternative Transaction</u>" means any proposal, offer or transaction with respect to a plan of reorganization or dissolution, winding up, liquidation, reorganization, assignment for the benefit of creditors, merger, consolidation, business combination, joint venture, partnership, sale of assets or equity interests, financing (debt or equity), refinancing or restructuring, in each case, involving any Project and/or any portion or all or substantially all of the Transferred Assets (other than the transactions contemplated in this Agreement) that competes with or renders consummation of the this Agreement or the transactions contemplated hereby and thereby unable to be consummated or would reasonably be expected to materially frustrate the purposes of this Agreement. For the avoidance of doubt, any proposal, offer, or transaction involving the sale of any of, any portion of or any subset of the Transferred Assets (including any Transferred Subsidiary) shall be deemed to constitute an "Alternative Transaction" for purposes of this Agreement.

"Ancillary Agreements" means, collectively, the agreements to be executed in connection with the transactions contemplated by this Agreement, including the Assignment Agreement.

"Anti-Bribery and Anti-Corruption Laws" means all Laws of any applicable jurisdiction related to anti-bribery or anti-corruption (governmental or commercial) including, without limitation, the U.S. Foreign Corrupt Practices Act, the U.K. Bribery Act, and all national and international Laws enacted to implement the OECD Convention on Combating Bribery of Foreign Officials in International Business Transactions.

"Anti-Terrorism and Money Laundering Laws and Regulations" means applicable Laws (a) prohibiting transactions with Persons who (i) commit, threaten to commit, or support terrorism, (ii) engage in transactions or conduct operations that are illegal, nefarious, and/or criminal in nature, and (iii) participate in monetary transactions in property derived from specified unlawful activity, or (b) otherwise relating to prohibitions regarding the illegal laundering of the proceeds of any criminal activity and preventing the funds, proceeds and revenue of the Business, Transferred Assets, the Projects, the Transferred Subsidiaries and their respective Affiliates from being used in connection with the advancement of criminal activity, including the U.S.A PATRIOT Act of 2001 and all "know your customer" rules and other applicable regulations.

"Asset Management Agreement" means those agreements set forth in Section 1.1(a) of the Disclosure Schedules.

"Asset Taxes" means Taxes other than Income Taxes and Transfer Taxes.

"Auction" has the meaning set forth in the Sale Procedures Order.

"Avoidance Actions" means any and all claims for relief of the Sellers under Chapter 5 of the Bankruptcy Code or state fraudulent conveyance, fraudulent transfer, or similar Laws.

"Back-Up Bidder" has the meaning set forth in the Sale Procedures Order.

"Benefit Plan" means any (a) "employee benefit plan" within the meaning of Section 3(3) of ERISA, whether or not subject to ERISA, (b) other benefit and compensation plan, contract, policy, program, practice, arrangement or agreement, including pension, profit-sharing, savings, termination, executive compensation, phantom stock, change-in-control, retention, salary continuation, vacation, sick leave, disability, death benefit, insurance, hospitalization, medical, dental, life, employee loan, educational assistance, fringe benefit, deferred compensation, retirement or post-retirement, severance, equity or equity-based compensation, incentive and bonus plan, contract, policy, program, practice, arrangement or agreement and (c) other employment, consulting or other individual agreement, plan, practice, policy, contract, program, and arrangement.

"Books and Records" means, all files, databases, documents, instruments, books and records, plans, advertising and promotional materials, information, data and other similar items maintained by (or on behalf of and in the control of) the Sellers and their Subsidiaries, whether in written or electronic or any other format, including customer and supplier lists, mailing

lists, studies, drawings, draft and final material prepared in connection with obtaining any Permits or submitting any applications for any Permits or to any Governmental Authority having jurisdiction over a Project, sales and promotional literature and other sales related materials, that are related solely to the Business (excluding with respect to Excluded Assets, and in such case solely to such extent, but including each Transferred Subsidiary's Organizational Documents, minute books, membership interest certificates and membership interest transfer ledgers, but excluding emails).

"Business Day" means any day that is not a Saturday, a Sunday or other day on which banks are required or authorized by Law to be closed in the State of New York or the State of Texas.

"Buyer Fundamental Representations" means the representations and warranties of the Buyer set forth in Section 4.1, Section 4.2, and Section 4.4.

"Buyer Material Adverse Effect" means any event, change, occurrence or effect that would materially and adversely affect the ability of the Buyer to perform its obligations under this Agreement or the Ancillary Agreements or to consummate the transactions contemplated hereby or thereby.

"CARES Act" means, collectively, the Coronavirus Aid, Relief, and Economic Security Act (P.L. 116-136), enacted March 27, 2020, or any similar applicable federal, state, local or foreign Law, as may be amended and any administrative or other guidance (including "Division N—Additional Coronavirus Response and Relief" of the "Consolidated Appropriations Act, 2021" (H.R. 133), IRS Notices 2020-22, 2020-65, 2021-11 and any Presidential Memoranda or Executive Order (including the Memorandum on Deferring Payroll Tax Obligations in Light of the Ongoing COVID-19 Disaster issued on August 8, 2020)) published with respect thereto by any Governmental Authority.

"Cash and Cash Equivalents" means, with respect to any Person, all of such Person's cash (including petty cash and checks received on the Closing Date), checking account balances, marketable securities, certificates of deposits, time deposits, bankers' acceptances, commercial paper, security entitlements, securities accounts, Accounts Receivable, commodity Contracts, commodity accounts, government securities and any other cash equivalents, whether on hand, in transit, in banks or other financial institutions, or otherwise held.

"Cash Cutoff Time" has the meaning set forth in the definition of "Closing Cash Amount."

"Closing Cash Amount" means the Cash and Cash Equivalents of the Transferred Subsidiaries as of 4:00 p.m. New York Time on the date that is one (1) Business Day prior to the Closing Date (the "Cash Cutoff Time"), as set forth in the Cash Statement; provided that the Closing Cash Amount shall not be less than zero.

"Code" means the Internal Revenue Code of 1986, as amended.

"Community Adder Program" means the upfront incentive offered through NYSERDA's NY-Sun program to community distributed generation projects, for which more

information can be found here: https://www.nyserda.ny.gov/All-Programs/NY-Sun/Contractors/Dashboards-and incentives/Community-Adder.

"Community Solar Program" means the Community Distributed Generation program in the State of New York as developed by the New York Public Service Commission as updated from time to time.

"Community Solar Rules" means (a) with respect to each Project located in New York, all related tariffs from investor-owned public utilities (including any Transmission Provider) in New York and all related applicable Laws and (b) any Laws, rules, regulations, and interpretative guidance of any Governmental Authority, Local Utility or Transmission Provider or the various agencies, departments or administrative or governmental bodies thereof, and any regulatory guidance, determinations of (or agreements with) a regulatory authority, directions or instructions from (or agreements with) any regulatory authority, and judicial, administrative, or regulatory examiner interpretations, to the extent applicable to the Community Solar Subscription Agreements in effect.

"Community Solar Subscription Agreements" means any and all agreements entered into by and among the Transferred Subsidiaries with customers eligible to participate in the corresponding program with the utility.

"Competing Bid" means any bid contemplating an Alternative Transaction.

"Confidentiality Agreement" means that certain letter agreement regarding confidentiality dated November 25, 2024, by and among ORD, OYA Renewables Construction and Yield Holdings LLC, and OYA Renewables EquipmentCo LLC, on the one hand, and Greenbacker Development Opportunities GP 1, LLC, on the other hand.

"Contract" means any contract, agreement, insurance policy, lease, license, sublicense, sales order, purchase order, instrument, or other commitment (whether written or oral), that is binding on any Person or any part of its assets or properties under applicable Law.

"Copyrights" has the meaning set forth in the definition of "Intellectual Property."

"Credit Agreement" means that certain Credit Agreement, dated as of December 22, 2020 (as amended, restated, supplemented or otherwise modified from time to time) by and among ORD, the lenders from time to time party thereto and GDEV OYA Lender I, LLC as Agent for the Secured Parties (each, as defined therein).

"Credit Agreement Indebtedness" means the amount owed by ORD pursuant to the Credit Agreement.

"Data Room" means the electronic data room at the following URL address: https://ankura.sharefile.com/home/shared/foe7c48c-dbc4-4c63-9fbc-994a495d7ca8, established by the Sellers or any of their Affiliates or Representatives and to which the Buyer or any of its Affiliates or Representatives had access.

"December ORCH 3 MIPA" means that certain Membership Interest Purchase Agreement, by and between OYA Renewables Construction Holdings 3 LLC and NY DRS Finco VIII, LLC, dated as of December 19, 2023.

"Deferred Payment Agreement" means each of the Contracts set forth on Section 1.1(d) of the Disclosure Schedules.

"Disqualified Person" means (a) the United States, any state or political subdivision thereof, any possession of the United States, or any agency or instrumentality of any of the foregoing, (b) any organization which is exempt from Tax imposed by the Code (including any former Tax-exempt organization within the meaning of Section 168(h)(2)(E) of the Code and any Tax-exempt controlled entity within the meaning of Section 168(h)(6)(F)(iii) of the Code if such entity has not made the election provided in Section 168(h)(6)(F)(ii) of the Code), (c) any Person who is not a United States Person, (d) any Indian tribal government described in Section 7701(a)(40) of the Code, (e) any Person described in Treasury Regulations Section 1.48-1(j) or (k), or (f) any partnership or other pass-through entity, any direct or indirect partner (or other holder of an equity or profits interest) of which is an organization or entity described in the preceding clauses (a) through (e).

"Disregarded Entity" means an entity that is disregarded as separate from its regarded owner within the meaning of Treasury Regulation Section 301.7701-3.

"Economic Sanctions and Trade Controls Laws and Regulations" means (a) all applicable U.S. and applicable international economic and trade sanctions, including any sanctions or regulations ad-ministered or enforced by the U.S. Department of State, the U.S. Department of Treasury (including the Office of Foreign Assets Control) and any executive orders, rules and regulations relating thereto; (b) all applicable Laws concerning exportation, including rules and regulations administered by the U.S. Department of Commerce, the U.S. Department of State or the Bureau of Customs and Border Protection of the U.S. Department of Homeland Security; and (c) any applicable federal or international anti-boycott Laws, including any executive orders, rules and regulations.

"Encumbrance" means any charge, claim, mortgage, lien, lease, hypothecation, deed of trust, encumbrance, option, pledge, security interest, preemptive right, right of use, first offer or first refusal, easement, servitude, restrictive covenant or condition, encroachment or other restriction of any kind.

"Environmental Claim" means any action, cause of action, claim, suit, proceeding, investigation, enquiry, Order, demand or written notice by any Person alleging Liability (including Liability for investigatory costs, governmental response costs, remediation or clean-up or the costs thereof, natural resources damages, property damages, personal injuries, attorneys' fees, fines or penalties) arising out of, based on, resulting from, or relating to (a) the presence, Release or threatened Release of, or exposure to any Hazardous Material; (b) any violation, or alleged violation, of any Environmental Law; or (c) any other matters for which liability is or may be imposed under any Environmental Law.

"Environmental Law" means any Law relating to pollution, the protection of, restoration or remediation of the environment (including natural resources and endangered or threatened species), or the protection of human health and safety (to the extent relating to exposure to Hazardous Material), including the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.*, as amended, and other Laws relating to: (a) the exposure to, or Releases or threatened Releases of, Hazardous Material; (b) the presence, generation, manufacture, processing, labeling, distribution, use, transport, treatment, containment, storage, disposal, or handling of Hazardous Material; or (c) recordkeeping, notification, disclosure and reporting requirements respecting Hazardous Material.

"Environmental Permit" means any Permit required under or issued pursuant to any Environmental Law.

"EPC Agreement" means, with respect to any Project, a Contract for engineering, procurement or construction, a balance of plant agreement or similar agreement pursuant to which a Transferred Subsidiary undertook the construction of such Project (including any conceptual design, detailed design, front end engineering and development, and as built engineering documents and plans related thereto).

"Equity Interest" means, with respect to any Person, any share of capital stock of, or other equity interest in, such Person or any security exercisable or exchangeable for, or convertible into, any share of capital stock of, or other equity interest (including any security exercisable or exchangeable for, or convertible into, any share of capital stock or other equity interest) in, such Person, including any warrant, option, convertible or exchangeable note or debenture, profits interest or phantom equity right, whether voting or non-voting.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"FERC" means the Federal Energy Regulatory Commission and any successor thereto.

"Final DIP Order" means that certain Final Order pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (a) Authorizing the Debtors to (i) Use Cash Collateral, (ii) Obtain Secured Superpriority Postpetition Financing and Granting Liens and Superpriority Administrative Claims, (iii) Provide Adequate Protection, and (b) Granting Relate Relief, filed on December 18, 2024 in the Bankruptcy Court.

"Final Order" means an Order of the Bankruptcy Court or any other court of competent jurisdiction (a) as to which the time to appeal shall have expired and as to which no appeal shall then be pending or (b) if a timely appeal shall have been filed or sought, either (i) no stay of the Order shall be in effect, (ii) no motion or application for a stay of the Order shall be filed and pending or such motion or application shall have been denied, or (iii) if such a stay shall have been granted, then (A) the stay shall have been dissolved or (B) a final order of the district court or circuit court having jurisdiction to hear such appeal shall have affirmed the Order and the time allowed to appeal from such affirmance or to seek review or rehearing (other than a motion

pursuant to Rule 60(b) of the Federal Rules of Civil Procedure) thereof shall have expired and the taking or granting of any further hearing, appeal or petition for certiorari shall not be permissible, and if a timely appeal of such district court or circuit court Order or timely motion to seek review or rehearing of such Order shall have been made, any appellate court having jurisdiction to hear such appeal or motion (or any subsequent appeal or motion to seek review or rehearing) shall have affirmed the district court's (or lower appellate court's) order upholding the Order of the Bankruptcy Court and the time allowed to appeal from such affirmance or to seek review or rehearing thereof shall have expired and the taking or granting of any further hearing, appeal or petition for certiorari shall not be permissible; provided, however, that the Buyer in its sole discretion may treat any Order for which a motion or application for a stay is filed or pending as a Final Order by affirmatively agreeing to such treatment in a writing signed by the Buyer.

"FPA" means the Federal Power Act, as amended, and FERC's implementing regulations thereunder.

"Fraud" means, with respect to any Person, the knowing and intentional misrepresentation of a fact in the making of any representation or warranty set forth in Article III or Article IV, as applicable, that constitutes actual and intentional fraud under Delaware Law; provided, however, that "Fraud" shall not include equitable fraud, promissory fraud, unfair dealings fraud, constructive fraud, any torts (including a claim for fraud) based on negligence (including gross negligence) or recklessness, grossly negligent or negligent misrepresentation, or omission, or knowledge of the fact that the Person making such representation or warranty does not have sufficient information to make the statement contained in the representation and warranty set forth herein but which is nevertheless made as a matter of contractual risk allocation between the Parties.

"GAAP" means United States generally accepted accounting principles as in effect from time to time.

"GDEV Additional Consideration" has the meaning set forth in the Settlement Term Sheet.

"Governmental Approval" means any authorization, approval, consent, license, permit, variance, waiver, certificate of authority, franchise, ruling, tariff, certification, exemption, filing, notice to, declarations of, or registration by or with, any Governmental Authority.

"Governmental Authority" means any United States or non-United States national, federal, municipal, state, provincial, territorial, or local governmental or quasi-governmental, administrative, Taxing or regulatory authority, department, agency, board, bureau, official, court, commission, quasi-governmental or administrative functions of or pertaining to government or similar powers or authority, including, FERC, NYPSC, NYSERDA, the North American Electric Reliability Corporation and any "regional entity" thereof (as that term is defined in 18 C.F.R. § 39.1), any RTO/ISO (including NYISO) and such RTO/ISO's independent market monitor, or any other judicial or arbitral body or other similar authority or instrumentality (including any self-regulatory authority, securities exchange, court or similar tribunal), including the Bankruptcy Court.

"Government Official" means any officer or employee of a Governmental Authority, or any person acting in an official capacity for or on behalf of any such Governmental Authority, or any political party, party official or candidate thereof.

"Guaranty, Pledge and Security Agreement" means that certain Guaranty, Pledge and Security Agreement, dated as of December 22, 2020 (as amended, restated, supplemented or otherwise modified from time to time), by and among OYA Solar CDG LLC, OYA Solar Corp., OYA Solar RE LLC and Buyer.

"Hazardous Material" means any material, substance, chemical, or waste (or combination thereof) (a) that is listed, defined, designated, regulated or classified as hazardous, radioactive, dangerous or toxic or as a pollutant or contaminant under any Environmental Law, including petroleum or petroleum products and byproducts, oil, asbestos, radon, urea-formaldehyde, per- or polyfluoroalkyl substances or other emerging contaminants, explosives, polychlorinated biphenyls (PCBs) or substances containing PCBs, or radioactive materials, or (b) pursuant to which Liability is imposed under any Environmental Law, or which forms the basis of an Environmental Claim.

"Income Taxes" means (i) all Taxes based upon, measured by, or calculated with respect to gross or net income, gross or net receipts or profits (including franchise Taxes and any capital gains, alternative minimum, and net worth Taxes, but excluding ad valorem, property, excise, severance, production, sales, use, real or personal property transfer or other similar Taxes), (ii) Taxes based upon, measured by, or calculated with respect to multiple bases (including corporate franchise, doing business or occupation Taxes) if one or more of the bases upon which such Tax may be based, measured by, or calculated with respect to is included in clause (i) above, or (iii) withholding Taxes measured with reference to or as a substitute for any Tax included in clauses (i) or (ii) above.

"Indebtedness" means, as to any Person as of any date of determination, without duplication, all obligations of such Person (a) for borrowed money, (b) evidenced by notes, bonds, debentures or similar instruments, (c) for the deferred purchase price of goods or services (other than trade payables or accruals incurred in the ordinary course of business consistent with past practice), (d) any off-balance sheet financings, (e) for amounts drawn with respect to any letter of credit issued on behalf of such Person, (f) in the nature of guaranties by such Person made with respect to the obligations described in clauses (a) through (e) of this definition of any other Person, and (g) all accrued or unpaid interest, premiums, penalties, breakage costs, unwind costs, fees, termination costs, redemption costs, expenses, and other charges with respect thereto, in each case, with respect to the obligations described in clauses (a) through (f) of this definition.

"Intellectual Property" means all intellectual property and intellectual property rights and rights in confidential information of every kind and description throughout the world, including all U.S., foreign, regional and international (a) trade names, trademarks and service marks, business names, corporate names, domain names, trade dress, logos, slogans, design rights, and other similar designations of source or origin, together with the goodwill symbolized by any of the foregoing ("Trademarks"); (b) patents, patent applications, invention disclosures, and all related continuations, continuations-in-part, divisionals, reissues, re-examinations, substitutions, and extensions and restorations thereof, including any supplementary protection certificates and

the like, ("Patents"); (c) copyrights and copyrightable subject matter (whether registered or unregistered) ("Copyrights"); (d) rights in computer programs (whether in source code, object code, or other form) and software systems, algorithms, databases, compilations and data, technology supporting the foregoing, and all documentation, including user manuals and training materials, related to any of the foregoing ("Software"); (e) any information and materials, whether proprietary or not and whether patentable or not, including ideas, concepts, formulas, methods, procedures, designs, compositions, plans, documents, inventions, discoveries, works of authorship, components, reagents, materials, compounds, biological materials, drawings, specifications, trade secrets and rights in any data ("Know-How"); (f) rights of publicity, privacy rights, and rights to personal information; (g) all rights in the foregoing and in other similar intangible assets; (h) all applications and registrations for any of the foregoing; and (i) all rights and remedies (including the right to sue for and recover damages) against past, present, and future infringement, misappropriation, or other violation relating to any of the foregoing.

"Inter-Company Payable" means any accounts payable, trade accounts payable and other amounts payable owed by a Seller to a Seller or a Transferred Subsidiary.

"Inter-Company Receivable" means any Accounts Receivable, trade accounts and other amounts receivable owed to a Seller by a Seller or a Transferred Subsidiary.

"Interconnection Agreement" means for any Transferred Subsidiary, a New York State Standardized Interconnection For New Distributed Generators and Energy Storage Systems 5 MW or Less Connected in Parallel with Utility Distribution Systems Contract for a Project entered into by and between the applicable Transferred Subsidiary and Transmission Provider and the New York Standardized Interconnection Requirements applicable to the Project thereunder.

"IRS" means the Internal Revenue Service of the United States.

"June ORCH 3 MIPA" means that certain Membership Interest Purchase Agreement, by and between OYA Renewables Construction Holdings 3 LLC and NY DRS Finco VIII, LLC, dated as of June 13, 2024.

"Know-How" has the meaning set forth in the definition of "Intellectual Property."

"Knowledge" with respect to the Sellers, means the actual (but not constructive or imputed) knowledge of the persons listed in Section 1.1(b) of the Disclosure Schedules as of the date of this Agreement (or, with respect to a certificate delivered pursuant to this Agreement, as of the date of delivery of such certificate) after reasonable due inquiry.

"Law" means any federal, state, provincial, local, municipal, foreign or other statute, law, legislation, constitution, principle of common law, resolution, ordinance, code, regulation, rule, proclamation, treaty, convention, code, injunction, judgment, decree, ruling, directive, pronouncement, requirement, determination, decision, opinion, order, ordinances and regulations (including binding determinations and interpretations) of any Governmental Authority with jurisdiction over the Parties, including the Community Solar Rules, in each case, to the extent applicable to any Person, its assets or a transaction.

"Lease" means the Seller Leases and the Transferred Subsidiary Leases.

"Leased Real Property" means the Seller Leased Real Property and the Transferred Subsidiary Leased Real Property.

"Liability" means any debt, adverse claim, Loss, claim, lien, damage, demand, fine, judgment, penalty, liability, duty, responsibility, expense or obligation of any kind, character, or description (whether known or unknown, asserted or unasserted, direct or indirect, fixed, absolute or contingent, matured or unmatured, accrued or unaccrued, ascertained or ascertainable, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, vested or unvested, executory, determined, determinable, in contract, tort, strict liability, or otherwise, or otherwise due or to become due).

"Local Utility" means the interconnecting electric utility where the applicable Project is located.

"Loss" or "Losses" means any and all damages, fines, penalties, Liabilities, deficiencies, losses, interest, awards, judgments and expenses (including interest, court costs, reasonable fees of attorneys, accountants and other experts or other reasonable expenses of litigation or other Action or of any claim, default or assessment).

"Material Adverse Effect" means any event, change, condition, occurrence or effect that individually or in the aggregate has had, or would reasonably be expected to have, a material adverse effect on (a) the business, properties, liabilities, financial condition or results of operations of the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), including the Transferred Subsidiaries, Transferred Assets and Assumed Liabilities, taken as a whole, or (b) the ability of the Sellers to perform their obligations under this Agreement or the Ancillary Agreements or to consummate the transactions contemplated hereby or thereby, in each case of the preceding clause (a), other than any event, change, condition, occurrence or effect to the extent arising out of, attributable to or resulting from, alone or in combination, (i) general changes or developments in the industry in which the Business operates, (ii) changes in general domestic or foreign economic, social, political, financial market or geopolitical conditions (including the existence, occurrence, escalation, outbreak or worsening of any hostilities, war, police action, acts of terrorism or military conflicts, whether or not pursuant to the declaration of an emergency or war), (iii) natural disasters or calamities, (iv) changes in any applicable Laws or GAAP after the date of this Agreement, (v) the announcement, of this Agreement or the transactions contemplated hereby, (vi) the commencement of the Bankruptcy Case, (vii) any action taken by the Sellers or the Transferred Subsidiaries at the written request of Buyer, or (viii) any failure, in and of itself, to achieve any budgets, projections, forecasts, estimates, plans, predictions, performance metrics or operating statistics (but, for the avoidance or doubt, not the underlying causes of any such failure to the extent such underlying cause is not otherwise excluded from the definition of Material Adverse Effect); provided, however, that the events, changes, conditions, occurrences or effects set forth in clauses (i), (ii), (iii) or (iv) may be taken into account in determining whether there has been or is Material Adverse Effect if such event, change, condition, occurrence or effect has a disproportionate impact on the Business, taken as a whole, relative to the other participants in the industries and markets in which the Business operates.

"Megawatt Block Program" means the NYSERDA NY-Sun Megawatt Block incentive program.

"<u>MIPA Receivables</u>" means the Accounts Receivable of ORCH 3 in connection with the Receivable MIPAs in the form of purchase price milestone or contingent payments to be paid to the Buyer as and when due and payable pursuant to and in accordance with the applicable Receivable MIPA; *provided*, *however*, that with respect to the November ORCH 3 MIPA, MIPA Receivables shall only include the Contingent Payment pursuant to (and as such term is defined in) Section 2.8(b)(i) of the November ORCH 3 MIPA, but exclude any other Accounts Receivable of ORCH 3 under the November ORCH 3 MIPA.

"<u>November ORCH 3 MIPA</u>" means that certain Stock and Asset Purchase Agreement, by and among OYA Renewables Construction Holdings 2 LLC, OYA Renewables Construction Holdings 3 LLC, OYA Renewables EquipmentCo LLC and Radial Power LLC, dated November 6, 2024, as amended as of January 23, 2025.

"<u>NYISO</u>" means the New York Independent System Operator, Inc. or any successor in function.

"<u>NYPSC</u>" means the New York Public Service Commission or any successor thereto.

"<u>NYSERDA</u>" means the New York Energy Research and Development Authority and any successor in function.

"<u>NYSERDA Incentive Payments</u>" means the amounts paid or payable to a Transferred Subsidiary or the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) with respect to a Project in accordance with the Megawatt Block Program.

"<u>OFAC</u>" means the U.S. Department of Treasury's Office of Foreign Assets Control.

"<u>OFAC Blocked Parties List</u>" means the list of "Specially Designated Nationals and Blocked Persons" maintained by OFAC.

"<u>Off-the-Shelf Software</u>" means non-exclusive licenses for software that are (a) licensed under "shrink-wrap" or "click-through" Contracts, (b) generally commercially available on reasonable nondiscriminatory terms through commercial distributors or in a retail store, or (c) licensed from a third-party for amounts less than $30,000 annually.

"<u>ORCH 3 MIPAs</u>" means, collectively, the June ORCH 3 MIPA, the November ORCH 3 MIPA and the December ORCH 3 MIPA.

"<u>Order</u>" means any award, writ, injunction, judgment, order, decree, rule, ruling, directive, determination, or award entered, issued, made, or rendered by any Governmental Authority, whether preliminary, interlocutory or final, including by the Bankruptcy Court in the Bankruptcy Cases (including the Sale Order).

"Ordinary Course of Business" means the operation of the Business in the ordinary and usual course consistent with past practice of the Sellers and Transferred Subsidiaries in accordance with applicable Law.

"Organizational Documents" means, with respect to any Person that is not a natural person the articles or certificate of incorporation, formation or organization, memorandum of association, articles of association and by-laws, limited partnership agreement, partnership agreement, limited liability company agreement or operating agreement or such other organizational documents of such Person or which establish the legal personality of such Person.

"Party" or "Parties" means, individually or collectively, the Buyer and the Sellers.

"Patents" has the meaning set forth in the definition of "Intellectual Property."

"Permit" means any authorization, approval, consent, license, permit, variance, waiver, certificate of authority, franchise, ruling, tariff, certification, exemption, filing, notice to, declaration of, or registration by or with any Governmental Authority.

"Permitted Encumbrance" means (a) statutory liens for current Taxes not yet due and payable or the validity or amount of which is being contested in good faith by appropriate proceedings, in each case for which adequate reserves have been established and for which there is no material risk of seizure of any property or asset, (b) mechanics', carriers', workers', repairers' and other similar liens arising or incurred in the Ordinary Course of Business relating to obligations (i) as to which there is no default on the part of any of the Sellers or the Transferred Subsidiaries, (ii) for a period with respect to amounts not yet overdue (provided that such amounts arising or accruing prior to Closing remain Excluded Liabilities) and (iii) that are not individually or in the aggregate material to the continued use, value or operation of the Transferred Assets in the conduct of the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) as currently conducted, or pledges, deposits or other liens securing the performance of bids, trade Contracts, leases or statutory obligations, (c) with respect to the Leased Real Property, minor title defects or irregularities that do not, individually or in the aggregate, materially impair the value or the current use of such Leased Real Property, (d) any Encumbrances that will be removed or released by operation of the Sale Order on or prior to the Closing Date and (e) any Encumbrance set forth on Section 1.1(e) of the Disclosure Schedules.

"Person" means an individual, corporation, partnership, limited liability company, limited liability partnership, syndicate, person, trust, association, organization or other entity, including any Governmental Authority, and including any successor, by merger or otherwise, of any of the foregoing.

"Petition Date" means November 6, 2024.

"Pledge Agreement" means that certain Pledge Agreement, dated as of December 22, 2020 (as amended, restated, supplemented or otherwise modified from time to time), by and among OYA Solar NY, L.P., OYA Solar US GP Inc., and Buyer.

"Post-Closing Tax Period" means any Tax year or Tax period that begins after the Closing Date, and with respect to the Straddle Period, the portion of such period that begins after the Closing Date.

"Power Purchase Agreement" means, with respect to a Project, any power purchase agreement, energy hedge or other offtake agreement pursuant to which such Project will sell any energy (whether physical, virtual or financial), capacity or ancillary services associated with such energy, or capacity and environmental or other attributes created or that otherwise arise from the generation of electric energy from a renewable energy source, in each case, produced by or attributable to such Project.

"Pre-Closing Tax Period" means any Tax year or Tax period that ends on or before the Closing Date and, with respect to the Straddle Period, the portion of such period that ends on, and including, the Closing Date.

"Project" means (a) each project (and the Transferred Assets constituting such project) owned by or in the name of a Seller each as described on Schedule II, and (b) each project owned by a Transferred Subsidiary identified on Schedule I.

"PUHCA" means the Public Utility Holding Company Act of 2005 and FERC's regulations promulgated thereunder.

"QF" means a "qualifying small power production facility" as that term is defined in 16 U.S.C. Section 796 and FERC's implementing regulations thereunder.

"Real Property Document" means any Lease, Easement, Option and any grant deed or other type of deed with respect to the Real Property.

"Receivable MIPAs" means each of the ORCH 3 MIPAs.

"Receivables Consideration" means the consideration hereunder in exchange for the Buyer's right, title and interest in and to the MIPA Receivables, which shall be an amount equal to the GDEV Additional Consideration.

"Regulatory Exemptions" means the exemptions granted in FERC's regulations at 18 C.F.R. Part 292 Subpart F applicable to eligible QFs, including the exemption from PUHCA regulation by FERC, exemption from state Laws and regulations respecting the rates of electric utilities and the financial and organizational regulation of electric utilities, and the exemptions from the requirements of Sections 204, 205 and 206 of the FPA provided under 18 C.F.R. § 292.601(c)(1).

"Related Party" means (a) any Seller; (b) any Affiliate of any Seller; (c) each individual who is or who has been at any time since inception of a Transferred Subsidiary, an officer or director of any such Transferred Subsidiary; (d) each member of the immediate family of each of the Persons referred to in clause (c) of this definition; or (e) any Affiliate of a Person described in clause (c) or (d).

"Release" means any release, spill, emission, discharge, leaking, pouring, dumping or emptying, pumping, injection, deposit, disposal, dispersal, leaching or migration into the indoor or outdoor environment (including soil, ambient air, surface water, groundwater and surface or subsurface strata) or into or out of any property, including the migration of Hazardous Materials through or in the air, soil, surface water, groundwater, or property.

"Representatives" means, with respect to any Person, the officers, managers, directors, principals, employees, agents, auditors, advisors, bankers and other representatives of such Person.

"RTC" means the tax credits provided under Sections 45, 45Y, 48 and 48E of the Code.

"RTO/ISO" means, with respect to each Project, the regional transmission organization or independent service provider applicable to such Project, including NYISO.

"Sale Hearing" means the hearing conducted by the Bankruptcy Court to approve the transactions contemplated by this Agreement, where an executed version of this Agreement is filed with the Sale Order.

"Sale Order" means an Order of the Bankruptcy Court approving this Agreement and the transactions contemplated hereby with such changes as may be required by the Bankruptcy Court that are in form and substance acceptable to the Buyer and the Sellers.

"Sale Procedures" means the bidding procedures reflected in the Sale Procedures Order.

"Sale Procedures Order" means the order of the Bankruptcy Court dated as of December 10, 2024, that, among other things, approved (a) bidding procedures, (b) the form and manner of notice of Auction(s), sale transaction(s), and Sale Hearing(s), and the conduct of the Auction, (c) the procedures for assumption and assignment of Contracts and Leases, and (d) the date for the Auction, if necessary, and Sale Hearing(s).

"Seller Fundamental Representations" means the representations and warranties of the Sellers set forth in Section 3.1, Section 3.2, Section 3.4(a), Section 3.5(a) and (b), and Section 3.18.

"Seller Lease" means a lease, sublease, license, or other use or occupancy agreement with respect to the real property to which a Seller is a party as lessee, sublessee, tenant, subtenant or in a similar capacity.

"Seller Leased Real Property" means the leasehold interests held by a Seller under a Seller Lease (other than any Leases withdrawn pursuant to Section 2.6).

"Seller Taxes" means, without duplication, (i) Taxes imposed on any Seller, its direct or indirect owners, or any Affiliate of the foregoing (other than the Transferred Subsidiaries), (ii) Asset Taxes imposed on or with respect to any Transferred Asset, Project, or Assumed Liability or the Business (excluding with respect to Excluded Assets, and in such case solely to such extent)

relating to the period on or prior to the Closing Date to the extent due and payable prior to the Closing Date, (iii) any Income Taxes imposed with respect to any Transferred Subsidiary, Project, or Assumed Liability or the Business (excluding with respect to Excluded Subsidiaries or Excluded Assets, and in such case solely to such extent) relating to a Pre-Closing Tax Period (including (for the avoidance of doubt) any such Income Taxes allocated to the Pre-Closing Tax Period pursuant to Section 7.3(a)), (iv) any Taxes imposed on or with respect to any Excluded Asset or Excluded Liability, (v) any Transfer Taxes for which any Seller is responsible pursuant to Section 7.1, and (vi) any other Taxes incurred by Sellers, their direct or indirect owners, or any Affiliate of the foregoing (other than the Transferred Subsidiaries) with respect to transactions contemplated by this Agreement.

"Settlement Term Sheet" means that certain Term Sheet, dated [●], 2025, by and among the Debtors, the Unsecured Creditors Committee and the Prepetition GDEV Secured Parties (each as defined thereunder) with respect to the Joint Chapter 11 Plan of OYA Renewables Development LLC and its Debtor Affiliates, a copy of which is attached hereto as Exhibit C.

"Site" means, with respect to any Project, the Leased Real Property and Easement Real Property held by a Seller or the applicable Transferred Subsidiary in respect of such Project (but excluding, for the avoidance of doubt, any Option Real Property).

"Software" has the meaning set forth in the definition of "Intellectual Property."

"Straddle Period" means any taxable period beginning on or before the Closing Date and ending after the Closing Date.

"Subsidiary" of any Person means any entity (a) of which 50% or more of the outstanding share capital, voting securities or other voting equity interests are owned, directly or indirectly, by such Person, (b) of which such Person is entitled to elect, directly or indirectly, at least 50% of the board of directors or similar governing body of such entity or (c) if such entity is a limited partnership or limited liability company, of which (i) such Person or one of its Subsidiaries is a general partner or managing member or has the power to direct the policies, management or affairs or (ii) such Person possesses, directly or indirectly, a 50% or greater interest in the total capitalization or total income of such partnership, limited liability company or similar entity.

"Successful Bidder" has the meaning set forth in the Sale Procedures Order.

"Surety Bonds" means surety bonds, license and permit bonds, financial guarantee bonds, decommissioning bonds, road use bonds, bid bonds, performance bonds, payment bonds and all similar bonds.

"Target of Sanctions" means any Person that is located in, incorporated under the Laws of, or owned or (directly or indirectly) controlled by Persons with which applicable Economic Sanctions and Trade Controls Laws and Regulations prohibit or restrict dealings.

"Tax Equity Documents" means any Contract with respect to which there is a tax equity investment.

"Tax Return" means any return, document, declaration, report, claim for refund, statement, estimation, disclosure, information statement or other information or filing relating to Taxes, including any schedule or attachment thereto or amendment thereof, that is filed with or supplied to, or required to be filed with or supplied to, any Governmental Authority.

"Taxes" means (a) any and all U.S. federal, state and local, non-U.S., and other taxes, charges, fees, duties, levies, tariffs, imposts, tolls, customs or other assessments, including all net income, gross income, capital gains, gross receipts, sales, use, ad valorem, transfer, franchise, profits, branch profits, profit share, license, lease, service, service use, value added, unclaimed property, escheat, withholding, payroll, employment, fringe, fringe benefits, excise, estimated, severance, stamp, occupation, premium, property, windfall profits, wealth, net wealth, net worth, payment or fee in lieu of taxes (or similar arrangement), export and import fees and charges, registration fees, tonnage, vessel, deposits, or other taxes, fees, assessments, customs, duties, levies, tariffs, imposts, tolls, or charges of any kind whatsoever imposed by any Governmental Authority, together with any interest, penalties, inflationary adjustments, additions to tax, fines or other additional amounts imposed thereon, with respect thereto, or related thereto, or in lieu thereof, wherever and whenever imposed, (b) any and all liability for the payment of any items described in clause (a) above arising from, through, attributable to, or with respect to a place of business, permanent establishment, or a branch or as a result of being (or ceasing to be) a member of a fiscal unity, affiliated, consolidated, combined, unitary, or other similar group or being included (or ceasing to be included) in any Tax Return related to such group, (c) any and all liability for the payment of any amounts as a result of any successor or transferee liability, or by operation of law, in respect of any items described in clause (a) or clause (b) above, and (d) any and all liability for the payment of any items described in clause (a) or clause (b) above as a result of, or with respect to, any express or implied obligation to indemnify any other Person pursuant to any tax sharing, tax indemnity or tax allocation agreement or similar agreement or arrangement with respect to taxes.

"Trademarks" has the meaning set forth in the definition of "Intellectual Property."

"Transferred Contracts" means all Contracts and Seller Leases of each Seller that are listed in Section 1.1(c) of the Disclosure Schedules, which schedule shall be provided by Buyer to the Sellers as provided in, and may be adjusted pursuant to, Section 2.6.

"Transferred Subsidiary Lease" means a lease, sublease, license, or other use or occupancy agreement with respect to the real property to which a Transferred Subsidiary is a party as lessee, sublessee, tenant, subtenant or in a similar capacity.

"Transferred Subsidiary Leased Real Property" means the leaseholder interests held by a Transferred Subsidiary under a Transferred Subsidiary Lease.

"Transmission Provider" means, with respect to a Project, the Person that owns, operates and maintains the portion of the electric distribution system to which the Project interconnects or is designed to interconnect.

"Treasury Regulations" means the regulations promulgated by the U.S. Department of the Treasury pursuant to the Code.

"Trustee" means any trustee or fiduciary appointed to act on behalf of the Debtors or as a successor to the Debtors.

"United States Person" means a United States person within the meaning of Section 7701(a)(30) of the Code.

"VDER Program" means the Value of Distributed Energy Resources compensation mechanism established by the NYPSC, as implemented by NYSERDA.

Section 1.2    Table of Definitions. The following terms have the respective meanings set forth in the Sections referenced below:

| Definition | Location |
|---|---|
| Acquired Intellectual Property | Section 2.1(p) |
| Agreement | Preamble |
| Allocation | Section 2.10(b) |
| AML Laws | Section 3.24(b) |
| Applicable Permits | Section 3.8(b) |
| Assignment Agreement | Section 2.9(b)(i) |
| Assumed Liabilities | Section 2.3(a) |
| Balance Sheet Date | Section 3.6(a) |
| Bankruptcy Case | Recitals |
| Bankruptcy Code | Recitals |
| Bankruptcy Court | Recitals |
| Business | Recitals |
| Business Permits | Section 2.1(e) |
| Buyer | Preamble |
| Cash Statement | Section 2.9(d) |
| CESIR | Section 3.11(j) |
| CESIR Reports | Section 3.11(j) |
| Closing | Section 2.9(a) |
| Closing Date | Section 2.9(a) |
| Consent or Governmental Authorization | Section 2.6(c) |
| Credit Bid Amount | Recitals |
| Cure Costs | Section 2.3(a)(iii) |
| Current Receivables | Section 3.19(b) |
| Debtors | Recitals |
| Disclosure Limitations | Section 6.2 |
| Disclosure Schedules | Article III |
| Easement | Section 3.11(b)(ii) |
| Easement Real Property | Section 3.11(b)(ii) |
| Enforceability Exceptions | Section 3.2(a) |
| Environmental Reports | Section 3.14(f) |
| Equipment | Section 2.1(c) |
| Excluded Assets | Section 2.2 |
| Excluded Contracts | Section 2.2(e) |

Excluded Liabilities ................................................Section 2.4
Excluded Subsidiaries ............................................Section 2.11(b)
Final Allocation .....................................................Section 2.10(b)
Financial Assurances ..............................................Section 6.11
Insurance Policies ..................................................Section 3.17
Intended Tax Treatment ...........................................Section 2.10(a)
Inventory ..............................................................Section 2.1(d)
Latest Balance Sheet ..............................................Section 3.6(a)
Legal Restraint .......................................................Section 8.1(a)
Material Contract ....................................................Section 3.15(a)
Non-Party Affiliates................................................Section 10.12
OEM.....................................................................Section 3.19(c)
OEM Warranties .....................................................Section 3.19(c)
OFAC Rep Party .....................................................Section 3.23(a)
Option ..................................................................Section 3.11(b)(ii)
Option Real Property ...............................................Section 3.11(b)(ii)
ORCH 3 ................................................................Preamble
ORD .....................................................................Preamble
Outside Date...........................................................Section 9.1(b)(ii)
OYA-OMNI.............................................................Preamble
Pending Permits ......................................................Section 3.8(e)
Pre-Closing Tax Return ............................................Section 7.4
Purchase Price ........................................................Section 2.8(a)
QF Status ..............................................................Section 3.22(b)
Real Property .........................................................Section 3.11(b)(ii)
Receivables Seller...................................................Recitals
Related Orders .......................................................Section 5.1(a)(i)
Related Party Agreement ..........................................Section 3.16
Schedule of Costs and Commitments .........................Section 3.6(d)
Seller ....................................................................Preamble
Seller Bonds...........................................................Section 3.27
Seller Financial Statements.......................................Section 3.6(a)
Service Provider......................................................Section 3.10
Studies and Reports..................................................Section 3.25(a)
Tariff Letters ..........................................................Section 3.22(i)
Tax Books and Records ............................................Section 7.2
Terrorism Order ......................................................Section 3.23(a)
Transfer Taxes ........................................................Section 7.1
Transferred Assets ..................................................Section 2.1
Transferred Equity ..................................................Recitals
Transferred Subsidiaries ..........................................Recitals
Voting Company Debt ..............................................Section 3.5(c)

32863747.1

## ARTICLE II.
## PURCHASE AND SALE

Section 2.1    Purchase and Sale.    Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, upon the terms and subject to the conditions of this Agreement, at the Closing, the Sellers shall sell, assign, transfer, convey and deliver to the Buyer all of the Sellers' right, title and interest in, to and under the Transferred Assets, and the Buyer shall purchase, acquire and accept the Transferred Assets free and clear of all Encumbrances (other than Permitted Encumbrances). "Transferred Assets" shall mean all of the properties, rights, interests and other assets of the Sellers of every kind and description, wherever located, whether real, personal or mixed, tangible or intangible, relating to the Business, including all right, title and interest of the Sellers in, to or under the following properties, rights, interests and other assets (but excluding in each case, any Excluded Assets):

(a)    all Transferred Contracts (as may be adjusted pursuant to Section 2.6);

(b)    all Seller Leased Real Property (subject to Section 2.6) and other interests in Real Property, together in each case with the Sellers' right, title and interest in and to all structures, fixtures, facilities or improvements located thereon and all easements, licenses, rights, privileges and appurtenances relating to the foregoing;

(c)    all machinery, equipment, consumables, supplies, furniture, furnishings, parts, spare parts, vehicles and other tangible personal property and fixed assets owned, leased (to the extent the underlying lease is a Transferred Contract) or used (or held for use) by the Sellers (the "Equipment");

(d)    all inventory (including raw materials, component parts, spare parts, works-in-progress, finished goods and goods in transit, supplies and packaging materials) owned or used (or held for use) by any of the Sellers, wherever located and whether in the applicable Seller's facilities, held by any third parties or otherwise (the "Inventory");

(e)    all Permits issued to, or for the benefit of, any Seller (the "Business Permits"), all rights and benefits thereunder and all pending applications or filings therefor and renewals thereof, which are related to the Transferred Assets or the Business, but only to the extent such Permits may be transferred under applicable Law;

(f)    all Cash and Cash Equivalents, all bank accounts, all cash collateral held by third parties as security, all deposits (including maintenance deposits, customer deposits, and security deposits for rent, electricity, telephone or otherwise) or prepaid or deferred charges and expenses, including all lease and rental payments, that have been prepaid by any Seller, in each case, solely as related to any other Transferred Asset or Assumed Liability, excluding Cash and Cash Equivalents and bank accounts of Sellers (but, for the avoidance of doubt, including any Cash and Cash Equivalents and bank accounts of the Transferred Subsidiaries);

(g)    all Tax assets, including any interest in or right to any refund, rebate or credit of Taxes (or other Tax benefit) that relate to the Transferred Assets, Transferred Subsidiaries, Projects, or Assumed Liabilities or the Business, including (for the avoidance of doubt) any such refund, rebate or credit of Taxes (or other Tax benefit) that becomes payable or

available to any Seller in the future in respect of a Tax paid or incurred by the Buyer, provided that the foregoing shall not include any refund, rebate or credit of Taxes (or other Tax benefit) that relate to the Income Taxes of the Sellers;

(h)    all Tax Returns or copies of thereof, of, with respect to, or related to the Transferred Assets, Transferred Subsidiaries, Projects, or Assumed Liabilities, or the Business (and all Tax Books and Records, including note papers and work papers, related thereto), provided that the foregoing shall not include any Tax Returns relating to Income Taxes of the Sellers;

(i)    subject to Section 2.2(n), all Avoidance Actions, including all of the rights and claims of the Sellers available under the U.S. Bankruptcy Code, of whatever kind or nature, as set forth in Sections 544 through 551, inclusive, 553, 558 and any other applicable provisions of the Bankruptcy Code against the Buyer, any suppliers, vendors, merchants, manufacturers, or other counterparties to any Transferred Contracts or any Contracts with the Transferred Subsidiaries, and any related claims and actions arising under such sections by operation of Law or otherwise, including any and all proceeds of the foregoing;

(j)    all Accounts Receivable (including Inter-Company Receivables) of the Transferred Subsidiaries and the MIPA Receivables of ORCH 3 under the Receivable MIPAs;

(k)    all Transferred Equity;

(l)    all rights under non-disclosure or confidentiality, non-compete, non-solicitation, non-interference, non-disparagement or similar agreements to which any Seller is a party, with respect to which any Seller is a beneficiary or has any rights thereunder, including any such agreement with current or former directors, managers, officers, employees or agents, or with third parties;

(m)    all rights (including lien rights), claims (including commercial tort claims), credits, settlement proceeds, causes of action, choses in action, rights of recovery, rights of recoupment, rights of set off, equity rights and defenses relating or with respect to the Business, any of the Transferred Assets (including, for the avoidance of doubt, those arising under, or otherwise relating to, any of the Transferred Contracts) or any of the Assumed Liabilities, including all rights under vendors', manufacturers' and contractors' representations, warranties, indemnities and guarantees;

(n)    all goodwill, customer and referral relationships, other intangible assets and all privileges associated with, or relating to, the Business, the Transferred Assets or the Assumed Liabilities;

(o)    all rights to the telephone and facsimile numbers and e-mail account contents (to the extent solely related to the Business or the Transferred Assets, including the Transferred Subsidiaries, or the Assumed Liabilities) and addresses used by any Seller, as well as rights to receive mail and other communications addressed to any Seller (including mail and communications to and from Governmental Authorities, Local Utilities and subscribers representing more than 10% of the allocation of credits from any Project, customers, vendors, suppliers, distributors and agents);

(p)　　all Intellectual Property owned by or licensed to or purported to be owned by or licensed to any of the Sellers, including the Intellectual Property set forth on <u>Section 2.1(p) of the Disclosure Schedules</u>, all work product developed by employees and contractors of the Sellers related to the Projects (including but not limited to studies, drawings, maps, specifications, plans and operating manuals) and all Intellectual Property rights therein, and all data owned by the Sellers, including such data relating to its products, customers and customer contracts, all rights to collect royalties and proceeds in connection with such Intellectual Property, all rights to sue and recover for past, present and future infringements, dilutions, misappropriations or other violations of, or other conflicts with, such Intellectual Property and any and all corresponding rights that, now or hereafter, may be secured throughout the world (regardless of whether or not such claims and causes of action have been asserted by Sellers), and all other rights of indemnity, warranty rights, rights of contribution, rights to refunds, rights of reimbursement and other rights of recovery, possessed by Sellers as of Closing (regardless of whether such rights are currently exercisable), and rights to protection of interests in the foregoing under the Laws of all jurisdictions, including all registrations, renewals, extensions, combinations, divisions, or reissues of, and applications for, any of the rights referred to above;

(q)　　except as set forth in <u>Section 2.2(a)</u>, all Books and Records related to the Business, the Transferred Assets or Assumed Liabilities;

(r)　　all rights, titles, security and other interests and liens granted to Buyer by the Pledgors (as defined in the Pledge Agreement) pursuant to Section 2.1 of the Pledge Agreement;

(s)　　all Collateral (as defined in the Guaranty, Pledge and Security Agreement); and

(t)　　the properties, rights, interests and other assets set forth on <u>Section 2.1(t) of the Disclosure Schedules</u>.

For the avoidance of doubt, the Parties acknowledge that legal title to some of the Transferred Assets are held by the Transferred Subsidiaries and not held directly by the Sellers, and that the Transferred Assets shall only include Sellers' direct or indirect right, title and interest to such Transferred Assets.

Section 2.2　　<u>Excluded Assets</u>. Notwithstanding anything contained in <u>Section 2.1</u> to the contrary, the Sellers are not selling, transferring, assigning, conveying or delivering, and the Buyer is not purchasing, any of the Sellers' right, title and interest to, in and under, the following assets, properties, rights and interests of the Sellers, all of which shall be retained by the Sellers (collectively, the "<u>Excluded Assets</u>"):

(a)　　the Sellers' documents, written files, papers, books, reports and records (i) prepared in connection with this Agreement or the transactions contemplated hereby or relating to the Bankruptcy Case or (ii) that any Seller is required by Law to retain; <u>provided</u> that, to the extent not prohibited by applicable Law or any of any Seller's reasonable applicable privacy policies or contractual restrictions and to the extent materially relevant to the Transferred Assets,

Assumed Liabilities, or the Business, Buyer shall be entitled to copies of all or any portions of such documents;

(b)   all insurance policies, fiduciary policies (in each case of the foregoing, including any automatic or purchased extended reporting periods, tail policies or coverage thereon), and any of such Seller's rights, benefits, indemnifications, claims, demands, proceedings, credits, causes of action or rights of set off thereunder;

(c)   all rights, claims and causes of action to the extent relating to any Excluded Asset or any Excluded Liability;

(d)   shares of capital stock or other Equity Interests of any Seller or securities convertible into or exchangeable or exercisable for shares of capital stock or other Equity Interests of any Seller;

(e)   any Contract to which any of the Sellers is a party that is not a Transferred Contract, including those set forth on Section 2.2(e) of the Disclosure Schedules (the "Excluded Contracts"), including any Accounts Receivable or other amounts owed to Seller or any of its Affiliates under the Excluded Contracts, which schedule shall be provided by Buyer to the Sellers as provided in, and may be adjusted pursuant to, Section 2.6;

(f)   all retainers or similar prepaid amounts paid to the accountants, attorneys, consultants, advisors, investment bankers or other professional service providers of the Sellers;

(g)   the properties, rights, and assets of the Sellers listed in Section 2.2(g) of the Disclosure Schedules;

(h)   all rights of the Sellers under this Agreement and the Ancillary Agreements;

(i)   the projects listed on Section 2.2(i) of the Disclosure Schedules;

(j)   any Transferred Assets that are designated as Excluded Assets in accordance with Section 2.11, and the Equity Interests of any Transferred Subsidiary that is designated as an Excluded Subsidiary in accordance with Section 2.11;

(k)   Cash and Cash Equivalents and bank accounts of Sellers (other than the MIPA Receivables of ORCH 3 under the Receivable MIPAs);

(l)   all Tax Returns relating to the Income Taxes of the Sellers;

(m)   all Tax assets, including any interest in or right to any refund, rebate or credit of Taxes (or other Tax benefit) that relate to the Income Taxes of the Sellers;

(n)   (i) Avoidance Actions and any claims and causes of action related to or against the Debtors' current and former directors, officers, managers, members, shareholders or any other insiders or Affiliates, including any breach of fiduciary duty or similar claims; (ii) Avoidance Actions related to the historic transactions discussed more broadly in the Declaration of John Shepherd in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 2]; (iii)

32863747.1

Avoidance Actions arising under sections 544 through 553 of the Bankruptcy Code that are not against a counterparty to any Transferred Contract or a go-forward trade vendor of the Project(s) being purchased (within 90 days after Closing, the Buyer shall provide the Debtors and the Committee (as defined in the Final DIP Order) with a list of counterparties to the Transferred Contracts and go-forward trade vendors); (iv) any commercial tort claim(s); and (v) any and all causes of action constituting a Challenge (as defined in the Final DIP Order); provided, further, that neither the Buyer, nor any Person claiming by, through or on behalf of the Buyer (including, but not limited to, by operation of law, sale, assignment, conveyance or otherwise) shall pursue, prosecute, litigate, institute or commence an action based on, assert, sell, convey, assign or file any claim that relates to, or otherwise seeks recovery on account of, the purchased Avoidance Actions; and

(o)      all assets identified in that certain Equity and Asset Purchase Agreement, by and among the Sellers and UGE Capital LLC, as the Buyer, dated as of [•] as "Transferred Assets" thereunder.

Section 2.3      Assumed Liabilities.

(a)      On the terms and subject to the conditions set forth herein and in the Sale Order, effective as of the Closing, Buyer shall assume from the Sellers (and from and after the Closing pay, perform, discharge, or otherwise satisfy in accordance with their respective terms), and the Sellers shall irrevocably convey, transfer, and assign to Buyer, only the following Liabilities, without duplication and only to the extent not paid prior to the Closing (the "Assumed Liabilities"):

(i)      all Liabilities of the Sellers under the Transferred Contracts, solely to the extent of facts and circumstances first arising from and after the Closing;

(ii)      all Liabilities arising from the ownership or operation of the Transferred Assets by the Buyer after the Closing and which relate solely to events first occurring after the Closing Date (but excluding those Liabilities specified as Excluded Liabilities);

(iii)      all cure costs required to be paid pursuant to Section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Transferred Contracts (the "Cure Costs");

(iv)      all Inter-Company Payables; and

(v)      all Liabilities for (A) Income Taxes imposed on or with respect to the Transferred Subsidiaries and the operation or ownership of the Transferred Assets relating to a Post-Closing Tax Period (including any Taxes allocated to the Post-Closing Tax Period pursuant to Section 7.3(a) but excluding any Seller Taxes and Transfer Taxes), (B) Asset Taxes imposed on or with respect to any Transferred Asset, Project, the Liabilities set forth in Section 2.3(a)(i) – (iv) or the Business that first become due and payable after the Closing Date, and (C) Transfer Taxes for which Buyer is responsible pursuant to Section 7.1.

(b)      The transactions contemplated by this Agreement shall in no way expand the rights or remedies of any third party against the Buyer or the Sellers as compared to the rights

and remedies that such third party would have had against the Sellers or the Buyer absent the Bankruptcy Case or the Buyer's assumption of such Assumed Liabilities. Notwithstanding the foregoing and for the avoidance of doubt, Assumed Liabilities shall not include (i) any Excluded Liability or (ii) any Liability relating to or arising out of any violation of Law by, or any Action against, any Seller or any breach, default or violation by any Seller or any of its Affiliates of or under any Transferred Contracts, all of which shall constitute Excluded Liabilities. Other than the Assumed Liabilities, the Buyer is not assuming and shall not be liable for any Liabilities of the Sellers.

Section 2.4    Excluded Liabilities. Buyer shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any Liabilities of, or Action against, the Sellers or the Business or relating to the Transferred Assets, of any kind or nature whatsoever, whether absolute, accrued, contingent or otherwise, liquidated or unliquidated, due or to become due, known or unknown, currently existing or hereafter arising, matured or unmatured, direct or indirect, and however arising, whether existing on the Closing Date or arising thereafter other than the Assumed Liabilities (all such Liabilities that are not Assumed Liabilities being referred to collectively herein as the "Excluded Liabilities"), including but not limited to the following:

(a)    any and all Liabilities for Seller Taxes;

(b)    any and all Liabilities of the Sellers under any Excluded Contract whether accruing prior to, at, or after the Closing Date;

(c)    any and all Liabilities resulting from the failure to comply with any applicable "bulk sales," "bulk transfer" or similar Law;

(d)    any Indebtedness of the Sellers;

(e)    any Liability to distribute to any Seller's shareholders (or other equity holders) or otherwise apply all or any part of the consideration received hereunder;

(f)    any and all Liabilities arising under any Environmental Law or with respect to Hazardous Materials arising from or related to the Sellers' ownership or operation of the Business or the Transferred Assets on or before the Closing Date;

(g)    any and all Liability for: (i) costs and expenses incurred by the Sellers or owed in connection with the administration of the Bankruptcy Case (including the U.S. trustee fees, the fees and expenses of attorneys, accountants, financial advisors, consultants and other professionals retained by the Sellers, and any official or unofficial creditors' or equity holders' committee and the fees and expenses of the post-petition lenders or the pre-petition lenders incurred or owed in connection with the administration of the Bankruptcy Case); (ii) all costs and expenses of the Sellers incurred in connection with the negotiation, execution and consummation of the transactions contemplated under this Agreement; and (iii) all costs and expenses arising out of or related to any third party claims against the Sellers, pending or threatened, including any warranty or product claims;

(h)     any Liability of the Sellers under this Agreement or the Ancillary Agreements; and

(i)     any Liability or obligation to the extent relating to an Excluded Asset.

Section 2.5     Consents to Certain Assignments.

(a)     Notwithstanding anything in this Agreement or any Ancillary Agreement to the contrary, this Agreement and the Ancillary Agreements shall not constitute an agreement to transfer or assign any asset, Permit, claim or right or any benefit arising thereunder or resulting therefrom if an attempted assignment thereof, without the consent of a third party, would constitute a breach or other contravention under any agreement or Law to which any Seller is a party or by which it is bound, or materially and adversely affect the rights of the Sellers or, upon transfer, the Buyer under such asset, Permit, claim or right, unless the applicable provisions of the Bankruptcy Code permits and/or the Sale Order authorizes the assumption and assignment of such asset, Permit, claim, or right irrespective of the consent or lack thereof of a third party. If, with respect to any Transferred Asset, such consent is not obtained or such assignment is not attainable pursuant to the Bankruptcy Code or the Sale Order, then such Transferred Asset shall not be transferred hereunder, and, subject to Section 8.3(d), the Closing shall proceed with respect to the remaining Transferred Assets and the Sellers shall, through the earlier of such time as such consent or assignment is so obtained and the six (6) months following the Closing, use their commercially reasonable efforts, and the Buyer shall cooperate with the Sellers, to obtain any such consent and to resolve the impracticalities of assignment after the Closing.

(b)     Except with respect to Transferred Contracts and Business Permits that are governed by Section 2.6(c) below, if (i) notwithstanding the applicable provisions of Sections 363 and 365 of the Bankruptcy Code and the Sale Order and the reasonable best efforts of the Sellers, any consent is not obtained prior to Closing and as a result thereof the Buyer shall be prevented by a third party from receiving the rights and benefits with respect to a Transferred Asset intended to be transferred hereunder, (ii) any attempted assignment of a Transferred Asset would adversely affect the rights of the Sellers thereunder so that the Buyer would not in fact receive all the rights and benefits contemplated, or (iii) any Transferred Asset is not otherwise capable of sale and/or assignment (after giving effect to the Sale Order and the Bankruptcy Code), then, in any such case, the Sellers shall, subject to any approval of the Bankruptcy Court that may be required and at the request of the Buyer, cooperate with Buyer in any lawful arrangement under which the Buyer would, to the extent practicable, obtain the economic claims, rights and benefits under such asset and assume the economic burdens and obligations with respect thereto in accordance with this Agreement, including by subcontracting, sublicensing or subleasing to the Buyer. The Sellers shall as promptly as practicable pay to the Buyer when received all monies received by the Sellers or their Affiliates attributable to such Transferred Asset from and after the Closing Date and the Buyer shall indemnify and promptly pay the Sellers for all Liabilities of the Sellers associated with such arrangement.

Section 2.6     Assumption/Rejection of Certain Contracts.

(a)     Assumption and Assignment of Executory Contracts. The Sellers represent that they have provided timely and proper written notice of the motion seeking entry of the Sale

Order to all parties to any executory Contracts or unexpired leases to which any Seller or Affiliate is a party that are Transferred Contracts and will take all other actions necessary to cause such Contracts to be assumed by the Sellers and, if requested by Buyer, assigned to Buyer pursuant to Section 365 of the Bankruptcy Code to the extent that such Contracts are Transferred Contracts at Closing. At the Closing, the Sellers shall, pursuant to the Sale Order and the Assignment Agreement(s), assume and, if requested by Buyer, assign to Buyer (the consideration for which is included in the Purchase Price), all Transferred Contracts that may be assigned by any such Seller to Buyer pursuant to Sections 363 and 365 of the Bankruptcy Code, subject to adjustment pursuant to Section 2.6(b). At the Closing, Buyer shall (i) pay all Cure Costs, (ii) cure any and all other defaults and breaches under the Transferred Contracts so that such Contracts may be assumed by the applicable Seller and assigned to Buyer in accordance with the provisions of Section 365 of the Bankruptcy Code and this Agreement, and (iii) assume (directly or indirectly), and thereafter in due course and in accordance with its respective terms pay, fully satisfy, discharge and perform all of the obligations under each Transferred Contract pursuant to Section 365 of the Bankruptcy Code. In furtherance of the foregoing, upon request by Buyer and at Buyer's sole cost and expense, Seller shall cause any of its Transferred Subsidiaries to file voluntary cases under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court to be jointly administered with the Bankruptcy Case and cause any of its Contracts or unexpired leases to be assumed and assigned to the Buyer pursuant to Sections 363 and 365 of the Bankruptcy Code in accordance with this Section 2.6.

(b)    Excluding or Adding Transferred Contracts Prior to Closing. The Sellers have delivered to the Buyer a schedule which shall contain a list of each Contract (including Seller Leases) of the Sellers and the Sellers' good faith estimate of the amount of Cure Costs applicable to each such Contract (and if no Cure Cost is estimated to be applicable with respect to any particular Contract, the estimated amount of such Cure Cost for such Contract shall be designated as "$0.00"). Set forth in Section 1.1(c) of the Disclosure Schedules is a list of all Transferred Contracts. Notwithstanding anything to the contrary set forth herein, Buyer shall have the right to notify the Sellers in writing of (x) any Transferred Contract that it does not wish to assume up to three (3) Business Days prior to the Closing Date or (y) a Contract to which any Seller is a party that Buyer wishes to add as a Transferred Contract up to (1) if the Auction is cancelled, the day before the deadline to file the proposed Sale Order under the Sale Procedures Order or (2) otherwise, if the Buyer is a Successful Bidder or Back-Up Bidder, the deadline to file the Notice of the Successful Bidder(s) under the Sale Procedures Order, and (i) any such previously considered Transferred Contract that Buyer no longer wishes to assume shall be automatically deemed removed from Section 1.1(c) of the Disclosure Schedules and automatically deemed added to Section 2.2(e) of the Disclosure Schedules, in each case, without any adjustment to the Purchase Price, and (ii) any such previously considered Excluded Contract that Buyer wishes to assume as a Transferred Contract shall be automatically deemed added to Section 1.1(c) of the Disclosure Schedules related to Transferred Contracts, automatically deemed removed from Section 2.2(e) of the Disclosure Schedules, and assumed by Sellers to sell and assign to Buyer, in each case, without any adjustment to the Purchase Price. Promptly following any such changes to the information set forth on Section 1.1(c) of the Disclosure Schedules or Section 2.2(e) of the Disclosure Schedules, the Sellers shall provide written notice to the Buyer of the updated schedule of the amount of Cure Costs applicable to each Contract set forth on Section 1.1(c) of the Disclosure Schedules, along with a copy thereof.

(c)    Non-Assignment. Notwithstanding the foregoing, a Contract shall not be a Transferred Contract hereunder and shall not be assigned to, or assumed by, Buyer to the extent that such Contract (i) is rejected by a Seller or terminated by a Seller or any other party thereto, or terminates or expires by its terms, on or prior to such time as it is to be assumed by Buyer as a Transferred Contract hereunder and is not continued or otherwise extended upon assumption; provided, however, the Buyer may irrevocably designate any such Contract as a Transferred Contract in accordance with Section 2.6(b) and the Sellers shall not move to reject such Contract; or (ii) requires an approval or order from, or consent by, any Governmental Authority or other Person (other than, and in addition to, that of the Bankruptcy Court), except for any such approval, order, or consent that is not required due to the Sale Order ("Consent or Governmental Authorization") in order to permit the sale or transfer to Buyer of the applicable Seller's rights under such Contract, and such Consent or Governmental Authorization has not been obtained prior to such time as it is to be assumed by Buyer as a Transferred Contract hereunder or the Bankruptcy Court has not issued an Order that such Consent or Governmental Authorization is not required. In addition, a Business Permit shall not be assigned to, or assumed by, Buyer to the extent that such Business Permit requires a Consent or Governmental Authorization (other than, and in addition to, that of the Bankruptcy Court) in order to permit the sale or transfer to Buyer of the applicable Seller's rights under such Permit, and no such Consent or Governmental Authorization has been obtained prior to the Closing or the Bankruptcy Court has not issued an Order that such Consent or Governmental Authorization is not required. In the event that any Transferred Contract is deemed not to be assigned pursuant to clause (ii) of the first sentence of this Section 2.6(c), the Closing shall nonetheless take place subject to the terms and conditions set forth herein and, thereafter, through the earlier of such time as such Consent or Governmental Authorization is obtained and six (6) months following the Closing (or the remaining term of such Contract or the closing of the Bankruptcy Case, if shorter), Sellers and Buyer shall (A) use reasonable best efforts to secure such Consent or Governmental Authorization as promptly as practicable after the Closing and (B) cooperate in good faith in any lawful and commercially reasonable arrangement reasonably proposed by Buyer, including subcontracting, licensing, or sublicensing to Buyer any or all of any Seller's rights and obligations with respect to any such Transferred Contract, under which (I) Buyer shall obtain (without infringing upon the legal rights of such third party or violating any Law) the economic rights and benefits under such Transferred Contract with respect to which the Consent or Governmental Authorization has not been obtained and (II) Buyer shall assume any related burden (taking into account the amount of any related Tax benefit obtained by Sellers or their respective Affiliates) and obligation (including performance) with respect to such Transferred Contract. Upon satisfying any requisite Consent or Governmental Authorization requirement applicable to such Transferred Contract after the Closing, such Transferred Contract shall promptly be transferred and assigned to Buyer in accordance with the terms of this Agreement.

Section 2.7    Transferred Subsidiaries. Notwithstanding anything to the contrary in this Agreement, none of the Transferred Assets, Excluded Assets, Assumed Liabilities or Excluded Liabilities shall include any assets or Liabilities of any of the Transferred Subsidiaries.

Section 2.8    Consideration. The consideration for the sale and transfer of the Transferred Assets from the Sellers to the Buyer shall be as follows:

(a)      the Credit Bid Amount, *plus* the Closing Cash Amount, if any, *plus* the Receivables Consideration (the "Purchase Price"); and

(b)      in addition to the Purchase Price, the direct assumption of the Assumed Liabilities, including the payment of all Cure Costs and the indirect assumption of the Liabilities held by the Transferred Subsidiaries.

Section 2.9      Closing.

(a)      The sale and purchase of the Transferred Assets and the assumption of the Assumed Liabilities contemplated by this Agreement shall take place at a closing (the "Closing") to be held by electronic exchange of documents at 10:00 a.m. New York Time on the fourth (4th) Business Day following the satisfaction or, to the extent permitted by applicable Law, waiver of all conditions to the obligations of the Parties set forth in Article VIII (other than such conditions as may, by their terms, only be satisfied at the Closing or on the Closing Date, but subject to the satisfaction or waiver of such conditions), or at such other place or at such other time or on such other date as the Sellers and the Buyer mutually may agree in writing. The day on which the Closing takes place is referred to as the "Closing Date."

(b)      At or prior to the Closing, the Sellers shall deliver or cause to be delivered to the Buyer:

(i)      the bill of sale, assignment and assumption agreement substantially in the form of Exhibit A (the "Assignment Agreement"), duly executed by the applicable Sellers;

(ii)      the [master lease assignment] substantially in the form of Exhibit B (the "Lease Assignment"), duly executed by the applicable Seller(s);

(iii)      a copy of the Sale Order, as entered by the Bankruptcy Court;

(iv)      (y) to the extent the Transferred Equity is certificated, certificates evidencing the Transferred Equity, duly endorsed in blank (or with stock powers in form and substance reasonably satisfactory to Buyer, acting in good faith, duly executed by the Sellers), or (z) instruments of transfer reasonable and customary for the jurisdiction applicable to such Transferred Equity, in each case free and clear of all Encumbrances (except for Encumbrances under applicable securities Laws);

(v)      an IRS Form W-9 from each Seller duly executed by each such Seller, dated as of the Closing Date, certifying that such Seller (or if such Seller is a Disregarded Entity, its regarded owner for U.S. federal income Tax purposes) is a United States Person and is not subject to backup withholding;

(vi)      a duly executed certificate of a duly authorized officer of each Seller certifying the satisfaction of the conditions set forth in Section 8.3(a) and Section 8.3(b);

(vii)      evidence of the removal or resignation of the officers, directors and managers of the Transferred Subsidiaries, which are identified prior to signing to Sellers;

(viii)    termination    agreements    for    the    agreements    listed    on Section 2.9(b)(viii) of the Disclosure Schedules;

(ix)    evidence of notice to the counterparty under each ORCH 3 MIPA with respect to the assignment of all right, title and interest in and to the MIPA Receivables from ORCH 3 to the Buyer pursuant to this Agreement; and

(x)    a duly executed Payment Direction Letter from ORCH 3 to the counterparty under the applicable ORCH 3 MIPA authorizing and directing such counterparty to remit any MIPA Receivables as and when due and payable directly to the Buyer to such account or account(s) of the Buyer as designated therein.

(c)    At or prior to the Closing, the Buyer shall deliver or cause to be delivered to the Sellers:

(i)    the Assignment Agreement, duly executed by the Buyer;

(ii)    the Lease Assignment, duly executed by the Buyer;

(iii)    a duly executed certificate of a duly authorized officer of the Buyer certifying the satisfaction of the conditions set forth in Section 8.2(a) and Section 8.2(b);

(iv)    evidence of payment or satisfaction of the Cure Costs;

(v)    funding of the cash portion of the Receivables Consideration due at the Closing; and

(vi)    evidence reasonably satisfactory to Sellers of the satisfaction of the Purchase Price by discharging Sellers from the Credit Agreement Indebtedness in an aggregate amount equal to the Credit Bid Amount, and Sellers shall be deemed to be discharged from the Credit Agreement Indebtedness in an amount equal to the Credit Bid Amount upon consummation of the Closing.

(d)    On the Business Day prior to the Closing Date but no later than twenty four (24) hours prior to the Closing, the Sellers shall deliver to the Buyer, a written statement setting forth the Closing Cash Amount (the "Cash Statement"), together with a certificate, duly executed by a duly authorized officer of each of the Sellers, containing the representation and warranty of the Sellers that all information contained in the Cash Statement is accurate and complete as of the Cash Cutoff Time. During the period after the delivery of the Cash Statement and prior to the Closing, the Buyer shall have an opportunity to review the Cash Statement and the Sellers shall provide the Buyer with reasonable access during normal business hours to such information and detail as the Buyer shall reasonably request in connection with its review of such Cash Statement; provided, that such access (i) shall not unreasonably disrupt the operations of the Business and (ii) will be conducted in a manner that complies with applicable Laws.

Section 2.10    <u>Intended Tax Treatment; Tax Allocation</u>.

(a)    For U.S. federal income Tax purposes (and applicable state and local income Tax purposes), the sale of the Transferred Assets (including the Transferred Equity) by each Seller to Buyer under this Agreement shall be treated as a taxable asset sale (the "<u>Intended Tax Treatment</u>"). The Parties will, and will cause each of their respective Affiliates to, prepare and file all Tax Returns in a manner consistent with the Intended Tax Treatment, and none of the Parties or their respective Affiliates will take any position with any Governmental Authority or otherwise that is inconsistent with the Intended Tax Treatment, except as required by applicable Law.

(b)    The portion of the Purchase Price paid to any Seller (including the portion of the applicable Assumed Liabilities and any other amounts, to the extent properly taken into account under the Code), shall be allocated among the applicable Transferred Assets and the applicable Transferred Equity (and, to the extent necessary under applicable Tax Law, to the assets of any applicable Transferred Subsidiary) in accordance with the principles of Section 1060 of the Code and the Treasury Regulations promulgated thereunder (any such allocation, an "<u>Allocation</u>"). Each Allocation shall be prepared by the Buyer and delivered to the Sellers as promptly as reasonably practicable following the date hereof, and no later than the Closing Date. The applicable Seller shall have 14 days after receipt of such Allocation to review and comment on such Allocation. If, by the end of such 14 day period, the applicable Seller notifies Buyer of such Seller's disagreement with such Allocation, then Buyer and such Seller shall, during the ensuing 7 days, negotiate in good faith to resolve such disagreement; <u>provided</u>, that, if such disagreement is not so resolved, each Party shall be entitled to use its own Allocation for all Tax purposes. If the Parties resolve any disagreements (such agreed to Allocation, the "<u>Final Allocation</u>"), Buyer and Sellers shall, and shall cause their respective Affiliates to, prepare all Tax Returns, including IRS Form 8594 (Asset Acquisition Statement under Section 1060 of the Code), in a manner consistent with the Final Allocation, as adjusted upon any adjustment to the Purchase Price, and none of the Sellers or Buyer shall take any position inconsistent therewith on any Tax Return or in connection with any Tax audit, claim or similar proceeding, unless required to do so by a final "determination" within the meaning of Section 1313(a) of the Code or otherwise required by applicable Law, or with Buyer's or the applicable Seller's, as the case may be, prior written consent.

(c)    Except as otherwise required by applicable Law, any Contingent Payment made by Buyer to Seller shall be treated as an adjustment to the Purchase Price for U.S. federal income tax purposes.

Section 2.11    <u>Exclusion of Transferred Assets or Transferred Subsidiaries</u>. Except with respect to the Transferred Contracts (which are subject to <u>Section 2.6</u>), at any time on or prior to the third (3rd) Business Day after the date of the Auction, the Buyer may, in its discretion by written notice to the Sellers, designate any of:

(a)    the Transferred Assets as additional Excluded Assets, which notice shall set forth in reasonable detail the Transferred Assets so designated; <u>provided</u> that (i) there shall be no reduction in the Purchase Price if the Buyer elects to designate any Transferred Asset as an Excluded Asset, and (ii) the Liabilities of the Sellers under or related to any Transferred Asset excluded under this paragraph will constitute Excluded Liabilities; or

(b)    the Transferred Subsidiaries directly owned by a Seller as Subsidiaries of the applicable Seller that would not be sold, assigned, transferred, conveyed or delivered to the Buyer pursuant to this Agreement (such designated Transferred Subsidiaries and any of their Subsidiaries, the "Excluded Subsidiaries"), which notice shall set forth the Excluded Subsidiaries, and such Excluded Subsidiaries shall, as of the date of such notice, cease to be Transferred Subsidiaries for all purposes of this Agreement and not be assigned, transferred, conveyed or delivered to the Buyer at the Closing; provided that there shall be no reduction in the Purchase Price if the Buyer elects to designate any Transferred Subsidiary as an Excluded Subsidiary.

Section 2.12    Withholding. Buyer (and any person who is a withholding agent for Tax purposes) shall be entitled to deduct and withhold from amounts payable pursuant to this Agreement to any Person such amounts as are required by applicable Law to be deducted and withheld from such payment. To the extent that amounts are so deduced or withheld, such deducted or withheld amounts shall be treated for all purposes of this Agreement as having been paid to such Person in respect of which such deduction and withholding was made. Buyer shall use commercially reasonable efforts to notify the Sellers of any amounts to be withheld at least three Business Days prior to the Closing Date in order to afford Sellers the opportunity to try and mitigate or eliminate such withholding.

## ARTICLE III.
## REPRESENTATIONS AND WARRANTIES OF THE SELLERS

Except as set forth in the disclosure schedules (collectively, the "Disclosure Schedules") (with specific reference to the representations and warranties in this Article III to which the information in such schedule relates; provided, however, that, disclosure in the Disclosure Schedules as to a specific representation or warranty shall qualify any other Sections of this Agreement to the extent (notwithstanding the absence of a specific cross reference) it is readily apparent on its face that such disclosure relates to such other Sections), each of the Sellers jointly and severally represents and warrants to the Buyer as follows:

Section 3.1    Organization. Except as set forth in Section 3.1 of the Disclosure Schedules, each Seller, ORCH 3 and each Transferred Subsidiary (a) is an entity duly incorporated or organized, validly existing and in good standing under the Laws of the jurisdiction of its incorporation or organization, as applicable, and (b) has all requisite power and authority to own and operate its properties and assets and to carry on its businesses as now conducted, subject to the provisions of the Bankruptcy Code. Each Seller and each Transferred Subsidiary is qualified to do business and is in good standing (or its equivalent) in every jurisdiction in which its ownership of property or the conduct of its business as now conducted requires it to qualify, except where the failure to be so qualified would not reasonably be expected to be material to the Business, taken as a whole.

Section 3.2    Authority.

(a)    Subject to required Bankruptcy Court approvals, (i) each Seller or ORCH 3, as applicable, has all requisite legal capacity and the full power and authority to execute and deliver this Agreement and each of the Ancillary Agreements to which it is or will be a party, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby

and thereby, (ii) the execution, delivery and performance by such Seller or ORCH 3, as applicable, of this Agreement and each of the Ancillary Agreements to which it is or will be a party and the consummation by such Seller or ORCH 3, as applicable, of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary corporate (or equivalent) action and (iii) this Agreement has been, and upon its execution each of the Ancillary Agreements to which such Seller or ORCH 3, as applicable, will be a party will have been, duly executed and delivered by such Seller or ORCH 3, as applicable, and, assuming due execution and delivery by each of the other parties hereto and thereto, this Agreement constitutes, and upon its execution each of the Ancillary Agreements to which such Seller or ORCH 3, as applicable, will be a party will constitute, the legal, valid and binding obligations of such Seller, enforceable against such Seller or ORCH 3, as applicable, in accordance with their respective terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether considered in a proceeding in equity or at Law) (the "Enforceability Exceptions").

(b)     Subject to the entry of the Sale Procedures Order, (i) each Transferred Subsidiary has all requisite legal capacity and the full power and authority to execute and deliver each of the Ancillary Agreements to which it will be a party, to perform its obligations thereunder and to consummate the transactions contemplated thereby, (ii) the execution, delivery and performance by each such Transferred Subsidiary of each of the Ancillary Agreements to which it will be a party and the consummation by such Transferred Subsidiary of the transactions contemplated thereby have been duly and validly authorized by all necessary corporate (or equivalent) action and (iii) upon its execution each of the Ancillary Agreements to which such Transferred Subsidiary will be a party, each such Ancillary Agreement will have been, duly executed and delivered by such Transferred Subsidiary and, assuming due execution and delivery by each of the other parties thereto, each of the Ancillary Agreements to which such Transferred Subsidiary will be a party will constitute, the legal, valid and binding obligations of such Transferred Subsidiary, enforceable against such Transferred Subsidiary in accordance with their respective terms, except as enforcement may be limited by the Enforceability Exceptions.

Section 3.3     No Conflict; Required Filings and Consents.

(a)     Except as set forth in Section 3.3(a) of the Disclosure Schedules and any required Bankruptcy Court approvals, and assuming that (x) requisite Bankruptcy Court approvals are obtained, (y) the notices, authorizations, approvals, Orders, Permits or consents set forth in Section 3.3(b) of the Disclosure Schedules are made, given or obtained (as applicable), and (z) any filings required by any applicable federal or state securities or "blue sky" Laws are made, the execution, delivery and performance by the Sellers, ORCH 3 and the Transferred Subsidiaries, as applicable, of this Agreement and the Ancillary Agreements to which they are (or will be) a party and the consummation by the Sellers, ORCH 3 and the Transferred Subsidiaries, as applicable, of the transactions contemplated hereby and thereby, will not: (i) conflict with or result in any violation or breach of or default under or give rise to a right of termination, cancellation, modification or acceleration of any obligation, to any put or call or similar rights or to loss of a benefit under, any provision of the Organizational Documents of any Seller, ORCH 3 or Transferred Subsidiary; (ii) conflict with or result in a violation or breach of any Community Solar Rule, Law or Order applicable to the Sellers or the Transferred Subsidiaries or by which any Transferred Asset or any property or asset of the Sellers or the Transferred Subsidiaries is bound;

(iii) violate or render void or voidable any Permit or Order applicable to the Transferred Subsidiaries or by which any Transferred Asset or any property or asset of the Transferred Subsidiaries is bound or (iv) conflict with or result in a violation or breach of, constitute (with or without notice or lapse time or both) a default under, require any Seller or Transferred Subsidiary to obtain consent or approval from any Person under the terms of, give rise to any right of termination, cancellation, acceleration or modification under the terms of, or result in the creation or imposition of any Encumbrance (other than Permitted Encumbrances) upon any properties or assets of any Transferred Subsidiary or any Transferred Asset under the terms of, in each case, any Lease or Contract to which any Seller or Transferred Subsidiary is party; except, with respect to clauses (ii), (iii) or (iv), for any such conflicts, violations, breaches, defaults or other occurrences which have not had and would not reasonably be expected to have a Material Adverse Effect.

(b)    Except as set forth in Section 3.3(b) of the Disclosure Schedules, no Seller nor ORCH 3 nor any Transferred Subsidiary is required to file, seek or obtain any notice, authorization, approval, Order, Permit, or consent of or with any Governmental Authority, Local Utility or Transmission Provider in connection with the execution, delivery and performance by the Sellers, ORCH 3 or Transferred Subsidiaries, as applicable, of this Agreement and each of the Ancillary Agreements to which they are or will be a party or the consummation by the Sellers, ORCH 3 or Transferred Subsidiaries, as applicable, of the transactions contemplated hereby or thereby, except (i) requisite Bankruptcy Court approvals (including the entry of the Sale Procedures Order and the Sale Order), (ii) such filings as may be required by any applicable federal or state securities or "blue sky" Laws, or (iii) as would be required solely as a result of the specific identity or the specific legal or regulatory status of the Buyer or any of its Affiliates.

Section 3.4    Transferred Assets.

(a)    Each Seller or Transferred Subsidiary, as applicable, has indefeasible title to, and owns and possesses all rights and interests in, including the right to use, the applicable Transferred Assets, or with respect to leased Transferred Assets, valid leasehold interests in, or with respect to licensed Transferred Assets, valid licenses to use.

(b)    This Agreement and the instruments and documents to be delivered by the Sellers to the Buyer at the Closing shall be adequate and sufficient to transfer (directly or indirectly through a Transferred Subsidiary) (i) Sellers' entire right, title and interest in and to the Transferred Assets and (ii) to the Buyer, good title (directly or indirectly through a Transferred Subsidiary) to the Transferred Assets, free and clear of all Encumbrances (other than Permitted Encumbrances), claims, and interests, other than Assumed Liabilities, subject to entry of the Sale Order.

(c)    Except (i) as has not had and would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect and (ii) as set forth on Section 3.4(c) of the Disclosure Schedules, and subject to any changes to the Transferred Assets pursuant to Section 2.6 or Section 2.7, the right, title and interest of the Sellers or the Transferred Subsidiaries, as applicable, in the Transferred Assets constitute substantially all of the assets of Sellers or the Transferred Subsidiaries, as applicable, owned or held by, used or intended for use, leased, licensed or accrued in connection with the conduct of the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) as currently conducted, and immediately after the

Closing, the Transferred Assets shall be sufficient for Buyer to continue to operate and conduct the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) as currently conducted.

(d)      Except as set forth on <u>Section 3.4(d) of the Disclosure Schedules</u>, all tangible assets of the Transferred Assets and Transferred Subsidiaries are (i) in good working order and condition in all material respects, ordinary wear and tear excepted, (ii) have been reasonably maintained, (iii) are suitable in all material respects for the uses for which they are being utilized in the Transferred Assets and the Businesses as conducted by the Sellers and Transferred Subsidiaries as of the date hereof (excluding with respect to Excluded Assets, and in such case solely to such extent), (iv) do not require more than regularly scheduled maintenance in the Ordinary Course of Business and the established maintenance policies of Sellers and the Transferred Subsidiaries, as applicable, in order to keep them in good operating condition, and (v) comply in all material respects with all requirements under any Laws and any licenses which govern the use and operation thereof.

(e)      Except for the Projects owned by the Transferred Subsidiaries, each Project transferred directly by a Seller to Buyer hereunder, and all Contracts and other rights, properties, interests or other assets (whether real or personal, tangible or intangible) solely related to such Project owned or otherwise held by a Seller, are set forth on <u>Schedule II</u>.

Section 3.5      <u>Transferred Subsidiaries</u>.

(a)      All of the outstanding Equity Interests in each Transferred Subsidiary (i) are owned directly by a Seller, (ii) are free and clear of any Encumbrance (other than Encumbrances in the Organizational Documents of the Transferred Subsidiaries, restrictions on transfer of Equity Interest under any applicable security Laws, and Encumbrances that will be released at the Closing pursuant to the Sale Order), (iii) have been duly authorized, validly issued and are fully paid and, as applicable, non-assessable, and (iv) have not been issued in violation of any federal or state securities Laws. <u>Section 3.5(a) of the Disclosure Schedules</u> lists all of the Transferred Subsidiaries and the outstanding Equity Interests therein and, in each case, the owner(s) thereof. No Transferred Subsidiary has any Subsidiaries or holds any Equity Interests or Voting Company Debt with respect to any other Person.

(b)      <u>Section 3.5(b) of the Disclosure Schedules</u> contains a true and correct list of the name of each Transferred Subsidiary and its jurisdiction of formation and any jurisdictions in which such Transferred Subsidiary is qualified to do business as a foreign entity. True, correct and complete copies of the Organizational Documents of each Transferred Subsidiary, in such form as currently in effect, have been made available to Buyer.

(c)      Since January 1, 2023, all distributions, dividends, repurchases and redemptions of the Equity Interests of each Transferred Subsidiary have been undertaken in compliance with the Organizational Documents of such Transferred Subsidiary then in effect and in compliance with applicable Law. There are no accumulated, declared or accrued but unpaid dividends or distributions with respect to any of the Transferred Equity, and the Transferred Subsidiaries do not have any obligation to pay any dividends or distributions with respect to their respective Equity Interests. Except as set forth on <u>Section 3.5(c) of the Disclosure Schedules</u>, there

are no options, warrants, convertible securities or other rights, agreements, arrangements or commitments relating to the Transferred Equity (other than this Agreement) obligating any Seller or any Transferred Subsidiary to issue or sell any shares of capital stock of, or any other comparable interest in, a Transferred Subsidiary (other than this Agreement). No Transferred Subsidiary owns, directly or indirectly, any capital stock, membership interest, partnership interest, joint venture interest or other Equity Interests in any other Person (other than a Transferred Subsidiary). None of the Transferred Subsidiaries has any issued and outstanding bonds, debentures, notes or other obligations the holders of which have the right to vote (or which are convertible into or exercisable for securities having the right to vote) with the equityholders of such Transferred Subsidiary on any matter ("Voting Company Debt"). There are no voting trusts, pledge agreements, buy-sell agreements, rights of first refusal, rights of first offer, preemptive rights, proxies or other agreements or understandings with respect to the Equity Interests of the Transferred Subsidiaries. None of the Transferred Subsidiaries have entered into silent partnership agreements granting the silent partner entitlements to its proceeds.

(d)     No Transferred Subsidiary conducts or has ever conducted (i) any business other than the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) or (ii) any operations other than those incidental to the Business (excluding with respect to Excluded Assets, and in such case solely to such extent).

Section 3.6     Financial Statements; No Undisclosed Liabilities; Schedule of Costs and Commitments.

(a)     The Sellers have delivered to the Buyer true, correct and complete copies of the unaudited consolidated balance sheet of ORD and its Subsidiaries (including OYA-OMNI) as of December 31, 2024 (the "Balance Sheet Date", and such balance sheet, the "Latest Balance Sheet"), together with the related consolidated statements of operations, changes in member's equity and cash flows for the periods ended December 31, 2024 (collectively, the "Seller Financial Statements"). Except as set forth on Section 3.6(a) of the Disclosure Schedules, the Seller Financial Statements (i) are based on the Books and Records of the Sellers and their Subsidiaries, (ii) have been prepared in accordance with GAAP, applied on a consistent basis (except as may be indicated in the notes thereto) and (iii) fairly present, in all material respects, the financial position of the Sellers and their Subsidiaries and the Business as of the respective dates therein indicated and the results of operations and cash flows for the periods therein specified (subject to, in the case of interim financial statements, normal year-end adjustments and the absence of notes).

(b)     None of the Transferred Subsidiaries has any Liabilities, whether or not required by GAAP to be disclosed or reflected on or reserved against a consolidated balance sheet (or the notes thereto) of such Sellers and their Subsidiaries, except for Liabilities (i) set forth on Section 3.6(b) of the Disclosure Schedules or otherwise disclosed in a filing with the Bankruptcy Court as part of the Bankruptcy Case, (ii) arising under any Material Contract, Permit, or applicable Law, or otherwise in the Ordinary Course of Business since the Balance Sheet Date (other than Liabilities arising out of any breach or default under any such Material Contract or failure to comply with any such Permit or applicable Law), (iii) which would not reasonably be expected to be material to the Business, taken as a whole, or (iv) which are expressly reflected or reserved against in the Seller Financial Statements.

(c)      Except as set forth on <u>Section 3.6(c) of the Disclosure Schedules</u>, no Transferred Subsidiary has any Indebtedness.

(d)      Sellers have delivered to the Buyer true and complete copies of the schedule of costs and commitments for the Transferred Subsidiaries (the "<u>Schedule of Costs and Commitments</u>"). The Schedule of Costs and Commitments fairly and accurately reflects all of the unpaid invoices of each Transferred Subsidiary as of the Closing Date. The Schedule of Costs and Commitments has been prepared in accordance with the accrual method of accounting.

Section 3.7      <u>Absence of Certain Changes or Events</u>. From the Balance Sheet Date through the date of this Agreement, (y) each Seller and each Transferred Subsidiary has used the same book or Tax accounting methods, except as required by GAAP, and (z) except as has been disclosed in the Disclosure Schedules, there has not been any event, change, condition, occurrence or effect that, individually or in the aggregate, has had or would reasonably be expected to have, a Material Adverse Effect. Except (i) for the solicitation of, discussions and negotiations with, presentations and provision of other diligence to and similar engagement with other potential bidders for the Transferred Assets, the negotiation and execution of this Agreement, or (ii) as set forth on <u>Section 3.7 of the Disclosure Schedules</u>, from the Balance Sheet Date until the date hereof, no Seller nor any Transferred Subsidiary has:

(a)      amended or modified the Organizational Documents of any Transferred Subsidiary;

(b)      issued or sold any capital stock or other Equity Interests of any Transferred Subsidiary or any options, warrants, convertible or exchangeable securities, subscriptions, rights, stock appreciation rights, calls or commitments with respect to the capital stock or other Equity Interests of any Transferred Subsidiary granted phantom stock or other similar rights with respect to the capital stock or other Equity Interests of any Transferred Subsidiary;

(c)      adopted a plan of liquidation, dissolution, merger, consolidation or other reorganization;

(d)      made any change in its accounting methods, principles or practices that would be material to the Business taken as a whole, except as may be required by GAAP, the Code or applicable Law;

(e)      made any acquisition of all or substantially all of the assets, properties, capital stock or business of any other Person, whether by merger, stock or asset purchase;

(f)      changed, made or revoked any Tax election, changed any method of accounting with respect to Taxes, filed any amended Tax Return, surrendered or compromised any right to claim a Tax refund, settled or compromised any claim, notice, audit, assessment or other proceeding related to Taxes, entered into any agreement affecting any Tax Liability or any refund or filed any request for rulings or special Tax incentives with any Governmental Authority, entered into any Tax allocation, sharing or indemnity agreement, extended or waived the statute of limitations period applicable to any Tax or Tax Return or took or caused (or caused any other Person to take or cause) any action, in each case that could have a material effect on the amount of Taxes due from the Business (excluding with respect to Excluded Assets, and in such case solely

to such extent) or due as a result of the Transferred Assets for a taxable period (or portion thereof) beginning after the Closing Date; or

(g)    agreed or committed in writing to do any of the foregoing.

Section 3.8    Compliance with Law; Permits.

(a)    The Business (excluding with respect to Excluded Assets, and in such case solely to such extent) is being conducted in material compliance with, and Sellers and the Transferred Subsidiaries have in all material respects complied with all applicable Laws, Permits, Orders, and Community Solar Rules relating to the operation of the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) and the Transferred Assets. Each Project is in compliance in all material respects with all applicable Laws, Permits, Orders, and Community Solar Rules. No investigation with respect to actual or alleged noncompliance with applicable Laws, and Orders by any Seller (solely to the extent it relates to the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), the Transferred Assets or the Assumed Liabilities) or any Transferred Subsidiary has been threatened in writing or commenced, and no notice, charge, claim, Action or assertion has been received by any Seller (solely to the extent it relates to the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), the Transferred Assets or the Assumed Liabilities) or any Transferred Subsidiary with respect to any actual or alleged noncompliance with applicable Laws and Orders.

(b)    The Sellers (solely to the extent it relates to the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), the Transferred Assets or the Assumed Liabilities) and the Transferred Subsidiaries are in possession of all material Permits necessary for them to own, lease or otherwise hold their assets and properties and to carry on the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) as currently conducted, including with respect to any Project, the Community Solar Rules, and the Regulatory Exemptions (such Permits, the "Applicable Permits"). All such Applicable Permits, and the holders thereof, are set forth on Section 3.8(b) of the Disclosure Schedules, and such Applicable Permits include all Permits and Orders required to be obtained by the Sellers and the Transferred Subsidiaries pursuant to applicable Law and Order based on the current stage of ownership, construction, and development of its respective Projects.

(c)    Except as set forth in Section 3.8(c) of the Disclosure Schedules, no event has occurred that permits or would permit any material adverse modification, revocation, suspension, or termination of, or any other material adverse change in, or would prevent any Seller or any Transferred Subsidiary from obtaining, or any Seller's or any Transferred Subsidiary's compliance with, any Applicable Permit. Each such Applicable Permit (i) is held in the name of the applicable Seller or Transferred Subsidiary, (ii) is valid and in full force and effect, (iii) is final and, if the statute or regulation pursuant to which such Applicable Permit is issued establishes a limited administrative or judicial appeal period, all such periods have expired and (iv) has not expired or been terminated, suspended, revoked or modified in any material respect, except as noted in Section 3.8(c) of the Disclosure Schedules. No Seller or Transferred Subsidiary is in material breach or default (nor, with the giving of notice or lapse of time or both, would be in material breach or default) under any such Applicable Permit.

(d)     Except as set forth in <u>Section 3.8(d) of the Disclosure Schedules</u>, neither any Seller nor any Transferred Subsidiary has received written, or, to the Knowledge of the Sellers, oral, notice from any Governmental Authority, Local Utility or Transmission Provider regarding (i) any breach or default under any Applicable Permit, (ii) the expiration, revocation, suspension or termination of, or any material modification of the requirements under, any Applicable Permit or (iii) any administrative investigation, administrative appeal, or judicial proceeding with respect to any Applicable Permit (other than rulemaking proceedings of general applicability).

(e)     <u>Section 3.8(e) of the Disclosure Schedules</u> identifies all pending applications made by, or on behalf of, any Seller or any Transferred Subsidiary for any Permit (such Permits, the "<u>Pending Permits</u>"). With respect to each such pending application, no Seller nor any Transferred Subsidiary has received notice from any Governmental Authority, Local Utility or Transmission Provider stating that such Governmental Authority, Local Utility or Transmission Provider will not issue the Pending Permit applied for thereunder.

(f)     The Sellers have delivered to Buyer a true, correct and complete copy of each Applicable Permit. The factual representations provided to any Governmental Authority, Local Utility or Transmission Provider (i) in the applications made by, or on behalf of, any Seller or any Transferred Subsidiary for each Applicable Permit and (ii) in each such pending application for a Pending Permit, in each case, was, at the time such application was made, true, correct, and complete in all material respects, or were subsequently modified as to make such information true, correct and complete in all material respects.

(g)     None of the Sellers holds any Applicable Permits or Pending Permits.

Section 3.9     <u>Litigation.</u> Except for the Bankruptcy Case, any Order entered in the Bankruptcy Case, and as otherwise listed on <u>Section 3.9 of the Disclosure Schedules</u>, there is not, and has not been for the three (3) years prior to the date hereof, any Action pending, or to the Knowledge of the Sellers, threatened in writing by or against any Transferred Subsidiary in connection with the Business or against any Seller involving any of the Transferred Assets (including, the Transferred Subsidiaries and any of their assets), the Assumed Liabilities or the Business. There are no Orders currently outstanding to which any of the Transferred Assets (including, the Transferred Subsidiaries and any of their assets), the Assumed Liabilities or the Business is subject, except as has not resulted in and would not reasonably be expected to result in a Material Adverse Effect. None of the Sellers, the Transferred Subsidiaries or any of their respective Affiliates has received written notice of any such Order described in this <u>Section 3.9</u>.

Section 3.10     <u>Employee Matters.</u> None of the Sellers or Transferred Subsidiaries currently have, or have ever had, any employees or any Benefit Plan or any Liability with respect to any employee or Benefit Plan. No Transferred Subsidiary is an employer or co-employer of any individuals who provide services to any Transferred Subsidiary (each such individual, a "<u>Service Provider</u>"). The consummation of the transactions contemplated by this Agreement will not result in any Transferred Subsidiary or Buyer incurring any Liability with respect to any Benefit Plan or directly or indirectly to any Service Provider.

Section 3.11    Real Property.

(a)    None of the Sellers or Transferred Subsidiaries owns, or have ever owned, any real property.

(b)    (i) Section 3.11(b)(i) of the Disclosure Schedules sets forth a true and complete list of each Seller Lease.

(ii)    Section 3.11(b)(ii) of the Disclosure Schedules sets forth a true and complete list of (x) each Transferred Subsidiary Lease, (y) each Contract pursuant to which any Transferred Subsidiary holds, as grantee or assignee, any easement, right-of-way or license for the use of real property (each, an "Easement" and the real property subject to such Easement, the "Easement Real Property") and (z) each Contract pursuant to which any Transferred Subsidiary has an option to acquire or lease an interest in any real property (each such Contract, an "Option" and the real property subject thereto, the "Option Real Property" and, together with the Leased Real Property and Easement Real Property, the "Real Property").

(iii)    Except as set forth on Section 3.11(b)(i) and Section 3.11(b)(ii) of the Disclosure Schedules, the Sellers and the Transferred Subsidiaries do not own, lease, license or otherwise have and have not had any interests (including option interests) in any real property other than Real Property.

(c)    Except as set forth on Section 3.11(c) of the Disclosure Schedules, the Seller or Transferred Subsidiary party thereto has a valid leasehold interest in all Leased Real Property, subject to the entry to the Sale Order, free and clear of all Encumbrances, other than Permitted Encumbrances. Each Transferred Subsidiary has good and valid interests in each parcel of Easement Real Property pursuant to which such Transferred Subsidiary has been granted an Easement, subject to the entry to the Sale Order, free and clear of all Encumbrances, other than Permitted Encumbrances.

(d)    The Sellers have made available to the Buyer all existing surveys or topographic maps for the Real Property (if any) and title policies in the Sellers' or Transferred Subsidiaries' possession.

(e)    None of Sellers or the Transferred Subsidiaries has received written notification that any Real Property is not in compliance in all material respects with all conditions, restrictions and requirements contained in any zoning or similar ordinances applicable to such Real Property (including any amendments thereto).

(f)    Except as set forth on Section 3.11(f) of the Disclosure Schedules, to the Knowledge of the Sellers, there are no unrecorded interests in any portion of any Site or any Option Real Property for oil, gas or other mineral rights, unrecorded leases, unrecorded easements, options to lease or obtain easements or rights to purchase or other rights of possession that would individually or in the aggregate reasonably be expected to materially and adversely impair the use of any Real Property for its expected purpose in connection with any Project.

(g)    To the Knowledge of the Sellers, there are no zoning or other land use proceedings (including condemnation proceedings) before any Governmental Authority pending

or threatened in writing that would reasonably be expected to impair the use of any Real Property for its expected purpose in connection with any Project. None of the Sellers or any of the Transferred Subsidiaries has received written notice from any Governmental Authority regarding any such zoning or other land use proceedings (including condemnation proceedings).

(h)    The Leased Real Property and Easement Real Property, in each case, is being maintained in all material respects in accordance with applicable Law, and none of the Sellers or any of the Transferred Subsidiaries has received any written notification that any such Real Property is in violation in any material respect of any applicable Law. The Option Real Property is being maintained in all material respects in accordance with applicable Law and none of the Sellers or Transferred Subsidiaries has received any written notification that any such Real Property is in violation of any applicable Law.

(i)    Neither any Seller nor any Transferred Subsidiary has collaterally assigned or granted a security interest in any Real Property. Neither any Seller nor any Transferred Subsidiary has subleased, licensed or otherwise granted any person or entity the right to use or occupy, possess or otherwise encumber any of the Real Property, other than as disclosed in a title policy with respect to a Transferred Subsidiary. No Seller nor any Transferred Subsidiary has vacated or abandoned any portion of the Real Property or given notice to any Person of their intent to do the same.

(j)    Each coordinated electric system interconnect review ("CESIR") report issued by a Local Utility with respect to a Project is set forth on Section 3.11(j) of the Disclosure Schedules (the "CESIR Reports"). None of the Sellers or Transferred Subsidiaries, as applicable, is in material default, or is alleged in writing to have materially breached or to be in material default, under any CESIR Report. The Sellers have made available to Buyer complete and correct copies of all CESIR Reports. None of the CESIR Reports has been canceled or otherwise terminated, and none of the Sellers or Transferred Subsidiaries, has received any written notice from any Person regarding any such cancellation or termination.

(k)    Each Seller and each Transferred Subsidiary has enjoyed the continuous and uninterrupted quiet possession, use and operation of the Real Property, without complaint or objection by any Person.

(l)    Except as set forth in Section 3.11(l) of the Disclosure Schedules, the Real Property Documents are in full force and effect; all payments due under each such Real Property Document have been paid; no Seller or Transferred Subsidiary has received notice that it is in default under any Real Property Document; and there exists no event, occurrence, condition or act that, with the giving of notice, the lapse of time or the happening of any further event or condition, would give rise to a default under any Real Property Document.

(m)    No Seller or Transferred Subsidiary is a party to or obligated under any option, right of first refusal or other contractual right to sell, dispose of or lease any of the Leased Real Property or any portion thereof or interest therein to any Person other than the Buyer.

Section 3.12    <u>Intellectual Property</u>.

(a)    No Seller or Transferred Subsidiary owns, beneficially, of record, or otherwise, any Intellectual Property and no Intellectual Property is registered to or licensed to a Seller or a Transferred Subsidiary, in each case, other than Off-the-Shelf Software.

(b)    The conduct of the Business (excluding with respect to Excluded Assets, and in such case solely to such extent, but including the products and services of the Sellers and the Transferred Subsidiaries) does not infringe, misappropriate or otherwise violate (and, in the past three (3) years, has not infringed, misappropriated or otherwise violated), in any material respect, any Person's Intellectual Property rights, and in the past three (3) years there has been no such Action asserted or, to the Knowledge of the Sellers, threatened in writing against any Seller or Transferred Subsidiary or, to the Knowledge of the Sellers, any other Person.

(c)    Each Seller and Transferred Subsidiary has at all times in the past three (3) years complied with all applicable Laws, as well as its own rules, policies, and procedures, relating to privacy, data protection, data security and the collection and use of personal information collected, used, or held for use by the Sellers or Transferred Subsidiaries. In the past three (3) years, no Actions have been asserted or threatened in writing against any Seller or Transferred Subsidiary alleging a violation of any Laws relating to a Person's privacy or personal information or data rights or any information security related incidents. No Seller or Transferred Subsidiary has notified in writing or been required by applicable Law or Contract to notify in writing, any person or entity of any personal data or information security-related incident.

(d)    Each Seller and Transferred Subsidiary has implemented, and required that its third party vendors implement, adequate policies and commercially reasonable security (i) regarding the collection, use, disclosure, retention, processing, transfer, confidentiality, integrity and availability of personal data and business proprietary or sensitive information, in its possession, custody or control, or held or processed on its behalf, and (ii) regarding the integrity and availability of the information technology and software applications owned, operated or outsourced by the Sellers and the Transferred Subsidiaries. Neither any Seller nor any Transferred Subsidiary has experienced any information security incident that has compromised the integrity or availability of the information technology and software applications they own, operate or outsource, and there has been no loss, damage or unauthorized access, disclosure, use or breach of security of any information in the possession, custody or control, or otherwise held or processed behalf of such Seller or Transferred Subsidiary. To the Knowledge of the Sellers, the information technology and software applications of the Sellers and the Transferred Subsidiaries do not contain any "time bombs," "Trojan horses," "back doors," "trap doors," worms, viruses, spyware, keylogger software or other vulnerability, faults or malicious code or damaging devices designed or reasonably expected to adversely impact the functionality of or permit unauthorized access or to disable or otherwise harm any information technology or software applications.

(e)    In the past three (3) years, (i) the Sellers and the Transferred Subsidiaries have not experienced any defects in the Software used in the Business that have not been remediated as of the date hereof and (ii) there have been no security breaches in the Sellers' or the Transferred Subsidiaries' information technology systems and (iii) there have been no disruptions in any of the Sellers' or Transferred Subsidiaries' information technology systems that adversely

affected the Business and that have not been remediated as of the date hereof, in each case, except as would not reasonably be expected to result in a Material Adverse Effect.

Section 3.13    Taxes. Except as set forth in Section 3.13 of the Disclosure Schedules:

(a)    (i) The Sellers and the Transferred Subsidiaries have filed (taking into account valid extensions) all required Tax Returns relating to each Transferred Subsidiary, the Transferred Assets, the Assumed Liabilities, the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), income and operations of any Transferred Subsidiary, or any Project, in each case, required to be filed by any Transferred Subsidiary or any Seller per applicable Law, as the case may be, (ii) all such Tax Returns are true, correct and complete in all material respects; and (iii) each Seller and each Transferred Subsidiary has paid in full all Taxes (whether or not required to be shown on any Tax Return) relating to each Transferred Subsidiary, the Transferred Assets, the Assumed Liabilities, the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), income and operations of any Transferred Subsidiary, or any Project that were due and payable on or before the Closing Date, except for Taxes not yet due and payable or if not yet due and payable, being contested in good faith by appropriate proceedings and covered by adequate reserves established in accordance with GAAP.

(b)    All material Taxes required to be withheld or collected by any Seller or any Transferred Subsidiary relating to or arising in connection with the Transferred Assets, the Assumed Liabilities or the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) or any Project, or of or with respect to the Transferred Subsidiaries, the income or operations of any Transferred Subsidiary, or any Project and, to the extent required by applicable Law, paid (including in connection with any amounts owing to any employee, independent contractor, creditor, stockholder or other third party), have been timely withheld or collected and remitted to the appropriate Governmental Authority, and all IRS Forms W-2 and 1099 and other applicable forms required with respect thereto have been properly completed and timely filed. Each of the Sellers and Transferred Subsidiaries has timely collected all sales, use and value added Taxes required to be collected by them, and has timely remitted all such Taxes to the appropriate Governmental Authority.

(c)    There is no Action, suit, claim, assessment, or audit pending, or proposed, contemplated, asserted or threatened in writing by any Governmental Authority with respect to Taxes or Tax Returns of or with respect to the Transferred Subsidiaries or with respect to the Transferred Assets, the Assumed Liabilities, the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) or any Project, the income or operations of any Transferred Subsidiary, or any Project, and no Governmental Authority has indicated an intent to investigate, commence or open such an Action, suit, claim or audit with respect to any such Tax or Tax Return. No claim has ever been made by a Governmental Authority against any Transferred Subsidiary or Seller solely for Taxes relating to any Transferred Subsidiary, the Transferred Assets, income or operations of any Transferred Subsidiary, or any Project in a jurisdiction where any Transferred Subsidiary or Seller, as applicable, does not file Tax Returns that it is or may be subject to Tax in that jurisdiction.

(d)    There are no Encumbrances for Taxes upon the Transferred Assets or any of the assets, income or operations of the Transferred Subsidiaries or in respect of any Project, in each case other than Permitted Encumbrances.

(e)    Neither the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) nor any of the Transferred Assets, Assumed Liabilities or Transferred Subsidiaries is subject to any Tax allocation, indemnity or sharing agreement or similar agreement, arrangement or understanding, other than any such agreement entered into in the Ordinary Course of Business the principal purpose of which is not to address Taxes.

(f)    No Tax election has been made by or with respect to the Transferred Subsidiaries or with respect to any of the Transferred Assets, the Assumed Liabilities or the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) or any Project, in each case that has, or may have, continuing effect after the Closing Date.

(g)    No agreement, waiver, extension or consent regarding the application of the statute of limitations with respect to any Taxes or Tax Returns of or with respect to the Transferred Subsidiaries, or with respect to the Transferred Assets, the Assumed Liabilities or the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) or any Project is outstanding, nor is there pending any request for such an agreement, waiver, extension or consent. No power of attorney has been granted with respect to any matter relating to Taxes payable by or with respect to the Transferred Subsidiaries, or with respect to any of the Transferred Assets, Assumed Liabilities or the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) or any Project, in each case that is currently in force.

(h)    None of the Sellers or Transferred Subsidiaries has elected under Treasury Regulations Section 301.7701-3 to be classified as a corporation for US federal income Tax purposes, and since its formation each Transferred Subsidiary is and properly has been classified as a Disregarded Entity. Each of the Transferred Subsidiaries has, since its formation, been a United States Person or with respect to each such Transferred Subsidiary that is a Disregarded Entity, owned by a regarded owner that has, since its formation, been a United States Person, in each case, not subject to withholding under Sections 1445 or 1446 of the Code.

(i)    Neither any Seller nor any Transferred Subsidiary (i) has received any ruling from a Governmental Authority relating exclusively to Taxes due in respect of any Transferred Subsidiary or with respect to any of the Transferred Assets, Assumed Liabilities or the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) or any Project or (ii) has withdrawn a request for such a ruling before the ruling was issued.

(j)    No Transferred Subsidiary has any liability for Taxes of any other Person under Treasury Regulations Section 1.1502-6 (or any similar provision of state, local, or foreign Law), as a transferee or successor, by contract, or otherwise by operation of applicable Law.

(k)    Neither the Buyer (or its Affiliates) nor any Transferred Subsidiary (nor Buyer, as a result of holding an interest in a Transferred Subsidiary) will be required to include any item of income in, or exclude any item of deduction from, taxable income for any Post-Closing Tax Period as a result of any (i) change in method of accounting for a taxable period ending on or

before the Closing Date, (ii) use of an improper method of accounting for a taxable period ending on or before the Closing Date, (iii) installment sale or open transaction disposition on or before the Closing Date, (iv) prepaid amount or deferred revenue received prior to the Closing Date, or (v) closing agreement under Code Section 7121 (or any corresponding or similar provision of state, local or non-U.S. Law) entered into on or before the Closing Date.

(l)     No Transferred Asset or any portion of any Project or any assets of any Transferred Subsidiary is or will be (i) "tax-exempt use property" within the meaning of Section 168(h) of the Code, (ii) described in Section 50(b)(3) of the Code, (iii) "tax-exempt bond financed property" within the meaning of Section 168(g) of the Code, (iv) securing any debt the interest of which is Tax-exempt under Section 103(a) of the Code, (v) subject to a lease, or (vi) subject to the application of Section 197(f)(9) of the Code.

(m)     No Transferred Asset or any portion of any Project or any assets of any Transferred Subsidiary is or will be "public utility property" or property "used predominantly outside the United States" within the meaning of Sections 168(i)(10) or 168(g)(4) of the Code.

(n)     No Transferred Subsidiary is a "related person" to any purchaser of power under the Power Purchase Agreement for purposes of Sections 267 or 707 of the Code.

(o)     No Transferred Subsidiary has benefited from any Tax-exempt bonds or loans under Section 103 of the Code nor have the proceeds of any issue of state or local government obligations been used to provide financing for any Project of any Transferred Subsidiary the interest on which is exempt from Tax under Section 103 of the Code.

(p)     No portion of the cost basis of any property included in any Project is attributable to "qualified rehabilitation expenditures" within the meaning of Section 47(c)(2)(A) of the Code.

(q)     Each Project is designed to use "solar energy to generate electricity" within the meaning of Section 48 of the Code.

(r)     No Project has generated, or is expected to generate, energy for the purposes of heating a swimming pool within the meaning of Section 48 of the Code.

(s)     Each Project is located in its entirety in the United States within the meaning of Sections 50(b)(1) and 638(1) of the Code.

(t)     No Person has ever (i) elected pursuant to Section 168(g)(7) of the Code to have the alternative depreciation system apply to any Project or any portion thereof or (ii) applied for a cash grant with respect to any Project under Section 1603 of the American Recovery and Reinvestment Act of 2009.

(u)     No Transferred Subsidiary nor any Seller is party to any joint venture, partnership, other arrangement or Contract that reasonably could cause any Transferred Subsidiary to be treated as, or as a partner in, a partnership for U.S. federal income Tax purposes. No Contract obligates any Project or any Transferred Subsidiary (or any Seller in respect thereof) to make any payments based on net profits or net income.

(v)     No Transferred Subsidiary is a party to or bound by any Tax indemnification, Tax allocation or Tax sharing agreement or any closing agreement, gain recognition agreement or other agreement relating to Taxes (but excluding, for this purpose, any agreement entered into in the ordinary course of business the principal purpose of which is not related to Taxes).

(w)     Neither any Transferred Subsidiary nor any Seller has been subject to the recapture of any federal, state or local Tax credits claimed with respect to any Project within the meaning of Section 50(a) of the Code or any analogous state or local Tax Law.

(x)     None of the Sellers, the Transferred Subsidiaries nor any of their Affiliates is a Disqualified Person.

(y)     No Transferred Asset or any portion of any Project or any assets of any Transferred Subsidiary has benefitted from the proceeds of any grant or rebate program that would cause a reduction in the amount of the energy credit provided under Section 48 of the Code for such Transferred Asset, Project or other assets, and no application with respect to any such grant or rebate has been filed or submitted.

(z)     None of the Sellers or any of the Transferred Subsidiaries have entered into or are party to or bound by any Tax Equity Document.

(aa)     None of the Transferred Subsidiaries (or any of their Subsidiaries) have claimed any employee retention credits under the CARES Act.

(bb)     No earth moving activity was performed by or on behalf of the Sellers or the Transferred Subsidiaries nor their Affiliates on, and neither the Sellers, the Transferred Subsidiaries nor their Affiliates or any other Person acting on their behalf has attached any property to, any Project Site. Neither the Transferred Assets nor the assets of the Transferred Subsidiaries include, and neither the Sellers nor the Transferred Subsidiaries has owned, or entered into or been a party to any contract for the purchase of, any equipment the manufacture of which has commenced pursuant to a binding written contract for any Project. With respect to any Project, (a) neither the Sellers, the Transferred Subsidiaries nor any Person acting on their behalf has begun excavation for or construction of any building, wall, or other structure at any Project Site that is integral to the production of electricity, (b) neither the Sellers, the Transferred Subsidiaries nor any Person acting on their behalf has performed any site improvements at any Project Site, such as filling or compacting soil, (c) neither the Sellers, the Transferred Subsidiaries nor any Person acting on their behalf has started construction of any roads integral to any Project's production of electricity at any Project Site (excluding any roads used primarily for access), (d) neither the Sellers, the Transferred Subsidiaries nor any Person acting on their behalf has begun the manufacture, construction, production, or assembly of any significant property or significant components comprising any Project that are integral to such Project's production of electricity, and (e) neither the Sellers, the Transferred Subsidiaries nor any Person acting on their behalf has performed any other significant physical work or significant physical activities at any Project site that is integral to such Project's production of electricity. Taking into account both on-site work and off-site work, construction has not begun on or before the Closing Date within the meaning of IRS Notice 2018- 59 or Treasury Regulations Section 1.45-7(d)(3)), on either any Project or any

other energy properties that are part of the same "energy project" (as defined in Proposed Regulation 1.48-13(d)) as such Project.

(cc)    No part of any Project, or any other energy properties that are part of the same "energy project" (as defined in Treasury Regulation 1.48-13(d)) as any such Project, has been "placed in service" for purposes of Section 45, 48, 167 or 168 of the Code and no Person has requested permission to operate for any Project from the local utility.

(dd)    There are no facts that would cause any Project to be incapable of qualifying for, and producing or giving rise to, the RTC with continued reasonable and diligent effort, and no facts or circumstances exist that reasonably could be expected to hinder, impair, restrict, limit or disqualify any Project from qualifying for, and producing and giving rise to, the RTC. All of the information provided by or behalf of Sellers, the Transferred Subsidiaries or any of their Affiliates to any appraiser, independent engineer, or any accountants was true and correct in all material respects as of the date given.

(ee)    No RTC, nor any other federal, state or local tax credit, with respect to or in connection with the Project has been or will be claimed or has been or will be reported on any Tax Returns of Seller or any Affiliate thereof or any other Person, and neither Sellers nor the Transferred Subsidiaries or any Affiliate of such parties has elected to pass-through the RTC to a lessee of any portion of any Project pursuant to Treasury Regulation Section 1.48-4. None of the property comprising any Project consists of previously used property (within the meaning of Section 48 of the Code and any Treasury Regulations promulgated thereunder).

(ff)    No Seller nor any of its direct owners is a Tax-exempt entity.

Section 3.14    <u>Environmental Matters</u>.

(a)    The Sellers, the Transferred Subsidiaries, the Transferred Assets and the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) are, and have for the three (3) years prior to the date hereof been, in compliance in all material respects with all applicable Environmental Laws, which compliance includes obtaining, maintaining and complying with all Environmental Permits required in connection with the conduct or operation of the Business as currently conducted and the ownership or use of the Transferred Assets. There is no claim or action currently pending or, to the Knowledge of the Sellers, threatened in writing, that seeks the cancellation, revocation, non-renewal or other material adverse or limiting modification or amendment of any such Environmental Permit.

(b)    There is no material Environmental Claim pending or, to the Knowledge of the Sellers, threatened in writing against any Seller, Transferred Subsidiary or against or affecting any Transferred Asset or the Business. Neither the Sellers, the Transferred Subsidiaries, the Transferred Assets nor the Business is subject or a party to any claim, action, investigation or proceeding relating to an Environmental Claim where there is an outstanding actual or potential material Liability. Other than Orders of general applicability, none of the Transferred Subsidiaries or the Transferred Assets is subject to any Order with respect to it, or any Project or Site, relating to or arising under Environmental Law that would reasonably be expected to impose any material restriction, value impairment or burdensome requirement on any of the Transferred Subsidiaries

or the Transferred Assets after Closing. For the avoidance of doubt and without limitation, there are no pending claims against the Sellers, the Transferred Subsidiaries, the Transferred Assets or the Business from any alleged exposure to asbestos or asbestos-containing materials.

(c)     Neither the Sellers nor the Transferred Subsidiaries has assumed or agreed to assume or otherwise become subject to any Liability of a third party under Environmental Law.

(d)     There has been no Release of any Hazardous Material by the Sellers or any of the Transferred Subsidiaries, or to the Knowledge of the Sellers, any other Person, at any Site, which would reasonably be expected to result in any material Liability of the Business, any Transferred Asset or any Transferred Subsidiary, or any Environmental Claim against or affecting any Seller (solely to the extent related to the Business, the Transferred Assets or the Assumed Liabilities), any Transferred Subsidiary or the Business.

(e)     To the Knowledge of the Sellers, no former property, including the ground and groundwater underlying or the surface water at such former property, is or has been contaminated or polluted by any Hazardous Material in circumstances which would reasonably be expected to result in an Environmental Claim against or involving any Seller, Transferred Subsidiary, Transferred Asset or the Business.

(f)     Sellers have made available to the Buyer true, correct and complete copies of all final, third party written environmental assessments (including all Phase I and Phase II Environmental Site Assessments), environmental audits and other material environmental reports or studies, in each case, that are in the possession or reasonable control of any Seller or any Transferred Subsidiary, in relation to any Project, the Site of any Project or any Transferred Subsidiary, including any Transferred Subsidiaries' compliance with Environmental Laws (the "Environmental Reports").

Section 3.15   Material Contracts.

(a)     Section 3.15(a) of the Disclosure Schedules sets forth, as of the date of this Agreement, a true, correct and complete list of the following Contracts to which any Seller or any Transferred Subsidiary is a party or is bound or to which any Transferred Assets are subject and that are not Excluded Contracts (each, a "Material Contract," and collectively, the "Material Contracts"):

(i)     each Contract that creates or evidences any Liabilities or sources of revenue of the Business or of any Transferred Subsidiary in an amount in excess $50,000 in the aggregate;

(ii)     each Community Solar Subscription Agreement;

(iii)     each NYSERDA award letter confirming eligibility in the Megawatt Block Program and Community Adder Program, including any compensation letter for the VDER Program;

(iv)    each Contract with any Governmental Authority requiring the payment of any amounts with respect to a Project to a Governmental Authority, in lieu of Taxes, in connection with or as a condition to the issuance of a Permit, or otherwise;

(v)    each Contract for the operation and maintenance of the Projects;

(vi)    each Interconnection Agreement;

(vii)    each Power Purchase Agreement;

(viii)    each EPC Agreement;

(ix)    each Real Property Document;

(x)    each Asset Management Agreement;

(xi)    each Contract evidencing or relating to Indebtedness for borrowed money (including leases which are or should be, in accordance with GAAP, recorded as capital leases), any extension of credit, or the granting of any Encumbrance (other than any Permitted Encumbrance, except for any Encumbrance that constitutes a Permitted Encumbrance solely by reason of <u>clause (f)</u> of the definition thereof) on any Transferred Asset or any Transferred Subsidiary or asset thereof;

(xii)    each Contract containing any limitation on the freedom or ability of any Transferred Subsidiary to engage in any line of business or compete with any Person or to operate in any geographic area;

(xiii)    each Related Party Agreement;

(xiv)    each Contract with a supplier or lessor of any Transferred Subsidiary requiring aggregate payments by such Transferred Subsidiary in excess of $50,000 in the aggregate;

(xv)    each Tax sharing, allocation, indemnification or similar agreement;

(xvi)    each Contract containing "most-favored-nation," "most-favored-customer" or similar pricing provisions for the benefit of any Person (other than any Transferred Subsidiary);

(xvii)    each Contract that is a conciliation, settlement or similar agreement, in each case, with any Governmental Authority;

(xviii)    each power of attorney that relates to the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), any Transferred Asset, any Assumed Liability, any Transferred Subsidiary or any asset of a Transferred Subsidiary;

(xix)    each Contract relating to the acquisition or license of material Intellectual Property from any Person, but excluding Off-the-Shelf Software;

(xx)    each Contract pursuant to which any Transferred Subsidiary has formed or agreed to form a partnership, joint venture or other similar arrangement involving the sharing of profits;

(xxi)    each material Contract necessary or required to install, operate, maintain, test, repair or use any Project that is not otherwise identified in clauses (i) through (xix) of this definition, including any Contract with a Governmental Authority, Local Utility or Transmission Provider;

(xxii)    each any Contract or group of related Contracts for the lease or use of any Equipment by any Seller or for the storage of any Equipment of the Sellers (including any warehousing Contracts);

(xxiii)    each option or hedging Contract;

(xxiv)    each supply Contract pursuant to which the Sellers or Transferred Subsidiaries receive goods or services from a third party;

(xxv)    any assignments, amendments, modifications and supplements of any of the foregoing; and

(xxvi)    each Contract in writing to enter into any of the foregoing.

(b)    Subject to requisite Bankruptcy Court approvals, and assumption by the applicable Seller of the applicable Contract in accordance with applicable Law (including satisfaction of any applicable Cure Costs) and except as a result of the commencement of the Bankruptcy Case, each of the Material Contracts (in the case of any Material Contract to which a Seller is a party, that constitutes a Transferred Contract) is in full force and effect and is a valid, binding and enforceable obligation of the applicable Seller and Transferred Subsidiary party thereto and, to the Knowledge of the Sellers, each of the other parties thereto, except as may be limited by the Enforceability Exceptions. Except as set forth on Section 3.15(b) of the Disclosure Schedules, as a result of the commencement of the Bankruptcy Case or as would not reasonably be expected to be material to the Business taken as a whole, none of the Sellers or Transferred Subsidiaries, as applicable, is in material default, or is alleged in writing by the counterparty thereto to have materially breached or to be in material default, under any Material Contract, and, to the Knowledge of the Sellers, the other party to each Material Contract is not in material default thereunder. The Sellers have made available to Buyer complete and correct copies of all Material Contracts. None of the Material Contracts has been canceled or otherwise terminated, and none of the Sellers or Transferred Subsidiaries, has received any written notice from any Person regarding any such cancellation or termination. There are no claims pending or threatened against any Seller or Transferred Subsidiary under any Material Contract.

Section 3.16    Affiliate Transactions. Except as set forth on Section 3.16 of the Disclosure Schedules, no Transferred Subsidiary is party to or otherwise bound by any transaction or Contract with any Related Party (a "Related Party Agreement"), and no Related Party, (a) has any material interest in any material property used by the Sellers and the Transferred Subsidiaries or (b) owns any material interest in, or is an officer, director, employee or consultant of, any Person which is,

or is engaged in business as a material supplier or customer of the Sellers and the Transferred Subsidiaries.

Section 3.17    Insurance. Section 3.17 of the Disclosure Schedules lists, as of the date hereof, a true and complete list of all insurance policies maintained by or covering the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), the Transferred Subsidiaries, the Transferred Assets and the Assumed Liabilities (the "Insurance Policies"), inclusive of insurer, policy holder, coverage type, limits, deductibles and expiry dates for all current claims-made and occurrence-based policies. Each such Insurance Policy is in full force and effect, all premiums due and payable thereunder have been paid in full, and neither any Seller nor any Transferred Subsidiary has received a written notice of cancellation or termination of any such Insurance Policy. There are no pending or unpaid claims under any Insurance Policy.

Section 3.18    Brokers. Except as set forth on Section 3.18 of the Disclosure Schedules, no broker, finder or investment banker, or other Person is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated hereby as a result of an engagement initiated by or on behalf of any Seller or any Transferred Subsidiary that would be payable by the Buyer or any of its Affiliates (including, after the Closing, any Transferred Subsidiary).

Section 3.19    Working Capital Assets; Equipment.

(a)    All Inventory is owned by a Seller or a Transferred Subsidiary, as applicable, free and clear of all Encumbrances (other than Permitted Encumbrances) and is valued on the books and records of such Seller or Transferred Subsidiary at the lower of cost or fair market value thereof, based upon the "first in, first out" method of accounting, and is in good condition and consists of a quality and quantity useable and saleable in the Ordinary Course of Business, except for obsolete items and items of below standard quality, all of which have been written off or written down to net realizable value in the Latest Balance Sheet. Except as set forth on Section 3.19(a) of the Disclosure Schedules, all Inventory not written off has been valued in accordance with GAAP and, with respect to Inventory intended for sale, was or will be saleable within a reasonable time. Inventory that was acquired subsequent to the Balance Sheet Date was acquired in the Ordinary Course of Business. To the Knowledge of the Sellers, the quantities of each item of Inventory are not excessive but are adequate in the present circumstances of the Business.

(b)    All of the accounts and notes receivable of the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) (the "Current Receivables") represent amounts receivable for products actually delivered or services actually provided (or, in the case of non-trade accounts or notes represent amounts receivable in respect of other bona-fide business transactions), have arisen in the Ordinary Course of Business and have been or will be billed. All such Current Receivables are fully collectible in the normal and Ordinary Course of Business.

(c)    Section 3.19(c) of the Disclosure Schedules set forth a true, correct and complete list of all Equipment owned, leased, used or held for use by the Sellers. The Sellers have delivered to the Buyer evidence of all original equipment manufacturer ("OEM") warranties (the

"OEM Warranties") with respect to all such Equipment, which OEM Warranties are valid and in full force and effect. All such Equipment have been stored in compliance with all applicable requirements of the OEM. The execution, delivery and performance by the Sellers and the Transferred Subsidiaries, as applicable, of this Agreement and the Ancillary Agreements to which they are (or will be) a party and the consummation by the Sellers and the Transferred Subsidiaries, as applicable, of the transactions contemplated hereby and thereby, will not conflict with or result in a violation or breach of, constitute (with or without notice or lapse of time or both) a default under, require any Seller or Transferred Subsidiary to obtain consent or approval from any Person under the terms of, give rise to any right of termination, cancellation, acceleration or modification of, or result in the creation or imposition of any Encumbrance (other than Permitted Encumbrances) upon any Equipment under the terms of, in each case, any OEM Warranty, in each case, except as would not reasonably be expected to result in a Material Adverse Effect. Pursuant to the terms of the OEM Warranties, all such OEM Warranties survive for at least twelve (12) months following the Outside Date.

Section 3.20   Books and Records. The Sellers have delivered to the Buyer true, correct and complete copies of all the Books and Records of each Transferred Subsidiary required by applicable Law and maintained by or in the possession or control of (or otherwise reasonably accessible to) any Seller or any Transferred Subsidiary, and such Books and Records have been maintained and reported in accordance with applicable Law and GAAP, where applicable. Such Books and Records (a) contain true, correct and complete copies of the Organizational Documents of each Transferred Subsidiary and (b) contain true, correct and complete copies of material meetings and consents in lieu of meetings of the members or managers of each Transferred Subsidiary, and accurately reflect all transactions referred to in such minutes and consents.

Section 3.21   Bank Accounts. Section 3.21 of the Disclosure Schedules sets forth a true and correct list of each bank account, credit line or safety deposit box maintained by or for the benefit of the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) and each Transferred Subsidiary, including the name and location of each bank and the names of all Persons authorized to draw thereon or, with respect to safety deposit boxes, to have access thereto.

Section 3.22   Regulatory Status.

(a)   Neither any Seller nor any Transferred Subsidiary is an "investment company," a company "controlled" by an "investment company" or an "investment advisor" within the meaning of the Investment Company Act of 1940, as amended, and the rules and regulations promulgated thereunder.

(b)   The Sellers and Transferred Subsidiaries have not taken any action or failed to take any action that would reasonably be expected to cause any Project to fail to meet the criteria to be a QF (such status as a QF, "QF Status") or become ineligible for QF Status.

(c)   Any Transferred Subsidiary and any "subsidiary company" thereof (as that term is defined under PUHCA) is either (i) not a "holding company" under PUHCA or (ii) a "holding company" solely of one or more "electric utilities" (as that term is defined under

16 U.S.C. § 796(22)) that own, operate, or own and operate a QF that holds the Regulatory Exemptions.

(d)    The Transferred Subsidiaries are not themselves subject to regulation as a "public utility" under Section 201(e) of the FPA. Other than any Transferred Subsidiary that owns or operates a Project with QF Status, no Transferred Subsidiary is or is subject to regulation as a "public utility" as defined under Section 201(e) of the FPA, or otherwise is engaged in interstate sales of electric energy, capacity, or ancillary services. No Transferred Subsidiary has any rate, tariff, or agreement that is a "jurisdictional facility" under the FPA on file at FERC, or is a "franchised public utility" (as that term is defined under 18 C.F.R. § 35.36(a)(5)).

(e)    Each Transferred Subsidiary that is required to register in any category with the North American Electric Reliability Corporation or any "regional entity" thereof (as that term is defined in 18 C.F.R. § 39.1) under 18 C.F.R. Part 39 and/or Part 40 with respect to its Project has so registered, and such Transferred Subsidiary is in compliance with the applicable requirements thereunder.

(f)    Except as set forth on Section 3.22(f) of the Disclosure Schedules, each Transferred Subsidiary has obtained a NYSERDA award letter confirming eligibility for its Project to participate in the Megawatt Block Program and Community Adder Program and has a compensation letter for the VDER Program for its respective Project, and each Project remains eligible to participate in the Megawatt Block Program or Community Adder Program as set forth in such letters. Each Project satisfies the requirements of the applicable Community Solar Rules.

(g)    No Transferred Subsidiary is subject to the general jurisdiction of the NYPSC as a "utility company" as such term is defined in Section 2 of the NY Public Service Law or subject to regulation by the NYPSC as an "electric corporation," "public utility," "utility company," "public utility corporation," "electric power supplier," "transmission and distribution company," or similar term.

(h)    Each Project (i) is in compliance with and has satisfied all applicable deadlines and requirements under applicable Law and Permits and for participation in the Community Solar Program, (ii) to the Knowledge of Sellers, has met and is in full compliance with all applicable Law, Permit and Community Solar Program requirements, and (iii) none of the Sellers, any of their Affiliates or any Transferred Subsidiary has received any written communications from any Governmental Authority or the applicable Local Utility indicating that any Project has failed to comply with applicable Law or Permits or meet a Community Solar Program requirement or deadline or any similar written communication indicating that such Project is in violation of any applicable Law or Permit or potentially ineligible for or subject to withdrawal from the Community Solar Program. Section 3.22(h) of the Disclosure Schedules sets forth the (x) constructed nameplate capacity of each Project, (y) total amount of each type of incentive for which each Project is eligible, and (z) total amount of each type of incentive each Project has received under the Community Solar Program.

(i)    Each Transferred Subsidiary has made all submittals and filings required under applicable Law. Section 3.22(i) of the Disclosure Schedules set forth each letter the Sellers and their Subsidiaries have received from a Local Utility confirming compensation under such

Local Utility's tariff with respect to a Project (the "Tariff Letters"). None of the Sellers or Transferred Subsidiaries, as applicable, is in material default, or is alleged in writing to have materially breached or to be in material default, under any Tariff Letter. The Sellers have made available to Buyer complete and correct copies of all Tariff Letters. None of the Tariff Letters has been canceled or otherwise terminated, and none of the Sellers or Transferred Subsidiaries, has received any written notice from any Person regarding any such cancellation or termination.

(j)     No Transferred Subsidiary owes any penalty, fee, unpaid invoice or has any other amount outstanding to any Governmental Authority or Local Utility with respect to any Project.

Section 3.23   OFAC and Related Matters.

(a)     None of the transactions contemplated by this Agreement violate (i) the United States Trading with the Enemy Act, (ii) any of the foreign assets control regulations of the U.S. Department of the Treasury (31 C.F.R., Subtitle B, Chapter V) or any enabling legislation or executive order relating thereto, (iii) Executive Order No. 13,224, 66 Fed. Reg. 49,079 (2001), issued by the President of the United States (Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit or Support Terrorism) (the "Terrorism Order"), or (iv) the Uniting and Strengthening America by Providing Ap-propriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, Public Law 107-56 (October 26, 2001). For purposes of this Section 3.23, the term "OFAC Rep Party" shall mean (A) each Seller, (B) each Transferred Subsidiary, (C) any Affiliate of any Seller or any Transferred Subsidiary that is counterparty to a Material Contract and (D) the officers, directors or agents of the entities listed in clauses (A) through (C). No OFAC Rep Party (I) is a "blocked person" as described in Section 1 of the Terrorism Order, (II) engages in any dealings or transactions, or is otherwise associated, with any such blocked person or (III) appears on the OFAC Blocked Parties List. To the Knowledge of Sellers, no OFAC Rep Party: (x) is owned by, controlled by, acting for or on behalf of, providing assistance, support, sponsorship, or services of any kind to, any of the Persons referred to or described in the OFAC Blocked Parties List; or (y) has conducted business with or engaged in any transaction with any Person named on the OFAC Blocked Parties List. Each OFAC Rep Party has complied with all U.S. and applicable international economic and trade sanctions, including as applicable any sanctions or regulations administered and enforced by the U.S. Department of State, the U.S. Department of Treasury (including the OFAC) and any executive orders, rules and regulations relating thereto.

(b)     Neither any Seller nor any of the Transferred Subsidiaries, nor any of their respective officers, directors, employees or agents, has (i) violated any provision of any applicable Anti-Bribery and Anti-Corruption Laws or (ii) directly or indirectly offered, paid, promised to pay, or authorized the offer, payment or promise of anything of value to any representative or agent of a Governmental Authority while knowing or having reason to know that all or a portion of such thing of value would be offered, given, or promised to such representative or agent of a Governmental Authority for the purposes of (A)(I) influencing any act or decision of any such representative or agent of a Governmental Authority in his or her official capacity or (II) rewarding the improper performance by any Person of its business or official activities; or (B) assisting any member of any Seller or any member of any Transferred Subsidiary, or any of their respective

Affiliates, in obtaining or retaining business or a business advantage for the Business or any member of any Transferred Subsidiary.

(c)     The operations of each Seller and each Transferred Subsidiary have been conducted at all times in compliance with Anti-Terrorism and Money Laundering Laws and Regulations.

(d)     Each OFAC Rep Party has complied with all Economic Sanctions and Trade Controls Laws and Regulations.

(e)     Each OFAC Rep Party is now in compliance with Anti-Bribery and Anti-Corruption Laws, Anti-Terrorism and Money Laundering Laws and Regulations and applicable Economic Sanctions and Trade Controls Laws and Regulations and the Sellers and Transferred Subsidiaries have implemented and maintain in effect policies and procedures designed to ensure compliance by each such Seller and Transferred Subsidiary, and each of their respective directors, officers and agents, with Anti-Bribery and Anti-Corruption Laws, Anti-Terrorism and Money Laundering Laws and Regulations and applicable Economic Sanctions and Trade Controls Laws and Regulations.

(f)     Neither any Seller nor any Transferred Subsidiary, nor any of their respective officers, directors or agents, or any agent that will act in any capacity in connection with the transactions contemplated by this Agreement, is a Target of Sanctions.

(g)     No part of the transactions contemplated by this Agreement will cause any of the Sellers or the Transferred Subsidiaries to violate Anti-Bribery and Anti-Corruption Laws, Anti-Terrorism and Money Laundering Laws and Regulations or applicable Economic Sanctions and Trade Controls Laws and Regulations.

Section 3.24    <u>Anti-Corruption; Anti-Bribery.</u> Neither any Seller nor any Transferred Subsidiary, nor any of their respective Representatives authorized to act, and acting, on behalf of any Seller or any Transferred Subsidiary has, directly or indirectly, in connection with the Business:

(a)     used any corporate funds to make or offer any unlawful payment, loan or transfer of anything of value to or for the benefit of any Government Official, candidate for public office, political party or political campaign, in each case, in violation of applicable AML Laws, for the purpose of (i) influencing any act or decision of such Government Official, candidate, party or campaign, (ii) inducing such Government Official, candidate, party or campaign to do or omit to do any act in violation of a lawful duty, (iii) obtaining or retaining business for or with any Person, (iv) expediting or securing the performance of official acts of a routine nature or (v) otherwise securing any improper advantage; or

(b)     received written notice from any Governmental Authority alleging that such Person has violated any provision of the Foreign Corrupt Practices Act of 1977, 15 U.S.C. §§ 78dd-1, *et seq.,* or any other applicable anticorruption or anti-bribery Laws (collectively, "<u>AML Laws</u>").

Section 3.25    Project Assets; Studies and Reports.

(a)    The Sellers have delivered to the Buyer true and complete copies of (i) any material final, third party written studies and reports, (ii) with respect to any material third-party, written study or report for which a final version has not yet been delivered to the Sellers or Transferred Subsidiaries, the most recent draft version thereof, in each case, related to the design, development, siting, permitting, construction, commissioning, testing, operation, maintenance or ownership of each Project (other than any Environmental Report) that are in the possession or control of the Sellers or any Transferred Subsidiary or any of their Affiliates, and (iii) any material written report issued under the Asset Management Agreements ("Studies and Reports").

(b)    Each Transferred Subsidiary has good and marketable title to, and sole possession and control of, all of its assets, properties, rights and interests, free and clear of all Encumbrances (other than Permitted Encumbrances).

(c)    The assets, properties, rights and interests owned by the applicable Transferred Subsidiary are all of the assets used by such Transferred Subsidiary, the applicable Seller, or any of their respective Affiliates with respect to the applicable Projects, and such assets are sufficient, taking into account the current stage of development of the applicable Project, to operate the Project in the Ordinary Course of Business.

Section 3.26    NYSERDA Incentive Payments. Except as listed on Section 3.26 of the Disclosure Schedules, none of the Transferred Subsidiaries has received NYSERDA Incentive Payments.

Section 3.27    Surety Bonds. Section 3.27 of the Disclosure Schedules sets forth a complete and accurate list and description (including payee information) of all outstanding Surety Bonds that any of the Sellers or Transferred Subsidiaries has obtained or otherwise procured in connection with the ownership, use or operation of its assets or properties, or in the conduct of its Business (such Surety Bonds, collectively, the "Seller Bonds"). All Seller Bonds are in amounts and forms required pursuant to applicable Laws, Permits and/or Contracts. Except for the Seller Bonds, none of the Sellers or Transferred Subsidiaries is required to obtain or otherwise procure any Surety Bonds in connection with the ownership, use or operation of any of their respective assets or properties, or in the conduct of the Business (excluding with respect to Excluded Assets, and in such case solely to such extent). None of the Sellers or Transferred Subsidiaries have pledged or deposited, and none of the Sellers or Transferred Subsidiaries are required to pledge or deposit, any cash, property or other collateral with any surety or other provider of any of the Seller Bonds in respect thereof, and no Seller or Transferred Subsidiary has been notified by any such surety or other provider that it is required or will be required to pledge or deposit any such cash, property or other collateral. All premiums payable under the Seller Bonds have been paid, and the Sellers and the Transferred Subsidiaries have otherwise complied with the terms and conditions of all of the Seller Bonds (including any indemnity agreements in respect thereof). None of the Sellers or Transferred Subsidiaries has received any written notice of any actual or threatened termination, cancellation, non-renewal or revocation of, premium increase with respect to, or material alteration of coverage under, any of the Seller Bonds. None of the sureties or other providers of any of the Seller Bonds has made any payment under any of the Seller Bonds.

Section 3.28    <u>Receivable MIPAs</u>. ORCH 3 has valid legal title to the ORCH 3 MIPAs. Except as a result of the commencement of the Bankruptcy Case, each of the Receivable MIPAs is in full force and effect and is a valid, binding and enforceable obligation of ORCH 3, and, to the Knowledge of the Sellers, each of the other parties thereto, except as may be limited by the Enforceability Exceptions. Except as a result of the commencement of the Bankruptcy Case, ORCH 3 is not in default under any Receivable MIPA, which default would reasonably be expected to result in an offset against, reduction or forfeiture of all or any portion of any MIPA Receivable under the applicable Receivable MIPA, nor has any default of ORCH 3 been alleged in writing by the counterparty thereto to have breached or to be in default under any Receivable MIPA. The Sellers have made available to Buyer complete and correct copies of the Receivable MIPAs. None of the Receivable MIPAs has been canceled or otherwise terminated, and ORCH 3 has not received any written notice from any Person regarding any such cancellation or termination. There are no claims pending or threatened in writing against ORCH 3 under any Receivable MIPA.

Section 3.29    <u>Exclusivity of Representations and Warranties</u>. None of the Sellers, the Transferred Subsidiaries or any of their Affiliates or Representatives is making, and none of the Buyer or any of its Affiliates or Representatives is relying on, any representation or warranty of any kind or nature whatsoever, oral or written, express or implied (including any relating to financial condition or results of operations of the Business or maintenance, repair, condition, design, performance, value, merchantability or fitness for any particular purpose of the Transferred Assets), except as expressly set forth in this <u>Article III</u> (as modified by the Disclosure Schedules), and EXCEPT AS EXPRESSLY SET FORTH IN THIS <u>ARTICLE III</u> (AS MODIFIED BY THE DISCLOSURE SCHEDULES), THE SELLERS HEREBY DISCLAIM, ON THEIR BEHALF AND ON BEHALF OF THEIR AFFILIATES AND REPRESENTATIVES, (A) ALL OTHER REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, EXPRESS OR IMPLIED, WITH RESPECT TO SUCH PERSONS OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, INCLUDING WITH RESPECT TO (I) EXCEPT IN THE CASE OF FRAUD, THE DISTRIBUTION OR RELIANCE ON ANY INFORMATION, DISCLOSURE OR DOCUMENT OR OTHER MATERIAL MADE AVAILABLE TO THE BUYER OR ANY OF ITS AFFILIATES OR REPRESENTATIVES IN ANY DATA ROOM, MANAGEMENT PRESENTATION, CONFIDENTIAL INFORMATION MEMORANDUM OR IN ANY OTHER FORM IN EXPECTATION OF, OR IN CONNECTION WITH, THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT, OR OTHERWISE RELATING IN ANY WAY TO THE BUSINESS OF THE SELLERS, THE TRANSFERRED ASSETS, THE TRANSFERRED EQUITY, OR THE ASSUMED LIABILITIES, AND (II) ANY ESTIMATES OF THE VALUE OF THE BUSINESS OF THE SELLERS, THE TRANSFERRED ASSETS, OR THE TRANSFERRED EQUITY, (B) ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR CONFORMITY TO MODELS OR SAMPLES, AND (C) EXCEPT IN THE CASE OF FRAUD, ALL LIABILITY FOR ANY REPRESENTATION, WARRANTY, PROJECTION, FORECAST, STATEMENT OR INFORMATION MADE AVAILABLE, COMMUNICATED OR FURNISHED (ORALLY OR IN WRITING) TO THE BUYER OR ANY OF ITS AFFILIATES OR REPRESENTATIVES (INCLUDING OPINION, INFORMATION, PROJECTION OR ADVICE THAT MAY HAVE BEEN PROVIDED TO THE BUYER OR ANY OF ITS AFFILIATES OR REPRESENTATIVES). EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, THE PARTIES ACKNOWLEDGE AND AGREE THAT

THE BUYER SHALL BE DEEMED TO BE ACQUIRING THE TRANSFERRED ASSETS AND TRANSFERRED EQUITY IN THEIR PRESENT STATUS, "AS-IS," "WHERE-IS," AND "WITH ALL FAULTS." NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THE STATEMENTS AND DISCLAIMERS IN THIS <u>SECTION 3.29</u> SHALL EXPRESSLY SURVIVE THE CLOSING.

## ARTICLE IV.
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Sellers as follows:

Section 4.1    <u>Organization.</u> The Buyer is duly organized, validly existing and in good standing under the Laws of the jurisdiction of its organization and has all necessary corporate (or equivalent) power and authority to perform its obligations hereunder and under any Ancillary Agreement to which it is or will be a party.

Section 4.2    <u>Authority</u>. The Buyer has all requisite legal capacity and the full power and authority to execute and deliver this Agreement and each of the Ancillary Agreements to which it is or will be a party, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance by the Buyer of this Agreement and each of the Ancillary Agreements to which it will be a party and the consummation by the Buyer of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary corporate (or equivalent) action and this Agreement has been, and upon its execution each of the Ancillary Agreements to which the Buyer will be a party will have been, duly executed and delivered by the Buyer and assuming due execution and delivery by each of the other parties hereto and thereto, this Agreement constitutes, and upon its execution each of the Ancillary Agreements to which the Buyer will be a party will constitute, the legal, valid and binding obligations of the Buyer, enforceable against the Buyer in accordance with its respective terms, except as enforcement may be limited by the Enforceability Exceptions.

Section 4.3    <u>No Conflict; Required Filings and Consents.</u>

(a)    The execution, delivery and performance by the Buyer of this Agreement and each of the Ancillary Agreements to which the Buyer is or will be a party, and the consummation by the Buyer of the transactions contemplated hereby and thereby, will not:

(i)    conflict with or result in any violation or breach of or default under, the Organizational Documents of such Buyer;

(ii)    conflict with or result in a violation or breach of any Law or Order applicable to the Buyer or by which any property or asset of such Buyer is bound; or

(iii)    conflict with, result in a violation or breach of, constitute (with or without notice or lapse of time or both) a default under, require the Buyer to obtain consent or approval from any Person under the terms of, or give rise to a right of termination, cancellation, acceleration or modification under the terms of any Contract to which such Buyer is a party;

except, in the case of <u>clause (ii)</u> and <u>(iii)</u>, for any such conflicts, violations, breaches, defaults or other occurrences which have not had and would not reasonably be expected to have a Buyer Material Adverse Effect.

(b)    The Buyer is not required to file, seek or obtain any notice, authorization, approval, Order, Permit or consent of or with any Governmental Authority in connection with the execution, delivery and performance by the Buyer of this Agreement and each of the Ancillary Agreements to which it is or will be a party or the consummation of the transactions contemplated hereby or thereby, except (i) for the entry of the Sale Order by the Bankruptcy Court or (ii) where failure to obtain such consent, approval, authorization or action, or to make such filing or notification, would not, individually or in the aggregate, reasonably be expected to have a Buyer Material Adverse Effect.

Section 4.4    <u>Brokers.</u> No broker, finder or investment banker or other Person is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated hereby as a result of an engagement by the Buyer that that would be payable by the Sellers.

Section 4.5    <u>Litigation.</u> There is no Action pending or threatened in writing against the Buyer or Orders outstanding, in each case, which would reasonably be expected to result in a Buyer Material Adverse Effect.

Section 4.6    <u>Purchase for Investment</u>. The Transferred Equity will be acquired by the Buyer for its own account, and not with a view to any distribution thereof, for the purpose of investment, it being understood that the right to dispose of such Transferred Equity shall be entirely within the discretion of the Buyer. The Buyer acknowledges that the Transferred Equity may not be transferred, sold, offered for sale, pledged, hypothecated or otherwise disposed of without registration under the Securities Act of 1933 (together with the rules and regulations promulgated thereunder) and any other provision of applicable state securities Laws or pursuant to an applicable exemption therefrom. The Buyer is an informed purchaser, and has engaged advisors, experienced in the evaluation and purchase of businesses such as its acquisition of the Transferred Equity, as contemplated hereunder. The Buyer (either alone or together with its advisors) has sufficient knowledge and experience in financial and business matters so as to be capable of evaluating the merits and risks of its investment in the Transferred Equity and is capable of bearing the economic risks of such investment.

Section 4.7    <u>Inspections; No Other Representations.</u> The Buyer has undertaken such investigation and has been provided with and has evaluated such documents and information as it has deemed necessary to enable it to make an informed decision with respect to the execution, delivery and performance of this Agreement. Except as expressly set forth in <u>Article III</u>, or any certificate delivered in connection with the Closing, the Buyer agrees to accept the Transferred Assets (including the Transferred Equity) and the Assumed Liabilities in the condition they are in on the Closing based upon its own inspection, examination and determination with respect thereto as to all matters and without reliance upon any express or implied representations or warranties of any nature made by or on behalf of or imputed to any Seller, including with respect to any information or documents made available to the Buyer or its counsel, accountants or advisors with

respect to the Transferred Assets, the Transferred Subsidiaries, the Assumed Liabilities or the Business (excluding with respect to Excluded Assets, and in such case solely to such extent).

Section 4.8    Exclusivity of Representations and Warranties. None of the Buyer or any of its Affiliates or Representatives is making, and none of the Sellers or any of their Affiliates or Representatives is relying on, any representation or warranty of any kind or nature whatsoever, oral or written, express or implied, except as expressly set forth in this Article IV, and the Buyer hereby disclaims all Liability and responsibility for any such other representations or warranties, including any representation, warranty, projection, forecast, statement or information made, communicated or furnished (orally or in writing) to the Sellers or their Affiliates or Representatives (including any opinion, information, projection or advice that may have been or may be provided to any Seller by any director, officer, agent, consultant or Representative of the Buyer or any of its Affiliates).

# ARTICLE V.
# BANKRUPTCY COURT MATTERS

Section 5.1    Bankruptcy Actions.

(a)    Bankruptcy Court Filings.

(i)    The Sellers shall diligently seek entry of the Sale Order and any other necessary orders to close the sale of the Transferred Assets (the "Related Orders") by the Bankruptcy Court in accordance with the terms and conditions of the Sale Procedures Order. The Buyer and the Sellers understand and agree that the consummation of the transactions contemplated by this Agreement is subject to approval by the Bankruptcy Court. The Buyer agrees that it will promptly take such actions as are reasonably requested by the Sellers to assist in obtaining entry of the Sale Order and any Related Orders to the Sale Order, including a finding of adequate assurance of future performance by the Buyer, including by furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by the Buyer under this Agreement and demonstrating that the Buyer is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code. In the event the entry of the Sale Order shall be appealed, the Sellers and Buyer shall use their respective commercially reasonable efforts to defend such appeal.

(ii)    The proposed form of Sale Order of the Bankruptcy Court relating to this Agreement to be filed by the Sellers shall be in form and substance reasonably acceptable to the Buyer and Sellers and consistent with the terms of this Agreement. Sellers shall file such motions or pleadings, in form and substance acceptable to Buyer, as may be appropriate or necessary to assume and assign the Transferred Contracts and to determine the amount of the Cure Costs; provided, that nothing herein shall preclude Sellers from filing such motions, including upon commencement of the Bankruptcy Cases, subject to Section 2.6, to reject any Contracts that are not Transferred Contracts.

(iii)    The Sellers shall use commercially reasonable efforts to provide the Buyer with a reasonable opportunity to review and comment on all draft copies of all motions, notices, statements, schedules, applications, reports and other papers the Sellers prior to filing with

the Bankruptcy Court in connection with the Sale Order (except to the extent such motions, notices, statements, schedules, applications, reports or other papers relate to any dispute between the Sellers and their Affiliates, on the one hand, and the Buyer and its Affiliates, on the other hand).

(iv)    The Sellers covenant and agree that, after the Closing, the terms of any reorganization plan or plan of liquidation they submit to the Bankruptcy Court for confirmation shall not conflict with, supersede, abrogate, nullify or restrict the terms of this Agreement, or in any way prevent or interfere with the consummation or performance of the transactions contemplated by this Agreement, including any transaction contemplated by or approved pursuant to the Sale Procedures Order or the Sale Order.

Section 5.2    Post-Closing Access to Books and Records. From and after the Closing Date through and including the seventh (7th) anniversary of the Closing Date, the Sellers (and their successors and permitted assigns) shall retain copies of all Books and Records of the Sellers and the Transferred Subsidiaries, including copies of any the Sellers' server(s) and any Books and Records to be transferred to the Buyer, for the sole purpose of liquidating Excluded Assets; provided that any retained copies of all Books and Records shall be subject to the confidentiality obligations and use restrictions of this Agreement; provided, however, that any Person granted derivative standing by the Bankruptcy Court to pursue claims on behalf of the estate can seek relief from the Bankruptcy Court to use materials subject to the confidentiality obligations in this Agreement, for the purposes of pursuing such claims and the Buyer, or its successors and permitted assigns, shall not oppose such a motion on the basis that the Sellers are bound by this Agreement; provided further the Buyer can oppose such a motion on any other grounds. If the Sellers' successors and permitted assigns, including the Trustee, are unable to obtain from the copies of the Books and Records retained by the Sellers the information necessary to pursue estate claims and causes of action that are not transferred under this Agreement, upon written request setting forth with specificity the information sought and the efforts undertaken to locate such information in the copies of the Books and Records retained by the Sellers, the Buyer shall provide the Sellers' successors and permitted assigns reasonable access during normal business hours to the transferred Books and Records; provided that such access does not materially interfere with the Buyer's business operations. For the avoidance of any doubt, (a) the Buyer shall have no obligation to provide access to any information with respect to matters arising following the Closing and shall have no obligation to provide access to any information generated by the Buyer or its Affiliates, and (b) all reasonable costs associated with accessing the Books and Records in accordance with this Section 5.2 shall be paid by the party requesting access.

## ARTICLE VI.
## COVENANTS

Section 6.1    Conduct of Business Prior to the Closing. From the date of this Agreement until the Closing Date or earlier valid termination of this Agreement in accordance with its terms:

(a)    Except (x) as otherwise expressly contemplated by this Agreement, (y) as required by Law (including as expressly contemplated by the Sale Order), or (z) with the prior written consent of the Buyer, from the date of this Agreement until the Closing Date or earlier valid termination of this Agreement in accordance with its terms, each of the Sellers shall, and shall cause the Transferred Subsidiaries to:

(i) conduct the Business in the Ordinary Course of Business and use commercially reasonable efforts to preserve its material business relationships with customers, suppliers, partners, licensors, licensees, distributors, Governmental Authorities and others with whom any of the Sellers (solely to the extent in connection with the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), the Transferred Assets or the Assumed Liabilities) or the Transferred Subsidiaries deal in the Ordinary Course of Business;

(ii) use commercially reasonable efforts to maintain the Transferred Assets in good working condition and repair (normal wear and tear excepted); and

(iii) use commercially reasonable efforts to obtain from Governmental Authorities all Permits required to conduct the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) in the Ordinary Course of Business, including the operation or maintenance of any Project.

(b) Except (x) as otherwise expressly contemplated by this Agreement, (y) as required by Law (including as expressly contemplated by the Sale Order), or (z) with the prior written consent of the Buyer, from the date of this Agreement until the Closing Date or earlier valid termination of this Agreement in accordance with its terms, each of the Sellers shall not, and shall cause the Transferred Subsidiaries not to:

(i) sell, transfer, lease, sublease, encumber or otherwise dispose of (A) any Transferred Assets or (B) any assets of a Transferred Subsidiary, in each case other than (I) Inventory sold or disposed of in the Ordinary Course of Business or (II) dividends or other distributions of Cash and Cash Equivalents made prior to the Cash Cutoff Time;

(ii) issue, sell, grant, pledge, dispose or transfer any Equity Interests in any Seller or Transferred Subsidiary;

(iii) acquire (A) any material assets or properties, tangible or intangible, other than in the Ordinary Course of Business or (B) any corporation, partnership, limited liability company, other business organization or division thereof;

(iv) merge or consolidate with or into any legal entity, dissolve, liquidate or otherwise terminate its existence;

(v) split, combine, consolidate, subdivide or reclassify any capital stock, other Equity Interests of any Transferred Subsidiaries or voting securities, or securities convertible into or exchangeable or exercisable for capital stock or other Equity Interests or voting securities of any Transferred Subsidiaries, or issue or authorize the issuance of any other securities in respect of, in lieu of or in substitution for its capital stock, other Equity Interests or voting securities of any Transferred Subsidiaries or enter into silent partnership agreements granting the silent partner entitlements to its proceeds;

(vi) (1) declare, set aside or pay any dividend or other distribution of any non-cash assets (including stock or property or any combination thereof) in respect of any securities of any Transferred Subsidiary or Seller, or repurchase, redeem or otherwise acquire, or offer to repurchase, redeem or otherwise acquire, any capital stock or voting securities of, or Equity

Interests in, any Transferred Subsidiary or Seller or any securities of any Transferred Subsidiary or Seller convertible into or exchangeable or exercisable for capital stock or voting securities of, or Equity Interests in, any Transferred Subsidiary or Seller, or any warrants, calls, options or other rights to acquire any such capital stock, securities or interests, other than any transfers among Transferred Subsidiaries, among Sellers, or between any Transferred Subsidiary and any Seller or (2) from the Cash Cutoff Time until the Closing, declare, set aside or pay any dividend or other distribution of any Cash and Cash Equivalents;

(vii)    amend the Organizational Documents of any Transferred Subsidiary;

(viii)    enter into any joint venture agreement that involves a sharing of profits, cash flows, expenses or losses with other Persons related to or affecting the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), the Transferred Assets or the Transferred Subsidiaries;

(ix)    (1) reject or terminate (other than by expiration in accordance with its terms) any Material Contract, Surety Bond, or Receivable MIPA or seek Bankruptcy Court approval to do so, (2) fail to use commercially reasonable efforts to oppose any action by a third party to so terminate (including any action by a third party to obtain Bankruptcy Court approval to terminate) any Material Contract, Surety Bond, or Receivable MIPA, except in each case, to the extent the Buyer has indicated in writing that it wishes the Sellers to reject such Contract, (3) waive, release or assign any material rights or claims under any Material Contract, Receivable MIPA, or any Contract that would be a Material Contract if in effect on the date hereof, or (4) enter into any Contract that would have been a Material Contract had it been entered into prior to the date hereof; provided that the restrictions in this Section 6.1(b)(ix) shall be subject to Section 2.6 and shall not apply to Excluded Contracts;

(x)    with respect to any Transferred Asset (1) agree to allow any form of relief from the automatic stay in the Bankruptcy Cases; or (2) fail to use commercially reasonable efforts to oppose any action by a third party to obtain relief from the automatic stay in the Bankruptcy Cases;

(xi)    change, make or revoke any Tax election, change any method of accounting with respect to Taxes, file any amended Tax Return, surrender or compromise any right to claim a Tax refund, settle or compromise any audit, claim, notice, audit, assessment or other proceeding related to Taxes, enter into any agreement affecting any Tax Liability or any refund or file any request for rulings or special Tax incentives with any Governmental Authority, enter into any Tax allocation, sharing or indemnity agreement, extend or waive the statute of limitations period applicable to any Tax or Tax Return or take or cause (or cause any other Person to take or cause) any other action that could have a material effect on the amount of Taxes with respect to, attributable to, or due from the Business or due with respect to, attributable to, or as a result of the Transferred Assets;

(xii)    make any change in any method of accounting or accounting practice or policy, except as required by applicable Law or GAAP;

(xiii)    except with respect to the notices of non-renewal listed on Section 6.1(b)(xiii) of the Disclosure Schedules, terminate, cancel or fail to renew, other than in the ordinary course of business, any insurance coverage with respect to any Transferred Assets without replacing such coverage with a comparable amount of insurance coverage;

(xiv)    (1) fail to maintain in full force and effect, or allow to lapse, any Permits that are in full force and effect as of the date of this Agreement, (2) cancel, modify or terminate (other than by expiration in accordance with its terms) any Permit or seek Bankruptcy Court approval to do so, or (3) fail to use commercially reasonable efforts to oppose any action by a third party to so terminate (including any action by a third party to obtain Bankruptcy Court approval to terminate) any Permit that is in full force and effect as of the date of this Agreement;

(xv)    make any loans, advances or capital contributions to, or investments in, any other Person (other than to a Seller or Transferred Subsidiary);

(xvi)    incur any Indebtedness for borrowed money or guarantee any such Indebtedness;

(xvii)    enter into any commitment for capital expenditures or otherwise make any capital expenditures;

(xviii)    institute, settle or agree to settle any litigation, proceeding or other Action that would reasonably be expected to result in (x) any Seller or any Transferred Subsidiary being enjoined from consummating the transactions contemplated by this Agreement, (y) any adverse effect on the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) or the Transferred Assets (including any Transferred Subsidiary) in any material respect or (z) an Assumed Liability or a Liability of any Transferred Subsidiary;

(xix)    agree to any limitations on any Seller from engaging or competing in any line of business or in any geographic area or location or otherwise with any Person or from soliciting or hiring any Person;

(xx)    hire any employees at any of the Transferred Subsidiaries; or

(xxi)    agree or commit to any of the foregoing.

Section 6.2    Covenants Regarding Information. From the date hereof until the Closing Date or earlier valid termination of this Agreement in accordance with its terms, upon reasonable request, the Sellers shall afford the Buyer and its Affiliates and each of their respective Representatives (at the Buyer's cost) reasonable access to make investigation of the properties, offices, plants and other facilities, Books and Records (including Tax Books and Records) of the Sellers (solely to the extent related to the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), the Transferred Assets or the Assumed Liabilities) and the Transferred Subsidiaries, and shall furnish the Buyer with such financial, operating and other data and information, and access to all the officers, accountants and other Representatives of the Sellers (solely to the extent related to the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), the Transferred Assets or the Assumed Liabilities) and the Transferred Subsidiaries as the Buyer may reasonably request and to make extracts and copies of

such Books and Records. Notwithstanding anything to the contrary in this Agreement, the Sellers shall not be required to disclose any information to the Buyer or its Representatives or provide such access (i) if such disclosure would cause the forfeiture of any attorney-client or other legal privilege or contravene any applicable Laws, and any such information shall not be included as Books and Records or a Transferred Asset, (ii) if such disclosure would disclose information regarding other bidders or bids in the Auction or any pre-Bankruptcy Case sales process (except to the extent provided under the Sale Procedures Order); (iii) such access or related activities would cause a violation of any Contract to which any Seller is a party, (iv) such disclosure would violate any applicable Laws related to privacy or data privacy, or (v) legal counsel for the Sellers reasonably concludes such disclosure would reasonably be expected to violate applicable antitrust or competition Laws or a protective order or would cause significant competitive harm to the Sellers or the Transferred Subsidiaries if the transactions contemplated by this Agreement are not consummated; provided that the Parties shall reasonably cooperate in seeking to find a way to allow disclosure of such information to the extent doing so would not (in the good faith belief of the Sellers after consultation with outside counsel) reasonably be likely to cause such violation to occur or such privilege to be undermined with respect to such information; provided further that, (A) the Sellers shall have the right to have one or more of its Representatives present at all times during any visits, examinations, discussions or contacts contemplated hereby, (B) such access to the properties, offices, plants and other facilities shall not materially interfere with the ongoing use and operation of such properties, offices, plants and other facilities of the Sellers or the Transferred Subsidiaries, and (C) the Buyer shall not, without the prior written consent of the Sellers, to perform invasive or subsurface investigations or conduct any sampling or analysis of environmental media, including of the nature commonly referred to as a "Phase II Environmental Investigation," such as any soil or groundwater testing.

Section 6.3    Notification of Certain Matters. The Sellers shall promptly notify the Buyer in writing of any fact, change, condition, circumstance or occurrence or nonoccurrence of any event of which it is aware that will or is reasonably likely to result in any of the conditions set forth in Section 8.3(a) or Section 8.3(b) becoming incapable of being satisfied.

Section 6.4    Consents and Filings; Further Assurances.

(a)    Subject to Section 5.1(a), each of the Parties shall use reasonable best efforts to take, or cause to be taken, all appropriate actions or non-actions to do, or cause to be done, all things necessary, proper or advisable under applicable Law or otherwise to consummate and make effective the transactions contemplated by this Agreement without material delay and the Ancillary Agreements and to confirm the Buyer's ownership of the Transferred Assets as promptly as practicable, including to obtain all necessary waivers, consents and approvals and effecting all necessary registrations and filings, including all necessary waivers, consents and approvals from customers and other parties. Without limiting the generality of the previous sentence and subject to Section 5.1(a), the Parties shall (i) use reasonable best efforts to obtain from Governmental Authorities all consents, approvals, authorizations, qualifications and Orders as are necessary for the consummation of the transactions contemplated by this Agreement and the Ancillary Agreements; (ii) promptly make all necessary filings, and thereafter make any other required submissions, with respect to this Agreement under applicable Law, as may be required to consummate the transactions contemplated herein, in accordance with the terms of this Agreement; and (iii) coordinate and cooperate with each other in exchanging such information and supplying

such reasonable assistance as may be reasonably requested by each in connection with the foregoing.

(b)      From time to time, whether at or following the Closing, the Sellers and the Buyer shall, and shall cause their respective Affiliates to, execute, acknowledge and deliver all such further conveyances, notices, assumptions and releases and such other instruments, and shall, and shall cause their respective Affiliates to, take such further actions, as may be necessary or appropriate to vest in the Buyer (directly or indirectly through the Transferred Subsidiaries) all the right, title, and interest in, to or under the Transferred Assets, to provide the Buyer and the Sellers all rights and obligations to which they are entitled and subject pursuant to this Agreement and the Ancillary Agreements, and to otherwise make effective as promptly as practicable the transactions contemplated by this Agreement and the Ancillary Agreements. Subject to Section 5.1(a), each of the Parties will use its commercially reasonable efforts to cause all of the obligations imposed upon it in this Agreement to be duly complied with and to cause all conditions precedent to such obligations to be satisfied.

(c)      The Sellers and the Buyer shall (at the Buyer's cost) reasonably cooperate with each other and, as promptly as practicable after the date of this Agreement, use commercially reasonable efforts to obtain the issuance, transfer or reissuance to the Buyer (or the applicable Transferred Subsidiary) of all Permits necessary to lawfully own and operate the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) and Transferred Assets. The Parties shall use commercially reasonable efforts to respond promptly to any requests for additional information made by such Governmental Authorities or agencies, use their respective commercially reasonable efforts to participate in any presentations, hearings, settlement proceedings or other proceedings ordered with respect to applications to transfer or reissue such Permits, and use respective commercially reasonable efforts to cause approval to be obtained as soon as practicable after the date of filing. Each Party will bear its costs of the preparation and review of any such filing. The Sellers and the Buyer shall have the right to review in advance all characterizations of the information relating to the transactions contemplated by this Agreement which appear in any filing made in connection any filings to transfer the Permits and the filing Party shall consider in good faith any revisions reasonably requested by the non-filing Party.

Section 6.5      Refunds and Remittances.

(a)      After the Closing: (i) if the Sellers or any of their Affiliates receive any refund, cash, checks with appropriate endorsements, payment of an Account Receivable or other account, trade, note receivable or other payment or other property or asset that is a Transferred Asset or is otherwise properly due and owing to the Buyer in accordance with the terms of this Agreement, the Sellers shall hold such amounts in trust for the Buyer's benefit and accounts and promptly shall remit, or shall cause to be remitted, such amount to the Buyer from time to time as and when received and (ii) if the Buyer or any of its Affiliates receive any refund or other amount that is an Excluded Asset or is otherwise properly due and owing to the Sellers or any of their Affiliates in accordance with the terms of this Agreement, the Buyer shall hold such amounts in trust for the Sellers' benefit and accounts and promptly shall remit, or shall cause to be remitted, such amount to the Sellers. For the avoidance of doubt, except as otherwise provided in this Agreement, following the Closing, if any payments due with respect to the Business (excluding with respect to Excluded Assets, and in such case solely to such extent) are paid to any Seller or

32863747.1

66

any of their Affiliates, the Sellers shall, or shall cause the applicable Affiliate to, promptly remit by wire or draft such payment to an account designated in writing by the Buyer.

(b)    In the event that, from and after the Closing, (i) Sellers or any of their Affiliates have retained ownership of a Transferred Asset, then, for no additional consideration to the Sellers or any of their Affiliates, the Sellers shall, and shall cause their Affiliates to, promptly notify the Buyer and as soon as practicable thereafter, convey, assign, transfer or deliver such Transferred Asset to the Buyer or its designees, and the Parties shall execute all other documents and instruments, and take all other lawful actions reasonably requested, in order to assign and transfer such Transferred Asset to the Buyer or its designees or (ii) any Excluded Asset has been conveyed to or is received by the Buyer, then, without any consideration payable to the Buyer or any of its Affiliates, the Buyer shall promptly notify the Sellers and as soon as practicable thereafter, convey, assign, transfer or deliver such Excluded Asset to the Sellers, and the Parties shall execute all other documents and instruments, and take all other lawful actions reasonably requested, in order to assign and transfer such Excluded Asset to Sellers or their designees.

Section 6.6    Public Announcements. From and after the date hereof, the Parties shall consult with each other before making any press release or otherwise making any public statements with respect to this Agreement or the transactions contemplated hereby, and neither the Buyer nor the Sellers shall make any such press release or any public statement prior to obtaining the Sellers' (in the case of the Buyer) or the Buyer's (in the case of the Sellers) written approval, which approval shall not be unreasonably withheld, except that no such approval shall be necessary to the extent disclosure is made in any filing made to any court or may be required by applicable Law or by the Bankruptcy Court; provided, further, that nothing in this Agreement shall restrict or prohibit (a) the Sellers, the Buyer or their respective Affiliates from making any announcement to their respective customers and other business relations to the extent that such announcement consists solely of, or is otherwise consistent in all material respects with previous press releases, public disclosures or public statements made by any party hereto in accordance with this Agreement, in each case, to the extent such disclosure is still accurate in all material respects (and not misleading) or (b) the Buyer or its Affiliates from making any announcement to their employees or existing or prospective limited partners or other investors, in each case, subject to the terms of the Confidentiality Agreement.

Section 6.7    Seller Confidentiality. Following the Closing, the Sellers shall, and the Sellers shall cause their respective Affiliates and Representatives to, maintain as confidential and not use or disclose, any confidential, proprietary or non-public information or materials relating to (i) the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), the Transferred Subsidiaries, the Transferred Assets, or the Assumed Liabilities or (ii) any materials provided by the Buyer or any of its Representatives to any Seller. In the event any Seller or any of their respective Affiliates or Representatives is required by applicable Law to disclose any such information or materials, such Seller shall to the extent practicable and not prohibited by applicable Law, promptly notify the Buyer in writing of such required disclosure, which notification shall include the nature of the legal requirement and the extent of the required disclosure, and shall reasonably cooperate with the Buyer, at the Buyer's sole expense, to obtain a protective order and otherwise preserve the confidentiality of such information or materials consistent with applicable Law. At any time that such protective order or remedy has not been obtained, such Seller or such Affiliate or Representative may disclose only that portion of such

information or materials which such Person is required by applicable Law to disclose. Information and materials subject to the confidentiality obligations in this Section 6.7 do not include any information or materials which (A) at the time of disclosure is or thereafter becomes generally available to or known by the public (other than as a result of the disclosure of such information or materials by the Sellers or their Affiliates or Representatives in breach of this Section 6.7) or (B) becomes available to any of the Sellers or their Affiliates and Representatives on a non-confidential basis from a Person (other than the Buyer or any of its Affiliates) who is not bound by a confidentiality agreement with the Buyer or any of its Affiliates.

Section 6.8    Buyer Confidentiality. The Buyer shall, and the Buyer shall cause its Affiliates and Representatives to comply with the Confidentiality Agreement in accordance with the terms thereof. At the Closing, the Confidentiality Agreement shall be deemed to have been terminated by the parties thereto as it relates to the confidential information regarding the Business (excluding with respect to Excluded Assets, and in such case solely to such extent), the Transferred Assets, the Transferred Subsidiaries, or the Assumed Liabilities, and shall no longer be binding.

Section 6.9    Intercompany Arrangements. Except as provided on Section 6.9 of the Disclosure Schedules, all intercompany agreements between any Seller or any Affiliate of any Seller (other than any Seller or Transferred Subsidiary), on the one hand, and any Transferred Subsidiary, on the other hand, shall be terminated at or prior to the Closing, without any liability or ongoing obligation.

Section 6.10    No Regulatory Impediments. The Sellers shall, and shall cause the Transferred Subsidiaries to, use commercially reasonable efforts not to (i) make a filing with FERC to sell energy and capacity at wholesale at market-based rates, (ii) fail to maintain or becoming no longer eligible for QF Status, or (iii) fail to maintain or to become no longer eligible for the Regulatory Exemptions or exemptions from regulation under PUHCA. Notwithstanding anything to the contrary, nothing contained in this Agreement shall give the Buyer, directly or indirectly, prior to the Closing, the right to control or direct the operations of the Projects or any of the Transferred Subsidiaries.

Section 6.11    Replacement of Credit Support. Prior to the Closing, the Buyer and the Sellers shall use their commercially reasonable efforts to cooperate in Buyer's efforts to procure, at the Buyer's expense, the return or unconditional release by the applicable counterparty of each guarantee, letter of credit, letter of comfort, Surety Bond or other form of credit support provided by or posted by (as applicable) any of the Sellers or their Affiliates (other than any credit support provided by or posted by the Transferred Subsidiaries with respect to which the Sellers and their Affiliates, immediately following Closing, will not have any Liability from and after Closing) with respect to any Transferred Asset or any Assumed Liability (but excluding all Excluded Liabilities), in each case, set forth on Section 6.11 of the Disclosure Schedules (the "Financial Assurances"), by providing substitute guarantees, furnishing letters of credit, instituting escrow arrangements, posting Surety Bonds or entering or assuming indemnity agreements related to the foregoing. For any Financial Assurance for which the Buyer is not substituted in all respects for the applicable Seller or Affiliate thereof effective as of the Closing, the Buyer shall continue to use commercially reasonable efforts to effect such substitution and release as promptly as practicable after the Closing and the Sellers and their Affiliates shall have no obligation to renew or maintain any such Financial Assurances from and after the Closing. From and after the Closing until the Buyer has

replaced the Financial Assurances, the Buyer shall indemnify and hold harmless the Sellers and their Affiliates from any Loss arising out of any of the Financial Assurances.

Section 6.12    <u>Sale Free and Clear</u>. Except as otherwise expressly set forth in this Agreement, the proposed Sale Order shall be drafted to provide, without limitation, that, (a) on the Closing Date and concurrently with the Closing, all then existing or thereafter arising obligations, Liabilities and Encumbrances, against or created by the Sellers, any of their Affiliates, or the bankruptcy estate, to the fullest extent permitted by Section 363 of the Bankruptcy Code, shall be fully released from and with respect to the Transferred Assets and (b) the Buyer is not a successor to any Seller or the bankruptcy estate by reason of any theory of Law or equity, and the Buyer shall not assume or in any way be responsible for any Liability of the Sellers, any of their Affiliates and/or the bankruptcy estate, except as expressly provided in this Agreement. On the Closing Date, the Transferred Assets and Transferred Equity shall be transferred to the Buyer free and clear of all obligations, Liabilities and Encumbrances (other than Permitted Encumbrances) to the fullest extent permitted by Section 363 of the Bankruptcy Code.

## ARTICLE VII.
## TAX MATTERS

Section 7.1    <u>Transfer Taxes</u>. Any and all sales, harmonized sales, use, property transfer or gains, real estate or land transfer or gains, documentary, stamp, registration, recording, filing, goods and services, value-added or other similar Taxes payable as a result of or with respect to the sale or transfer of the Transferred Equity or the Transferred Assets and the assumption of the Assumed Liabilities pursuant to this Agreement ("<u>Transfer Taxes</u>") shall be borne and paid one-half by the Sellers and one-half by the Buyer. The Sellers and the Buyer shall use commercially reasonable efforts and cooperate in good faith to mitigate, reduce, or eliminate any such Transfer Taxes. Each Party shall prepare and file all necessary Tax Returns or other documents required to be filed by it with respect to such Transfer Taxes.

Section 7.2    <u>Tax Cooperation</u>. The Buyer and the Sellers agree to furnish or cause to be furnished to each other, upon reasonable request, as promptly as practicable, such information (including access to books and records relating to Taxes ("<u>Tax Books and Records</u>")) and assistance relating to the Business, the Transferred Subsidiaries, the Transferred Assets and the Assumed Liabilities as is reasonably necessary for determining any Liability for Taxes, the filing of any Tax Returns, the making of any election relating to Taxes, the preparation for any audit by any Governmental Authority and the prosecution or defense of any audit, claim, suit or proceeding relating to any Tax; <u>provided</u>, <u>however</u>, that the Buyer shall not be required to disclose the contents of its Tax Returns to any Person. Any reasonable expenses incurred in furnishing such information or assistance pursuant to this <u>Section 7.2</u> shall be borne by the Party requesting it.

Section 7.3    <u>Allocation</u>.

(a)    To the extent it is necessary for purposes of this Agreement to determine the allocation of Taxes relating to a Straddle Period between the Pre-Closing Tax Period and the Post-Closing Tax Period, (i) the amount of any such Taxes that are based on or measured by income or receipts or that are sales or use taxes, employment taxes, or withholding taxes and any other Taxes not described in Section 7.3(a)(ii) for the portion of such Straddle Period ending on

the Closing Date shall be determined based on an interim closing of the books as of the close of business at the end of the day on the Closing Date, and (ii) the amount of any property, ad valorem Taxes and any other Taxes imposed on a periodic basis for such Straddle Period that relates to the portion of such Straddle Period ending on the Closing Date shall be deemed to be the amount of such Tax for the entire Straddle Period multiplied by a fraction, the numerator of which is the number of days in such Straddle Period ending as of the close of business on the Closing Date and the denominator of which is the total number of days in such Straddle Period; provided that, exemptions, allowances or deductions that are calculated on an annual basis (including depreciation and amortization deductions computed as if the Closing Date was the last day of the Straddle Period) shall be allocated between the portion of the Straddle Period ending on the Closing Date and the portion of the Straddle Period thereafter in proportion to the number of days in each such portion.

(b)     [Reserved].

Section 7.4    Tax Returns. Sellers shall prepare and timely file with the appropriate Governmental Authority any Tax Returns required to be filed by Sellers or the Transferred Subsidiaries with respect to Taxes relating to the Business, the Projects, the Transferred Subsidiaries, the Transferred Assets and the Assumed Liabilities that are required to be filed on or before the Closing Date (each such Tax Return, a "Pre-Closing Tax Return"); provided, that, Sellers shall submit all Pre-Closing Tax Returns to Buyer no later than 20 days prior to the due date (including extensions) of such Pre-Closing Tax Returns (other than a Pre-Closing Tax Return relating to sales, use, payroll or other Taxes that is required to be filed contemporaneously with, or promptly after, the close of a Tax period, which shall be provided as soon as reasonably practicable before filing) for Buyer's review, comment (which comment shall be taken into account in good faith) and approval, such approval not to be unreasonably withheld, conditioned or delayed. The Sellers shall be responsible for (a) all Income Taxes that are due or become due and payable on or prior to the Closing Date from or with respect to the Business, the Projects, the Transferred Subsidiaries, the Transferred Assets and the Assumed Liabilities with respect to a Pre-Closing Tax Period and (b) all Asset Taxes that are due or become due from or with respect to the Business, the Projects, the Transferred Assets and the Assumed Liabilities with respect to a Pre-Closing Tax Period, and, in cases of clause (a) and clause (b), shall pay any such Taxes that are due and payable (including, as shown on such Pre-Closing Tax Returns) to the appropriate Governmental Authority.

Section 7.5    Tax Allocation Contracts. All Tax allocation, Tax sharing or similar Contracts (other than any customary commercial Contract entered into in the ordinary course of business not primarily concerning Taxes) with respect to or involving a Transferred Subsidiary, on the one hand, and any other Person, on the other hand, shall be terminated prior to the Closing, unless otherwise approved by Buyer and, after the Closing Date, none of the Transferred Subsidiaries shall be bound thereby or have any Liability thereunder, and there shall be no continuing obligation after the Closing Date to make any payments under any such Contracts.

Section 7.6    Bulk Sales. Notwithstanding any other provisions in this Agreement, the Buyer and the Sellers hereby waive compliance with all "bulk sales," "bulk transfer" and similar Laws that may be applicable with respect to the sale and transfer of any or all of the Transferred Assets to the Buyer.

## ARTICLE VIII.
## CONDITIONS TO CLOSING

Section 8.1    <u>General Conditions</u>. The respective obligations of the Buyer and the Sellers to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction, at or prior to the Closing, of each of the following conditions, any of which may, to the extent permitted by applicable Law, be waived in a joint writing by the Buyer and the Sellers (<u>provided</u> that such waiver shall only be effective as to the obligations of the Sellers, in the case of a waiver by the Sellers, and the Buyer, in the case of the Buyer):

(a)    No Governmental Authority shall have enacted, issued, promulgated, enforced or entered any Law or Order (whether temporary, preliminary or permanent) that enjoins, restrains, prevents, makes illegal or otherwise prohibits the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements (any such Law or Order, a "<u>Legal Restraint</u>").

(b)    The Bankruptcy Court shall have entered the Sale Order and the Sale Order shall be a Final Order.

Section 8.2    <u>Conditions to Obligations of the Sellers</u>. The obligations of the Sellers to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction, at or prior to the Closing, of each of the following conditions, any of which may, to the extent permitted by applicable Law, be waived in writing by the Sellers in their respective sole discretion:

(a)    <u>Representations and Warranties</u>.

(i)    Each Buyer Fundamental Representation shall be true and correct in all respects (except for *de minimis* inaccuracies) both as of the date of this Agreement and as of the Closing Date (other than in the case of any Buyer Fundamental Representations that are made as of a specified date, which Buyer Fundamental Representations shall be true and correct in all respects (except for *de minimis* inaccuracies) as of such specified date).

(ii)    The representations and warranties of the Buyer contained in this Agreement (other than the Buyer Fundamental Representations) shall be true and correct in all respects both as of the date of this Agreement and as of the Closing Date (other than in the case of representations and warranties that are made as of a specified date, which representations and warranties shall be true and correct in all material respects as of such specified date), without giving effect to any limitation or qualification by a materiality standard (including "in all material respects," "material" or "Buyer Material Adverse Effect") set forth therein, except where the failure to be so true and correct has not had or would not reasonably be expected to have, individually or in the aggregate, a Buyer Material Adverse Effect.

(b)    The Buyer shall have, in all material respects, performed or complied with all obligations, agreements and covenants required by this Agreement to be performed or complied with by the Buyer prior to or at the Closing.

(c)    The Sellers shall have received the documents listed in <u>Section 2.9(c)</u>.

Section 8.3    <u>Conditions to Obligations of the Buyer</u>. The obligations of the Buyer to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction, at or prior to the Closing, of each of the following conditions, any of which may, to the extent permitted by applicable Law, be waived in writing by the Buyer in its sole discretion:

(a)    <u>Representations and Warranties</u>.

(i)    Each Seller Fundamental Representation shall be true and correct in all respects (except for *de minimis* inaccuracies) both as of the date of this Agreement and as of the Closing Date (other than in the case of Seller Fundamental Representations that are made as of a specified date, which Seller Fundamental Representations shall be true and correct in all respects (except for *de minimis* inaccuracies) as of such specified date).

(ii)    The representations and warranties of the Sellers contained in this Agreement (other than the Seller Fundamental Representations) shall be true and correct in all respects both as of the date of this Agreement and as of the Closing Date (other than in the case of representations and warranties that are made as of a specified date, which representations and warranties shall be true and correct in all material respects as of such specified date), without giving effect to any limitation or qualification by a materiality standard (including "in all material respects," "material" or "Material Adverse Effect") set forth therein, except where the failure to be so true and correct has not had or would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

(b)    The Sellers shall have, in all material respects, performed or complied with all obligations, agreements and covenants required by this Agreement to be performed or complied with by any Seller prior to or at the Closing.

(c)    The Buyer shall have received the documents listed in <u>Section 2.9(b)</u>.

(d)    From and after the date of this Agreement, there shall not have occurred and be continuing any event, change, condition, occurrence or effect that has, or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

(e)    Sellers shall (i) have delivered to the applicable counterparty the notices, and obtained from the applicable counterparty the consents, approvals and authorizations, listed in <u>Section 8.3(e) of the Disclosure Schedules</u>, and (ii) have delivered evidence thereof to the Buyer.

## ARTICLE IX.
## TERMINATION

Section 9.1    <u>Termination</u>. This Agreement may be terminated at any time prior to the Closing (the date on which this Agreement terminates in accordance with its terms):

(a)    by mutual written consent of the Buyer and the Sellers;

(b)    either the Sellers or the Buyer, if:

(i)    a Legal Restraint is in effect that has become final and nonappealable; provided, that the right to terminate this Agreement under this Section 9.1(b)(i) shall not be available to the Sellers or the Buyer, as applicable, if any Seller or the Buyer, as applicable, is then in material breach or violation of this Agreement and such breach or violation is the cause of the Legal Restraint; or

(ii)    the Closing shall not have occurred on or before March 31, 2025 (the "Outside Date"); provided that the right to terminate this Agreement under this Section 9.1(b)(ii) shall not be available to any Party if such Party is then in material breach of this Agreement, and such material breach is the cause of the failure of the Closing to occur prior to such date;

(c)    by the Buyer, if:

(i)    the Buyer is not in material breach of this Agreement such that the conditions in Section 8.2(a) or Section 8.2(b) would not be satisfied, and any Seller shall have breached or failed to perform any of its representations, warranties, covenants or other obligations contained in this Agreement, or if any representation or warranty of any Seller in this Agreement shall have become untrue and such breach or failure or inaccuracy (A) would give rise to the failure of a condition set forth in Section 8.3(a) or Section 8.3(b) and (B) cannot be or has not been cured before the earlier to occur of (I) fifteen (15) Business Days following delivery of written notice to the Sellers of such breach or failure to perform and (II) one (1) day prior to the Outside Date;

(ii)    the Bankruptcy Court has not entered the Sale Order on or before the date that is seven (7) Business Days after the Sale Hearing or, if approval of the Sale Order is delayed due to the Bankruptcy Court's unavailability, the next Business Day on which the Bankruptcy Court is available;

(ii)    if the Bankruptcy Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code, and neither such dismissal nor conversion expressly contemplates the transactions provided for in this Agreement;

(iii)    the Sellers withdraw the request for authority to sell the Transferred Assets and assume and assign the Transferred Contracts;

(iv)    the Sellers modify or amend the Sale Procedures (as defined in the Sale Procedures Order) in a manner adverse to the Buyer without the prior written consent of the Buyer unless such modification or amendment is permitted by the Sale Procedures Order or required by the Bankruptcy Court;

(v)    any of the Sellers or any Chapter 11 trustee appointed for any Seller file any pleading with the Bankruptcy Court for relief that would not permit the Closing without the prior written consent of the Buyer; provided, that taking any action in respect of soliciting Competing Bids, or accepting a winning bid, in connection with the Auction shall not entitle the Buyer to terminate this Agreement pursuant to this Section 9.1(c)(v);

(vi)    from and after the date of this Agreement, a Material Adverse Effect has occurred and cannot be or has not been cured before the earlier to occur of (A) fifteen (15)

Business Days following delivery of written notice to the Sellers of the existence of such Material Adverse Effect and (B) one (1) day prior to the Outside Date;

(vii)    the Sellers publicly announce any plan of reorganization or plan of liquidation or support any such plan filed by any third party that (A) adversely affects Sellers' ability to perform their obligations under this Agreement or to consummate the transactions contemplated hereby or (B) that prevents or materially delays the Closing from occurring in accordance with the terms of this Agreement; or

(d)    by the Sellers, if the Sellers are not in material breach of this Agreement such that the conditions in Section 8.3(a) or Section 8.3(b) would not be satisfied, and the Buyer shall have breached or failed to perform any of its representations, warranties, covenants or other obligations contained in this Agreement, or if any representation or warranty of the Buyer in this Agreement shall have become untrue and such breach, failure or inaccuracy (i) would give rise to the failure of a condition set forth in Section 8.2(a) or Section 8.2(b) and (ii) cannot be or has not been cured before the earlier to occur of (A) fifteen (15) Business Days following delivery of written notice of such breach or failure to perform and (B) one (1) day prior to the Outside Date.

The Party seeking to terminate this Agreement pursuant to this Section 9.1 (other than Section 9.1(a)) shall, if such Party is the Sellers, give prompt written notice of such termination to the Buyer, and if such Party is the Buyer, give prompt written notice of such termination to the Sellers.

Section 9.2    Effect of Termination. In the event of termination of this Agreement as provided in Section 9.1, this Agreement shall forthwith become void and there shall be no liability on the part of any Party except (a) for the provisions of Article V (Bankruptcy Court Matters), Section 6.6 (Public Announcements), Section 10.2 (Fees and Expenses), Section 10.5 (Notices), Section 10.8 (Parties in Interest), Section 10.9 (Governing Law), Section 10.10 (Submission to Jurisdiction) and this Article IX and (b) that no such termination shall relieve any Party from liability for any Fraud.

**ARTICLE X.**
**GENERAL PROVISIONS**

Section 10.1    Nonsurvival of Representations, Warranties and Covenants. The respective representations, warranties and covenants of the Sellers and the Buyer contained in this Agreement and any certificate delivered pursuant hereto shall terminate at, and not survive, the Closing; provided that this Section 10.1 shall not limit any covenant or agreement of the Parties to the extent that its terms require performance after the Closing, which shall survive in accordance with their terms.

Section 10.2    Fees and Expenses. Except as otherwise provided herein (including Section 7.1), all fees and expenses incurred in connection with or related to this Agreement and the Ancillary Agreements and the transactions contemplated hereby and thereby shall be paid by the Party incurring such fees or expenses, whether or not such transactions are consummated.

Section 10.3    Amendment and Modification. This Agreement may not be amended, modified or supplemented in any manner, whether by course of conduct or otherwise, except by

an instrument in writing specifically designated as an amendment hereto, signed on behalf of each Party.

Section 10.4    Waiver. No failure or delay of any Party in exercising any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such right or power, or any course of conduct, preclude any other or further exercise thereof or the exercise of any other right or power. Any agreement on the part of either Party to any such waiver shall be valid only if set forth in a written instrument executed and delivered by a duly authorized officer on behalf of such Party.

Section 10.5    Notices. All notices, delivery of documents or information and other communications hereunder shall be in writing and shall be deemed duly given (a) on the date of delivery if delivered personally, (b) on the first Business Day following the date of dispatch if delivered utilizing a next-day service by a recognized next-day courier, (c) on the day of transmission if sent via email transmission to the email address(es) given below and the sender does not receive a notice of such transmission being undeliverable to such email address, or (d) on the earlier of confirmed receipt or the fifth (5th) Business Day following the date of mailing if delivered by registered or certified mail, return receipt requested, postage prepaid. All notices hereunder shall be delivered to the addresses set forth below, or pursuant to such other instructions as may be designated in writing by the Party to receive such notice:

     (i)     if to the Sellers, to:

          OYA Renewables Development LLC
          c/o John Shepherd, CRO
          Two Houston Center
          909 Fannin St., Suite 2450
          Houston, TX 77010
          Attention: John Shepherd
          Email: john.shepherd@ankura.com

          with a copy (which shall not constitute notice) to:

          Sidley Austin LLP
          1000 Louisiana Street, Suite 5900
          Houston, TX 77002
          Attention: Jessica Adkins; Duston McFaul
          Email: jadkins@sidley.com; dmcfaul@sidley.com

     (ii)     if to the Buyer, to:

          GDEV OYA Lender I, LLC
          230 Park Ave., Suite 1560
          New York, New York 10169
          Attention: Benjamin Baker
          Email: Benjamin.baker@greenbackercapital.com

with a copy (not constituting notice) to:

Troutman Pepper Locke LLP
200 Vesey Street, 20th Floor
New York, NY 10281
Attention: Michael Malfettone
Email: michael.malfettone@troutman.com

Section 10.6    Interpretation. When a reference is made in this Agreement to a Section, Article, Exhibit or Schedule such reference shall be to a Section, Article, Exhibit or Schedule of this Agreement unless otherwise indicated. The table of contents and headings contained in this Agreement or in any Exhibit or Schedule are for convenience of reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Any capitalized terms used in any Exhibit or Schedule but not otherwise defined therein shall have the meaning as defined in this Agreement. All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth herein. The word "including" and words of similar import when used in this Agreement will mean "including, without limitation," unless otherwise specified. The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to the Agreement as a whole and not to any particular provision in this Agreement. The term "or" is not exclusive and the use of the word "or" to connect two or more phrases shall be construed as inclusive of all such phrases (*e.g.*, "A or B" means "A or B, or both"). The word "will" shall be construed to have the same meaning and effect as the word "shall." References to days mean calendar days unless otherwise specified. Any reference to any federal, state, provincial, territorial, local or foreign statute or Law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period will be excluded. If the last day of such period is a day other than a Business Day, the period in question will end on the next succeeding Business Day. For purposes of this Agreement, the Sellers shall be deemed to have "delivered" or "made available" information and documents if such information or documents were uploaded to the Data Room at least two Business Days prior to the Closing Date.

Section 10.7    Entire Agreement. This Agreement (including the Exhibits and Schedules hereto) and the Ancillary Agreements constitute the entire agreement, and supersede all prior written agreements, arrangements, communications and understandings and all prior and contemporaneous oral agreements, arrangements, communications and understandings between the Parties with respect to the subject matter hereof and thereof. Neither this Agreement nor any Ancillary Agreement shall be deemed to contain or imply any restriction, covenant, representation, warranty, agreement or undertaking of any Party with respect to the transactions contemplated hereby or thereby other than those expressly set forth herein or therein or in any document required to be delivered hereunder or thereunder, and none shall be deemed to exist or be inferred with respect to the subject matter hereof.

Section 10.8    Parties in Interest. This Agreement shall be binding upon and inure solely to the benefit of each Party, and nothing in this Agreement, express or implied, is intended to or shall confer upon any Person other than the Parties and their respective successors and permitted assigns any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

Section 10.9    Governing Law. Except to the extent of the mandatory provisions of the Bankruptcy Code, this Agreement and all disputes or controversies arising out of or relating to this Agreement or the transactions contemplated hereby (in contract or tort) shall be governed by, and construed in accordance with the internal Laws of the State of Delaware, without regard to the Laws of any other jurisdiction that might be applied because of the conflicts of Laws principles of the State of Delaware.

Section 10.10    Submission to Jurisdiction. Without limitation of any Party's right to appeal any Order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (b) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Action or proceeding; provided, however, that, if the Bankruptcy Case is closed or declines jurisdiction, each of the Parties irrevocably agrees that any Action or proceeding arising out of or relating to this Agreement brought by another Party or its successors or assigns shall be heard and determined in a Delaware state court or a federal court sitting in Delaware, and each of the Parties hereby irrevocably submits to the exclusive jurisdiction of the aforesaid courts for itself and with respect to its property, generally and unconditionally, with regard to any such Action or proceeding arising out of or relating to this Agreement and the transactions contemplated hereby. Each of the Parties further agrees that notice as provided herein shall constitute sufficient service of process and the Parties further waive any argument that such service is insufficient, without limiting any other manner of service permitted by Law. Each of the Parties hereby irrevocably and unconditionally waives, and agrees not to assert, by way of motion or as a defense, counterclaim or otherwise, in any Action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby, (i) any claim that it is not personally subject to the jurisdiction of the courts in Delaware as described herein for any reason, (ii) that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise) and (iii) that (A) the suit, Action or proceeding in any such court is brought in an inconvenient forum, (B) the venue of such suit, Action or proceeding is improper or (C) this Agreement, or the subject matter hereof, may not be enforced in or by such courts.

Section 10.11    Disclosure Generally. Notwithstanding anything to the contrary contained in the Disclosure Schedules or in this Agreement, the information and disclosures contained in any Disclosure Schedule corresponding to a Section in Article III of this Agreement shall be deemed to be disclosed and incorporated by reference in any other Disclosure Schedule corresponding to a Section in Article III of this Agreement as though fully set forth in such Disclosure Schedule for which applicability of such information and disclosure is readily apparent on its face. The fact that

any item of information is disclosed in any Disclosure Schedule shall not be construed to be an admission by any Party to any third party of any liability or obligation with respect thereto or to mean that such information is material or immaterial, within or outside of the Ordinary Course of Business, or required to be disclosed by this Agreement. Such information and the dollar thresholds set forth herein shall not be used as a basis for interpreting the terms "material" or "Material Adverse Effect" or other similar terms in this Agreement. No information set forth in the Disclosure Schedules will be deemed to broaden in any way the scope of the Parties' representations and warranties.

Section 10.12 <u>No Recourse</u>. All Actions, obligations, liabilities, or causes of action (whether in contract or in tort, in Law or in equity, or granted by statute) that may be based upon, in respect of, arise under, out or by reason of, be connected with, or relate in any manner to this Agreement or any Ancillary Agreement, or the negotiation, execution, or performance of this Agreement and the other Ancillary Agreements (including any representation or warranty made in, in connection with, or as an inducement to, this Agreement), may be made only against the parties hereto. No Person who is not a party hereto, including any past, present or future director, officer, employee, incorporator, member, partner, manager, stockholder, Affiliate, agent, attorney, representative or assignee of, and any financial advisor or lender to, any party hereto, or any past, present or future director, officer, employee, incorporator, member, partner, manager, stockholder, Affiliate, agent, attorney, representative or assignee of, and any financial advisor or lender to, any of the foregoing (collectively, the "<u>Non-Party Affiliates</u>"), shall have any Liability (whether in contract or in tort, in Law or in equity, or granted by statute) for any Liabilities or causes of action arising under, out of, in connection with, or related in any manner to this Agreement or the other Ancillary Agreements or based on, in respect of, or by reason of this Agreement or the other Ancillary Agreements or their negotiation, execution, performance, or breach (other than as set forth in the Confidentiality Agreement), and, to the maximum extent permitted by Law, each party hereto hereby waives and releases all such Liabilities and causes of action against any such Non-Party Affiliates (except pursuant to this Agreement or the other Ancillary Agreements to which they are a party). Without limiting the foregoing, to the maximum extent permitted by Law, except to the extent otherwise set forth in the Confidentiality Agreement, each party hereto disclaims any reliance upon any Non-Party Affiliate with respect to the performance of this Agreement or the other Ancillary Agreements or any representation or warranty made in, in connection with, or as an inducement to this Agreement.

Section 10.13 <u>Assignment; Successors</u>. Neither this Agreement nor any of the rights, interests or obligations under this Agreement may be assigned or delegated, in whole or in part, by operation of Law or otherwise, by any Seller without the prior written consent of the Buyer, and by the Buyer without the prior written consent of the Sellers, and any such assignment without such prior written consent shall be null and void; <u>provided</u>, <u>however</u>, that Buyer may assign this Agreement to an Affiliate so long as no assignment shall limit the Buyer's obligations hereunder; <u>provided</u> <u>further</u> that the Sellers may assign its rights and obligations under <u>Section 2.8(b)</u> of this Agreement, in whole or in part, in connection with any Chapter 11 plan of the Debtors confirmed by the Bankruptcy Court. Subject to the preceding sentences, this Agreement will be binding upon, inure to the benefit of, and be enforceable by, the Parties and their respective successors and assigns.

Section 10.14 <u>Enforcement</u>. The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached, including if any of the Parties fails to take any action required of it hereunder to consummate the transactions contemplated by this Agreement. Accordingly, (a) each of the Parties shall be entitled to specific performance of the terms hereof or other equitable relief, including an injunction or injunctions, to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement, without proof of damages or otherwise (this being in addition to any other remedy to which any such Party may be entitled under this Agreement) and (b) the right of specific performance and other equitable relief is an integral part of the transactions contemplated by this Agreement and without that right, neither the Sellers nor Buyer would have entered into this Agreement. Each of the Parties hereby further waives (i) any defense in any Action for specific performance that a remedy at Law would be adequate and (ii) any requirement under any Law to post security as a prerequisite to obtaining equitable relief.

Section 10.15 <u>Currency</u>. All references to "dollars" or "$" in this Agreement or any Ancillary Agreement refer to United States dollars, which is the currency used for all purposes in this Agreement and any Ancillary Agreement.

Section 10.16 <u>Severability</u>. Whenever possible, each provision or portion of any provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable Law, but if any provision or portion of any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable Law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or portion of any provision in such jurisdiction, and this Agreement shall be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision or portion of any provision had never been contained herein.

Section 10.17 <u>Waiver of Jury Trial</u>. EACH OF THE PARTIES TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 10.18 <u>Counterparts</u>. Notwithstanding anything else herein to the contrary, this Agreement may be executed in two or more counterparts, all of which shall be considered one and the same instrument and shall become effective when one or more counterparts have been signed by each of the Parties and delivered to the other Parties. Delivery of an executed counterpart of a signature page to this Agreement via electronic mail, portable document format (pdf) or any electronic signature complying with the U.S. federal ESIGN Act of 2000 (including DocuSign), shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

Section 10.19 <u>No Presumption Against Drafting Party</u>. Each of the Buyer and the Sellers acknowledges that each Party to this Agreement has been represented by legal counsel in connection with this Agreement and the transactions contemplated by this Agreement. Accordingly, any rule of Law or any legal decision that would require interpretation of any claimed

ambiguities in this Agreement against the drafting Party has no application and is expressly waived.

*The remainder of this page is intentionally left blank.*

32863747.1

IN WITNESS WHEREOF, the Sellers and the Buyer have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

<u>**SELLERS**</u>**:**

**OYA RENEWABLES DEVELOPMENT LLC**

By _____
      John Shepherd
      Independent Manager

By _____
      Eric Millard
      Independent Manager

**OYA-OMNI DEVELOPMENT COMPANY, LLC**

By: OYA Renewables Development LLC, its sole member

By _____
      John Shepherd
      Independent Manager

By _____
      Eric Millard
      Independent Manager

32863747.1

**OYA RENEWABLES CONSTRUCTION HOLDINGS 3 LLC**

By    OYA Renewables Construction and Yield
      Holdings LLC, its sole member


By    _____

      John Shepherd
      Independent Manager


By    _____

      Eric Millard
      Independent Manager

*Signature page to Membership Interest and Asset Purchase Agreement*

**<u>BUYER</u>:**

**GDEV OYA LENDER I, LLC, as Agent for the
Secured Parties**


By: _____
       Name:
       Title:

32863747.1

*Signature page to Membership Interest and Asset Purchase Agreement*

## **<u>EXHIBIT A</u>**

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

See attached.

## **EXHIBIT B**

### **FORM OF LEASE ASSIGNMENT**

See attached.

## SCHEDULE I

## TRANSFERRED SUBSIDIARIES

### OYA Renewables Development LLC

| Company Name | Owner(s) | Percentage Ownership |
|---|---|---|
| OYA Solar RE LLC | OYA Renewables Development LLC | 100% |
| Sartell Land LLC | OYA Renewables Development LLC | 100% |
| OYA Lane Road LLC | OYA Renewables Development LLC | 100% |
| OYA Lockport Street LLC | OYA Renewables Development LLC | 100% |
| OYA Greenport RNM LLC | OYA Renewables Development LLC | 100% |

### OYA-OMNI Development Company, LLC

| Company Name | Owner(s) | Percentage Ownership |
|---|---|---|
| OYA-OMNI NY-VA 2021 Holdco LLC | OYA-OMNI Development Company, LLC | 100% |
| OYA-OMNI NY-VA-PA-NM 2021 Holdco, LLC | OYA-OMNI Development Company, LLC | 100% |
| Omni Burt A Solar, LLC | OYA-OMNI Development Company, LLC | 100% |
| Omni Portland Solar, LLC | OYA-OMNI Development Company, LLC | 100% |
| Omni Lee South Solar, LLC | OYA-OMNI Development Company, LLC | 100% |
| Hingham Hobart, LLC | OYA-OMNI Development Company, LLC | 100% |

## SCHEDULE II

**TRANSFERRED PROJECTS & CONTRACTS**

*[Filed at Docket Nos. 386 (sealed), 387 (redacted)]*

**Schedule 1.1(c)**
**Transferred Contracts**

1. Deferred Payment Agreements.

2. Section 4 (Seller Leases) of <u>Schedule 3.15(a)</u> is incorporated herein by reference.

3. Oneida Valley Interconnection Agreement.

4. Active Resource Integration PILOT Participation Agreement between OYA Renewables Development LLC and Niagara Mohawk Corporation d/b/a National Grid to be executed after closing (OYA Oneida Valley Rd).

**Schedule 1.1(d)**
**Deferred Payment Agreements**

1. Membership Interest Purchase Agreement by and between OYA Renewables Development LLC and NY DRS Finco VIII, LLC dated as of December 19, 2023.

2. Membership Interest Purchase Agreement by and between OYA Renewables Development LLC and NY DRS Finco VIII, LLC dated as of June 13, 2024.

**<u>Exhibit 2</u>**

**List of Transferred Contracts Identified by the Successful Purchaser**

*[Filed at Docket Nos. 386 (sealed), 387 (redacted)]*

**<u>Exhibit 3</u>**

**List of Transferred Contracts Identified by the Back-Up Purchaser**

*[Filed at Docket Nos. 325 (sealed), 326 (redacted)]*

**<u>Exhibit 4</u>**

**Settlement Term Sheet**

## OYA RENEWABLES DEVELOPMENT LLC, ET AL.

### SETTLEMENT TERM SHEET

#### February 12, 2025

THIS TERM SHEET (THIS "**TERM SHEET**") DESCRIBES THE PRINCIPAL TERMS OF A SETTLEMENT (THE "**SETTLEMENT**") BY AND AMONG (I) THE DEBTORS, (II) THE UNSECURED CREDITORS COMMITTEE (THE "**COMMITTEE**"), AND (III) THE PREPETITION GDEV SECURED PARTIES WITH REGARDS TO THE JOINT CHAPTER 11 PLAN OF OYA RENEWABLES DEVELOPMENT LLC AND ITS DEBTOR AFFILIATES (THE "**PLAN**") AND OTHER TRANSACTIONS. CAPITALIZED TERMS USED BUT NOT DEFINED IN THIS TERM SHEET HAVE THE MEANINGS ASCRIBED TO SUCH TERMS IN THE *DECLARATION OF JOHN SHEPHERD IN SUPPORT OF CHAPTER 11 PETITIONS AND FIRST DAY PLEADINGS* [DOCKET NO. 2].

THIS TERM SHEET IS NEITHER AN OFFER WITH RESPECT TO ANY SECURITIES NOR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY. THIS TERM SHEET DOES NOT ADDRESS ALL TERMS THAT WOULD BE REQUIRED IN CONNECTION WITH THE PROPOSED RESTRUCTURING TRANSACTIONS OR THAT WILL BE SET FORTH IN THE DEFINITIVE DOCUMENTATION.

THIS TERM SHEET CONTAINS A SERIES OF ASSUMPTIONS, COMPROMISES, AND SETTLEMENTS OF ISSUES AND DISPUTES THAT WILL BE RESOLVED IN CONNECTION WITH CONFIRMATION OF A CHAPTER 11 PLAN. IN THE EVENT THE CHAPTER 11 PLAN CONTEMPLATED UNDER THIS TERM SHEET IS NOT CONFIRMED OR DOES NOT BECOME EFFECTIVE, NOTHING HEREIN SHALL BE CONSTRUED AS AN ADMISSION OF OR THE POSITIONS OF THE PARTIES WITH RESPECT TO THESE ISSUES OR DISPUTES. ACCORDINGLY, THIS TERM SHEET AND THE INFORMATION CONTAINED HEREIN ARE PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE, THE ABSOLUTE MEDIATION PRIVILEGE, AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROHIBITING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS.

| 1. | **Overview of Settlement** | The Debtors, the Committee, and the Prepetition GDEV Secured Parties (collectively the "**Parties**") enter into this Term Sheet pursuant to which the Parties have agreed to a good faith compromise and settlement of various issues and disputes that shall resolve all of the Committee's informal and formal objections to the proposed Plan and Disclosure Statement, certain terms of which are in this Term Sheet, |

| | | |
|---|---|---|
| | | and the sale to the Prepetition GDEV Secured Parties of the assets set forth on **Schedule 1** and the GDEV Credit Bid Sale (as defined below). |
| | | This Term Sheet does not include a description of all of the terms, conditions, and other provisions that will be contained in the Plan and the other documents necessary to give effect to the terms of the Plan and this Term Sheet, including without limitation, the documents of the Plan Supplement (the "**Definitive Documents**").  The Definitive Documents shall be consistent in all respects with this Term Sheet. |
| 2. | **Funding** | The Prepetition GDEV Secured Parties, in consideration for the assets acquired under the Receivables Sale (as defined below) and this Settlement, shall (i) on the date that the conditions precedent in the Plan are satisfied or waived (the "**Effective Date**"), transfer to the GUC Trust (as defined below) the GDEV Contribution (as defined below) and (ii) not object to the Debtors use of cash to (a) fund the chapter 11 cases and pay in full in Cash all Claims, including, but not limited to, administrative and priority claims, required to be paid to confirm a chapter 11 plan under the Bankruptcy Code (the "**Required Claims**"), unless any Holder of such Claim agrees to alternative treatment, in order for the Effective Date to occur or otherwise assumed or required to be paid under the terms of the Plan, in each case to the extent not liquidated and paid in full in Cash on the Effective Date; and (b) fund $400,000 (the "**GUC Cash**") to be distributed to the GUC Trust as described below (the consideration described above, the "**GDEV Additional Consideration**"); *provided*, *however*, that the funding described in (a) and (b) is subject to and solely as provided by the budget attached hereto as **Exhibit A** (as may be modified or amended by agreement among the Debtors and the Prepetition GDEV Secured Parties, and, solely as to any modifications or amendments that adversely affect the Committee professional budget or the GUC Cash, the Committee, the "**Budget**"). |
| 3. | **Support for the Plan** | The Prepetition GDEV Secured Parties and the Committee shall not object to the Plan as reflected in this Term Sheet (which may be revised to address tax issues so long as such revisions do not adversely affect the treatment of Allowed General Unsecured Claims and are provided for in the Budget) or any motion relating to the transactions contemplated in this Term Sheet, and shall support the Plan, including the Plan Supplement that is consistent with the terms set forth herein, by voting in favor of the plan (if applicable) and any such motion (and, for the avoidance of doubt, the Debtors shall be authorized to reference such support in other filings and presentations).  The Debtors shall consult with the Committee before the Plan and related documents are filed. |
| | | The Committee shall provide a letter that may be included in the solicitation package and/or posted on the case website hosted by the |

| | | |
|---|---|---|
| | | Debtors' claims and noticing agent that encourages Holders of Allowed General Unsecured Claims to vote in favor of the Plan. |
| 4. | **GUC Trust** | A trust shall be established on the Effective Date in accordance with the Plan (the "**GUC Trust**").  The Parties agree that the GUC Trust shall be treated as a "liquidating trust" and not as a "disputed ownership fund" for U.S. federal income tax purposes.  The GUC Settlement Assets (as defined herein) shall be used to fund the administration of the GUC Trust, including the reasonable and documented fees and expenses of any professionals retained by the individual appointed to administer the GUC Trust who shall be selected by the Committee (in consultation with the Debtors and Prepetition GDEV Secured Parties) (the "**GUC Trustee**").<br><br>The purposes of the GUC Trust shall be to maximize the distribution to Holders of Allowed General Unsecured Claims and to wind down the liquidating Debtors.<br><br>The GUC Trustee shall have the authority to pay all reasonable and documented fees, expenses, and costs (including any taxes imposed on or payable by the GUC Trust or in respect of the GUC Settlement Assets (as defined herein)) incurred by the GUC Trust, any professionals retained by the GUC Trust, and any additional amount determined necessary by the GUC Trustee to adequately reserve for the operating expenses of the GUC Trust (the "**GUC Trust Fees and Expenses**") exclusively from the GUC Settlement Assets (as defined herein, and, the GUC Settlement Assets less the GUC Trust Fees and Expenses, the "**GUC Trust Net Assets**").<br><br>An oversight committee, comprised of three (3) members as determined by the Committee, the Debtors, and the Prepetition GDEV Secured Parties the ("**Oversight Committee**"), shall be established. The Oversight Committee shall have the duties and responsibilities set forth in the GUC Trust Agreement, including, but not limited to, approval of (a) the initiation of litigation, and (b) any settlements in excess of $250,000. The Oversight Committee shall, at the request of the Prepetition GDEV Secured Parties, include a representative of the Prepetition GDEV Secured Parties. |
| 5. | **GUC Settlement Assets** | After payment or reserve of payment of the Required Claims, on the Effective Date, the Debtors shall transfer to the GUC Trust, for the benefit of the Holders of Allowed General Unsecured Claims, the following assets, free and clear of any and all liens, claims, interests, or encumbrances: |

- Cash in the amount of $400,000 or such lesser amount if, at the time of the transfer, the Debtors' estates have less than $400,000 cash (the "**GUC Cash**")[1]; and

- the claims and causes of action held by the Prepetition GDEV Secured Parties against non-Debtor third parties that relate to the GDEV Secured Obligations, including, but not limited to, claims and causes of action and action related to or against the Debtors' Former[2] directors, officers, managers, members, or shareholders or any other insiders or Affiliates (the "**GDEV Contribution**"); and

- the claims and causes of action arising under these Chapter 11 Cases that vest in the liquidating Debtors including, but not limited to (i) any claims and causes of action under chapter 5 of the Bankruptcy Code, including, but not limited to any preference, fraudulent transfer, or similar causes of action under applicable non-bankruptcy law and (ii) any claims and causes of action related to or against the Debtors' Former directors, officers, managers, members, or shareholders or any other insiders or Affiliates, including, but not limited to breach of fiduciary duty or similar claims (together with the GDEV Contribution, the "**GUC Causes of Action**, and together with the GUC Cash, the "**GUC Settlement Assets**"), which shall be prosecuted pursuant to the prosecution procedures set forth in the GUC Trust Agreement (as defined herein); *provided, however*, notwithstanding anything herein to the contrary, the GUC Causes of Action shall not include any Claims or Causes of Action (a) released pursuant to the Plan, including, for purposes of clarity, any Claims or Causes of Action against the Prepetition GDEV Secured Parties and current directors, officers, advisors, law firms, personnel, and managers of the Debtors and/or Prepetition GDEV Secured Parties, or otherwise released or settled pursuant to a Bankruptcy Court Order, including John Shepherd and Ankura, (b) waived or settled during the Chapter 11 Cases or as otherwise agreed by the Committee, (c) in respect of transactions authorized by order of the Bankruptcy Court, including payments or other distributions made or authorized to be made in satisfaction of prepetition claims, and (d) any potential claims pursuant to section 547 of the Bankruptcy Code or other applicable law against transferees who also received a Court-approved payment.

---

[1] A condition to the Plan going effective shall be that $400,000 is available to fund the GUC Trust. The Debtors will need Committee approval to waive this condition.

[2] "Former" means tenure that expired or otherwise terminated prior to the Petition Date; *provided, however*, any Former individuals shall not include John Shepherd.

| 6. | **Treatment of General Unsecured Claims** | Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Allowed General Unsecured Claim, unless otherwise agreed to by such Holder, its *pro rata* share of the beneficial interests of the GUC Trust allocable to the Debtor against whom such Holder's Allowed General Unsecured Claim is held, entitling each respective Holder of an Allowed General Unsecured Claim to its *pro rata* share of the GUC Trust Net Assets allocable to the Debtor against whom such Holder's Allowed General Unsecured Claim is held. |
|----|----|----|
| 7. | **GUC Trust Agreement** | The trust agreement establishing and delineating the terms and conditions for the creation and operation of the GUC Trust (the "**GUC Trust Agreement**") shall (a) be drafted by the Committee, which shall be in form and substance acceptable to the Committee, the Prepetition GDEV Secured Parties, and the Debtors, (b) be included in the Plan Supplement, (c) provide for the identity and appointment of the GUC Trustee, and (d) contain provisions setting forth the procedures governing the prosecution of the GUC Causes of Action and the source of payment of legal fees related thereto (which may include a portion of the GUC Cash). |
| 8. | **Role of GUC Trustee and Unsecured Claims Reconciliation Process** | In furtherance of, and consistent with, the purposes of the GUC Trust and the Plan, the GUC Trustee shall, subject to the approval of or consultation with the Oversight Committee, as more fully set forth in the GUC Trust Agreement, among other things, (a) have the power and authority to hold, manage, sell, invest, and distribute to the Holders of Allowed General Unsecured Claims, the GUC Trust Net Assets, including any proceeds thereof, (b) hold the GUC Trust Net Assets for the benefit of the Holders of Allowed General Unsecured Claims, (c) have the power and authority to prosecute and resolve objections to Disputed General Unsecured Claims, and (d) have the power and authority to perform such other functions as are provided for herein and the GUC Trust Agreement. For the avoidance of doubt, notwithstanding anything to the contrary in the Plan or the GUC Trust Agreement, the GUC Trustee shall not pursue any Claims or Causes of Action (if any) against any party released under the Plan. |
|    |    | As further set forth in the GUC Trust Agreement, after the Effective Date, the GUC Trustee shall have primary responsibility for the reconciliation process for General Unsecured Claims (the "**Unsecured Claims Reconciliation Process**"); *provided* that the Debtors, in consultation with the GUC Trustee, shall have express rights to object to and prosecute such objections to Claims not allowed under the Plan. |
|    |    | All objections to General Unsecured Claims must be filed by the GUC Trustee within 180 days of the Effective Date, unless extended by order of the Bankruptcy Court. Any U.S. Trustee Fees arising after the Effective Date shall be paid exclusively from the GUC Settlement Assets. |

| | | |
|---|---|---|
| | | Subject to the preceding paragraph, the Chapter 11 Cases shall be closed as soon as reasonably practicable. The GUC Trustee shall have a right to file a motion to reopen one or more of the Chapter 11 Cases, including for purposes of the Unsecured Claims Reconciliation Process and to the extent necessary for the GUC Trustee to make distributions at a later date; *provided, however*, that the GUC Trust shall be responsible for reimbursement of all U.S. Trustee fees and all other fees and expenses incurred in connection with reopening the Chapter 11 Cases solely for the Unsecured Claims Reconciliation Process.<br><br>For the avoidance of doubt, the GUC Trust Fees and Expenses shall be paid exclusively from the GUC Settlement Assets. |
| 9. | **Releases by the Debtors and Releases by Holders of Claims and Interests** | The Plan shall include customary release, exculpation, and injunction provisions for the benefit of the Debtors, the Prepetition GDEV Secured Parties, and each of their related parties (including, for the avoidance of doubt, professionals retained prior to the Petition Date in connection with the Chapter 11 Cases), and the Committee and its members, in each case, in their respective capacities as such.<br><br>The Committee shall not encourage Holders of General Unsecured Claims (a) to not "opt in" or (b) to "opt out", as applicable, to the third-party release set forth in the Plan. |
| 10. | **Sale to GDEV** | The Committee agrees to support the sale(s) to the Prepetition GDEV Secured Parties or its designee for which GDEV OYA Lender I, LLC was designated the Successful Bidder or Back-Up Bidder, as set forth in the *First Amended Notice of Successful Bidders and Back-Up Bidders* [Docket No. 285] and for which the Prepetition GDEV Secured Parties are providing consideration in the form of a credit bid in the amounts set forth in such notice (the "**GDEV Credit Bid Sale**").<br><br>The Committee further agrees to support the sale of the assets set forth on **Schedule 1** attached hereto to the Prepetition GDEV Secured Parties (the "**Receivables Sale**"), which are among the assets the Prepetition GDEV Secured Parties are acquiring in the Membership Interest and Asset Purchase Agreement governing the GDEV Credit Bid Sale.[3] The Debtors and the Committee further agree to use their best efforts to promptly transfer the Debtors' account number 4373013998 at TD Bank N.A., 2109 Broadway, New York NY to the Prepetition GDEV Secured Parties or otherwise transfer to the Prepetition GDEV Secured Parties any receivables received by the Debtors under that certain Membership Interests Purchase Agreement, by and between OYA Solar NY, L.P. and DG New York CS, LLC, |

---

[3] The Debtors do not intend to sell or otherwise monetize any additional assets other than those assets currently contemplated to be sold through a motion currently pending before the Bankruptcy Court, an approved sale order of the Bankruptcy Court, or this Settlement.

| | | |
|---|---|---|
| | | dated October 31, 2018, as supplemented or modified by that certain Payment Direction Letter from OYA Solar NY, L.P., as seller thereunder, to DG New York CS, LLC, as buyer thereunder, dated December 22, 2020. |
| 11. | **GDEV Loan Facility Claim** | The Prepetition GDEV Secured Parties shall have an Allowed GDEV Loan Facility Claim in the amount of $70,515,946.<br><br>The Committee agrees not to seek standing to commence or commence a Challenge or otherwise pursue a Challenge against the Prepetition GDEV Secured Parties (as defined in the DIP Orders).<br><br>**Treatment of GDEV Loan Facility Claim.** On the Effective Date, each Holder of an Allowed GDEV Loan Facility Claim shall receive, among other things, up to the full amount of the Allowed GDEV Loan Facility Claim, its *pro rata* share of (a) the proceeds of the Debtors sale of certain of its assets to UGE Capital LLC as set forth below, (b) all Cash in the Debtors' estates on the Effective Date after payment of the Required Claims and except for the GUC Cash, and (c) any remaining assets of the Debtors including, but not limited to, unpaid amounts under the AGK Settlement (as defined below) and unpaid proceeds, if any, of the sale of the assets of Debtor OYA Renewables Yield-1 LLC; *provided, however*, that any equity interests of a Debtor held by any Debtors shall not be transferred to the Prepetition GDEV Secured Parties. Such treatment shall also satisfy any Claim or other distribution on account of the interests held by Greenbacker Renewable Energy Corporation ("**GREC**") in Debtor OYA-Rosewood Holdings LLC.<br><br>Any "deficiency" claims arising on account of the GDEV Facility Claims (the "**GDEV Deficiency Claims**") shall be treated as an Allowed General Unsecured Claim of the applicable Debtors and shall be paid *pro rata* with the holders of Allowed General Unsecured Claims in the applicable Debtors; *provided, however*, that the Prepetition GDEV Secured Parties agree that until holders of non-insider Allowed General Unsecured Claims receive distributions from the Trust on account of their Allowed General Unsecured Claims in an amount that equals 80% of their Allowed General Unsecured Claims, the Prepetition GDEV Secured Parties will allow the Trust to transfer any distribution from the Trust that otherwise would have been paid to the Prepetition GDEV Secured Parties on account of their GDEV Deficiency Claim to the non-insider Holders of Allowed General Unsecured Claim. For the avoidance of doubt, no portion of any distribution otherwise payable by the Trust to the Prepetition GDEV Secured Parties on account of their GDEV Deficiency Claim may be paid to any (a) insiders of the Debtors and their current and former directors, officers, managers, members, or shareholders , (b) insiders |

| | | |
|---|---|---|
| | | of the Debtors' non-debtor affiliates and their current or former directors, officers, managers, members, or shareholders, or (c) entities controlled by those entities or individuals described in (a) and (b), or (d) entities whose equity in any amount is owned by those entities or individuals described in (a) and (b). |
| 12. | **UGE Sale Proceeds** | The proceeds of the Debtors' sale of certain of their assets that is Prepetition GDEV Collateral to UGE Capital LLC after deduction of the portion of such proceeds used to pay the DIP Facility (collectively, the "**UGE Sale Proceeds**") shall be promptly paid to the Prepetition GDEV Secured Parties in partial payment of their secured claim, including any "earn-outs" resulting from the UGE Sale; *provided, however*, $2,000,000 of the UGE Sale Proceeds shall be retained by the Debtors (the "**Retained Proceeds**") until the Debtors' receipt of the funds owed to the Debtors pursuant to the AGK Settlement[4] and the proceeds, if any, of the sale of the assets of Debtor OYA Renewables Yield-1 LLC (collectively, the "**Future Sale Proceeds**"). Upon the Debtors' receipt of any of the Future Sale Proceeds, the Debtors shall remit to the Prepetition GDEV Secured Parties the Retained Proceeds as soon as practicable after receipt (but in no event longer than 5 business days after receipt) of any Future Sale Proceeds, and on a cumulative basis, up to and no greater than the full amount of the Retained Proceeds. The Debtors and the Committee shall use their best efforts to promptly obtain an order from the Bankruptcy Court authorizing the transfer of the UGE Sale Proceeds to the Prepetition GDEV Secured Parties. |

---

[4] "AGK Settlement" means the settlement described in the *Debtors' Motion for Entry of an Order (I) Approving Resolution and Settlement of Certain Disputes Between the Debtors and Aggreko Pursuant to Federal Rule of Bankruptcy Procedure 9019 and (II) Granting Related Relief* [Dkt. No. 313].

## Exhibit A

**Budget**

**OYA Renewables Development LLC**
*Case No. 24-12574*
Extended operating budget through week ending 04-06-25
*$ in Thousands*

| | | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | |
|---|---|---|---|---|---|---|---|---|---|---|
| Forecast Week | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | Total |
| Week Ending Date | 9-Feb | 16-Feb | 23-Feb | 2-Mar | 9-Mar | 16-Mar | 23-Mar | 30-Mar | 6-Apr | Total |
| **Total Cash from Operations/Sales** | - | - | 22 | 3,299 | - | - | - | - | - | 3,321 |
| **Operating Costs** | | | | | | | | | | |
| Payroll & Benefits | (64) | - | (18) | - | (18) | - | (18) | - | (9) | (128) |
| Taxes, Insurance, Other | (50) | (2) | (5) | (11) | - | - | - | (13) | (121) | (202) |
| Development/Land Leases | - | - | - | - | - | - | - | - | - | - |
| Trade (Storage) | - | - | - | - | - | - | - | - | - | - |
| DEVEX (Dutch Hill IX Payment) | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Costs** | **(114)** | **(2)** | **(23)** | **(11)** | **(18)** | **-** | **(18)** | **(13)** | **(130)** | **(330)** |
| **Restructuring Costs** | | | | | | | | | | |
| Restructuring Professional Fees | (386) | (136) | (136) | (396) | (289) | (420) | (151) | (289) | (917) | (3,122) |
| UST | - | - | - | - | - | - | - | (250) | - | (250) |
| **Total Restructuring Costs** | **(386)** | **(136)** | **(136)** | **(396)** | **(289)** | **(420)** | **(151)** | **(539)** | **(917)** | **(3,372)** |
| **Total Costs** | **(500)** | **(138)** | **(160)** | **(407)** | **(307)** | **(420)** | **(170)** | **(552)** | **(1,047)** | **(3,702)** |
| **Beginning Cash Balance** | 1,368 | 868 | 730 | 592 | 3,483 | 3,176 | 2,756 | 2,586 | 2,034 | 1,368 |
| Net Cash Flow | (500) | (138) | (138) | 2,891 | (307) | (420) | (170) | (552) | (1,047) | (381) |
| DIP Draw / (Repayment) | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash Balance** | **868** | **730** | **592** | **3,483** | **3,176** | **2,756** | **2,586** | **2,034** | **987** | **987** |

*Note: A portion of ending cash balance would be used to fund other Admin/Priority Claims, if any, and up to $400,000 for the GUC Trust.*

### Schedule 1

- Receivables under that certain Membership Interest Purchase Agreement, by and between OYA Renewables Construction Holdings 3 LLC and NY DRS Finco VIII, LLC, dated as of December 19, 2023

- Receivables under that certain Membership Interest Purchase Agreement, by and between OYA Renewables Construction Holdings 3 LLC and NY DRS Finco VIII, LLC, dated as of June 13, 2024

- Receivables of ORCH 3 under and pursuant to Section 2.8(b)(i) of that certain Stock and Asset Purchase Agreement, by and among OYA Renewables Construction Holdings 2 LLC, OYA Renewables Construction Holdings 3, LLC, and OYA Renewables EquipmentCo LLC and Radial Power LLC, dated as of November 6, 2024, as amended by that certain First Amendment to Stock and Asset Purchase Agreement, dated January 23, 2025

32863734.1

**EXHIBIT B**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>OYA RENEWABLES DEVELOPMENT LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12574 (KBO)<br><br>(Jointly Administered)<br><br>**Ref: Docket ~~No~~Nos. 12, 50, 68, 77, 148, 151, 152, 190, 191, 192, 198, 207, 215, 218, 232, 240, 247, 265, 277, 283, 285, 292, 293, 301, 320, 325, 326, 351, 386, 387, & 389** |

## ORDER (I) APPROVING THE SALE OF THE TRANSFERRED ASSETS TO GDEV OYA LENDER I, LLC FREE AND CLEAR OF ALL ENCUMBRANCES, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE TRANSFERRED CONTRACTS, AND (III) GRANTING RELATED RELIEF

Upon the motion ("<u>Motion</u>")[2] of OYA Renewables Development LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for entry of an order (this "<u>Order</u>"): (a) authorizing and approving the Debtors' entry into the Purchase Agreements (as defined below) with the Successful Purchaser and Back-Up Purchaser (each as defined below), (b) authorizing the Sale Transaction (as defined below), free and clear of all Liens, Claims, Interests, and encumbrances (each as defined herein and collectively, the "<u>Encumbrances</u>") or Liability,[3] except for certain assumed liabilities, (c) authorizing and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are OYA Renewables Development LLC (7738), OYA Renewables Construction and Yield Holdings LLC (9227), OYA Renewables EquipmentCo LLC (6444), OYA Renewables Construction Holdings 3 LLC (2317), OYA-Rosewood Holdings LLC (1673), OYA Renewables Construction Holdings 2 LLC (9296), OYA Renewables Yield-1 LLC (4326), and OYA-OMNI Development Company, LLC (9784). The Debtors' service address is c/o Ankura Consulting Group, LLC, 2 Houston Center, 909 Fannin Street, Suite 2450, Houston, TX 77010, Attn: John Shepherd.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion or the Purchase Agreements (as defined below), as applicable.

[3] "<u>Liability</u>" or "<u>Liabilities</u>" have the meanings ascribed to such terms in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable.



approving the assumption and assignment of the Potentially Assigned Agreements in connection with the Sale Transaction, including proposed Cure Amounts (if any), and (d) granting related relief; and this Court having previously entered the Bidding Procedures Order[4] (which is incorporated herein by reference), authorizing and approving, *inter alia*, bid procedures for the Assets; and the Auction having commenced on January 7, 2025, and continued on January 13, 2025 (the "Auction"), in accordance with the Bidding Procedures Order; and the Debtors have executed (x) that certain [*Membership Interest and Asset Purchase Agreement*] by and among certain of the Debtors and GDEV OYA Lender I, LLC (the "Successful Purchaser"), dated as of [●], 2025 (as may be amended or modified from time to time in accordance with the terms thereof and this Order, the "Successful Purchase Agreement"), attached hereto as **Exhibit 1**, and (y) that certain [*Equity and Asset Purchase Agreement*] by and among certain of the Debtors and UGE Capital LLC (the "Back-Up Purchaser"), dated as of [●], 2025 (as may be amended or modified from time to time in accordance with the terms thereof and this Order, the "Back-Up Purchase Agreement" and, together with the Successful Purchase Agreement, the "Purchase Agreements"), attached hereto as **Exhibit 1** and **Exhibit 2**, respectively, each contemplating the sale of the Transferred Assets (as defined in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable) identified therein free and clear of any Encumbrances or Liabilities other than the Permitted Encumbrances, the assumption and assignment to the Successful Purchaser or the Back-Up Purchaser of those Potentially Assigned

---

[4] The "Bidding Procedures Order" means the *Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, (C) Scheduling an Auction and a Hearing on the Approval of the Sale of Some, All, or Substantially All of the Debtors' Assets, (D) Authorizing the Debtors to Enter Into the Purchase Agreement(s), (E) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (F) Granting Related Relief* [Docket No. 152], entered on December 10, 2024.


32760152.1
32863699.1

Agreements identified therein (the "Transferred Contracts")[5] (collectively, the "Sale Transaction," and any ancillary documents executed in connection therewith, the "Transaction Documents"); and the Debtors having filed the *Notice of Designation of Successful Bid(s) and Back-Up Bid(s)* [Docket No. 283, as amended by Docket No. 285] (the "Notice of Successful Bid(s)") announcing that , in accordance with the Bidding Procedures Order and after consultation with the Consultation Parties, the Debtors decided in their reasonable business judgment to designate (x) the Successful Purchaser as the highest or otherwise best bidder for the Transferred Assets pursuant to the Successful Purchase Agreement following the Auction and (y) the Back-Up Purchaser as the next-highest or next-otherwise best bidder for the Transferred Assets pursuant to the Back-Up Purchase Agreement following the Auction; and this Court having conducted a hearing on [January 23], 2025, as continued on January 29, 2025, and February 12, 2025, to consider approval of the Sale Transaction (the "Sale Hearing") in accordance with the Bidding Procedures Order, at which time all interested parties were offered an opportunity to be heard with respect to the Sale Transaction; and this Court having reviewed and considered (i) the Motion and the exhibits thereto, (ii) the Bidding Procedures Order, (iii) the Successful Purchase Agreement, (iv) the Back-Up Purchase Agreement, (v) the [●] Declaration Declarations,[6] (vi) the results of the Auction, (vii) the objections and other responses

---

[5] A list of the Transferred Contracts identified by the Successful Purchaser is attached hereto as **Exhibit 32**. A list of the Transferred Contracts identified by the Back-Up Purchaser is attached hereto as **Exhibit 43**.

[6] The "[●] Declaration" means Declarations" mean, collectively, the *Declaration of [●] Jason D'Souza in Support of the Order (I) [ORDER TITLE]Proposed Sales of the Debtors' Assets* [Docket No. [●]301] (the "D'Souza Declaration"), the *Declaration of Eric Millard, Independent Manager, in Support of the Proposed Sales of the Debtors' Assets* [Docket No. 320] (the "Millard Declaration"), the *Supplemental Declaration of Eric Millard, Independent Manager, in support of the Proposed Sales of Certain of the Debtors' Assets to UGE Capital LLC as Successful Purchaser or Back-Up Purchaser, as Applicable* [Docket No. 351] (the "Supplemental Millard Declaration"), and the *Supplemental Declaration of Eric Millard, Independent Manager, in Support of the Proposed Sale of Certain of the Debtors' Assets to GDEV OYA Lender I, LLC as Successful Purchaser and Related Settlement* [Docket No. 389] (the "Supplemental GDEV Millard Declaration").

32760152.1
32863699.1

to approval of the Sale Transaction, if any, (viii) the declaration(s) submitted in support of approval of the Sale Transaction, and (ix) the arguments and representations of counsel made, and the evidence proffered or adduced at the Sale Hearing; and due and proper notice of the Motion and the relief requested therein, including, but not limited to, approval of the Purchase Agreements and this Order having been provided in accordance with the Bidding Procedures Order, the Bankruptcy Rules, and the Local Rules, and no other or further notice being necessary; and all objections, if any, to approval of the Sale Transaction having been withdrawn, resolved (including by separate agreement between the objecting party and the Debtors and/or the Successful Purchaser, as applicable), adjourned, or overruled as provided in this Order; and this Court having found and determined that the relief sought at the Sale Hearing, entry of this Order, and approval of the Sale Transaction is in the best interests of the Debtors, their Estates, their creditors, and all parties in interest in these Chapter 11 Cases; and upon the record of the Sale Hearing and these Chapter 11 Cases; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[7]**

A.  **Petition Date**. On November 6, 2024 (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate and manage their businesses and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[7] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law announced by this Court at the Sale Hearing are hereby incorporated to the extent not inconsistent herewith.



B.      **Jurisdiction & Venue**. This Court has jurisdiction to consider the Motion and the relief requested pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) as to which the Court has authority to issue a final order consistent with Article III of the United States Constitution. Venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      **Statutory Predicates**. The predicates for the relief granted herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007, and Local Rules 2002-1 and 6004-1.

D.      **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(j) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, expressly directs that this Order be effective immediately upon entry, and waives any stay of execution or implementation of this Order.

E.      **Notice**. The Debtors gave due and proper notice of the proposed Bidding Procedures and proposed Sale(s) on November 8, 2024 [Docket No. 68], December 9, 2024 [Docket No. 148], December 10, 2024 [Docket No. 151], December 15, 2024 [Docket No. 198], and December 24, 2024 [Docket No. 207], the Auction and the Sale Hearing on December 10, 2024 [Docket No. 192] and January 10, 2025 [Docket No. 277], and the results of the Auction on January 14, 2025 [Docket ~~No~~Nos. ~~[●]~~283, 285] (collectively, the "Sale Notice"). The Sale Notice constitutes good, sufficient, and appropriate notice of the Sale Transaction under

5


~~32760152.1~~
32863699.1

the particular circumstances, and no other or further notice need be given with respect to the proposed Sale Transaction. As provided by the Sale Notice, a reasonable opportunity to object and/or be heard regarding the requested relief has been afforded to all interested "persons" (as defined in section 101(41) of the Bankruptcy Code) and other "entities" (as defined in section 101(15) of the Bankruptcy Code). Other parties interested in bidding on the Transferred Assets were provided, pursuant to the Bidding Procedures Order, sufficient notice and information to make an informed judgment on whether to bid.

F.    The Debtors also gave due and proper notice of the potential assumption and assignment of each executory contract or unexpired lease available to be assumed by the Debtors and assigned to the Successful Purchaser to each non-debtor party under each such executory contract or unexpired lease as reflected on the notice of potential assumption and assignment of the Potentially Assigned Agreements, filed on December 10, 2024 [Docket Nos. 190 (unredacted), 191 (redacted)] and January [●]16, 2025 [Docket ~~No. [●~~Nos. 292 (unredacted), 293 (redacted)]]7 (together with any supplemental notices, the "Cure Notice"). Such notice was good, sufficient, and appropriate under the particular circumstances, and the counterparties to the Potentially Assigned Agreements are hereby deemed to consent to the relief granted herein, unless otherwise provided in this Order.

G.    As evidenced by the affidavits of service [Docket Nos. 50, 77, 215, 218, 232, 240, 247] previously filed with this Court, and as shall subsequently be filed with this Court to the extent necessary, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction,

---

7 ~~Pursuant to the Cure Notice dated January [●], 2025, counterparties to such executory contracts and/or unexpired leases shall have until [●], 2025, to file a Cure Objection (as defined in the Cure Notice).~~


~~32760152.1~~
32863699.1

the Sale Hearing, the Assumption and Assignment Procedures, the Cure Amounts, the assumption and assignment of the Transferred Contracts, the Purchase Agreements, this Order, and the Sale Transaction has been provided in accordance with sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9006, 9007, and 9014, and Local Rules 2002-1 and 6004-1. The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Cure Amounts, the Assumption and Assignment Procedures, the assumption and assignment of the Transferred Contracts, the Purchase Agreements, this Order, and the Sale Transaction, as required by the Bidding Procedures Order. The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notices of such are or shall be required.

H.    A reasonable opportunity to object and/or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

I.    **Bidding Procedures**. On December 10, 2024, the Court entered the Bidding Procedures Order approving, among other things, the Bidding Procedures for the Sale(s) of the Debtors' Assets and the Assumption and Assignment Procedures for the related assumption and assignment of any Potentially Assigned Agreements related to any Sale(s). As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors have complied in all material respects with the Bidding Procedures Order. The Debtors and their professionals have adequately and appropriately marketed the Transferred Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtors' fiduciary duties. Based upon the record of these proceedings, creditors, other parties in interest, and prospective purchasers were afforded a full,

7



fair, and reasonable opportunity to make a higher or otherwise better bid for the Transferred Assets.

J.      The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders, were the result of arm's-length negotiations, and afforded notice and a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Transferred Assets. The Debtors conducted the sale process in an open and fair manner without collusion and in accordance with the Bidding Procedures.

K.      The sale process was non-collusive in all respects, and the Debtors: (a) afforded all interested parties a full, fair, and reasonable opportunity to qualify as a Qualified Bidder and make an offer to participate in the Auction; (b) provided potential bidders, upon request, sufficient information to enable them to make an informed judgment on whether to bid in the Auction; and (c) appropriately considered all bids that were duly submitted in accordance with the Bidding Procedures. The Debtors, the Successful Purchaser, the Back-Up Purchaser, and their respective counsel and other advisors have complied <u>in all respects</u> with the Bidding Procedures and the Bidding Procedures Order.

L.      The Successful Purchaser is the designated Successful Bidder for the Transferred Assets, and the Successful Purchase Agreement is designated the Successful Bid for the Transferred Assets enumerated therein, in each case, in accordance with the Bidding Procedures Order. The Successful Purchaser and its professionals have complied in all material respects with the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, and all other applicable orders of this Court in negotiating and entering into the Successful Purchase Agreement. The Sale Transaction and the Successful Purchase Agreement

8



likewise complies with the Bidding Procedures Order and all other applicable orders of this Court.

M.      The Back-Up Purchaser is designated the Back-Up Bidder, and the Back-Up Purchase Agreement is designated the Back-Up Bid for the Transferred Assets enumerated therein, in each case, in accordance with the Bidding Procedures Order. The Back-Up Purchaser and its professionals have complied in all material respects with the Bidding Procedures Order, the Bidding Procedures, and the Assumption and Assignment Procedures, and all other applicable orders of this Court in negotiating and entering into the Back-Up Purchase Agreement. The Sale Transaction and Back-Up Purchase Agreement likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

N.      **Business Judgment**. The Successful Purchase Agreement, including the form and total consideration to be realized by the Debtors under the Successful Purchase Agreement: (a) constitutes the highest or otherwise best offer received by the Debtors for the Transferred Assets; (b) is fair and reasonable; and (c) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

O.      The Debtors' determination that the consideration provided by the Successful Purchaser under the Successful Purchase Agreement constitutes the highest or otherwise best offer for the Transferred Assets is reasonable and constitutes a valid and sound exercise of the Debtors' business judgment.

P.      The Back-Up Purchase Agreement, including the form and total consideration to be realized by the Debtors under the Back-Up Purchase Agreement: (a) constitutes the next-highest or next-otherwise best offer received by the Debtors for the Transferred Assets;



(b) is fair and reasonable; and (c) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

Q.      The Debtors' determination that the consideration provided by the Back-Up Purchaser under the Back-Up Purchase Agreement constitutes the next-highest or next-otherwise best offer for the Transferred Assets is reasonable and constitutes a valid and sound exercise of the Debtors' business judgment.

R.      Consistent with their fiduciary duties, the Debtors have demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale Transaction and the performance of their obligations under the Purchase Agreements, including, but not limited to, the fact that: (a) the Sale Transaction is a result of due deliberation by the Debtors and constitutes a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (b) the total cash and non-cash consideration provided by the Successful Purchaser or the Back-Up Purchaser for the Transferred Assets as reflected in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Transferred Assets; and (c) unless the Sale Transaction is concluded expeditiously as provided for in the Motion and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, creditor recoveries will be diminished.

S.      **<u>Adequate Marketing; Highest or Best Offer</u>**. As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing, as applicable, and the representations of counsel made on the record at the Sale Hearing, as applicable: (a) the Debtors and their professionals adequately marketed the Transferred Assets and conducted the sale process in compliance with the Bidding Procedures Order in good faith and in a fair and open

10



manner; (b) the sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any interested party to conduct due diligence and make an offer to purchase the Transferred Assets and submit higher or better offers for the Transferred Assets than the Successful Purchaser's Successful Bid or the Back-Up Purchaser's Back-Up Bid; (c) the consideration provided by the Successful Purchaser in the Successful Purchase Agreement constitutes the highest or otherwise best offer for the Transferred Assets; (d) the consideration provided by the Back-Up Purchaser in the Back-Up Purchase Agreement constitutes the next-highest or next-otherwise best offer for the Transferred Assets; (e) the consideration provided by the Successful Purchaser and the Back-Up Purchaser is fair and reasonable consideration for the Transferred Assets and constitutes reasonably equivalent value under the Bankruptcy Code, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, possession, or the District of Columbia; (f) the Sale Transaction will provide a greater recovery to the Debtors' creditors than would be provided by any other presently available alternative transaction with respect to the Transferred Assets; (g) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Transferred Assets for greater economic value to the Debtors or their estates than the Successful Purchaser; and (h) the Debtors determined that the Successful Purchase Agreement constitutes the highest or otherwise best offer for the Transferred Assets and that the Back-Up Purchase Agreement constitutes the next-highest or next-otherwise best offer for the Transferred Assets, maximizes value for the Debtors' estates, and constitutes a valid and sound exercise of the Debtors' business judgment. There is no legal or equitable reason to delay closing of the Sale Transaction (the "Closing") contemplated by the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable.

11



T.      **Corporate Authority**. Subject to entry of this Order, the Debtors: (a) have full corporate power and authority to execute and deliver the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and all other documents contemplated thereby, and the Sale Transaction and the sale of the Transferred Assets have been duly and validly authorized by all necessary corporate action of the Debtors; (b) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts; (c) have taken all corporate action necessary to authorize and approve the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts; and (d) need no consents or approvals, including any consents or approvals from any non-Debtor entities, other than those expressly set forth in this Order and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts.

U.      **Arm's-Length Sale**. The sale process engaged in by the Debtors, the Successful Purchaser, and the Back-Up Purchaser, including, without limitation, the Auction, was conducted in accordance with the Bidding Procedures and the Bidding Procedures Order. The Purchase Agreements were negotiated, proposed, and entered into by the Sellers and the Successful Purchaser and/or the Back-Up Purchaser in good faith, without collusion of any kind, and from arm's-length bargaining positions, and the Purchase Agreements are substantively and procedurally fair to all parties in interest. The Debtors, the Successful Purchaser, the Back-Up

32760152.1
32863699.1

Purchaser, and their respective advisors have complied, in good faith, in all material respects with the Bidding Procedures Order and the Bidding Procedures. The Debtors and their management, board of directors, employees, agents, advisors, and representatives, and the Successful Purchaser and the Back-Up Purchaser and their respective employees, agents, advisors and representatives, actively participated in the bidding process and in the Auction, and each acted in good faith and without collusion or fraud of any kind. The Successful Purchaser and the Back-Up Purchaser subjected their bid to competitive bidding in accordance with the Bidding Procedures and were designated the Successful Bidder or Back-Up Bidder, as applicable, for the Transferred Assets in accordance with the Bidding Procedures and the Bidding Procedures Order. All payments to be made by the Successful Purchaser and other agreements or arrangements entered into by the Successful Purchaser and the Back-Up Purchaser and other agreements or arrangements entered into by the Back-Up Purchaser in connection with the Sale Transaction have been disclosed. The form and total amount of consideration to be realized by the Debtors under the Successful Purchase Agreement or the Back-Up Purchase Agreement constitute fair value, fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Transferred Assets. Neither the Debtors, the Successful Purchaser, nor the Back-Up Purchaser has engaged in any conduct that would cause or permit the Successful Purchase Agreement, the Back-Up Purchase Agreement, or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtors, the Successful Purchaser, nor the Back-Up Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction.



V.    **Good Faith**. Each of the Successful Purchaser and the Back-Up Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the rights, privileges, immunities, and protections afforded thereby, including in the event this Order or any portion thereof is reversed or modified on appeal, and each of the Successful Purchaser and Back-Up Purchaser has proceeded in good faith in all respects in connection with the Sale Transaction specifically and these Chapter 11 Cases generally. Neither the Debtors, the Successful Purchaser, nor the Back-Up Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code. The Debtors were free to deal with any other party interested in buying or selling some or all of the Transferred Assets on behalf of the Debtors' estates. The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale Transaction and the Successful Purchaser would not consummate the Sale Transaction without such protections.

W.    Neither the Successful Purchaser, the Back-Up Purchaser, nor any of their respective affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Debtors, as that term is defined under section 101(31) of the Bankruptcy Code. No common identity of directors, managers, controlling shareholders, or members exists between the Debtors and the Successful Purchaser or the Debtors and the Back-Up Purchaser. All payments to be made by the Successful Purchaser, the Back-Up Purchase Agreement, and all agreements or arrangements entered into by the Successful Purchaser or the Back-Up Purchaser, as applicable, in connection with the Sale Transaction have been fully disclosed, and the negotiation and execution of the Successful Purchase Agreement, the Back-Up Purchase Agreement, and the other Transaction Documents were at arm's-length and in good faith.

14



X.      **No Fraudulent Transfer**. The consideration provided by the Successful Purchaser or the Back-Up Purchaser for the Transferred Assets pursuant to the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable: (a) is fair and reasonable; (b) is the highest and best offer or next-highest and next-best offer, as applicable, for the Transferred Assets; (c) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other available alternative; and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession, and the District of Columbia.

Y.      Neither the Successful Purchase Agreement nor the Back-Up Purchase Agreement was entered into, and neither the Sellers, the Successful Purchaser, nor the Back-Up Purchaser has entered into the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, or proposes to consummate the Sale Transaction, for the purpose of (a) escaping liability for any of the Debtors' debts, (b) hindering, delaying or defrauding the Debtors' present or future creditors, or (c) for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

Z.      **Free & Clear**. The transfer of the Transferred Assets to the Successful Purchaser or the Back-Up Purchaser will be a legal, valid, and effective transfer of the Transferred Assets, and will vest the Successful Purchaser or the Back-Up Purchaser with all rights, titles, and interests of the Debtors to the Transferred Assets free and clear of all Encumbrances and Liabilities, except the Permitted Encumbrances, including:

> a.  all liens, whether consensual or statutory, replacement liens, adequate protection liens, or other liens granted under sections 361, 363, or 364 of



the Bankruptcy Code, mortgages, deeds of trust, hypothecations, pledges, security interests, charges, options and transfer restrictions, including rights of first refusal or first offer, defect or objection liens, easements, encroachments, or servitudes, in each case, that constitutes an "interest" for purposes of section 363(f) of the Bankruptcy Code (collectively, the "Liens"),

b.  any and all "claims," as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including

  i.   any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (A) ERISA (as defined below), (B) the Fair Labor Standards Act, (C) Title VII of the Civil Rights Act of 1964, (D) the Federal Rehabilitation Act of 1973, (E) the National Labor Relations Act, (F) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (G) the Americans with Disabilities Act of 1990, (H) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law, (I) state discrimination laws, (J) state unemployment compensation laws or any other similar state laws, (K) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (L) the WARN Act (29 U.S.C. §§ 2101 et seq.),

  ii.  any rights under any pension or multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability,

  iii. any and all claims or causes of action based upon or relating to any putative successor or transferee liability,

  iv.  any and all claims or causes of action based upon or relating to any bulk sales or similar law,

  v.   any and all claims or causes of action based upon or relating to any tax statutes or ordinances, including the Internal Revenue

16


32760152.1
32863699.1

Code of 1986, as amended (the "IRC"), and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing, including any *ad valorem* taxes assessed by any applicable taxing authority, and

vi.   any other rights or causes of action (whether in law or in equity), warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above- captioned case, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Claims"); and

c.   any and all claims, causes of actions, payments, charges, judgments, assessments, losses, monetary damages, penalties, fines, fees, interest obligations, deficiencies, debts, obligations, costs and expenses and other liabilities (whether absolute, accrued, contingent, fixed or otherwise, or whether known or unknown, or due or to become due or otherwise), including any amounts paid in settlement, interest, court costs, costs of investigators, attorneys' fees, legal or other expenses incurred in connection therewith (collectively, the "Interests").

AA.   The Debtors, to the extent permitted by applicable law, may transfer the Transferred Assets free and clear of all Encumbrances and Liabilities, including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.

BB.   Those (a) holders of Claims and (b) non-Debtor parties to the Transferred Contracts, in each case who did not object or who withdrew their objections to the Motion, are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  Those (a) holders of Claims, and (b) non-Debtor parties to the Transferred


32760152.1
32863699.1

Contracts, in each case who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

CC.    The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

DD.    **Successful Purchaser's Reliance on Free & Clear Sale**. The Successful Purchaser and the Back-Up Purchaser would not have entered into the Successful Purchase Agreement and the Back-Up Purchase Agreement, respectively, and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, (a) if the transfer of the Transferred Assets were not free and clear of all Encumbrances and Liabilities, or (b) if the Successful Purchaser or the Back-Up Purchaser would, or in the future could, be liable for or subject to any such Encumbrances or Liabilities.

EE.    The Successful Purchaser will not consummate the transactions contemplated by the Successful Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, unless this Court expressly orders that none of the Successful Purchaser or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, or otherwise, directly or indirectly, any Encumbrances or Liabilities.

FF.    The Back-Up Purchaser will not consummate the transactions contemplated by the Back-Up Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, unless this Court expressly orders that none of the Back-Up Purchaser, its respective affiliates, its respective present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever with

18



respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, or otherwise, directly or indirectly, any Encumbrances or Liabilities.

GG.    Not transferring the Transferred Assets free and clear of all Encumbrances and Liabilities would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Transferred Assets other than pursuant to a transfer that is free and clear of all Encumbrances and Liabilities would be of substantially less benefit to the Debtors' estates.

HH.    **No Successor or Other Derivative Liability**. ~~By virtue of the Sale Transaction, the~~The Successful Purchaser is not a mere continuation of the Debtors or their estates, there is no continuity or common identity between the Successful Purchaser or the Debtors, and there is no continuity of enterprise between the Successful Purchaser or the Debtors.  The Successful Purchaser shall not be deemed to be holding themselves out as a continuation of the Debtors based on the Sale Transaction, the Successful Purchase Agreement, or this Order.  The Successful Purchaser is not a successor to the Debtors or their estates by reason of any theory of law or equity and none of the transactions contemplated by the Successful Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts amounts to a consolidation, merger, or de facto merger of the Successful Purchaser or any of its affiliates with or into the Debtors as a result of any action taken in connection with the Sale Transaction.

II.    The Back-Up Purchaser is not a mere continuation of the Debtors or their estates, there is no continuity or common identity between the Back-Up Purchaser, the Debtors, or any of their respective affiliates, and there is no continuity of enterprise between the Back-Up Purchaser, the Debtors, or any of their respective affiliates.  The Back-Up Purchaser shall not be deemed to be holding themselves out as a continuation of the Debtors based on the Sale


32760152.1
32863699.1

Transaction, the Back-Up Purchase Agreement, or this Order. The Back-Up Purchaser is not a successor to the Debtors or their estates and none of the transactions contemplated by the Back-Up Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts amounts to a consolidation, merger, or de facto merger of the Back-Up Purchaser or any of its affiliates with or into the Debtors as a result of any action taken in connection with the Sale Transaction.

JJ.     To the greatest extent permitted by applicable law, without limiting the generality of the foregoing, and other than as may be set forth in the Purchase Agreements, none of the Successful Purchaser, the Back-Up Purchaser, their respective affiliates, the present or contemplated members or shareholders of the Successful Purchaser, the Back-Up Purchaser, and their respective affiliates, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities, that the Debtors may incur in connection with consummation of the transactions contemplated by the Purchase Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, or that the Debtors have otherwise incurred prior to the consummation of the transactions contemplated by the Purchase Agreements  as a result of any action take in connection with the Sale Transaction.

KK.     **Validity of Transfer**. The consummation of the transactions contemplated by the Purchase Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) thereof, and all of the applicable requirements of such



sections have been complied with in respect of the transactions contemplated under the Purchase Agreements. Upon entry of this Order, subject to the terms of the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, the applicable Debtors are authorized to transfer all of their right, title, and interest in and to the Transferred Assets free and clear of, and the Successful Purchaser or the Back-Up Purchaser, as applicable, shall not be responsible for, any Encumbrances or Liabilities (other than the Permitted Encumbrances), with such Encumbrances or Liabilities attaching solely to the proceeds of the sale of the Transferred Assets with the same nature, validity, priority, extent, perfection, and force and effect, and in the same order of priority, that such Encumbrances or Liabilities encumbered the Transferred Assets immediately prior to the Closing.

LL.    The Transferred Assets constitute property of the applicable Debtors' estates and good title to the Transferred Assets is vested in the applicable Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The applicable Debtors are the sole and lawful owners of the Transferred Assets.

MM.    The Purchase Agreements have been duly and validly executed and delivered by the Debtors and, subject to the terms of the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with its terms. The Purchase Agreements, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 11 trustee appointed in these Chapter 11 Cases or any chapter 7 trustee appointed upon conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

21



NN.    **Transferred Contracts**. The assumption and assignment of the Transferred Contracts pursuant to the Cure Notice, the terms of this Order, and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, is integral to the transactions contemplated by the Purchase Agreements. Such assumption and assignment is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

OO.    Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized to assume all Transferred Contracts and <u>sell and</u> assign such Transferred Contracts to the Successful Purchaser or the Back-Up Purchaser, as applicable. To the extent a Cure Amount is owed to the counterparty of any Transferred Contract, the applicable Cure Amount will be paid on or before the Closing or as promptly as reasonably practicable in accordance with the Successful Purchase Agreement or the Back-Up Purchase Agreement, or as otherwise expressly agreed to between the Debtors and the Successful Purchaser or the Debtors and the Back-Up Purchaser, as applicable, and such counterparty. The Successful Purchaser and the Back-Up Purchaser have, in accordance with the Assumption and Assignment Procedures, provided adequate assurance of future performance to any non-Debtor contract counterparty to the extent required by section 365 of the Bankruptcy Code.[8]

PP.    **Transfer of Transferred Contracts**. The Transferred Contracts being assigned to the Successful Purchaser or the Back-Up Purchaser, as applicable, are an integral part of the Sale Transaction and, accordingly, their assumption and assignment is reasonable and an enhancement to the value of the Debtors' estates. To the extent any Transferred Contract is not

---

[8] ~~Pursuant to the Cure Notice dated January [●], 2025, counterparties to such executory contracts and/or unexpired leases shall have until [●], 2025, to file a Cure Objection (as defined in the Cure Notice). In the absence of such a Cure Objection, this Order shall be binding on such counterparties.~~



an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Successful Purchaser in accordance with the terms of the Successful Purchase Agreement or to the Back-Up Purchaser in accordance with the terms of the Back-Up Purchase Agreement, as applicable, and, other than with respect to Permitted Encumbrances, the Successful Purchaser or the Back-Up Purchaser, as applicable, shall have no liability or obligation for any: (a) defaults or breaches under such contract that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the date of the Closing (the "Closing Date"); and (b) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, to the extent permitted by applicable law, any right of recoupment) with respect to such Transferred Contract, that relate to any acts or omissions that arose or occurred prior to the Closing Date.

QQ.    **Binding & Valid Transfer**. The transfer of the Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser, as applicable, will be a legal, valid, effective, and enforceable sale and transfer of the Transferred Assets and will vest the Successful Purchaser or the Back-Up Purchaser, as applicable, with all right, title, and interest of the Debtors to the Transferred Assets free and clear of all Encumbrances and Liabilities, other than the Permitted Encumbrances, to the extent expressly set forth in the Purchase Agreements and in this Order, as applicable.

RR.    **No *Sub Rosa* Plan**. The Bidding Process, the Sale Transaction, the Purchase Agreements, the Transaction Documents, and the other transactions contemplated thereby do not constitute a *sub rosa* chapter 11 plan. The Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating chapter 11 plan for the Debtors.

23



SS.    **Transferred Assets Assignable**. To the maximum extent possible under the Bankruptcy Code, each and every provision of the documents governing the Transferred Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Transferred Assets, if any, has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.

TT.    **Compelling Circumstances for an Immediate Sale**. To maximize the value of the Transferred Assets, it is essential that the transactions contemplated by the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, occur within the time constraints set forth therein. Time is of the essence in consummating the transactions contemplated by the Purchase Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

UU.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtors' estates will suffer irreparable harm if the relief provided herein is not granted on an expedited basis.

VV.    The legal and factual bases set forth in the Motion, the [•] Declaration Declarations, and any additional declarations filed in support thereof and presented at



the Sale Hearing establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.      **Sale Is Approved**. The Motion is GRANTED and the Sale Transaction is APPROVED, as set forth herein and on the record at the Sale Hearing, which is incorporated herein as if fully set forth in this Order.

2.      **Objections Overruled**. Except as otherwise provided herein, all objections to, or reservation of rights regarding, or other responses to the Motion or the relief requested therein, including, without limitation, the Purchase Agreements, the Transaction Documents, the Sale Transaction, the entry of this Order, or the relief granted herein, any objections to Cure Amounts or relating to the cure of any defaults under any of the Transferred Contracts or to the assumption and assignment of any of the Transferred Contracts to the Successful Purchaser or Back-Up Purchaser by the Debtors, that have not been withdrawn, waived, settled, or that have not otherwise been resolved pursuant to the terms hereof, are hereby denied and overruled on the merits with prejudice. All persons and entities that failed to timely object, or withdrew their objections, to the Motion or the entry of this Order are deemed to consent to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code. No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bidding Procedures Order, and the Bidding Procedures Order is a final order of this Court, has not been vacated, withdrawn, rescinded, or amended, and remains in full force and effect.[9]

---

[9] Pursuant to the Cure Notice dated January [●], 2025, counterparties to such executory contracts and/or unexpired leases shall have until [●], 2025, to file a Cure Objection (as defined in the Cure Notice). In the absence of such a Cure Objection, this Order shall be binding on such counterparties.



3.      **Notice**. Notice of the Motion, the hearing on the Bidding Procedures, the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, the Purchase Agreements, the Sale Transaction, and the Sale Hearing, all deadlines related thereto, and the relief granted in this Order, was fair, sufficient, proper, adequate, appropriate, and equitable under the circumstances and complied in all respects with sections 102(1), 363, and 365 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, and the procedural due process rules of the United States Constitution, and as such no ~~further~~ order or ~~further~~ notice is or shall be required.

4.      **Approval & Authorization**. The sale of the Transferred Assets to the Successful Purchaser on the terms and conditions contained in the Successful Purchase Agreement and the Transaction Documents, or to the Back-Up Purchaser on the terms and conditions contained in the Back-Up Purchase Agreement and the Transaction Documents, as applicable, including, without limitation, the Closing as required by the Successful Purchase Agreement or the Back-Up Purchaser Agreement, is hereby approved in all respects pursuant to sections 105, 363, and 365 of the Bankruptcy Code. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors ~~are~~and their respective officers, employees, and agents are authorized to perform all obligations under, comply with the terms of, and make all payments required by the Transaction Documents and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and consummate the Sale Transaction and the related transactions pursuant to, and in accordance with, the terms and conditions of this Order and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, without further order of this Court. The Debtors, the Successful Purchaser, the Back-Up Purchaser, and each of their


32760152.1
32863699.1

respective officers, employees, and agents are hereby authorized to: (a) execute the Transaction Documents and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and any prior execution of such agreements, documents, and instruments, including the Transaction Documents, is hereby ratified; (b) perform all obligations under the Transaction Documents and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, to consummate each of the foregoing, including, without limitation, deeds, assignments, and other instruments of transfer, and to consummate the Sale Transaction, and any prior performance of such obligations or any prior consummation of such Sale Transaction is hereby ratified; (c) assume, sell, and assign the Transferred Contracts to the Successful Purchaser or the Back-Up Purchaser, as applicable; and (d) take all other and further actions as may be reasonably necessary or appropriate to consummate and implement the Sale Transaction and to perform all obligations under the Transaction Documents and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and the consummation thereof, without any further corporate action or order of this Court. Neither the Successful Purchaser nor the Back-Up Purchaser shall be obligated to proceed with the Closing unless and until all conditions precedent to its obligation to do so thereunder have been satisfied or waived.

5.    **No *Sub Rosa* Plan**. The sale of the Transferred Assets, including, without limitation, the assignment of the Transferred Contracts, pursuant to the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, outside a chapter 11 plan, neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of the Debtors' subsequent chapter 11 plan. Neither the Successful Purchase Agreement, the Back-Up Purchase Agreement, nor the Sale Transaction constitutes a sub rosa chapter 11 plan.


32760152.1
32863699.1

6.      **Back-Up Purchaser**. Notwithstanding anything to the contrary herein, including, without limitation, the approval of the Back-Up Bid according to the terms hereof, the Debtors shall not execute or enter into the Back-Up Purchase Agreement or any Transaction Documents with respect to the Back-Up Bid, and the Debtors shall not enter into the Sale Transaction with the Back-Up Purchaser in accordance with the terms of the Back-Up Bid, unless and until the Sale Transaction with respect to the Successful Purchaser and the Successful Bid is terminated or fails to close by the outside date provided in the Successful Purchase Agreement (except as may be modified pursuant to and consistent with the terms of the Successful Purchase Agreement) or by an order by the Court.

7.      6. **Insider**. Neither the Successful Purchaser nor the Back-Up Purchaser is an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

8.      7. **Valid Transfer**. Effective upon the Closing, the Debtors shall transfer to the Successful Purchaser or the Back-Up Purchaser, as applicable, the Transferred Assets, and the transfer of the Transferred Assets to the Successful Purchaser pursuant to the Successful Purchase Agreement or to the Back-Up Purchaser pursuant to the Back-Up Purchase Agreement constitutes a legal, valid, effective, and enforceable sale and transfer of the Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser and shall vest the Successful Purchaser or Back-Up Purchaser, as applicable, with all legal, equitable, and beneficial right, title, and interest in and to the Transferred Assets, free and clear of all Encumbrances and Liabilities of any kind or nature whatsoever (other than Permitted Encumbrances) (with such Encumbrances and Liabilities attaching solely to the proceeds of the sale of the Transferred Assets with the same nature, validity, priority, extent, perfection, and force and effect, and in the same order of priority, that such Encumbrances and Liabilities encumbered the Transferred Assets immediately

28



prior to the Closing). The Purchase Agreements and the Transaction Documents are valid and binding contracts between the Sellers, the Successful Purchaser, and the Back-Up Purchaser, as applicable, and shall be enforceable pursuant to their terms. The Purchase Agreements, the Transaction Documents, the Sale Transaction itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, the Debtors' estates, their creditors, all counterparties to the Transferred Contracts, all parties in interest, any chapter 11 trustee appointed in these Chapter 11 Cases or any chapter 7 trustee appointed upon a conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, and shall not be subject to rejection or avoidance by the foregoing parties or any other person or entity. The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f), and all of the applicable requirements of such sections have been complied with in all respects in connection with the Sale Transaction.

9.    8. **Debtors' Performance Authorized**. The Debtors are hereby authorized to enter into and perform their obligations under the Purchase Agreements , and to take such other actions as may be necessary or desirable to effectuate the terms of the Purchase Agreements, including providing transition services, if needed, and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Purchase Agreements, the Sale Transaction, or this Order including, without limitation, deeds, assignments, stock powers, transfers of membership interests, and any other instruments of transfer, without further order of the Court. The Debtors are hereby further authorized to take all other actions as may reasonably be requested by the Successful Purchaser or otherwise for the



purpose of assigning, transferring, granting, conveying, and conferring to the Successful Purchaser, or reducing to the Successful Purchaser's possession any or all of the Transferred Assets and the Transferred Contracts, as may be necessary or appropriate for the Debtors to perform their obligations under the Purchase Agreements and consummate the Sale Transaction including, without limitation, providing transition services, without further order of the Court.

10.    9. The Debtors are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents with respect to the Transferred Assets that are necessary or appropriate to effectuate the Purchase Agreements, the Sale Transaction, or this Order including, as applicable, amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.

11.    10. **Authorization to Sell and Assign**. Notwithstanding any provision of any contract governing the Transferred Assets, including any Transferred Contract to be assumed, sold, and assigned to the Successful Purchaser or to the Back-Up Purchaser, as applicable, as of the Closing pursuant to sections 363 and 365(f) of the Bankruptcy Code, or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Transferred Assets, including any Transferred Contract, the Debtors are hereby authorized and directed to (a) assign the Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser, as applicable, and (b) assume, sell, and assign the Transferred Contracts to the Successful Purchaser or to the Back-Up Purchaser, as applicable, as of the Closing, in each case, which assignments shall take place on and be effective as of the Closing or such other date after the Closing Date, in

30



each case, as provided in the Successful Purchase Agreements or as otherwise provided by a separate order of this Court, as applicable.

a. There shall be no accelerations, assignment fees, increases, or any other fees charged to the Successful Purchaser, the Back-Up Purchaser, or the Debtors as a result of the assignment of the Transferred Assets or the assumption and assignment of the Transferred Contracts.

b. The Debtors have met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Transferred Contracts that are to be assumed, sold, and assigned to the Successful Purchaser or to the Back-Up Purchaser as of the Closing.

c. The Debtors' assumption and assignment of the Transferred Contracts is subject to the consummation of the Sale Transaction with the Successful Purchaser or with the Back-Up Purchaser. Any objection of any counterparty to the assumption and assignment of any Transferred Contracts, any Cure Amount, or seeking further adequate assurance of future performance than that provided in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, to the extent not otherwise resolved by agreement or by separate order of this Court, is hereby overruled. Upon payment of the Cure Amount by the Successful Purchaser or by the Back-Up Purchaser, as applicable, the Debtors shall be released by the Successful Purchaser or the Back-Up Purchaser, as applicable, and the applicable counterparty from any and all claims and causes of action of any nature whatsoever based on, arising from or relating to, such Transferred Contracts.

d. Unless a counterparty to any Transferred Contract filed a timely Cure Objection (as defined in the Bidding Procedures Order), the Cure Amounts set forth on the Cure Notice shall constitute findings of this Court and shall be final and binding on the counterparties to the Transferred Contracts and their successors and designees upon the Closing and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assignment, irrespective of the terms and conditions of such Transferred Contracts. Each counterparty to a Transferred Contract (other than a counterparty who filed a timely Cure Objection) shall be forever barred, estopped, and permanently enjoined from asserting against the Successful Purchaser or the Back-Up Purchaser, as applicable, or their property (including, without limitation, the Transferred Assets), any default arising prior to or existing as of the Closing, or any counterclaim, defense, recoupment, setoff, or any other interest asserted or assertable against the Debtors (except as otherwise provided herein). To the extent a counterparty to any of the Transferred Contracts received notice of the Debtors' proposed Cure Amount and fails

31



to file a Cure Objection by the applicable deadline, such party shall be deemed to have (i) consented to the assumption and assignment of the applicable Transferred Contract and the payment of the Cure Amount provided in the Cure Notice, and (ii) waived any right to assert or collect any other cure amount or enforce any default that may arise or have arisen prior to or as of the Closing.

12.    11. **Transferred Contracts**. As of the Closing, subject to the provisions of this Order and in accordance with the Purchase Agreements, the Successful Purchaser or the Back-Up Purchaser, as applicable, shall succeed to the entirety of the applicable Debtors' rights and obligations in the Transferred Contracts to be assumed, sold, and assigned to the Successful Purchaser or the Back-Up Purchaser, and shall have all rights thereunder subject to the terms of the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable.

   a.    Upon Closing and payment of the Cure Amounts on Closing or as soon as reasonably practicable thereafter, (i) all defaults (monetary and non-monetary) under the Transferred Contracts shall be deemed cured and satisfied in full through the payment of the Cure Amounts, (ii) no other amounts will be owed by the Debtors, their estates, the Successful Purchaser, and/or the Back-Up Purchaser with respect to the Transferred Contracts, and (iii) any and all persons or entities shall be forever barred and estopped from asserting a Claim against the Debtors, their estates, the Successful Purchaser or the Back-Up Purchaser, as applicable, or the Transferred Assets that any additional amounts are due or defaults exist under the Transferred Contracts. The Successful Purchaser's or the Back-Up Purchaser's promise pursuant to the terms of the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, to pay the Cure Amounts and the Successful Purchaser's or the Back-Up Purchaser's promise to perform the Debtors' obligations under the Transferred Contracts for the period on or after the Closing Date shall constitute adequate assurance of the Successful Purchaser's or the Back-Up Purchaser's future performance under the Transferred Contracts being assigned to it as of the Closing within the meaning of sections 365(b)(l)(C) and 365 (f)(2)(A)–(B) of the Bankruptcy Code.

   b.    Upon assumption of the Transferred Contracts to be assumed by the applicable Debtors and assigned to the Successful Purchaser or to the Back-Up Purchaser, as applicable, as of the Closing, such Transferred Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to the Successful Purchaser or to the

32



Back-Up Purchaser, as applicable, notwithstanding any provision in such Transferred Contract or other restrictions prohibiting assignment or transfer. To the extent any Transferred Contract is assumed, sold, and assigned to the Successful Purchaser or to the Back-Up Purchaser under this Order, such assumption and assignment will not take effect until the Closing. Furthermore, other than the Transferred Contracts, no other contract shall be deemed assumed by the Debtors and assigned to the Successful Purchaser or to the Back-Up Purchaser pursuant to sections 363 and 365 of the Bankruptcy Code. The failure of the Debtors or the Successful Purchaser or Back-Up Purchaser, as applicable, to enforce at any time one or more terms or conditions of any Transferred Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Successful Purchaser's or the Back-Up Purchaser's, as applicable, rights to enforce every term and condition of such Transferred Contract.

13.    ~~12.~~ Notwithstanding the foregoing, the Debtors may, at the Successful Purchaser's or Back-Up Purchaser's, as applicable, direction, amend the list of Transferred Contracts to add or remove any Potentially Assigned Agreement to or from such list prior to Closing of the Sale Transaction in accordance with the terms of the Successful Purchase Agreement or the Back-Up Purchase Agreement and the Assumption and Assignment Procedures.

14.    ~~13.~~ **Free & Clear**. Upon the Closing, pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Transferred Assets, including the Transferred Contracts, shall be transferred to the Successful Purchaser or to the Back-Up Purchaser in accordance with the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and such transfer shall be free and clear of all Encumbrances and Liabilities (other than Permitted Encumbrances), in each case, to the maximum extent permitted by section 363(f) of the Bankruptcy Code, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or


32760152.1
32863699.1

unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing. Any and all such Encumbrances and Liabilities (other than Permitted Encumbrances) shall attach solely to the proceeds of the Sale Transaction ~~attributable to the Transferred Assets or their proceeds against or in which the holder of an Encumbrance held such Encumbrance,~~ with the same validity, force, and effect, and in the same order of priority, that such Encumbrances or Liabilities had against such Transferred Assets immediately prior to the Closing.

15.   ~~14.~~ Except as expressly provided for in the Purchase Agreements  or this Order, as applicable, all holders of Encumbrances and Liabilities fall within one or more of the subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances or Liabilities attach solely to the proceeds of the Sale Transaction ~~attributable to the Transferred Assets or their proceeds against or in which the holder of an Encumbrance or Liability held a Lien, Claim, or Interest,~~ with the same validity, force, and effect, and in the same order of priority that such Encumbrances or Liabilities had against the Transferred Assets immediately prior to the Closing, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto; *provided, however*, that setoff rights will be extinguished to the extent there is no longer mutuality of the parties after consummation of the Sale Transaction.

16.   ~~15.~~ Those holders of Encumbrances or Liabilities who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances or Liabilities who did object that have an interest in the Transferred Assets fall within one or

34



more of sections 363(f)(1), 363(f)(3), 363(f)(4), or 363(f)(5) of the Bankruptcy Code and are therefore adequately protected by having their Encumbrances or Liabilities in the Transferred Assets, if any, attach solely to the proceeds of the Sale Transaction ~~attributable to the Transferred Assets against or in which the holder of an Encumbrance held an Encumbrance or that such Liability existed,~~ with the same validity, force, and effect, and in the same order of priority, that such Encumbrances or Liabilities had immediately prior to the Closing, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

17.    ~~16.~~ **Release of Interests**. Effective upon the Closing, this Order: (a) is and shall be effective as a determination that all Encumbrances and Liabilities of any kind or nature whatsoever (other than Permitted Encumbrances) existing as to the Transferred Assets prior to the Closing have been unconditionally released, discharged, and terminated (with such Encumbrances or Liabilities attaching solely to the proceeds of the Sale Transaction with the same ~~nature,~~ validity, ~~priority, extent, perfection, and force~~force, and effect, and in the same order of priority that such Encumbrances or Liabilities ~~encumbered the Transferred Assets~~had immediately prior to the Closing) and that the conveyances described herein have been effectuated; (b) is and shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Transferred Assets conveyed to the Successful Purchaser or to the Back-Up Purchaser, as applicable; and (c) is and

35

shall be effective as a determination that all recorded Encumbrances and Liabilities (other than Permitted Encumbrances) against the Transferred Assets shall be deemed stricken from such entities' records, official and otherwise.

18.    17. **Direction to Release Interests**. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing a Lien, Claim, Interest, or other Encumbrance in all or any portion of the Transferred Assets being sold pursuant to the Sale Transaction and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, shall not have delivered to the Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances and Liabilities (other than the Permitted Encumbrances), which such person or entity has with respect to all or any portion of the Transferred Assets being sold pursuant to the Sale Transaction and the Successful Purchase Agreement or the Back-Up Purchase Agreement, then (a) the Debtors areand the Successful Purchaser or the Back-Up Purchaser, as applicable, are each (except as otherwise provided herein) hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such person or entity with respect to all or any portion of the Transferred Assets being sold pursuant to the Sale Transaction and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, and (b) the Successful Purchaser or the Back-Up Purchaser, as applicable, is hereby authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Encumbrances and Liabilities (other than Permitted Encumbrances) of any kind or nature whatsoever in the Transferred Assets being sold pursuant to the Sale Transaction and the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable. Each and

32760152.1
32863699.1

every federal, state, and local governmental agency or department is hereby ~~directed~~<u>authorized</u> to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, including, without limitation, recordation of this Order.

<u>19.</u>    ~~18.~~ **Surrender of Transferred Assets**. All persons or entities that are currently, or as of the Closing may be, in possession of some or all of the Transferred Assets are hereby directed to surrender possession of such Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser, as applicable, at the Closing.

<u>20.</u>    ~~19.~~ **No Interference**. Following the Closing, any holder of any Lien, Claim, Interest, or other Encumbrance in the Transferred Assets will forever be prohibited and barred from taking any action that would interfere with the Successful Purchaser's or the Back-Up Purchaser's title to, or use and enjoyment of, the Transferred Assets being sold pursuant to the Sale Transaction and the Successful Purchase Agreement or the Back-Up Purchase Agreement, respectively, based on, or related to, any such Lien, Claim, Interest, or other Encumbrance, or based on any actions the Debtors may take in these Chapter 11 Cases.

<u>21.</u>    ~~20.~~ **Post-Closing Actions & Transactions**. The Debtors and the Successful Purchaser or the Debtors and the Back-Up Purchaser, as applicable, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the applicable Debtors, the Successful Purchaser, or the Back-Up Purchaser, as applicable, deem necessary or appropriate to implement and effectuate the terms of the Purchase Agreements, the Transaction Documents, the Sale Transaction contemplated therein, and this Order, as applicable.



22.    21. **Sale Is Self-Executing**. The Sale Transaction and the provisions of this Order authorizing and approving the transfer of the Transferred Assets free and clear of all Encumbrances and Liabilities are self-executing, and neither the Debtors, the Successful Purchaser, nor the Back-Up Purchaser, as applicable, shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

23.    22. **Governmental Authorization to Effectuate Sale**. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby directed and authorized to accept any and all documents and instruments in connection with or necessary and appropriate to consummate the Sale Transaction contemplated under the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable. Except as otherwise provided in this Order, to the To the greatest extent permitted under applicable law upon the Closing, the Successful Purchaser or the Back-Up Purchaser, as applicable, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Transferred Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Successful Purchaser or to the Back-Up Purchaser, as applicable, as of the Closing. All existing licenses or, permits, registrations, governmental authorizations, or approvals applicable to the business or the Transferred Assets shall remain active, in place, and, as applicable, shall be renewed for the Successful Purchaser's or the Back-Up Purchaser's, as applicable, benefit until either corresponding new licenses and, permits, registrations, governmental authorizations, and approvals are obtained or existing licenses and, permits, registrations, governmental authorizations, and approvals are transferred in accordance

32760152.1
32863699.1

with applicable administrative procedures. The Debtors are authorized, to the extent requested by the Successful Purchaser or the Back-Up Purchaser, as applicable, to assist the Successful Purchaser or the Back-Up Purchaser, as applicable, in applying for and securing all such issuances or renewals of licenses, permits, registrations, governmental authorizations, and approvals. To the maximum extent permitted by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Transferred Assets sold, transferred, or conveyed to the Successful Purchaser or to the Back-Up Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Successful Purchase Agreement or by the Back-Up Purchase Agreement, respectively.

24.    23. **Injunction**. All persons (including, but not limited to, the Debtors, creditors, all holders of Encumbrances or Liabilities, lenders, debt security holders, investors, current and former employees and shareholders, parties to executory contracts and unexpired leases, contract counterparties, customers, landlords, licensors, litigation claimants, pension plans, labor unions, administrative agencies, governmental units (including tax and regulatory authorities), secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and any other persons holding interests of any kind or nature whatsoever against or in the Debtors or the Transferred Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the operation of the Debtors' businesses prior to the Closing, the Transferred Assets, or

32760152.1
32863699.1

the transfer of the Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser, as applicable (including, without limitation, any rights or claims based on any successor, transferee, derivative, or vicarious liabilities), and the successors and assigns of each of the foregoing shall be, and hereby are, forever barred, estopped, and permanently enjoined from: (a) taking any action that would adversely affect or interfere with, or that would be inconsistent with, the ability of the Debtors to sell and transfer the Transferred Assets to the Successful Purchaser in accordance with the terms of the Successful Purchase Agreement or to the Back-Up Purchaser in accordance with the terms of the Back-Up Purchase Agreement, the Transaction Documents, or this Order; and (b) asserting, prosecuting, or otherwise pursuing any Encumbrances or Liabilities (other than Permitted Encumbrances) of any kind or nature whatsoever against the Successful Purchaser or the Back-Up Purchaser, as applicable, or any of their affiliates, officers, directors, members, partners, principals, or shareholders, any of their respective representatives, successors, designees, or assigns, or any of their respective property, successors and assigns, or the Transferred Assets, on any other grounds. Following the Closing, no holder of any Encumbrances or Liabilities shall interfere with, as applicable, the Successful Purchaser's or the Back-Up Purchaser's title to or use and enjoyment of the Debtors' former interests in the Transferred Assets, including, without limitation, taking any of the following actions with respect to or based on any interest relating to the Transferred Assets or the transfer of the Transferred Assets to the Successful Purchaser (other than the Permitted Encumbrances) or to the Back-Up Purchaser (other than the Permitted Encumbrances): (a) commencing or continuing in any manner any action or other proceeding against the Successful Purchaser or the Back-Up Purchaser, as applicable, or their successors or assigns, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or


32760152.1
32863699.1

order against the Successful Purchaser or the Back-Up Purchaser, as applicable, or their successor, or assigns, assets, or properties; (c) creating, perfecting, or enforcing any interest against the Successful Purchaser or the Back-Up Purchaser, as applicable, or their successors or assigns, assets (including the Transferred Assets), or properties; (d) asserting any Lien, Claim, Interest, or Encumbrance as a setoff, right of subrogation, or recoupment of any kind against any obligation due to the Successful Purchaser or the Back-Up Purchaser, as applicable, or their successors or assigns, assets, or properties; (e) commencing or continuing any action in any manner or place that does not comply or is inconsistent with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof; (f) interfering with, preventing, restricting, prohibiting, or otherwise enjoining the consummation of the Sale Transaction; or (g) enforcing any provision of any Transferred Contract that prohibits, restricts or conditions, or which purports to terminate or modify, or permits a party other than the Debtors to terminate or modify, any such Transferred Contract, or any right or obligation under such Transferred Contract, because of (i) the assumption and assignment of such Transferred Contract by the Debtors to the Successful Purchaser or the Back-Up Purchaser, as applicable, or (ii) the commencement of these Chapter 11 Cases or the insolvency or financial condition of the Debtors.

25. 24. For the avoidance of doubt, and without limiting the generality of the foregoing or the operability of any other relief obtained pursuant to this Order, any provision in a Transferred Contract (including, without limitation, any "change of control" provision), any other document, or any applicable law that prohibits, restricts, or otherwise impairs assignment of the Transferred Contracts or, as applicable, the Successful Purchaser's or the Back-Up Purchaser's ability to operate any business with respect to the Transferred Assets, including,


32760152.1
32863699.1

without limitation, based on the commencement of these Chapter 11 Cases or the insolvency or financial condition of the Debtors, is hereby void and of no force and effect with respect to the Sale Transaction, including, without limitation, any provision that: (a) terminates, modifies, or constitutes a breach of any right or obligation of the Successful Purchaser or the Back-Up Purchaser, as applicable, under such Transferred Contract; (b) cross-defaults to or from any other lease or executory contract that is not a Transferred Contract; (c) contains operating covenants or "go-dark" provisions that would purport to terminate or modify any Transferred Contract before assumption and assignment to the Successful Purchaser or to the Back-Up Purchaser, as applicable; or (d) requires a third party's consent prior to assignment of the Transferred Contract to the Successful Purchaser or to the Back-Up Purchaser, as applicable. No person shall assert, and the Transferred Assets and the Successful Purchaser or the Back-Up Purchaser, as applicable, shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, to the extent permitted by applicable law, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Successful Purchaser or the Back-Up Purchaser, as applicable, with respect to any Transferred Assets, with respect to any act or omission that occurred prior to the Closing, or with respect to any other agreement or any obligation of the Debtors that is not an Assumed Liability under the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable.

26.    ~~25.~~ **General Assignment**. Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Transferred Assets and/or a bill of sale or assignment transferring good and marketable and indefeasible title and interest in the Transferred Assets, including the Transferred

32760152.1
32863699.1

Contracts, to the Successful Purchaser or to the Back-Up Purchaser, as applicable, at Closing, pursuant to the terms of the Successful Purchase Agreement or of the Back-Up Purchase Agreement, respectively, free and clear of all Encumbrances and Liabilities (other than Permitted Encumbrances). Each and every federal, state, and local governmental agency or department is hereby authorized ~~and directed~~ to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction and to reflect the effectiveness of the Sale Transaction.

27.    ~~26.~~ **No Successor Liability**. None of the Successful Purchaser or the Back-Up Purchaser, as applicable, their affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, agents, predecessors, successors, or assigns shall have any liability for any Lien, Claim, Interest, or other Encumbrance that arose or occurred prior to the Closing, or otherwise may be asserted against the Debtors or is related to the Transferred Assets prior to the Closing. None of the Successful Purchaser or the Back-Up Purchaser, as applicable, any of their affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent), and any of their respective representatives, attorneys, advisors, agents, predecessors, successors, or assigns are or shall be deemed, as a result of the consummation of the Sale Transaction, to: (a) be legal successors to the Debtors or their estates by reason of any theory of law or equity; (b) have, de facto or otherwise, merged with or into the Debtors; (c) be a successor employer as defined in the IRC or by the U.S. National Labor Relations Board or under applicable law; or (d) be an alter ego or a mere continuation or substantial continuation or successor of the Debtors in any respect. Neither the Successful Purchaser, the Back-Up Purchaser, nor any of their affiliates, as

43


32760152.1
32863699.1

applicable, shall assume or in any way be responsible for any liability or obligation of any of the Debtors or their estates, other than the Permitted Encumbrances, to the extent provided in the Successful Purchase Agreement or in the Back-Up Purchaser Agreement, as applicable.

28.    ~~27.~~ **Limitations on Liability**. Without limiting the foregoing, and except as otherwise set forth in the Successful Purchase Agreement, the Successful Purchaser and its affiliates shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character, including under any theory of successor or transferee liability, de facto merger or continuity, tort, product liability, environmental, warranty, tax, antitrust, labor law, employment, ERISA, or other law, rule, or regulation, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or any obligations of the Debtors.

29.    ~~28.~~ Without limiting the foregoing, and except as otherwise set forth in the Back-Up Purchase Agreement, the Back-Up Purchaser and its affiliates shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character, including under any theory of successor or transferee liability, de facto merger or continuity, tort, product liability, environmental, warranty, tax, antitrust, labor law, employment, ERISA, or other law, rule, or regulation, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or any obligations of the Debtors.

30.    Absent the express written consent of the Successful Purchaser or the Back-Up Purchaser, as applicable, the Debtors shall not settle or otherwise resolve any existing or future litigation with any third party or any governmental entity other than any settlement pursuant to which no restrictions are placed on or affecting the Transferred Assets or the operation of the

44



business from and after the Closing Date or otherwise directly or indirectly affect the operations of, or impose successor or any other theory of liability upon, the Successful Purchaser or the Back-Up Purchaser.

31.    29. **Fair Consideration**. The consideration provided by the Successful Purchaser for the Transferred Assets under the Successful Purchase Agreement and by the Back-Up Purchaser for the Transferred Assets under the Back-Up Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, possession, or the District of Columbia. The Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law. The Purchase Agreements were not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Sellers nor the Successful Purchaser have entered into the Successful Purchase Agreement, any Transaction Document, or any agreement contemplated thereby or are consummating the Sale Transaction with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities. Neither the Sellers nor the Back-Up Purchaser have entered into the Back-Up Purchase Agreement, any Transaction Document, or any agreement contemplated thereby or are consummating the Sale Transaction with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities.


32760152.1
32863699.1

32.    30. No other person or entity or group of persons or entities has offered to purchase the Transferred Assets for an amount or pursuant to terms that would provide greater value to the Debtors and their estates than the value provided by the Successful Purchaser. This Court's approval of the Motion and the Purchase Agreements are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

33.    31. **Good Faith of the Successful Purchaser and the Back-Up Purchaser**. The transactions contemplated by the Successful Purchase Agreement are undertaken by the Successful Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions shall not affect the validity of the Sale Transaction, including, without limitation, the assumption and assignment by the Debtors of any Transferred Contract, unless the authorization or the Sale Transaction contemplated by the Successful Purchase Agreement are stayed. The Successful Purchaser is a good faith purchaser of the Transferred Assets within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the rights, privileges, immunities, and protections afforded by section 363(m) of the Bankruptcy Code. Additionally, as a good faith buyer of the Transferred Assets, the Successful Purchaser has not entered into any agreement with any other potential bidders and has not colluded with any potential or actual bidders, and the Sale Transaction may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

34.    32. The transactions contemplated by the Back-Up Purchase Agreement are undertaken by the Back-Up Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions shall not affect the

46



validity of the Sale Transaction, including, without limitation, the assumption and assignment by the Debtors of any Transferred Contract, unless the authorization or the Sale Transaction contemplated by the Back-Up Purchase Agreement are stayed. The Back-Up Purchaser is a good faith purchaser of the Transferred Assets within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the rights, privileges, immunities, and protections afforded by section 363(m) of the Bankruptcy Code. Additionally, as a good faith buyer of the Transferred Assets, the Back-Up Purchaser has not entered into any agreement with any other potential bidders and has not colluded with any potential or actual bidders, and the Sale Transaction may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

35. 33. **No Avoidance of the Purchase Agreements**. Neither the Debtors, the Successful Purchaser, nor the Back-Up Purchaser have engaged in any conduct that would cause or permit the Purchase Agreements to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the Successful Purchase Agreement, the Back-Up Purchase Agreement, and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Successful Purchase Agreement, the Back-Up Purchase Agreement, or the Sale Transaction.

36. 34. [**Books and Records**. Notwithstanding anything to the contrary herein or in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, from and after the Closing Date through and including the seventh anniversary of the Closing Date, the Sellers (and their successors and permitted assigns) shall have the right to retain copies of all Books and Records (as defined in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable) of the Sellers and the Transferred Subsidiaries (as defined in the

47



Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable), including copies of any the Sellers' server(s) and any Books and Records to be transferred to the Successful Purchaser or the Backup Purchaser, as applicable, for the sole purpose of allowing the Trustee to perform the duties necessary for the liquidation of the Debtors' estates or to pursue any claims or other Actionsliquidating Excluded Assets; *provided* that any retained copies of all Books and Records shall be subject to the confidentiality obligations and use restrictions of the Debtors set forth in the Successful Purchase Agreement or Back-Up Purchase Agreement, as applicable; *provided* further that any person granted derivative standing by the Bankruptcy Court to pursue claims on behalf of the estate can seek relief from the Bankruptcy Court to use materials subject to the confidentiality obligations in the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, for the purposes of pursuing such claims and the Successful Purchaser or the Back-Up Purchaser, as applicable, or its successors and permitted assigns, shall not oppose such a motion on the basis that the Sellers are bound by the Successful Purchase Agreement or Back-Up Purchase Agreement, as applicable; *provided*, *however*, the Successful Purchaser or the Back-Up Purchase, as applicable, can oppose such a motion on any other grounds.  If the Sellers' successors and permitted assigns, including the Trustee (as defined in the Successful Purchase Agreement) or the Back-Up Purchase Agreement, as applicable), are unable to obtain from the copies of the Books and Records retained by the Sellers information necessary to pursue estate claims and causes of action that are not transferred under the Successful Purchase Agreement or the Back-Up Purchase Agreement, as applicable, upon written request setting forth with specificity the information sought and the efforts undertaken to locate such information in the copies of the Books and Records retained by the Sellers, the Successful Purchaser or the Back-Up Purchaser, as applicable, shall provide the Sellers'

48


32760152.1
32863699.1

successors and permitted assigns reasonable access during normal business hours to the transferred Books and Records; *provided* that such access does not materially interfere with the Successful Purchaser's or Back-Up Purchaser's , as applicable, business operations. For the avoidance of any doubt, the ~~Debtors or their successors or assigns shall not be entitled~~Successful Purchaser or the Back-Up Purchaser, as applicable, shall have no obligation to provide access to any post-Closing information, shall have no obligation to provide access to any information ~~from~~generated by the Successful Purchaser ~~except as required under applicable law.[10]~~or the Back-Up Purchaser, as applicable, or its affiliates, and all reasonable costs associated with accessing Books and Records in accordance with this paragraph shall be paid by the party requesting access.

37.    **Sale Transaction; Settlement**. Notwithstanding anything to the contrary herein, the Official Committee of Unsecured Creditors' informal and formal objections, including its reservation of rights [Docket No. 284], are deemed to be resolved and overruled in accordance with the terms of the Settlement Term Sheet by and among the Debtors, the Official Committee of Unsecured Creditors, and the Prepetition GDEV Secured Parties (as defined in the Settlement Term Sheet), attached hereto as **Exhibit 4**, which is approved in all respects. For the avoidance of doubt, pursuant to the Settlement Term Sheet, the Debtors are authorized and directed to promptly transfer the UGE Sale Proceeds (as defined in the Settlement Term Sheet) to the Prepetition GDEV Secured Parties, the Debtors may retain the Retained Proceeds (as defined in the Settlement Term Sheet), and, upon the Debtors' receipt of any of the Future Sale Proceeds (as defined in the Settlement Term Sheet), the Debtors shall remit to the Prepetition GDEV

---

[10] ~~Subject to further discussions.~~

Secured Parties the Retained Proceeds as soon as practicable after the Debtors' receipt (but in no event longer than 5 business days after receipt) of any Future Sale Proceeds, and on a cumulative basis, up to and no greater than the full amount of the Retained Proceeds. The Official Committee of Unsecured Creditors' Challenge Period (as defined in the Final DIP Order[8]) is expired upon entry of this Order.

38.    35.  **Binding Effect**. This Order, the Purchase Agreements, the Transaction Documents, and the Bidding Procedures Order shall be binding in all respects upon all persons and entities, including, without limitation: (a) all known and unknown creditors of, and holders of equity security interest in, the Debtors, including any holders of Encumbrances or Liabilities and non-Debtor parties to the Transferred Contracts; (b) the Successful Purchaser; (c) the Back-Up Purchaser; (d) the Debtors, their respective affiliates and subsidiaries, and their estates (and such parties' respective successors and assigns); (e) the Transferred Assets; (f) the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases; (g) any trustee(s) or other fiduciaries appointed in the Debtors' Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code; and (h) all successors and assigns of each of the foregoing. The Successful Purchase Agreement, the Back-Up Purchase Agreement, this Order, and the Sellers' obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these Chapter 11 Cases, without the prior written consent of the Successful Purchaser or the Back-Up

---

[8] The "Final DIP Order" means the *Final Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to (I) Use Cash Collateral, (II) Obtain Secured Superpriority Postpetition Financing and Granting Liens and Superpriority Administrative Claims, (III) Provide Adequate Protection, and (B) Granting Related Relief* [Docket No. 220].



Purchaser, as applicable. This Order shall survive any dismissal or conversion of any of these Chapter 11 Cases or any dismissal of any subsequent chapter 7 cases with respect to the Debtors.

39. 36. **No Material Modifications**. The Purchase Agreements and the Transaction Documents may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, in a writing signed by such parties, without further order of this Court. Any material modification, amendment, or supplement to the Purchase Agreements and the Transaction Documents adversely affecting the Debtors' estates must be approved by order of this Court on notice to all interested parties.

40. 37. **Subsequent Orders & Plan Provisions**. Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases or any subsequent order of this Court, including, without limitation, any order confirming any such chapter 11 plan, any order authorizing the sale of assets of the Debtors pursuant to any section of the Bankruptcy Code, and any order approving wind-down or dismissal of any Chapter 11 Case or any subsequent chapter 7 case shall change, supersede, abrogate, nullify, restrict, or conflict with the provisions of the Successful Purchase Agreement or of the Back-Up Purchase Agreement, as applicable, the Transaction Documents, or this Order, or in any way prevent or interfere with the consummation or performance of the Sale Transaction.

41. 38. **Failure to Specify Provisions**. The failure to specifically include any particular provision of the Successful Purchase Agreement, the Back-Up Purchase Agreement, or the Transaction Documents relating to the Sale Transaction in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Successful Purchase Agreement, the Back-Up Purchase Agreement, the Transaction Documents, and all



other documents related to the Sale Transaction, as applicable, be authorized and approved in their entirety pursuant to this Order.

42. ~~39.~~ **Automatic Stay**. The Successful Purchaser and the Back-Up Purchaser, as applicable, shall not be required to seek or obtain relief from the stay under section 362 of the Bankruptcy Code to enforce any of their respective remedies under the Purchase Agreements or related documents. The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified solely to the extent necessary (a) to implement the provisions of this Order, ~~and this~~(b) to allow the Successful Purchaser or the Back-Up Purchaser, as applicable, to take any and all actions permitted under this Order, the Successful Purchase Agreement, the Back-Up Purchase Agreement, and the Transaction Documents, as applicable, and (c) to allow the Successful Purchaser or the Back-Up Purchaser, as applicable, to deliver any notice provided for in the Successful Purchase Agreement, the Back-Up Purchase Agreement, or the Transaction Documents, as applicable. This Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

43. ~~40.~~ **No Stay of Order**. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the applicable Debtors and the Successful Purchaser or the applicable Debtors and the Back-Up Purchaser, as applicable, are authorized to close the Sale Transaction immediately upon entry of this Order. Time is of the essence in closing the Sale Transaction referenced herein, and the applicable Debtors and the Successful Purchaser or the applicable Debtors and the Back-Up Purchaser, as applicable, intend to close the Sale Transaction as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order. Any party objecting to this Order



must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

44. ~~41.~~ **Provisions Non-Severable & Mutually Dependent**. The provisions of this Order are non-severable and mutually dependent.

45. ~~42.~~ **Retention of Jurisdiction**. This Court retains exclusive jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, on and after Closing of the Sale Transaction, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Bidding Procedures Order, the Purchase Agreements, and the Transaction Documents, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Transferred Assets to the Successful Purchaser or to the Back-Up Purchaser, as applicable; (b) resolve any disputes arising under or related to this Order, the Successful Purchase Agreement, the Back-Up Purchase Agreement, or the Transaction Documents; (c) protect the Successful Purchaser, any of the Successful Purchaser's affiliates, or any agent of the foregoing, against any Encumbrances or Liabilities against the Debtors or the Transferred Assets of any kind or nature whatsoever; (d) protect the Back-Up Purchaser, any of the Back-Up Purchaser's affiliates, or any agent of the foregoing, against any Encumbrances or Liabilities against the Debtors or the Transferred Assets of any kind or nature whatsoever; and (e) enter any order under sections 363 and 365 of the Bankruptcy Code. In the event this Court abstains from exercising or declines to exercise jurisdiction with respect to any matter referenced in this paragraph or is without jurisdiction, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit



the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

46. ~~43.~~ **No Bulk Law Application**. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Sale Transaction, the Purchase Agreements, the Transaction Documents, the Motion, and this Order.

47. ~~44.~~ **Inconsistencies**. To the extent this Order is inconsistent with any prior filing with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall govern and any prior filings shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale Transaction. To the extent there is any inconsistency between the terms of this Order and the terms of the Successful Purchase Agreement (including all ancillary documents executed in connection therewith) or the terms of the Back-Up Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern. Notwithstanding the foregoing, nothing in this Order shall modify or waive any Closing conditions or termination rights in the Successful Purchase Agreement or in the Back-Up Purchase Agreement, as applicable, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

48. ~~45.~~ **Headings**. Headings utilized in this Order are for convenience of reference only and do not constitute part of this Order for any other purpose.

49. ~~46.~~ **Time Periods**. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).



## Exhibit 1

**Successful Purchase Agreement**

*[To be filed]*



**Exhibit 2**

**Back-Up Purchase Agreement**

*[To be filed]*

**Exhibit 3**

**List of Transferred Contracts Identified by the Successful Purchaser**

*[To be filed][Filed at Docket Nos. 386 (sealed), 387 (redacted)]*

*[Different first page link-to-previous setting changed from on in original to off in modified.].*

## Exhibit 43

**List of Transferred Contracts Identified by the Back-Up Purchaser**

*[To be filed]*

*[Filed at Docket Nos. 325 (sealed), 326 (redacted)]*

**<u>Exhibit 4</u>**

**<u>Settlement Term Sheet</u>**

